Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone: 310/208-2800
Facsimile:  310/209-2348

*Attorneys for Movant Allen J.Wiesenfeld and*
*Proposed Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          vs.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>                    Defendants. | Case No. 2:21-cv-06918-PA-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF ALLEN J. WIESENFELD TO APPOINT LEAD PLAINTIFF AND APPROVE LEAD COUNSEL**<br><br>DATE: November 29, 2021<br>TIME: 1:30 p.m.<br>JUDGE: Percy Anderson<br>CTRM: 9A, 9th Floor |

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ....................................................................1

II.   STATEMENT OF FACTS........................................................................2

III.  ARGUMENT.........................................................................................6

      A.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF..............6

            1.    Movant Is Willing to Serve as Class Representative..................7

            2.    Movant Has the "Largest Financial Interest" .............................7

            3.    Movant Otherwise Satisfies the Requirements
                  of Rule 23 of the Federal Rules of Civil Procedure ..................8

            4.    Movant Will Fairly and Adequately Represent the Interests
                  of the Class and Is Not Subject to Unique Defenses ................10

      B.    SELECTION OF COUNSEL SHOULD BE APPROVED................11

IV.   CONCLUSION ....................................................................................11

CERTIFICATE OF SERVICE ...............................................................................13

- i -

## TABLE OF AUTHORITIES

**Cases**                                                                   **Page(s)**

*Bao v. SolarCity Corp.,*
 No. 14-cv-01435-BLF,
2014 U.S. Dist. LEXIS 111869 (N.D. Cal. Aug. 11, 2014) ................................... 9

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.,*
 No. 11-CV-04003-LHK,
2012 U.S. Dist. LEXIS 2776 (N.D. Cal. Jan. 9, 2012) .......................................... 8

*Hessefort v. Super Micro Comput., Inc.,*
 317 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................... 9

*In re SolarCity Corp. Sec. Litig.,*
 No. 16-CV-04686-LHK,
2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ...................................... 9

*Knox v. Yingli Green Energy Holding Co.,*
 136 F. Supp. 3d 1159 (C.D. Cal. 2015) .................................................. 8

*Nicolow v. Hewlett Packard Co.,*
 No. 12-05980 CRB,
2013 U.S. Dist. LEXIS 29876 (N.D. Cal. Mar. 4, 2013) ....................................... 8

*Lax v. First Merchants Acceptance Corp.*
 *No. 97 C 2715,*
1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ...................................... 7-8

*Osher v. Guess?, Inc.,*
 No. CV 01-00871 LGB(RNBx),
2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ...................................... 11

*Richardson v. TVIA, Inc.,*
 No. C-06-06304 RMW,
2007 U.S. Dist. LEXIS 28406 (N.D. Cal. Apr. 16, 2007) ..................................... 9

*Staton v. Boeing Co.,*
 327 F.3d 938 (9th Cir. 2003) ........................................................... 10

**Statutes & Regulations**

Federal Rule of Civil Procedure 23 ("Rule 23") ................................................ *passim*

Private Securities Litigation Reform Act of 1995
        Section 21D(a)(3), 15 U.S.C. § 78u-4(a)(3) ........................................... *passim*

- ii -

Movant Allen J. Wiesenfeld ("Movant"), respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Movant as Lead Plaintiff on behalf of persons or entities who purchased or otherwise acquired HyreCar Inc. ("HyreCar" or "the Company") securities between May 14, 2021 and August 10, 2021, inclusive (the "Class Period") (the "Class"); and (2) approving Lead Plaintiff's selection of WeissLaw LLP as Lead Counsel for the Class.

## I.   PRELIMINARY STATEMENT

The Complaints in the Action alleges that HyreCar and certain of its officers defrauded investors in violation of the Exchange Act.  HyreCar investors, including Movant, incurred significant losses following the disclosure of the alleged fraud, which caused the prices of HyreCar securities to fall sharply, damaging Movant and other HyreCar investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with his transactions in HyreCar securities during the Class Period, Movant incurred losses of $301,781.92. *See* Declaration of Joel E. Elkins in Support of Motion ("Elkins Decl."), Exhibit ("Ex.") A. Accordingly, Movant believes that he has the largest financial interest in the relief sought in the Action.

Beyond his considerable financial interest, Movant also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

- 1 -

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Action on behalf of the Class, Movant has selected WeissLaw as Lead Counsel for the Class. WeissLaw is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Movant respectfully requests that the Court enter an order appointing him as Lead Plaintiff for the Class and approving his selection of WeissLaw as Lead Counsel for the Class.

## II.    STATEMENT OF FACTS

As alleged in the Complaint, Defendant HyreCar operates a web-based marketplace that allows car and fleet owners to rent their cars to Uber, Lyft, and other gig economy service drivers.  The Company's platform connects gig drivers with automobiles and provides insurance and tactical support, generating revenue for the Company by taking a fee out of each rental.

More specifically, drivers pay a daily rental rate set by the car owner, plus a 10% HyreCar Driver Fee, as well as direct daily insurance costs.  Owners pay a 15%-25% Owner Fee to HyreCar from out of the daily rental rate paid by the Driver.  Prior to the beginning of the Class Period, apart from the two revenue share fees (one from the driver and one from the owner), HyreCar revenue was significantly derived from fees for driver insurance, which represented large (if not majority) percentage of the revenue generated per transaction.  In fact, driver insurance fees were represented by HyreCar during the Class Period as offering a "competitive advantage" because the insurance offered by the Company subordinated to the state mandated insurance provided by the third-party ride-sharing business, a feature that HyreCar touted as a unique insurance product to its service.  The Company represented this insurance program as follows:

> For insurance purposes a vehicle rental is broken into four distinct driving periods. Period 0 is when the Driver has picked a vehicle up from the Owner and is driving with the Uber or Lyft app turned-off. Period 1 is when the Driver has the Uber or Lyft app turned-on but has not yet

- 2 -

accepted a fare. Period 2 is when the Driver has accepted a fare and is on the way to pick-up a passenger. Period 3 is when a passenger is in the vehicle. The HyreCar policy is specifically written to cover periods in which the Drivers are operating HyreCar vehicles OFF the Uber or Lyft platform (period 0). During the periods when Drivers are operating ON the Uber or Lyft platform (periods 1, 2 and 3), the HyreCar liability insurance subordinates to state mandated insurance provided by Uber and Lyft. This enables us to keep insurance costs and liability low by leveraging state mandated insurance policies provided by the TNCs.

Effective March 1, 2021, the Company represented entry into a two-year claim adjusting agreement with Sedgwick, an insurance claim processing partner for many companies in rideshare transportation and food delivery. The agreement included an escrow account requirement of $1,750,000 to be held by Sedgwick for claim payments, replenished by the Company on a quarterly basis dependent on the actual claims paid during that quarter. This new relationship purported to allow HyreCar to centralize its claims administration and indicated that Company management was intensely focused on claims incidence and insurance costs.

After the stock market closed on the day before the beginning of the Class Period, on May 13, 2021, HyreCar represented that it achieved "Record First Quarter 2021 Financial Results" for the quarter ended March 31, 2021 ("Q1 2021"). According to the press release, insurance deposits more than doubled during the quarter to $1.7 million, while, conversely, the amount of insurance reserve (which indicates the amount of claims incurred but not yet paid) declined more than 17% since year end to $1.7 million.

In a subsequent earnings call with analysts and investors to discuss the Company's Q1 2021 results, the Company's CEO represented that: "Dynamic pricing, combined with increasing gross profit from normalized claims and increased affiliate revenue, puts us on a target to reach EBITDA neutral in the second half of 2021." And the Company's CFO represented that HyreCar's recent "price enhancements" better reflected insurance risk data which were positively impacting the Company's revenue from operations because the price enhancements

- 3 -

better reflect the new competitive environment and align reimbursement rates with new driver risk scoring data. The combination of these 2 pricing elements should drive significant net revenue and gross margin improvements through 2021. And increase our daily average net revenue from the $24 to $25 a day we've seen historically to the $27 to $28 a day range.

* * *

gross profit for the 3 months ended March 31, 2021, was $2.7 million, increasing 26% from $2.1 million in the year ago period ended March 31, 2020. This is an improvement from last year's gross profit margin of 33% for the 12 months ending December 31, 2020, and flat sequentially from 37% in the first quarter of 2020.  Due to the second quarter pricing changes, we expect our progress toward the gross margin near-term goal of 45% to 50% we have discussed previously to accelerate.

* * *

But I think it's pretty safe to assume that it's going to be at least 10% increase to [driver insurance].  So yes, going from 9 million to 10 million per 1,000 cars, that's a good basic way to think about it.  And hopefully, we can do a little bit better than that.

At the end of the Class Period, however, after the market closed on August 10, 2021, HyreCar disclosed that for the quarter ending June 30, 2021 ("Q2 2021"), the Company suffered net losses of $9.3 million compared to losses of $3.8 million in the same period the prior year.  Furthermore, the Company disclosed an adjusted EBITDA loss for Q2 2021 of $7.1 million (four times higher than the $1.7 million adjusted EBITDA loss experienced in the second quarter of 2020) and that its gross profit for Q2 2021 was just $0.8 million (less than one third the Company's gross profit in the second quarter of 2020), with a gross profit margin of just 24%.

In addition, the Company disclosed incurring skyrocketing cost of revenue during the quarter primarily as a result of significantly higher insurance claims incidence – including claims before March 31, 2021 "in excess of the reserves." Specifically, cost of revenue totaled $8.3 million for Q2 2021, an increase of $5.2 million or 170.6% from the $3.1 million recognized during the same period in the prior year.  According to the Company, $2.4 million was due to the attributable increase in insurance premiums and claims from expanded rental day volume, and normalization for the quarter ended June 30, 2020 volatility.  While the remainder of the cost increase

- 4 -

was primarily driven up by additional insurance claims of $2.8 million of which approximately $1.2 million was attributed to one-off new developments on claims and incidental payments incurred prior to March 31, 2021 in excess of the reserves and accruals, resulting from settling claims incurred prior to March 1, 2021 under the Company's previous insurance claims processing partner, while another $0.2 million of one-off expenses were related to technical transitional difficulties with the new claims processing partners platform, issues were resolved.

On a subsequent earnings call conducted by the Company's Chief Executive Officer ("CEO") and its Chief Financial Officer ("CFO") Q2 2021, it was disclosed that HyreCar was forced to revamp its claims processes and procedures and improve its risk price adjustments for policies issued by the Company in Q2 2021 because it had failed to appropriately price risk on past policies and had failed to pay out a substantial number of claims incurred before the Class Period, in no small measure because insurance premiums were affected by excess high-risk drivers.

On this news, the price of HyreCar stock fell nearly 50% in a single day to close at $9.85 per share on August 11, 2021, on abnormally high volume of over 5.8 million shares traded.

Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects by failing to disclose: (a) that HyreCar had materially understated its insurance reserves; (b) that HyreCar systematically failed to pay valid insurance claims incurred prior to the Class Period; (c) that HyreCar incurred significant expenses transitioning to its new third-party insurance claims administrator and processing claims incurred from prior periods; (d) that HyreCar failed to appropriately price risk in its insurance products and was experiencing elevated claims incidence as a result; (e) that HyreCar was forced to dramatically reform its claims underwriting, policies and procedures in response to unacceptably

- 5 -

high claims severity and customer complaints; and (f) that, as a result of (a)-(e) above, HyreCar's operations and  prospects were misrepresented because the Company was not on track to meet the   financial estimates provided to investors during the Class Period, and such estimates   lacked a reasonable basis in fact, including HyreCar's purported gross margin,  EBITDA and net loss trajectories.

As a result of the Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Movant and other Class members suffered significant losses and damages.

## III.   ARGUMENT

### A.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

Movant should be appointed Lead Plaintiff because, to his knowledge, he has the largest financial interest in the Related Actions and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiffs in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

(aa) has either filed the complaint or made a motion in response to a notice….

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

- 6 -

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. Movant Is Willing to Serve as Class Representative

On August 28, 2021, counsel for plaintiff in the filed Action caused a notice to be published over Business Wire pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and advised investors of HyreCar securities that they had until October 26, 2021—*i.e.*, 60 days from the date of the Notice—to file a motion to be appointed as Lead Plaintiff. *See* Elkins Decl., Ex. B.

Movant filed the instant motion pursuant to the Notice and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary. *See* Elkins Decl., Ex. C. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Movant Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). To the best of his knowledge, Movant has the largest financial interest of any HyreCar investor seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered. No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at **17-18 (N.D. Ill. Aug. 6, 1997). In accord with courts nationwide, these so-called Lax factors have been adopted

by courts in the Ninth Circuit, including in this District. *See, e.g.*, *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) ("District courts have typically considered the [*Lax*] factors to determine who has the largest financial interest[.]" (internal quotation marks and citations omitted)); *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 U.S. Dist. LEXIS 29876, at *18 (N.D. Cal. Mar. 4, 2013) (same); *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 11-CV-04003-LHK, 2012 U.S. Dist. LEXIS 2776, at **10-11 (N.D. Cal. Jan. 9, 2012) (same). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *See, e.g.*, *Knox*, 136 F. Supp. 3d. at 1163; *Nicolow*, 2013 U.S. Dist. LEXIS 29876, at **18-19.

During the Class Period, Movant (1) purchased thirty thousand shares of HyreCar securities; (2) expended $548,951.63 on his purchases of HyreCar securities; (3) retained all of his shares of HyreCar securities purchased during the Class Period; and (4) as a result of the disclosures of the fraud, suffered a loss of $301,781.92, in connection with his purchases of HyreCar securities during the Class Period. *See* Elkins Decl., Ex. A. Because Movant possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Movant Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or

- 8 -

defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a prima facie showing that the movant satisfies the requirements of Rule 23 is sufficient. *See Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-01 (N.D. Cal. 2018); *Bao v. SolarCity Corp.*, No. 14-cv-01435-BLF, 2014 U.S. Dist. LEXIS 111869, at *9 (N.D. Cal. Aug. 11, 2014). "This showing need not be as thorough as what would be required on a class certification motion and only needs to satisfy typicality and adequacy." *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *13 (N.D. Cal. Jan. 25, 2017).

"The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Richardson v. TVIA, Inc.*, No. C-06-06304 RMW, 2007 U.S. Dist. LEXIS 28406, at *16 (N.D. Cal. Apr. 16, 2007) (*quoting Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The claims of Movant are typical of those of the Class. Movant alleges, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning HyreCar, or by omitting to state material facts necessary to make the statements they did make not misleading. Movant, as did all Class members, purchased HyreCar securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, courts in the Ninth Circuit consider whether "the representative plaintiffs and their counsel have any conflicts of interest with other class members" and ask "will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted). Movant is an adequate representative for the Class. Here, Movant has submitted a signed Certification declaring his commitment to protecting the interests of the Class. *See* Elkins Decl., Ex. C. There is no antagonism between the interests of Movant and those of the Class, and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation that gives him an incentive to vigorously prosecute fraud claims on behalf of the Class. Moreover, Movant has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Further demonstrating his adequacy, Movant has submitted a Declaration attesting to, inter alia, his background, his investing experience, his experience working with counsel, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Elkins Decl., Ex. D.

### 4. Movant Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)  will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

- 10 -

The ability and desire of Movant to fairly and adequately represent the Class has been discussed above.   Movant is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.

## B.   SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, No. CV 01-00871 LGB (RNBx), 2001 U.S. Dist. LEXIS 6057, at \*15 (C.D. Cal. Apr. 26, 2001).   The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class."   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected WeissLaw as Lead Counsel for the Class.   WeissLaw is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 40+ year history, as detailed in the firm resume.   *See* Elkins Decl., Ex. E.   As a result of its extensive experience in similar litigation, Movant's choice of counsel, WeissLaw, has the skill, knowledge, expertise, resources, and experience that will enable it to prosecute the Class's claims in this litigation effectively and expeditiously.   The Court may be assured that by approving Movant's selection of WeissLaw as Lead Counsel, the Class members will receive the best legal representation available.   Thus, Movant respectfully urges the Court to appoint WeissLaw to serve as Lead Counsel.

## IV.   CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court issue an Order: (1) appointing Movant as Lead Plaintiff; and (2) approving WeissLaw LLP as Lead Counsel for the Class.

- 11 -

Dated: October 26, 2021

**WEISSLAW LLP**

By: */s/ Joel E. Elkins*
Joel E. Elkins
611 Wilshire Blvd., Suite 808
Los Angeles, CA 90017
Telephone:  310/208-2800
Facsimile:   310/209-2348

-and-

Joshua M. Rubin
Mark D. Smilow
305 Broadway, 7th Floor
New York, NY 10007
Telephone: 212/682-3025
Facsimile:  212/682-3010

*Counsel for Movant and Proposed Lead Counsel for the Class*

- 12 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Dated: October 26, 2021

/s/ Joel E. Elkins
Joel E. Elkins

Case No. 2:21-cv-06918-PA-JC
MEMORANDUM OF POINTS AND AUTHORITIES