LATHAM & WATKINS LLP
  Joshua G. Hamilton, Esq. (199610)
    *Joshua.Hamilton@lw.com*
  Regina Wang, Esq. (326262)
    *Regina.Wang@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: 424.653.5500
Facsimile:  424.653.5501

  Meryn C. N. Grant, Esq. (291315)
    *Meryn.Grant@lw.com*
355 S Grand Ave., Suite 100
Los Angeles, CA 90071
Telephone: 213.891.8000
Facsimile:  213.891.8763

*Attorneys for Defendants HyreCar Inc.,
Joseph Furnari and Robert Scott Brogi*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>Defendants. | Case No. 2:21-cv-06918-PA-JC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT BY DEFENDANTS HYRECAR INC., JOSEPH FURNARI AND ROBERT SCOTT BROGI**<br><br>Hearing Date:  January 31, 2022<br>Time:  1:30 p.m.<br>Ctrm:  9A<br>Judge:  Hon. Percy Anderson |

# TABLE OF CONTENTS

**Page**

I.    Introduction ........................................................................................................ 1

II.   Argument ............................................................................................................ 2

    A.    Plaintiff Fails to Sufficiently Plead Any Materially False or Misleading Statement or Omission ...................................................... 2

        1.    Plaintiff Does Not Adequately Allege That Expenses or Insurance Reserves Were Understated. ...................................... 3

        2.    HyreCar Had No Duty to Disclose the Granular Details of the Ownership of Its Adjuster ................................................ 6

        3.    Statements Regarding Opportunities and the Effect of Pricing Adjustments Are Protected Forward-Looking Statements ................................................................................. 7

    B.    Plaintiff Fails to Plead a Strong Inference of Scienter ........................ 8

        1.    Plaintiff's Confidential Witness Statements Are Insufficient ................................................................................. 8

        2.    Plaintiff's Stock Sales and Brogi's Resignation Do Not Support an Inference of Scienter ................................................ 9

        3.    The More Cogent and Compelling Inference Negates Scienter ................................................................................... 11

III.  Conclusion ....................................................................................................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

i

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004) ..................................................................5

*Backe v. Novatel Wireless, Inc.*,
642 F. Supp. 2d 1169 (S.D. Cal. 2009) ...............................................................9

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ......................................................10

*Berson v. Applied Signal Tech.*,
527 F.3d 982 (9th Cir. 2008) ...............................................................................7

*In re Cadence Design Sys., Inc. Sec. Litig.*,
654 F. Supp. 2d 1037 (N.D. Cal. 2009) ...............................................................8

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ...............................................................................5

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008)................................................................5

*Curry v. Hansen Med., Inc.*,
2012 WL 3242447 (N.D. Cal. Aug. 10, 2012)......................................................9

*Eclectic Properties E., LLC v. Marcus & Millichap* Co.,
751 F.3d 990 (9th Cir. 2014) .........................................................................11, 12

*In re Faro Techs. Sec. Litig.*,
534 F. Supp. 2d 1248 (M.D. Fla. 2007) ...............................................................5

*In Re Intuitive Surgical Sec. Litig.*,
2017 WL 4355072 (N.D. Cal. Sept. 29, 2017).....................................................11

*Iron Workers Loc. No. 25 Pension Fund v. Oshkosh Corp.*,
2010 WL 1287058 (E.D. Wis. Mar. 30, 2010).....................................................10

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ...............................................................................7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

ii

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

*Lipton v. Pathogenesis Corp.*,
 284 F.3d 1027 (9th Cir. 2002)........................................................................... 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
 540 F.3d 1049 (9th Cir. 2008).....................................................................2, 8, 10

*Nat'l Elevator Industry Pension Fund v. Flex. Ltd.*,
 No. 21-150502021, 2021 WL 6101391 (9th Cir. Dec. 21, 2021) ....................3, 8

*Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*,
 780 F. App'x 480 (9th Cir. 2019).....................................................................3, 7

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
 575 U.S. 175 (2015) ............................................................................................5

*In re Omnivision Techs., Inc.*,
 2005 WL 1867717 (N.D. Cal. July 29, 2005) ...................................................11

*Robb v. Fitbit Inc.*
 216 F. Supp. 3d 1017 (N.D. Cal. 2016) ...............................................................4

*Santa Fe Industries, Inc. v. Green*,
 430 U.S. 462 (1977) .............................................................................................2

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
 266 F. Supp. 2d 1150 (C.D. Cal. 2003)..............................................................10

*Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*,
 2021 WL 4864421 (N.D. Cal. Oct. 19, 2021) .....................................................3

*Sprewell v. Golden State Warriors*,
 266 F.3d 979 (9th Cir. 2001) .............................................................................10

*Suez Equity Investors, L.P., v. Toronto-Dominion Bank*,
 250 F.3d 87 (2d Cir. 2001) ..................................................................................3

*Wenger v. Lumisys, Inc.*,
 2 F. Supp. 2d 1231 (N.D. Cal. 1998)...................................................................9

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ...........................................................................9, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

iii

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

# STATUTES

Private Securities Litigation Reform Act of 1995
    15 U.S.C. § 78u-4(b) ................................................................................. 1, 2, 7

Securities and Exchange Act of 1934
    15 U.S.C. § 78j(b)....................................................................................... 1, 2, 12
    15 U.S.C. § 78t(a)....................................................................................... 1, 2, 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

iv

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

## I.    INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Dismiss fails to legitimately dispute Defendants' arguments that Plaintiff's claims cannot meet the higher, exacting pleading requirements for claims brought under the Securities and Exchange Act of 1934 ("Exchange Act") and the Private Securities Litigation Reform Act of 1995 ("Reform Act").  15 U.S.C. §§ 78j(b), 78t(a), 78u-4(b).  In an effort to avoid dismissal, Plaintiff's Opposition mischaracterizes or misstates judicially noticeable facts and Plaintiff's own allegations, demonstrating that its story cannot withstand scrutiny.  While Plaintiff openly concedes one erroneous allegation in its Amended Complaint, which it attributes to a "scrivener's error," the Opposition reveals that the significant gaps and flaws in Plaintiff's theory permeate the entire Amended Complaint, and that this lawsuit was an ill-conceived attempt to use hindsight to manufacture a securities fraud claim after a stock-drop.

The crux of Plaintiff's theory of securities fraud is that Defendants HyreCar Inc. ("HyreCar"), Joseph Furnari and Robert Scott Brogi engaged in a purported "scheme" to delay and suppress insurance claims to understate insurance reserves, and, by extension, expenses, by relying on a small claims adjuster (Genoteq) owned by its former insurance broker (ABI).  After replacing both ABI and later Genoteq, HyreCar announced in the second quarter of 2021 that it incurred an unexpected increase in claims expenses, and it was recording a one-time increase in insurance reserves.  In addition to failing to counter the multitude of other flaws in Plaintiff's theory explained in Defendants' Motion, Plaintiff's Opposition demonstrates no answer to this key question: if Defendants were engaged in a scheme to delay or suppress insurance claims to hide losses, why would they affirmatively and openly replace the purportedly conflicted insurance broker and adjustors with top companies in the insurance field with the goal to expedite and improve their claims processing?  The more plausible inference is that the one-time increase in insurance expenses and reserves was a growing pain for an innovative

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

1

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

company offering a unique insurance product, after years of exponential growth and following the switch to a more sophisticated claims adjuster.  The fact that the market reacted to this growing pain does not support a claim for securities fraud, and Plaintiff's allegations are a classic attempt to manufacture fraud by hindsight.

In short, Plaintiff has failed to meet its burden to plead falsity and a strong inference of scienter with specificity as required by the Reform Act, compelling dismissal of both its primary claims under Section 10(b) and its secondary claims under Section 20(a) of the Exchange Act.

## II.   ARGUMENT
### A.   Plaintiff Fails to Sufficiently Plead Any Materially False or Misleading Statement or Omission

It is well established in this Circuit that to plead a claim under Section 10(b) of the Exchange Act, Plaintiff cannot "skirt[] dismissal by filing a complaint laden with vague allegations unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).  Yet, that is exactly what Plaintiff does.  Plaintiff's opposition fails to address the critical defects identified in the motion to dismiss, or identify with particularity the "reason or reasons why" any of challenged statements are misleading.  Mot. at 9 (citation omitted).  Nor does Plaintiff address the arguments addressing each category of alleged misstatement outlined in Defendants' Motion.  *See, e.g.* Mot, Section II.A.3.  Instead, Plaintiff merely summarizes its unsupported, vague and conclusory allegations, and then attempts to tie them to inapposite case law.

Because Plaintiff's fraud theory is based on little more than complaints from customers about the timing and/or payment of their claims, Plaintiff cannot escape the long-established rule that criticism of corporate management is not actionable under Section 10(b) of the Exchange Act.  *Compare* Mot. at 11 (citing, inter alia, *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477–78 (1977)), *with* Opp. at 7. Nothing in Plaintiff's Opposition bridges the gap between customer complaints

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

2

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

and purported delays in processing claims and the alleged understatement of expense or reserves that is central to its theory of fraud.  Here, "the confidential witness statements describe operational difficulties without directly contradicting [HyreCar's] statements."  *Nat'l Elevator Industry Pension Fund v. Flex. Ltd*., No. 21-150502021, 2021 WL 6101391 at *1 (9th Cir. Dec. 21, 2021).[1]

### 1. Plaintiff Does Not Adequately Allege That Expenses or Insurance Reserves Were Understated.

Nowhere in Plaintiff's opposition does it identify "detailed allegations on the amount the expenses or reserves were understated" or failed to comply with GAAP.  Mot. at 11-12.  Nor does Plaintiff actually identify with any specificity that the reserves in prior quarters were false.  *See* Opp. at 13-16.  HyreCar's SEC filings made clear that "the adequacy of the reserve is monitored quarterly and is subject to adjustment in the future based upon changes in claims experience, including the number of incidents for which the Company is ultimately responsible," among other things.  Ex. 10, ECF No. 67-12 at 292.  The fact that the reserve was adjusted in a subsequent quarter does not indicate that a reserve amount in a prior quarter was false, and Plaintiff alleges no facts otherwise.  While Plaintiff relies on a conclusory statement from CW9 that reserves were understated by "$700,000 to a million" (Opp. at 6, 14) in "runoff claims," Plaintiff fails to

---

[1] Moreover, each of the cases Plaintiff cites are distinguishable, as those courts held that the plaintiff sufficiently alleged deception by the corporation that directly contradicted public statements. *Suez Equity Investors, L.P., v. Toronto-Dominion Bank*, 250 F.3d 87, 99 (2d Cir. 2001) (finding plaintiff adequately alleged "deception on the part of defendants, [by alleging that investor communications] deliberately misrepresented the abilities of [the corporation]"); *Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483-84 & n.4 (9th Cir. 2019) (finding plaintiff pled that statements touting the "real-time" nature of its identify theft alerts were knowingly false based on allegations that executives received reports that 70% of a particular alert were stale, the company had previously entered into a consent decree with the FTC to cease exaggerating the capabilities of its products and executives received detailed reports that contradicted their public statements); *Sheet Metal Workers Nat'l Pension Fund v. Bayer Aktiengesellschaft*, 2021 WL 4864421, at *3 (N.D. Cal. Oct. 19, 2021) ("Plaintiffs . . . aver that Defendants assured investors about their diligence, even though their diligence was less than what an investor would believe their statement meant.").

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
CENTURY CITY

3

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

allege how such claims have any bearing on the calculation of loss reserves.  Mot. at 14.  Further, Plaintiff contends that it adequately alleged the basis for CW9's assertion that there was $700,000 in "runoff" claims solely by referencing her position as a "Claims Assistant."  Opp. at 14 (citing AC ¶ 36); Appx. B, ECF No. 67 at 49-52.  Plaintiff's own allegations establish that CW9 was not responsible for investigating or processing claims and, as a Genoteq employee, had no knowledge of how HyreCar estimated reserves.  Mot. at 13-14.  Plaintiff concedes that allegations CW9 saw emails outside her period of employment were incorrect, and attributes that mischaracterization to a "scrivener's error," but remains unable to allege personal knowledge for the conclusory statements she makes regarding all aspects of Genoteq and HyreCar's business.  Opp. at n.3.[2]  Further, no pled facts suggest these claims were entitled to payment, or were not appropriately estimated in reserve estimates based on the information available at the time.  Mot. at 2, 11, 14.  Similarly, Plaintiff's hindsight reference to $1.25 million appears to be based on HyreCar's later disclosures in Q2 2021 that $1.2 million of the $2.8 million expense increase was attributable to "new developments on claims . . . incurred prior to March 31, 2021."  AC ¶ 147.  Plaintiff does not claim these developments were known by Genoteq or HyreCar at the time of the allegedly false statements.[3]

None of the cases Plaintiff cites (Opp. at 14) supports its arguments.  In each of those cases, plaintiff alleged specific facts demonstrating that the financial

---

[2] The vast majority of the statements attributed to CW9 are vague and rampant speculation regarding relationships and processes she was not part of, emails she was not on, and meetings she did not attend.  *See* Appx. B, ECF No. 67 at 49-52.  These statements are not within her personal knowledge and should be disregarded.  Mot. at 12-13.  Plaintiff's own case—*Robb v. Fitbit Inc.*—demonstrates as much.  216 F. Supp. 3d 1017, 1032-33 (N.D. Cal. 2016) (rejecting statements from executive assistant regarding problems with heart monitor that were not based on actual involvement in testing).

[3] Plaintiff erroneously states that Defendants "concede[d]" that Plaintiff sufficiently alleged that Defendants understated its insurance reserves.  Opp. at 13-14.  To the contrary, Defendants argued exactly the opposite.  Mot. at 11-16.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

4

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

metrics were inaccurate when made.  For example, in *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, the defendant admitted "unambiguously . . . that its financial statements pertaining to 2000 and 2001 were inaccurate," but could not locate the appropriate documentation to quantify a restatement and therefore, the court commented that Plaintiff was not required to provide "greater detail than the corporation's own auditors were able to."  324 F. Supp. 2d 474, 487 (S.D.N.Y. 2004).[4]  Here, there are no specific allegations of a false statement in any financial statement, and HyreCar's reserve estimates have never been restated.

Plaintiff also concedes that statements regarding insurance reserves are opinion statements that must satisfy the pleading standard set forth in *Omnicare Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015) and *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616 (9th Cir. 2017).  Opp. at 15.  Plaintiff argues that the reserve estimates are nonetheless actionable as opinion statements under *Omnicare* and *Align* because it has alleged "particular (and material) facts going to the basis for the issuer's opinion . . . whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context."  *See Align Tech., Inc.*, 856 F. 3d at 615.  Plaintiff points to CW9's claims that, in August 2020, Genoteq was directed to close "accounts."  Opp. at 15-16.  But, what CW9 "believe[s]" about the reason why the accounts were closed is pure conjecture—CW9 is not alleged to have ever had any contact with any HyreCar executive.  Plaintiff argues that HyreCar's description of insurance reserves does not reference "closed accounts"—an allegation not in its Complaint—but Plaintiff

---

[4] Similarly, in *In re Countrywide Fin. Corp. Sec. Litig.*, plaintiff failed to provide details regarding "relatively minor omissions" and even there the court "discount[ed] most of the [unspecific] allegations that Defendants brought to its attention" but found that it did not alter the final result.  588 F. Supp. 2d 1132, 1186 (C.D. Cal. 2008).  And, in *In re Faro Techs. Sec. Litig.*, plaintiff provided specific facts demonstrating that selling expenses had increased, including doubled employee headcount and predictable commissions.  534 F. Supp. 2d 1248, 1260 (M.D. Fla. 2007).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

5

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

does not allege that any "closed" accounts should have been accounted for differently, or that any such closed accounts were material to HyreCar's financial statements. *Compare* Mot. at 14-15 *with* Opp. at 15-16.

Next, Plaintiff tries to create an actionable omission by arguing that HyreCar improperly allowed an unspecified number of "high-risk" drivers on its platform to bolster revenues. Opp. at 8, 15-16.[5] But none of the challenged statements concerns revenues or the qualifications of drivers, and there are no alleged facts tying these drivers to the reserve estimate. Neither of these theories indicates any material falsity with respect to HyreCar's reserve estimate.

### 2. HyreCar Had No Duty to Disclose the Granular Details of the Ownership of Its Adjuster

Plaintiff also repeatedly claims that statements that HyreCar relied on "third-party" data to estimate its insurance reserves were misleading because Genoteq was not a third party and suggests HyreCar had a duty to disclose the purported conflict. Opp. at 11, 12. To be clear, Plaintiff does not claim that HyreCar did not rely on data from Genoteq or another third-party adjuster. Mot. at 16. Plaintiff's only argument is that Genoteq was not a third party because it was created by David Haley, who also owned HyreCar's former broker, ABI. Opp. at 11, 12.[6] But Plaintiff concedes that HyreCar has no ownership interest in either ABI or Genoteq, and, therefore, Genoteq is a "third party." AC ¶ 37. Moreover, Plaintiff must also concede that HyreCar replaced ABI on June 15, 2020, and was no longer using ABI as its broker at the time of the challenged statements. AC ¶ 113. That

---

[5] Plaintiff also misleadingly suggests that drivers were "'unlocked' by Defendants," referencing only "Furnari," but CW4's attributed that conduct to Michael Furnari—not Joe—who is not a Defendant. Opp. at 8-9, 19; AC ¶¶ 96-97, 109, 198.

[6] Plaintiff tries to muddy the waters and establish a conflict by pointing to a "joint venture" HyreCar announced with ABI in 2018 to form an "insurance captive." Opp. at 12; AC ¶ 34. But Plaintiff provides no factual allegation that this "joint venture" was Genoteq, and its own allegations that Genoteq was owned by David Haley contradict any suggestion otherwise. AC ¶¶ 40, 42, 124.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

6

fact, combined with Plaintiff's allegation that HyreCar paid Genoteq $50 for each claim processed (AC ¶ 8), undermines any plausible inference that it was not a third party and any notion that it was incentivized to delay processing claims.[7] None of the authority Plaintiff cites on this issue is on point. Opp. at 16. In each case, the defendant made a positive statement that was contradicted by facts known at the time, or received later, triggering a duty to correct. *See, e.g., LifeLock*, 780 F. App'x at 483 (statement "tout[ing]" "'real-time' alerts" contradicted by allegations that 70% of alerts were sent "more than one week late").[8]

### 3. Statements Regarding Expectations and Opportunities Are Protected Forward-Looking Statements

Finally, Plaintiff's circular arguments to challenge HyreCar's statements about what the Company "expect[ed]" and what "should" happen in the future as a result of "pricing enhancements" fail to overcome the Reform Act's safe harbor for forward-looking statements. *See* Opp. at 16-17. Defendants' Motion clearly detailed HyreCar's specific risk disclosures and explained why the safe harbor applies, and Plaintiff does not identify any "current or past facts" embedded in these forward-looking statements that would render them misleading. *Compare* Opp. at 16-17 *with* Mot. at 18-19 and Ex. 3 at 11-15, 32.[9]

---

[7] Plaintiff repeatedly mischaracterizes the timing of the end of the ABI relationship, placing it "a month" after the "May 2021 transition from Genoteq to Sedgwick," even though Plaintiff correctly copied the date from HyreCar's disclosures—June 15, 2020. AC ¶¶ 112-13; Opp. at 9, 11, 22. Based on this fundamental miss, Plaintiff challenges 2019 statements about ABI that it claims were incorporated by reference into statements made during the Class Period. AC ¶ 117-18. But, any investor would be aware that as of June 2020 HyreCar was no longer using ABI. Plaintiff's challenge therefore fails.

[8] *See also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018) (defendants had a duty to disclose later trial results undermining initial results "tout[ed]" to the market), *cert. denied sub nom. Hagan v. Khoja*, 139 S. Ct. 2615 (2019); *Berson v. Applied Signal Tech.*, 527 F.3d 982, 987 (9th Cir. 2008) (statement touting "backlog" in contracts was contradicted by knowledge that backlog included contracts where defendants had "stopped work" and contract risked being cancelled).

[9] Plaintiff cannot defend its unsupported challenge to HyreCar's reported daily rentals by asking the court to credit CW4, who left the HyreCar years before that statement was

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

7

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

## B.    Plaintiff Fails to Plead a Strong Inference of Scienter

Plaintiff's manufactured theory of fraud defies logic at every turn and relies on blatant mischaracterizations of its own allegations and incompetent CW statements. This is not a "strong inference" of scienter that is at least as "cogent and compelling" as any innocent inference. *See* Mot. at 19 (quoting *Metzler*, 540 F.3d at 1061). None of Plaintiff's allegations describes "specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Metzler*, 540 F.3d at 1066 (citations omitted).[10] Plaintiff has no legitimate response to its failure to plead that "Defendants knew (or at least suspected)" that pending claims were not properly accounted for in its reserves or expenses. *See In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1046 (N.D. Cal. 2009) (outlining specific facts that could have been pled that undermined accounting determinations). Indeed, Plaintiff has failed to allege any particularized facts specifying what claims were or were not included in HyreCar's reported reserves or, that Defendants knew any facts that undermined their statements.

### 1.    Plaintiff's Confidential Witness Statements Are Insufficient

Plaintiff's opposition does nothing to establish the competence of their CWs. *Compare* Mot. at 21-22 *with* Opp. at 19. Plaintiff has no response to the fact that not one of the CWs claims to have had "any direct contact" with Furnari or Brogi, much less knowledge regarding the estimation of reserves or even involvement in claims processing. Mot. at 21; *Flex*, 2021 WL 6101391 at *1 (rejecting CWs "who had no routine interaction with the [] project nor any firsthand knowledge of facts contradicting [] executives' public statements"). Instead, Plaintiff mashes together

---

made. Opp. at 17 n. 6. "To be credited as reliable, a witness must be in a position to personally know the information alleged." *Flex Ltd.*, 2021 WL 6101391 at *1. No facts contradict HyreCar's statement that it had 4000 daily rentals. Mot. at n. 9.

[10] Contrary to Plaintiff's peculiar assertion (Opp. at 17 n.7), Defendants properly cited the standard for scienter (Mot. at 19-21), and demonstrated Plaintiff failed to meet its burden.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

8

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

uncorroborated CW quotes that establish little more than the existence of a meeting where HyreCar would approve claims for payment.  Opp. at 5-7, 19.  At most, CW4—whose employment at Genoteq ended in 2018 and who did not attend those approval meetings—claims the "purpose 'was to delay processing claims'" without providing any basis for that conjecture.  Opp. at 5. Plaintiff concedes by its silence that none of these CWs are able to tie any purported delays in processing claims to any understatement of expenses or reserves (*Compare* Mot. at 21-22 *with Opp*. at 19) and, therefore, fails to provide "specific allegations about management's exposure to factual information" needed for a strong inference of scienter.  *See Zucco Partners, LLC v. Digimarc Corp.,* 552 F.3d 981, 1000 (9th Cir. 2009).[11]

### 2.    Plaintiff's Stock Sales and Brogi's Resignation Do Not Support an Inference of Scienter

Unable to allege with requisite particularity that Defendants knew any facts that undermined the truthfulness of their public statements, Plaintiff seeks to rely solely on stock sales and the retirement of HyreCar's CFO in June 2021 to plead scienter.  These are not sufficient to raise a strong inference of scienter.  "Stock sales alone cannot create a strong inference of scienter."  *See Wenger v. Lumisys, Inc*., 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998).  Plaintiff claims "the magnitude of the sales relative to Defendants' salaries support [sic] scienter."  Opp. at 20.  But Plaintiff ignores the fact that even after the sales Defendants continued to remain heavily invested in the future success of HyreCar through ownership in stock, and their salaries were inordinately low for public company executives—around $200,000 for 2019 and 2020—because a majority of their compensation was in

---

[11] The "core operations doctrine" (Opp. at 23) is ineffective to bridge that gap. *See* Mot. at 22-23.  Plaintiff also erroneously suggests that the small size of the company alone bolsters a strong inference of scienter.  Where courts have considered the small size of a company, it was as part of an analysis where the complaint contained specific factual allegations that defendants knowingly participated in fraud.  *See Curry v. Hansen Med., Inc*., 2012 WL 3242447, at *11 (N.D. Cal. Aug. 10, 2012); *Backe v. Novatel Wireless, Inc*., 642 F. Supp. 2d 1169, 1183-86 (S.D. Cal. 2009).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

9

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

equity.  Mot. at 24 n.15; Ex. 2, ECF. No. 67-4 at 100.[12]  "[I]t would be more reasonable to infer that his stock sales during the class period were simply in the normal, responsible course undertaken by any executive who receives stock as part of their compensation packages."  *See Iron Workers Loc. No. 25 Pension Fund v. Oshkosh Corp.*, 2010 WL 1287058, at *20 (E.D. Wis. Mar. 30, 2010); *see also* Mot. at 23-24.[13]

Plaintiff also argues that Furnari and Brogi each selling a little more than one-third of their total equity holdings in HyreCar (Mot. at 23-24)[14] is nonetheless suspicious based on cases where courts found sales of lower percentages of stock holdings supported a strong inference of scienter.  Opp. at 20.  But Plaintiff fails to distinguish the more compelling authority cited by Defendants.  Mot. at 23-24.  And, in each of Plaintiff's cases, the courts found that plaintiffs pled specific facts in additional to stock sales to create a strong inference of scienter, such as knowledge of specific facts that contradicted their public statements.[15]  In contrast,

[12] While Plaintiff objects to judicial notice of Defendants' historic compensation (ECF 71), Plaintiff specifically references the compensation and argues it supports an inference of scienter.  Opp. at 20.  The Court is not required to credit Plaintiff's conclusory allegations of "suspicious" stock sales that are contradicted by their compensation.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[13] Plaintiff also attempts to distinguish *Metzler* on the grounds that sales in that case were pursuant to 10b5-1 plans.  Opp. at 22 n.8.  But, here Joseph and Michael Furnari sold stock pursuant to 10b5-1 plans.  RJN Exs. 16-17, ECF Nos. 67-18, 67-19.

[14] While Furnari and Brogi sold approximately 43% and 36%, respectively, of their common stock holdings at the time, Plaintiff does not dispute that considering total equity holdings, Furnari sold only 34.8%.  Mot. at 24 n.14; Ex. 2, ECF No. 67-4 at 98.

[15] *See In Re Intuitive Surgical Sec. Litig.*, 2017 WL 4355072, at *4 (N.D. Cal. Sept. 29, 2017) (allegations defendants received specific updates at internal meetings and in communications with the FDA that contradicted their reported trial results); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *11-13 (C.D. Cal. July 1, 2008) (allegations the defendants "played an active role in monitoring and maximizing . . . revenues," had knowledge of incomplete transactions, and terminated auditor after it notified them of deficiencies in internal controls); *In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1153-54, 1169 (C.D. Cal. 2003) (allegations that defendants improperly pulled revenue from future quarters to meet financial estimates, company's

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

10

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

Furnari and Brogi's sales are insufficient to support a strong inference of scienter.

Second, Plaintiff's argument that Brogi's retirement supports scienter is based on a complete misstatement of undisputed facts:  Plaintiff claims that Brogi's retirement came "less than two weeks after HyreCar replaced ABI" (Opp. at 22), when, in reality, Brogi's retirement was announced on June 23, 2021, and ***HyreCar replaced ABI more than a year earlier, on June 15, 2020***.  AC ¶¶ 113, 210.  HyreCar also first announced that it was replacing Genoteq in March 2021.  Ex. 8, ECF No. 67-10 at 269.  Therefore, Plaintiff has not, as it must, set forth specific facts that the circumstances of the retirement were suspicious or retirements were so numerous to raise an inference of scienter.  *See Zucco*, 552 F.3d at 1001-02 (finding four resignations, including a CFO's resignation, "not so numerous or suspicious as to raise such an inference" and noting that "a plaintiff must allege sufficient information to differentiate between a suspicious change in personnel and a benign one").  Plaintiff does not dispute that Mr. Brogi's retirement after two years at HyreCar is consistent with his previous pattern of employment at previous growth companies.  *Compare* Mot. at 24-25 *with* Opp. at 22-23.  While Plaintiff suggests its own opinion that age 56 is somehow too early to retire, he alleges no facts to support this.  Opp. at 22.  Plaintiff cannot allege the requisite facts that Mr. Brogi's departure was the result of any wrongdoing.

**3.     The More Cogent and Compelling Inference Negates Scienter**

When viewing the totality of the circumstances, Plaintiff's fraud theory is riddled with contradictions and mischaracterizations and defies logic.  Plaintiff's own authority demonstrates that its allegations of scienter against each individual defendant are "not plausible" and therefore insufficient.  *See Eclectic Properties E., LLC v. Marcus & Millichap* Co., 751 F.3d 990, 999 & n.8 (9th Cir. 2014) (a

---

outside auditors frequently challenged its financial metrics, and defendants were aware customers frequently refused to pay for defective software).  Plaintiff's citation to *In re Omnivision Techs., Inc.* is also misleading as two other defendants sold 100% of their shares.  2005 WL 1867717, at *4 (N.D. Cal. July 29, 2005).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

11

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS

mere "possible" basis of intent to defraud is insufficient).  Rather than the "tie" that Plaintiff asks the Court to find to save its case (Opp. at 18), Plaintiff's claims should be called "out" by a significant margin.  The far stronger inference here is that HyreCar, in conjunction with its outside auditors, recorded expenses and estimated reserves, a complex process requiring significant judgment based on the information available, believing them to be accurate (and there are no facts sufficiently pled that they were not accurate).[16]  The facts pled are insufficient to indicate any Defendant either intended to defraud or was deliberately reckless in making any materially false statement or omission.  The fact that an innovative company disclosed increased insurance reserves and expenses in the second quarter of 2021, following an upgrade of its insurance providers, shows only an inference of a growing pain as it gained experience.  Plaintiff's reflexive lawsuit fails to meet its burden to show a strong inference of scienter.  *See Zucco,* 552 F. 3d at 1007.

## III.  CONCLUSION

For the reasons set forth above and in Defendants' Motion, Plaintiff has failed to state a claim under Section 10(b) and, accordingly 20(a), of the Exchange Act.  Because Plaintiff has not identified any specific basis upon which it could cure the defects, no further amendment should be permitted.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1039 (9th Cir. 2002).

Dated:  January 18, 2022

LATHAM & WATKINS LLP
Joshua G. Hamilton

By: */s/ Joshua G. Hamilton*
Joshua G. Hamilton
*Attorneys for Defendants HyreCar Inc.,
Joseph Furnari and Robert Scott Brogi*

---

[16] Plaintiff cites cases for the unremarkable proposition that a clean audit opinion "does not, standing alone, negate any otherwise compelling inference of scienter."  Opp. at 24 n. 10.  But the clean audit opinion here further supports the inference against scienter. Mot. at 12-13.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

12

CASE NO. 2:21-cv-06918-PA-JC
REPLY IN SUPPORT OF
MOTION TO DISMISS