UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | | Date | February 16, 2022 |
|---|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Kamilla Sali-Suleyman | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**      IN CHAMBERS - COURT ORDER

Before the Court is a Motion to Dismiss filed by defendants HyreCar Inc. ("HyreCar"), Joseph Furnari ("Furnari"), and Robert Scott Brogi ("Brogi") (collectively "Defendants") (Docket No. 67).  Defendants challenge the sufficiency of the First Amended Complaint ("1st AC").  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.  The hearing calendared for January 31, 2022, is vacated, and the matter taken off calendar.

## I.      Factual and Procedural Background

Plaintiff Ivan Baron filed the original Complaint in this action alleging securities fraud claims against Defendants.  Pursuant to the procedures established by the Private Securities Litigation Reform Act ("PSLRA"), the Court eventually appointed Turton Inc. ("Plaintiff") as lead plaintiff and Plaintiff filed the 1st AC.  The 1st AC is brought on behalf of those investors who purchased HyreCar securities between February 3, 2021 and August 17, 2021 (the "Class Period") and asserts claims for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Securities and Exchange Commission ("SEC") Rule 10b-5.

HyreCar operates a web-based marketplace that allows car and fleet owners to rent their cars to Uber, Lyft and other gig economy drivers.  (1st AC ¶ 28.)  Furnari became HyreCar's Chief Executive Officer ("CEO") in January 2017 and served in that position throughout the Class Period.  (Id. ¶ 26.)  Brogi served as HyreCar's Chief Financial Officer ("CFO") from September 2018 to July 2021 when, according to the 1st AC, he "unexpectedly 'retired' at age 56."  (Id. ¶ 27.)

HyreCar's platform connects gig drivers with automobiles while also providing insurance and tactical support.  (Id. ¶ 28.)  HyreCar generates revenue by taking a fee out of each rental processed on HyreCar's platform. (Id. ¶ 30.)  Drivers pay a daily rental rate set by the car owner,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | Date | February 16, 2022 |
|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | |

plus a 10% HyreCar Driver Fee as well as direct daily insurance costs.  (Id.)  Owners receive their daily rental rate minus a 15%-25% HyreCar Owner Fee.  (Id.)

HyreCar uses self-insurance for a portion of its claims.  (Id. ¶ 31.)  When a vehicle on its platform gets into an accident, HyreCar uses a claims adjuster and administrator (a "TPA") to both review the claim and process it.  (Id.)  To process payments for claims the TPA concludes are covered, HyreCar, as the self-insuring entity (with supplemental insurance from a reinsurance provider), will put funds into an account, and then the TPA will distribute those funds to the claimant.  (Id.)  Until June 15, 2020, HyreCar used ABI as its insurance broker.  (Id. ¶ 113.)  ABI was owned by David Haley ("Haley") who served on HyreCar's Strategic Advisory Board, was a HyreCar investor, entered into a joint venture with HyreCar, and also owned Genoteq, which served as one of HyreCar's TPAs from the middle of 2019 until the beginning of March 2021.  (Id. ¶¶ 8 & 62.)  According to Defendants, but not alleged in the 1st AC, Genoteq acted as the TPA only for physical damage claims.  HyreCar used a separate TPA for liability claims.  (See Request for Judicial Notice, Ex. 8 (During the Q4 2020 earnings call, HyreCar explained that it had "a selection process for a new third-party administrator so that we could bring both the PD [physical damage] claims and the liability claims together so that you are having a really efficient determination of responsibility").)

On August 11, 2021, HyreCar reported quarterly results for the period ended June 30, 2021 ("Q2 2021"), including net losses of $9.3 million compared to losses of $3.8 million in the same period the prior year.  (1st AC ¶ 15.)  Along with the release, HyreCar filed with the SEC a Form 10-Q that disclosed that the Company had incurred higher costs of revenue during the quarter mainly due to significantly higher insurance claims incidence – including claims before March 31, 2021 "in excess of the reserves."  (Id.)  The 10-Q also disclosed:  "The remainder of the cost increase was primarily driven up by additional insurance claims of $2.8 million of which approximately $1.2 million was attributed to one-off new developments on claims and incidental payments incurred prior to March 31, 2021 in excess of the reserves and accruals."  (Id.)  Following HyreCar's disclosure, its stock price fell nearly 50% in a single day to close at $9.85 per share on August 11, 2021.  (Id. ¶ 16.)  HyreCar shares continued to fall for several trading days on this news including by $0.03 per share on August 12, 2021, $0.03 per share on August 13, 2021, $0.21 per share on August 16, 2021, and $0.38 per share on August 17, 2021.  (Id. ¶ 17.)  By the close of trading on August 17, 2021, HyreCar shares closed at $9.20 per share, or 52% lower than its close of $19.12 on August 10, 2021.  (Id. ¶ 18.)

Prior to the decline in HyreCar's stock price, Furnari sold 300,000 shares on July 21, 2021 through July 23, 2021.  (Id. ¶ 205.)  Furnari's brother, who serves as HyreCar's Chief Business Development Officer, sold 299,900 shares during the same period.  (Id. ¶ 206.)  Brogi

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | | Date | February 16, 2022 |
|---|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | | |

sold 72,329 shares of HyreCar's stock on May 20, 2021 and May 24, 2021. (Id. ¶ 207.) Other insiders, including the Chair of HyreCar's Board of Director and the company's Chief Operating Officer, sold shares in May and June. (Id. ¶¶ 208 & 209.) Prior to these transactions, none of these individuals had sold shares in the company since HyreCar's IPO in June 2018. (Id. ¶¶ 205-09.)

## II.     Request for Judicial Notice

Defendants request that the Court take judicial notice of several of HyreCar's SEC filings, press releases, and earnings calls, which are cited in the 1st AC. (See Docket No. 67 ("RJN").) In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may take judicial notice of matters referred to in the complaint, but not attached, where the document's authenticity is not contested and the complaint necessarily relies on them. Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir. 2001). A court may also judicially notice matters of public record. Id. at 789. Courts routinely find SEC filings, as well as press releases, earnings calls, and other information made available to the market to be matters of public record, regardless of whether it was referenced in the complaint. See Dreiling v. Am. Express Co., 458 F.3d 942, 946 n.2 (9th Cir. 2006); Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18 (9th Cir. 1999); In re Hansen Nat. Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1149 (C.D. Cal. 2007). Plaintiff objects only to Exhibit 2 to the Request for Judicial Notice because Defendants seek to have the Court take judicial notice of the truth of facts concerning Brogi's work history in an effort to explain that Brogi's retirement from HyreCar was not suspicious as alleged in the 1st AC. Plaintiff also objects to Defendants request that the Court take judicial notice of two charts prepared by Defendants' counsel that summarize the 1st AC's allegations and trace the allegations supported by statements of confidential witnesses. The Court declines to take judicial notice of the facts asserted in Exhibit 2 concerning Brogi's work history and the charts prepared by Defendants' counsel. The Court otherwise grants the Request for Judicial Notice.

## III.    Legal Standard

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice." Fed. R. Civ. P. 12(b)(6), 8(e). The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | Date | February 16, 2022 |
|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | |

However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." Twombly, 550 U.S. at 561, 127 S. Ct. at 1968 (internal quotation omitted). Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]." Id. at 556, 127 S. Ct. at 1965. For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 555, 127 S. Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action") (alteration in original)); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1964-65 (internal quotations omitted). In construing the Twombly standard, the Supreme Court has advised that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679, 664 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009).

In a private action for securities fraud under Section 10(b), a complaint must satisfy heightened pleading requirements. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). First, the complaint must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). In addition, the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u-4, requires "the complaint [to] specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "To adequately plead scienter, the complaint must . . . 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" 15 U.S.C. § 78u-4(b)(2). "The pleadings must state precisely the time, place, and nature of the misleading statement, misrepresentations, and specific acts of fraud." Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994). "Congress enacted the PSLRA to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | | Date | February 16, 2022 |
|---|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | | |

deter opportunistic private plaintiffs from filing abusive securities fraud claims, in part, by raising the pleading standards for private securities fraud plaintiffs." In re Silicon Graphics Sec. Litig., 183 F.3d 970, 973 (9th Cir. 1999) (citing H.R. REP. CONF. NO. 104-369, at 32–41 (1995); 15 U.S.C. § 78u-4(b)(1)–(2) (1997)).  A court must dismiss a private securities fraud action seeking money damages if the complaint fails to meet the pleading requirements.  See 15 U.S.C. § 78u-4(b)(3)(A).

## IV.    ANALYSIS

### A.    Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act makes it unlawful "for any person . . . to use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe[.]"  Rule 10b-5, 17 C.F.R. § 240.10b-5, defines three categories of manipulative or deceptive devices that constitute a violation of Section 10(b):

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

A claim under Rule 10b-5 must allege six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005).  Defendants argue that the 1st AC fails to allege the first two elements with the requisite particularity.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | | Date | February 16, 2022 |
|---|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | | |

1.      **Falsity**

For a statement to be actionable, the allegations must support both falsity and materiality of the statement at the time the statement was made.  See Basic Inc. v. Levinson, 485 U.S. 224, 238, 108 S. Ct. 978, 99 L. Ed. 2d 194 (1988); Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009), as amended (Feb. 10, 2009).  A plaintiff must specify each statement alleged to be misleading and why the statement was false or misleading.  See 15 U.S.C. § 78u-4(b)(1); In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1548–49 (9th Cir. 1994) (en banc), superseded by statute on other grounds ("[T]he plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading.").  "[I]t is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood."  In re Read-Rite Corp. Sec. Litig., 335 F.3d 843, 846 (9th Cir. 2003) (internal quotation marks and citations omitted).  "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard."  Metzler Inv. GMBH v. Corinthian Colls., Inc., 540 F.3d 1049, 1070 (9th Cir. 2008).

The Ninth Circuit applies the "objective standard of a 'reasonable investor' to determine whether a statement is misleading."  In re Alphabet Inc. Sec. Litig., 1 F.4th 687, 699 (9th Cir. 2021).  Furthermore, "it bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information.  Disclosure is required . . . only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading."  Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 44, 131 S. Ct. 1309, 179 L. Ed. 2d 398 (2011) (internal quotation marks and ellipses omitted); 17 C.F.R. § 240.10b-5 (An omission is actionable only where disclosure of a "material fact [is] necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.").  "A misleading omission is material if 'there is 'a substantial likelihood that [it] would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available' for the purpose of decisionmaking by stockholders concerning their investments.''"  In re Alphabet Inc. Sec. Litig., 1 F.4th at 699-700 (quoting Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1274 (9th Cir. 2017)).

The 1st AC's alleges that HyreCar, in its SEC filings and investor calls, understated its insurance expenses or concealed a material risk that its insurance reserves (reflecting an estimate of liability for unpaid claims) were understated.  To support these allegations, Plaintiff relies, in part, on allegations supplied by confidential witnesses, and other information about the claims handling and adjustment process at Genoteq and HyreCar, as well as allegations about the risks posed by some drivers using HyreCar's platform.  Specifically, according to the 1st AC's

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | | Date | February 16, 2022 |
|---|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | | |

allegations, HyreCar and Genoteq were very slow to pay some claims and some "high-risk" drivers were allowed to continue to rent cars through HyreCar at the risk of increased insurance claims in order to increase the number of cars rented through HyreCar.

With respect to the 1st AC's allegations that HyreCar and Genoteq were slow to pay claims, the 1st AC appears to conflate the pace at which claims were paid with the accuracy of the insurance reserves periodically set and disclosed by HyreCar.  But the speed with which claims were paid is not the same as setting reserves for submitted claims and anticipating the number and value of future claims.  Nothing alleged in the 1st AC adequately links these two distinct concepts or otherwise attempts to quantify the magnitude by which HyreCar and its executives might have knowingly misstated the insurance reserves or the risks posed by some unknown portion of the pool of drivers.  For instance, contrary to the 1st AC's theory of intentionally understating its insurance reserves, HyreCar may have been slow to pay insurance claims because it desired to hold on to its cash reserves, while simultaneously estimating its insurance reserves as accurately as possible.  HyreCar could have later decided to speed up its payment of insurance claims when it determined that delaying payments angered its customers and slowed its growth even if some of those claims were otherwise questionable or the responsibility of another insurer.  None of the facts alleged in the 1st AC make Plaintiff's theory more likely than these innocent explanations.  See In re Century Aluminum Co. Sec. Litig., 729 F.3d 1104, 1108 (9th Cir. 2013) ("When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of Iqbal and Twombly." (quoting Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949)).

Moreover, HyreCar repeatedly disclosed both the difficulty it faced in setting its insurance reserves and, as ultimately happened, the risk that actual claims might exceed the insurance reserves.  For instance, On June 15, 2020, prior to the Class Period, HyreCar identified insurance reserves as one of "the Company's most significant estimates."  (RJN, Ex. 3 at F-30.) HyreCar explained that its insurance reserves were estimated based on "its limited operating history," various "assumptions" and "third party claims adjuster data provided on existing claims;" and the estimation process was "inherently difficult, subjective, and speculative."  (Id. at 8, 15, 32.)  Although the 1st AC alleges that such statements contained material misstatements because Genoteq was not a "true" third party because of the financial ties between its owner and HyreCar, the 1st AC, fails to acknowledge that HyreCar used a separate TPA for liability claims. Even accepting the questionable semantic distinction the 1st AC attempts to make, by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | Date | February 16, 2022 |
|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | |

misleadingly focusing only on Genoteq's role, and failing to provide any well-pleaded facts concerning the magnitude of the property damage claims handled by Genoteq compared to the liability claims handled by the other TPA, the 1st AC fails to allege plausibly allege the materiality of any such misstatement. HyreCar also disclosed the inherent risk in estimating insurance reserves, including that "liability insurance claims may take several years to completely settle," "claims may emerge in future periods for events that occurred in a prior period that differed from expectations," and "actual losses may exceed our insurance reserves." (Id. at 15, 32.) HyreCar warned that it may need to "adjust our insurance reserves as our experience develops or new information is learned," or "increase such reserves" if "our estimated insurance reserves are inadequate." (Id. at 10, 15.)

For these reasons, and in light of these disclosures for the forward-looking statements on which the 1st AC bases its claims, as well as for most of the reasons explained in Defendants' Motion to Dismiss, none of the 1st AC's theories concerning allegedly material misrepresentations or omissions, whether viewed individually or collectively, alleges sufficient well-pleaded facts to satisfy the PSLRA's pleading standard. See Brody v. Transitional Hospitals Corp., 280 F.3d 997, 1006 (9th Cir. 2002) ("To be actionable under the securities laws, an omission must be misleading; in other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."); see also In re Quality Sys. Inc., Sec. Littig., 865 F3d 1130, 1141 (9th Cir. 2017) ("The PSLRA exempts from liability any forward-looking statement that is 'identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement,' or that the plaintiff fails to prove was made 'with actual knowledge . . . that the statement was false or misleading.'") (quoting 15 U.S.C. § 78u-5(c)(1)).

For these reasons, Plaintiff has failed to adequately allege any actionable misrepresentation or omission.

## 2. **Scienter**

Defendants additionally argue that even if the 1st AC had adequately pleaded actionable misrepresentations or omissions, Plaintiff fail to bear its burden of adequately pleading scienter. To survive a motion to dismiss, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); In re Cutera Sec. Litig., 610 F.3d 1103, 1112 (9th Cir. 2010). Specifically, scienter requires an intent to deceive, manipulate, or defraud. Tellabs, 551 U.S. at 319, 127 S. Ct. 2499, 168 L. Ed. 2d 179. The standard is not whether a reasonable person can draw an inference that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | | Date | February 16, 2022 |
|---|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | | |

the defendant acted with scienter.  Id. at 317, 127 S. Ct. 2499, 168 L. Ed. 2d 179.  "To adequately demonstrate that the 'defendant acted with the required state of mind,' a complaint must 'allege that the defendant[] made false or misleading statements either intentionally or with deliberate recklessness." Zucco, 552 F.3d at 991 (internal citation omitted).  "[F]acts showing mere recklessness or a motive to commit fraud and opportunity to do so . . . are not sufficient to establish a strong inference of deliberate recklessness." Silicon Graphics, 183 F.3d at 974.  "[T]he plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Zucco, 552 F.3d at 991 (internal quotation marks and citation omitted).  The Supreme Court has elaborated that to qualify as "strong," "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, 551 U.S. at 313, 127 S. Ct. 2499, 168 L. Ed. 2d 179.  "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco, 552 F.3d at 991.  Courts may initially assess allegations individually, and then consider whether the allegations collectively meet the standard for pleading scienter.  See Police Ret. Sys. v. Intuitive Surgical, Inc., 759 F.3d 1051, 1058 (9th Cir. 2014); see, e.g., id. at 1062-64.

Because the 1st AC does not sufficiently allege falsity, the Court declines, at this stage, to address the sufficiency of the 1st AC's scienter allegations and whether the 1st AC's allegations raise a strong inference of scienter.

### B. <u>Section 20(a)</u>

To state a claim under Section 20(a) of the Securities Exchange Act, a plaintiff must allege (1) a primary violation of federal securities law and (2) that the defendant exercised actual power or control over the primary violator.  Howard v. Everex Sys., Inc., 228 F.3d 1057, 1065 (9th Cir. 2000).  Because Plaintiff has failed to state a claim for a primary violation of the securities law, the 1st AC's Section 20(a) claim also fails.

### <u>Conclusion</u>

For all the foregoing reasons, the Court grants Defendants' Motion to Dismiss the 1st AC. The Court dismisses the 1st AC with leave to amend.  Plaintiff's Second Amended Complaint, if any, shall by filed by no later than March 21, 2022.  Failure to file the Second Amended

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-6918 PA (JCx) | Date | February 16, 2022 |
|---|---|---|---|
| Title | Ivan Baron v. HyreCar Inc., et al. | | |

Complaint by that date may, without further warning, result in the dismissal of this action with prejudice.

IT IS SO ORDERED.