LATHAM & WATKINS LLP
  Joshua G. Hamilton, Esq. (199610)
    *Joshua.Hamilton@lw.com*
  Regina Wang, Esq. (326262)
    *Regina.Wang@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: 213.653.5500
Facsimile: 424.653.5501

  Meryn C. N. Grant, Esq. (291315)
    *Meryn.Grant@lw.com*
355 S Grand Ave., Suite 100
Los Angeles, CA 90071
Telephone: 213.485.1234
Facsimile: 213.891.8763

*Attorneys for Defendants HyreCar Inc.,*
*Joseph Furnari and Robert Scott Brogi*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>Defendants. | Case No. 2:21-cv-06918-FWS-JC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT BY DEFENDANTS HYRECAR INC., JOSEPH FURNARI AND ROBERT SCOTT BROGI**<br><br>Hearing Date:  May 9, 2022<br>Time:  1:30 p.m.<br>Ctrm:  10D<br>Judge:  Hon. Fred W. Slaughter<br><br>[Request for Judicial Notice and Opposition to Plaintiff's Request for Judicial Notice and supporting Declaration filed concurrently herewith] |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

# TABLE OF CONTENTS

**Page**

I.    Introduction .................................................................................................. 1

II.   Plaintiff Cannot Plead Falsity as Required by the Reform Act ...................... 4

    A.    Plaintiff Has Not Pled that Reserves or Financial Figures Were Materially False or Misleading ........................................................... 5

        1.    Plaintiff Has Not Pled That HyreCar's Q1 2021 Reserves Were Subjectively or Objectively False .................................... 6

        2.    Plaintiff Has Not Pled an Actionable Omission ...................... 13

        3.    Statements Regarding Setting of Reserves and Associated Risk Factors Were Not False or Misleading ......... 14

        4.    Forward Looking Statements Were Not False or Misleading ................................................................................ 16

III.  Plaintiff Fails to Plead a Strong Inference of Scienter ................................. 17

    A.    Plaintiff's Case Law on Real-Time Knowledge Cannot Save Its "Fraud by Hindsight" Theory of Scienter ............................................ 17

    B.    Plaintiff's Confidential Witness Statements Remain Insufficient ...... 19

    C.    Allegations of Executive Stock Sales Do Not Support an Inference of Scienter ....................................................................................... 21

    D.    Brogi's Retirement Does Not Support Any Inference of Scienter .............................................................................................. 22

    E.    The Balance of Inferences Supports a Finding of No Scienter .......... 23

IV.   Plaintiff Cannot Plead a Claim Under Section 20(a) .................................... 23

V.    Conclusion ................................................................................................... 24

i

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Adecco S.A. Sec. Litig.*,
256 F. App'x 74 (9th Cir. 2007) ...................................................................................5

*Alaska Elec. Pension Fund v. Adecco S.A.*,
434 F. Supp. 2d 815 (S.D. Cal. 2006), *aff'd sub nom*......................................5, 8

*Backe v. Novatel Wireless, Inc.*,
642 F. Supp. 2d 1169 (S.D. Cal. 2009) ............................................................20

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) .....................................................21

*Bielousov v. GoPro, Inc.*,
2017 WL 2115132 (N.D. Cal. May 15, 2017) ...................................................22

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
856 F.3d 605 (9th Cir. 2017) ....................................................................*passim*

*In re CRM Holdings, Ltd. Sec. Litig.*,
2012 WL 1646888 (S.D.N.Y. May 10, 2012)..................................................5, 7

*Curry v. Hansen Med., Inc.*,
2012 WL 3242447 (N.D. Cal. Aug. 10, 2012)..................................................20

*Cutler v. Kirchner*,
696 F. App'x 809 (9th Cir. 2017)....................................................................19

*Fait v. Regions Fin. Corp.*,
655 F.3d 105 (2d Cir. 2011) ............................................................................5

*In re Genworth Fin. Inc. Sec. Litig.*,
103 F. Supp. 3d 759 (E.D. Va. 2015)....................................................5, 10, 17

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 1994) ............................................................................7

*Golub v. Gigamon Inc.*,
847 F. App'x 368 (9th Cir. 2021) ....................................................................17

ii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000)......................................................................................23

*In re ICN Pharms., Inc., Sec. Litig.*,
299 F. Supp. 2d 1055 (C.D. Cal. 2004).........................................................................11

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008).......................................................................................24

*Kuriakose v. Fed. Home Loan Mortg. Corp.*,
897 F. Supp. 2d 168 (S.D.N.Y. 2012)...........................................................................13

*Lipton v. Pathogenesis Corp.*,
284 F.3d 1027 (9th Cir. 2002).......................................................................................20

*In re Loewen Group Inc. Sec. Litig.*,
2004 WL 1853137 (E.D. Pa. Aug. 18, 2004)..................................................................8

*Luna v. Marvell Tech. Grp. Ltd.*,
2016 WL 5930655 (C.D. Cal. Oct. 12, 2016) ....................................................7, 8, 11, 23

*Malin v. XL Cap. Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007) .......................................................................8, 12

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008)................................................................................4, 20, 24

*Middlesex Ret. Sys. v. Quest Software Inc.*,
527 F. Supp. 2d 1164 (C.D. Cal. 2007).........................................................................23

*Nat'l Elevator Industry Pension Fund v. Flex. Ltd.*,
2021 WL 6101391 (9th Cir. Dec. 21, 2021) .................................................................19

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004).......................................................................................18

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
575 U.S. 175 (2015) ...............................................................................................5, 6, 13

*In re Omnivision Techs., Inc.*,
2005 WL 1867717 (N.D. Cal. July 29, 2005)................................................................21

*Patel v. Parnes*,
253 F.R.D. 531 (C.D. Cal. 2008) ..................................................................................17

iii

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    2012 WL 1868874 (N.D. Cal. May 22, 2012) .....................................................20

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017).............................................................................19

*In re Read-Rite Corp. Sec. Litig.*,
    335 F.3d 843 (9th Cir. 2003)...............................................................................17

*Rieckborn v. Jefferies LLC*,
    81 F. Supp. 3d 902 (N.D. Cal. 2015).................................................................5, 8

*Ronconi v. Larkin*,
    253 F.3d 423 n.6 (9th Cir. 2001) ..........................................................................7

*Rubke v. Capitol Bancorp, Ltd.*,
    551 F.3d 1156 (9th Cir. 2009)..............................................................................11

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016)................................................................................18

*SEC v. Jammin Java Corp.*,
    2016 WL 6595133 (C.D. Cal. July 18, 2016) .....................................................13

*In re SeeBeyond Techs. Corp. Sec. Litig.*,
    266 F. Supp. 2d 1150 (C.D. Cal. 2003)................................................................22

*Session v. PLM Lender Servs., Inc.*,
    2011 WL 6748510 (N.D. Cal. Dec. 22, 2011) .....................................................13

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) .................................................................................5

*Thor Power Tool Co. v. C.I.R.*,
    439 U.S. 522 (1979) ............................................................................................18

*Tikotzky v. Kai Data, LLC*,
    2021 WL 3924757 (C.D. Cal. June 23, 2021)......................................................22

*Wenger v. Lumisys, Inc.*,
    2 F. Supp. 2d 1231 (N.D. Cal. 1998)....................................................................21

*Weston Family Partnership LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022)..................................................................4, 7, 9, 11

iv

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

*Woolgar v. Kingstone Companies, Inc.*,
 477 F. Supp. 3d 193 (S.D.N.Y. 2020) ......................................................5, 12, 21

*In re YogaWorks, Inc. Sec. Litig.*,
 2020 WL 2549290 (C.D. Cal. Apr. 23, 2020) .................................................22

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) .................................................................19, 20

**STATUTES**

15 U.S.C.
 § 78j(b) ....................................................................................... 1, 4, 6
 § 78t(a) ............................................................................................... 1
 § 78u-4(b) ........................................................................................... 1

Fed. R. Civ. P. 9(b) .................................................................... 1, 4, 6, 24

**RULES**

17 C.F.R. § 240.10b-5 ..................................................................... 4

v

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

# I.    INTRODUCTION

Plaintiff's Opposition to Defendants' Motion to Dismiss makes clear that its theory of securities fraud in its Second Amended Complaint ("SAC") is that HyreCar "understat[ed] its reserves and expense liability," a theory Judge Percy Anderson already rejected in his detailed February 16, 2022 Order (Dkt. No. 74, "Order") dismissing all claims for violation of the Securities and Exchange Act of 1934 ("Exchange Act") in the First Amended Complaint.  The Order found that Plaintiff failed to sufficiently allege falsity under the exacting pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("Reform Act" or "PSLRA"), 15 U.S.C. §§ 78j(b), 78t(a), 78u-4(b).[1]  Plaintiff's Opposition mischaracterizes both the language and scope of the Court's Order and Defendants' arguments in their Motion to falsely claim that it cured the defects the Court and Defendants identified.  Moreover, the SAC fails again to plead a "strong inference of scienter" as required by the Reform Act.  Despite multiple opportunities, Plaintiff has again failed to plead a claim, and its claims should be dismissed with prejudice.

Failure to Plead Material False Statement or Omission

Plaintiff's theory concerning HyreCar's reserve disclosures are statements of opinion as a matter of law, which Plaintiff does not legitimately challenge in its Opposition.  This theory hinges almost entirely on HyreCar's later disclosure that it needed to adjust its insurance reserves to account for insurance claims for accidents incurred in prior periods. Opp. at 1.  Plaintiff illogically proffers that as soon as an insurance claim is submitted by a driver, HyreCar knows in "real time" that its liability is "probable" and should immediately be able to accurately estimate its losses in its reserve.  Opp. at 4-5.  Not only is this proposition

---

[1] Because the Court found Plaintiff failed to plead falsity, the first element of Section 10(b) and Rule 10b-5 of the Exchange Act, the Court did not address Defendants' arguments for failure to plead scienter.

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

unsupported by any facts and contrary to HyreCar's public disclosures, it defies common sense. Indeed, the Court specifically recognized that Plaintiff "appears to conflate the pace at which claims were paid with the accuracy of the insurance reserves periodically set and disclosed by HyreCar. But the speed with which claims were paid is not the same as setting reserves for submitted claims and anticipating the number and value of future claims. Nothing alleged in the 1st AC adequately links these two distinct concepts . . . ." Order at 7. Plaintiff doubled-down on this same flawed premise in its SAC and Opposition, without providing any facts linking the alleged delays in payment to any misstatement, and the result of dismissal should be no different here.

Plaintiff also mischaracterizes the Court's Order in representing that the only defect the Court found in the First Amended Complaint (Dkt. No. 66, "FAC") was that "Plaintiff's allegations inadequately alleged because it failed to quantify the magnitude by which HyreCar misstated its reserves, and failed to quantify the magnitude of the claims handled by Genoteq." Opp. at 1. But that is not accurate, as, in addition to Plaintiff's fundamental flaw in conflating claims reported with estimates for claims that are reflected in reserves, the Court also identified several other grounds for dismissal, including:

- "None of the facts alleged in the 1st AC make Plaintiff's theory more likely than [Defendants'] innocent explanations." Order at 7.

- "HyreCar repeatedly disclosed both the difficulty it faced in setting its insurance reserves and, as ultimately happened, the risk that actual claims might exceed the insurance reserves." *Id.*

- "Plaintiff has failed to allege the materiality of any alleged misstatement." *Id.* at 8.

- Plaintiff's claims relied on inactionable forward-looking statements. *Id*; and

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

- "[M]ost of the reasons explained in Defendants' Motion to Dismiss[.]" *Id.*

Having mischaracterized the Court's Order as requiring only quantification of the amount of reserve understatement, Plaintiff then attempts to substitute pure hindsight and its own, made-up accounting calculations. But it is obvious that all Plaintiff did was simply back-in the dollar amount of the increase in reserves that HyreCar recorded for the second quarter of 2021 and add it to the recorded reserves for the first quarter of 2021. No pled facts suggest that HyreCar knew that this later increase in reserves would be required when the statements were made, or knew any facts materially undermining its first quarter reserve estimates. Plaintiff fails to recognize that for any insurance claim, investigation is required to determine whether insurance coverage applies and for how much. For HyreCar, this investigation was even more critical because its policy only covers claims during an extremely limited period of time that a driver is using the car, and otherwise subordinates to state-mandated insurance policies provided by rideshare or delivery service applications. And, as HyreCar disclosed, reserves are estimates for liability for present and future claims and the estimation process is based on "assumptions" and the "company's limited operating history", and are "inherently difficult, subjective, and speculative."

<u>Failure to Plead a Strong Inference of Scienter</u>

Plaintiff has also not pled the requisite "strong" or "cogent and compelling" inference that Defendants made false or misleading statements either intentionally or with deliberate recklessness. Plaintiff cannot dispute that HyreCar's financial statements have never been corrected or restated by an auditor, or that HyreCar continued to receive clean audit opinions that covered the year-end for the same financial period alleged in the SAC, which was completed in March 2022, after this lawsuit was filed and publicly disclosed. None of Plaintiff's scienter allegations suggest that Defendants had a motive to commit fraud, or overcome the

3

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

more plausible innocent inference that the Q2 2021 increase in reserves was a growing pain of a Company that had experienced rapid growth and had upgraded its insurance partners to better handle its insurance claims.

Because Plaintiff's allegations are once again deficient to plead either falsity or a strong inference of scienter as required under Rule 9(b) and the Reform Act, Defendants request that the Court grant Defendants' Motion to Dismiss with prejudice.

## II. PLAINTIFF CANNOT PLEAD FALSITY AS REQUIRED BY THE REFORM ACT

"For a statement to be false or misleading" under Section 10(b) and Rule 10b-5 of the Exchange Act, it must "directly contradict what the defendant knew at that time" or "omit[ ] material information." *Weston Family Partnership LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). It is well established in this Circuit that to plead a claim under Section 10(b) of the Exchange Act, Plaintiff cannot "skirt[] dismissal by filing a complaint laden with vague allegations unaccompanied by a particularized explanation stating why the defendant's alleged statements or omissions are deceitful." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

As a threshold matter, contrary to Plaintiff's efforts to run from judicially noticed facts, nothing in Defendants' motion constitutes an improper "factual argument." Rather, these matters consist of either the actual and complete language in HyreCar's public disclosures that the Court has already taken judicial notice of (Order at 3), or matters which reflect the actual materials Plaintiff incorporated, but mischaracterized, in its SAC. Opp. at 11-13; Order at 3-4; Mot. at 10-12. Plaintiff does not, nor would it have any legal basis to, object to the materials for which HyreCar seeks judicial notice. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely

4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (citations omitted).  Plaintiff cannot allege false statements and omissions by mischaracterizing HyreCar's disclosures, and then criticize Defendants for providing the Court with HyreCar's actual statements and the context in which they were made.

### A.    Plaintiff Has Not Pled that Reserves or Financial Figures Were Materially False or Misleading

As an initial matter, Plaintiff's challenge to HyreCar's financial figures hinges on the alleged understatement of reserves.  Opp. at 1, 8-10.  Plaintiff fails to provide any legitimate dispute that these statements regarding HyreCar's insurance reserves are statements of opinion (Mot. at 16-17), and even relies on cases holding that reserves are opinions in its falsity arguments.  Opp. at 10 (citing *In re Genworth Fin. Inc. Sec. Litig.*, 103 F. Supp. 3d 759, 777 (E.D. Va. 2015); *id.* at 20 (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 194 (2015)).[2]  Therefore, under the clear precedent of the Supreme Court and Ninth Circuit, Plaintiff must plead either that the statements were subjectively

---

[2] Indeed, the weight of authority confirms that reserve estimates are statements of opinion based on the subjective nature of the assessment.  *See, e.g.*, *See also Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 222 (S.D.N.Y. 2020) (holding "loss reserves are statements of opinion" and treating challenge to income statement as challenge to underlying opinion reflected in reserves); *In re CRM Holdings, Ltd. Sec. Litig.*, 2012 WL 1646888, at *28 (S.D.N.Y. May 10, 2012) (concluding that "[r]eserves are opinions" and explaining that "[i]nsurance reserves are, by their nature, extremely conjectural, and may need adjustment as time passes and their accuracy can be tested in retrospect."); *see also Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011) (holding that "statements regarding the adequacy of loan loss reserves" are statements of opinion); *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 922 (N.D. Cal. 2015) (same); *Alaska Elec. Pension Fund v. Adecco S.A.*, 434 F. Supp. 2d 815, 823 (S.D. Cal. 2006) (same), *aff'd sub nom. In re Adecco S.A. Sec. Litig.*, 256 F. App'x 74 (9th Cir. 2007).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

false when made, or omitted material facts going to the basis for Defendants' opinions reflected in the reserve estimate. *Omnicare*, 575 U.S. at 194; *City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.,* 856 F.3d 605, 616 (9th Cir. 2017) (applying *Omnicare* to Section 10(b) claims). It has done neither.

### 1. Plaintiff Has Not Pled That HyreCar's Q1 2021 Reserves Were Subjectively or Objectively False

Plaintiff concedes it has not pled that the statements were subjectively false when made. Opp. at 17. That alone requires dismissal of its challenge to HyreCar's reserves (and by extension expenses and earnings). *Omnicare*, 575 U.S. at 186. Ignoring the requirement that it plead subjective falsity, Plaintiff spends the majority of its Opposition instead arguing that the reserves were objectively false, or arguing that the Court should ignore Defendants falsity arguments because they are "factual disputes." Neither holds water; Plaintiff has again failed to plead any material misstatement with the particularity required by Rule 9(b) and the Reform Act. Order at 6.

***First***, Plaintiff's principal response to the myriad deficiencies identified by the Order and Defendants (Mot. at 11-18) is simply that its SAC has added allegations regarding "the very amounts, to the dollar, that HyreCar's reserves were understated." Opp. at 9-10 (citing SAC ¶¶ 110, 116-18). But, Plaintiff's purported quantification of the amount the reserves were allegedly understated is based entirely on improper hindsight—specifically HyreCar's later explanation of the increase in reserves HyreCar recorded in Q2 2021. Opp. at 8-10 (citing SAC ¶¶ 110, 116-118).

In an effort to bolster these hindsight allegations, Plaintiff first claims that Defendants have "admitted" that the Q1 2021 reserves were false because they later increased reserves. Opp. at 9. That ignores black letter law. Indeed, the Ninth Circuit recently rejected a similar "fraud by hindsight" approach, explaining

6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

that "it is simply not enough to assume or implausibly infer that the defendants must have known about these issues in [early 2021] based on later facts or developments.  Yet Plaintiff[] repeatedly rel[ies] on future statements to leap to that conclusion." *Twitter*, 29 F.4th at 621.  This hindsight approach is particularly problematic for reserves where "[t]he fact that an allegedly fraudulent statement and a later statement are different does not necessarily amount to an explanation as to why the earlier statement was false . . . [because] the setting of loan loss reserves are based on flexible accounting concepts, which, when applied, do not always (or perhaps ever) yield a single correct figure." *In re GlenFed*, *Inc. Sec. Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1994), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001); *see also In re CRM Holdings*, 2012 WL 1646888, at *28 (explaining that "[i]nsurance reserves are, by their nature, extremely conjectural, and may need adjustment as time passes and their accuracy can be tested in retrospect").  For example, in *Luna v. Marvell Tech. Grp. Ltd.*, the court held that Plaintiff may not "rely solely on [Defendant]'s eventual accrual of a reserve to show that [Defendant]'s financial statements were misleading." 2016 WL 5930655, at *5 (C.D. Cal. Oct. 12, 2016).  Rather, "[i]n order to allege the circumstances constituting fraud, plaintiff must set forth facts explaining why the difference between the earlier and the later statements is not merely the difference between two permissible judgments, but rather the result of a falsehood . . . [P]laintiff may need to draw on contemporaneous statements or conditions to make that demonstration." *Id.* (citing *In re Glenfed*, 42 F.3d at 1549). Plaintiff has not even attempted to meet this burden.

HyreCar's SEC filings made clear that "[t]he adequacy of the reserve is monitored quarterly and is subject to adjustment in the future based upon changes in claims experience, including the number of incidents for which the Company is ultimately responsible," among other things.  Ex. 11 at 292.  Here, the fact that HyreCar eventually determined that its estimates for certain claims incurred in a

7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

prior quarter later required an adjustment to reserves is completely insufficient to state a claim for securities fraud as there are "no factual allegations explaining why defendants' decision not to accrue a reserve was fraudulent, rather than a permissible judgment call." *Marvell*, 2016 WL 5930655, at *5; *see also Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 148 (D. Conn. 2007), *aff'd*, 312 F. App'x 400 (2d Cir. 2009) ("There is no allegation here there has been any restatement of any financial statement or that any auditor or actuary has qualified or withdrawn its opinion . . . [and] Plaintiffs do not allege any other indicator that the results reported by Defendants were inaccurate at the time reported, or that Defendants had knowledge of any inaccuracy.  Plaintiffs must do more than allege that Defendants could not have actually believed that loan loss reserves were adequate because they later increased reserves.") (citations omitted).[3]  To the contrary, it merely reflects that the claims process and setting of reserve estimates is complicated and involves judgment, and is consistent with HyreCar's risk disclosures that the actual losses from claims "may deviate, individually or in the aggregate, from the insurance reserves reflected in our consolidated financial statements," and under such circumstances the insurance reserves may have to increase at the time of that determination.  Ex. 13 at 332; Ex. 1 at 25; Ex. 6 at 187.

---

[3] Other courts are in accord.  *See Alaska Elec.*, 434 F. Supp. 2d at 823 ("[A] complaint alleging fraud based on understated reserves must include details about when and to what level the accounts receivable should have been written down, when and to what level the allowance should have been changed, why the allowance made by the corporation was unreasonable . . . and how many accounts ultimately were uncollectible.'") (quoting *In re Loewen Group Inc. Sec. Litig.*, 2004 WL 1853137, at *11 (E.D. Pa. Aug. 18, 2004)); *Rieckborn*, 81 F. Supp. 3d at 929 ("To show [defendant's reserve figures were misrepresented], plaintiffs must plead 'specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature' of the reserves figures when reported.") (citation omitted).

8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

*Second*, Plaintiff has not identified any particularized or contemporaneous material facts that were known to Defendants at the time the Q1 2021 reserve estimates were made. Instead, Plaintiff again relies on its conflation of claims incurred—*i.e.*, drivers reporting claims to HyreCar—and claims accrued—*i.e.*, estimates included in the reserve—which has already been rejected by this Court. *Id.* at 7-8; *cf.* Opp. at 11. As the Court previously recognized, Plaintiff's assumption that HyreCar could accurately estimate the coverage and value of claims the moment they were reported defies logic. Plaintiff cannot dispute that investigation is required to determine coverage and/or liability and that the accounting standard on this point requires recording of losses that are "probable and can be reasonably estimated," (Opp. at 3, 15), or the fact that HyreCar does not cover the entire rental period, but rather only Period 0 (out of 4). SAC ¶ 38; Ex. 1 at 14-15. Because of this limited scope of coverage and need to investigate which period the accident happened, HyreCar's liability, the ultimate cost of the damage, the fact that a claim was "incurred" prior to January 1, 2021 says nothing about the status of the claim when Q1 2021 reserves were recorded—*i.e.*, whether Genoteq had completed its investigation of that claim, or that HyreCar had the information necessary to predict coverage and liability. It simply means that the risk HyreCar clearly disclosed might happen (Order at 6-7; Ex. 13 at 332, 349)—new information was learned and estimates for claims losses were increased—materialized in Q2 2021.[4]

Plaintiff alleges no specific facts about the status of the investigation into any claims as of Q1 2021. Instead, Plaintiff points to its allegation that HyreCar

_____

[4] Moreover, Plaintiff cites no authority for its incredulous proposition that HyreCar would need to provide investors granular information on its investigation of particular claims (Opp. at 15-16), and the law provides that "companies do not have an obligation to offer an instantaneous update of every internal development . . . Indeed, to do so would inject instability into the securities market, as stocks may wildly gyrate based on even fleeting developments. *Twitter,* 29 F.4th at 620.

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

had "access to Genoteq's system" and two consumer complaints where "HyreCar belatedly agree[d]" that claims were valid.  Opp. at 11.  Both miss the point.  None of the CWs state what Genoteq's system showed with respect to claims data in Q1 2021, or who at HyreCar had access to (or actually accessed) that information.  *See* SAC ¶¶ 69-72.  The lack of well-pled facts regarding what that system showed, in terms of the value of claims for which a coverage determination had been made (or could be reasonably estimated) is fatal to Plaintiff's theory.[5]  Similarly, the fact that HyreCar changed a coverage determination reflected in two customer complaints after further investigation does not indicate the prior reserve estimate was false when made.

None of the cases proffered by Plaintiff (Opp. at 10) eliminate the requirement that Plaintiff allege particularized facts regarding what was or was not included in reserves (and facts establishing that defendants could not have subjectively believed the reserves were accurate at the time they were made).  If anything, they confirm that mere quantification of an alleged understatement is not sufficient to plead falsity.  *Cf. Genworth*, 103 F. Supp. 3d at 776–77 (finding plaintiff adequately alleged reserves were subjectively false where alleged reserves

---

[5] Plaintiff again points to CW9's approximation of "run-off claims" of $700,000 to $1 million (Opp. at 11 n.12) but still fails to address the basis for that estimate. Mot. at 13-14, 16.  Although pointed out in every one of Defendants' filings, Plaintiff tellingly refuses to even offer a definition of "runoff" claims, which can only mean that Plaintiff cannot allege that Genoteq had not yet made a determination on the validity of those claims, much less the amount of HyreCar's corresponding liability.  *Compare* Opp. at 11 n.12, *with* Mot. at 13, 14; Ex. 1 at 42 ("Due to our limited operational history, the Company makes certain assumptions based on both currently available information to estimate the insurance reserves as well as third party claims adjuster data provided on existing claims."); Mot. FAC, Dkt. No. 67 at 22; Mot. FAC Reply, Dkt. No. 72 at 3-4.  More importantly, Plaintiff alleges no facts that suggest estimates for those claims were not included in HyreCar's reported reserve of $1.7 million.

10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

were set based on stale data and defendants' public statements regarding claim duration contradicted the data and assumptions used).

***Third***, Plaintiff's challenge to statements that HyreCar's financial statements complied with GAAP falls with its challenge to reserves. Opp. at 18-19 (citing SAC ¶¶ 144-45). Because Plaintiff cannot provide any facts regarding what was or included in reserves, it cannot adequately allege a violation of GAAP. *In re ICN Pharms., Inc., Sec. Litig.*, 299 F. Supp. 2d 1055, 1067 (C.D. Cal. 2004) (finding alleged GAAP violation insufficiently pled where Plaintiffs "do not state the requisite specifics"); *Marvell*, 2016 WL 5930655, at *7 ("decisions to accrue a loss reserve requires more detailed analysis . . . therefore, more detailed allegations are required to explain [a GAAP violation]").

***Finally***, Plaintiff's attempt to avoid its heightened pleading burden by arguing that Defendants' falsity arguments are "factual disputes" must be rejected. Opp. at 11-12, 14. But Plaintiff cannot avoid the heightened pleading standards applicable to its challenge to HyreCar's financial statements by asking the Court to ignore the actual disclosures and context in which statements were made reflected in HyreCar's SEC filings, or simply deeming all arguments that demonstrate the implausibility of its theory are "factual disputes." The law requires both. Order at 15; Mot. at 8, 15. Defendants did not advance a factual challenge to Plaintiff's quantification of reserve understatement or the alleged GAAP violations. Mot. at 15 (citing SAC ¶¶ 144-45). Rather, Defendants pointed out that Plaintiff's allegations regarding that Q1 2021 reserves were understated were based on hindsight, and that Plaintiff's concocted theory that HyreCar failed to comply with GAAP was not supported by any particularized contemporaneous facts at all. *Rubke v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) (Plaintiff must allege, with particularity, "contemporaneous statements or information" that are "inconsistent" with the challenged statements); *Twitter*, 29 F.4th at 619

11

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

(requiring plaintiff allege that statements "directly contradict what the defendant knew at the time").

Similarly, Defendants have also not invoked a factual "reliance on auditor defense." Rather, HyreCar's years of consecutive clean audit opinions were raised in response to two conclusory assertions: (1) to contradict Plaintiff's allegations that Q1 2021 reserves were false based on later recorded increases and therefore HyreCar's financial statements did not comply with GAAP (Mot. at 15); and (2) in response to Plaintiff's wholly unsupported allegation that HyreCar's "delayed payment scheme appears to have been structured in such a way to avoid auditor scrutiny." Mot. at 20 (quoting SAC ¶ 6).[6] Clean audit opinions (or lack of allegations regarding auditor scrutiny or disagreements) must be considered to demonstrate the implausibility of Plaintiff's allegations, as required by the Reform Act's heightened pleading standard. *Woolgar*, 477 F. Supp. 3d at 228–29 (finding that "Plaintiff's allegations regarding the Company's loss reserves are undermined by the fact that its independent auditor . . . reviewed their accuracy and concluded that . . . [they] were accurate", and review "did not result in any restatement, withdrawal, or qualification during the Class Period."); *Malin*, 499 F. Supp. 2d at 148 (dismissing claim that loan loss reserve was understated where "there is no allegation here there has been any restatement of any financial statement or that

---

[6] Plaintiff's argument that the Q1 2021 reserves were not audited does nothing to suggest that those figures did not comply with GAAP. Plaintiff ignores the fact that estimates for the approximately $1 million of claims that were incurred prior to January 1, 2021 would have been included within the scope of auditor's review of HyreCar's 2020 Form 10-K. And, 2021 insurance reserves would have been reviewed when they were included in HyreCar's 2021 Form 10-K, in full view of HyreCar's disclosure of this litigation challenging the Q1 insurance review. *See* Ex. 13 at 353-54.

12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

any auditor or actuary has qualified or withdrawn its opinion").[7]  The fact that there has never been a restatement of any quarter "[f]urther negat[es] any inference that [defendant] materially misstated its financials."  *See Kuriakose v. Fed. Home Loan Mortg. Corp.*, 897 F. Supp. 2d 168, 181 (S.D.N.Y. 2012) (rejecting "fraud-by-hindsight" allegations, especially since the company was never asked to issue a restatement).

## 2.    Plaintiff Has Not Pled an Actionable Omission

Unable to plead subjective falsity under *Omnicare* or any affirmative material misrepresentation at all, Plaintiff instead attempts to convert its claim into an omission, arguing that the statements were "misleading by omission" because they omitted a "known backlog of valid claims swelling at Genoteq, which, in turn, understated the Company's reserves."  Opp. at 20.  This argument is fatally circular and not based on any particularized facts.

First, Plaintiff has not pled an omission of material fact going to the basis of HyreCar's reserve estimates.  *Omnicare*, 575 U.S. at 194.  An omission cannot simply be the converse of an alleged misstatement.  Instead, Plaintiff must satisfy the specific pleading burden for opinion statements set forth by the Supreme Court in *Omnicare* and extended to 10b-5 claims in the 9th Circuit.  *See City of Dearborn Heights*, 856 F.3d at 616.

---

[7] Plaintiff goes further down the rabbit hole and introduces new assertions challenging the qualifications of HyreCar's auditor in the form of a PCAOB review of two audits performed by DBB McKennon.  Opp. at 12 n.13.  These "facts" have nothing to do with HyreCar.  More importantly, the Court is not required to consider such unpled allegations.  *Session v. PLM Lender Servs., Inc.*, 2011 WL 6748510, at *5 (N.D. Cal. Dec. 22, 2011) ("A plaintiff cannot avoid dismissal of her complaint by alleging new facts in opposition to a motion to dismiss."); *SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *12 (C.D. Cal. July 18, 2016) ("The Court cannot consider new facts asserted in the SEC's oppositions to the motions."); *see also* Request for Judicial Notice in support of Reply, filed concurrently herewith.

13

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

Second, as discussed more fully above, Plaintiff identifies no particularized facts that support an omissions theory—*i.e.*, that any Defendant knew of any valid claims that were not included in reserve estimates. Plaintiff again relies entirely on HyreCar's later acknowledgments that the increase in reserves "settling claims" incurred prior to January 1, 2021 to suggest that Defendants somehow omitted estimates for those claims altogether from the reserve. Opp. at 11. Like its affirmative misstatement theory, this assertion is based entirely on improper hindsight and the contradicted assumption that all claims are valid and can be immediately processed and paid. *See City of Dearborn Heights*, 856 F.3d at 619 ("Plaintiff's allegation that Defendants failed to conduct any goodwill impairment testing at the end of 2011 is not a fact, but rather Plaintiff's conclusion . . . . We need go no further in concluding that it cannot serve as an omission of fact that sufficiently pleads falsity."). Again the later increase in reserve does not show that claims were omitted fully from the reserve estimates; but rather that the estimates changed. *See supra* Section II.A.1.

### 3. Statements Regarding Setting of Reserves and Associated Risk Factors Were Not False or Misleading

Plaintiff's Opposition also makes clear its challenge to statements regarding the setting of reserves and risk factors also depends entirely on a theory that certain claims were omitted from reserves. Opp. at 14-17, 19-20. Plaintiff first argues that Defendants should not be able to offer "conflicting interpretation of the false or misleading statements." *Id.* at 15. That is wrong as a matter of law. The Court can and must consider the context in which the challenged statement was made and how a reasonable investor would understand it. Order at 6. HyreCar's statements told investors that "lag time in reported claims is minimal," while simultaneously informing them that it was including estimates for those claims based on available information, assumptions and judgment, and the risk that those estimates may change. Mot. at 17; *see also* Ex. 1 at 20, 22, 24-25, 56.

14

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

Unable to identify facts contradicting these statements, Plaintiff resorts to the absurd argument that Defendants have somehow admitted "claims awaiting validation were apparently excluded from HyreCar's reserve" without citation. Opp. at 15. To the contrary, Defendants argued (as Plaintiff quotes (*id.*)) that the increase in the reserve resulted from a different estimate or "determination on losses that were probable and reasonably estimated"—meaning an estimate was previously included and as more information was included that estimate was increased. Mot. at 17-18. The fact that additional information and analysis takes place which results in a conclusion that a claim is valid or the liability is greater than previously estimated does not indicate a prior false statement.

The Court previously recognized this obvious component of the insurance claims process in dismissing the FAC. Order at 7-8. Plaintiff speculates that "*if* what Defendants are saying now is that there were a bunch of claims that they knowingly excluded from their reserve estimate while they took time to investigate them . . . *that itself is a material omission*." *See* Opp. at 15-16. This is a false attribution. HyreCar disclosed at all relevant times that reserves were set based on information available, that the process of setting reserves was based on "assumptions" and the "company's limited operating history" and was "inherently difficult, subjective, and speculative[,]" and that new or different information may require that such reserves be adjusted, which could have a negative impact on earnings. SAC ¶ 146; Ex. 1 at 25. The fact that HyreCar initially estimated its liability for a bucket of claims where liability had yet to be fully determined does not mean that claim was "excluded" from the reserve. No pled facts show with specificity that HyreCar did not include an estimate for every reported claim in setting its reserves, even if that initial estimate was that a particular claim was not entitled to the same amount of coverage that ultimately resulted.

The failure to plead a knowing false statement is also underscored by Plaintiff's citation to HyreCar's current website which provides that processing

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

time for claims is 2-8 weeks. Opp. at 16. While this allegation does not undermine any of Defendants' disclosures concerning setting reserves, Plaintiff also does not allege that this statement even existed on HyreCar's website during the Class Period. To the contrary, the website page to which Plaintiff points is from a post dated January 4, 2022, well after HyreCar already disclosed that it moved to Sedgwick and its claims processing time improved. RJN, Ex. 28. Therefore, this later-in-time statement is entirely consistent with HyreCar's expectations that it could deal with claims more quickly after Sedgwick took over processing claims. Ex. 9 at 275.

While Plaintiff attempts to point to CWs from Genoteq about the general claims process, none of the CWs ever say that anyone from HyreCar asked Genoteq to misstate any claims, underreport or reserve for claims, or offer any logical connection between delayed payments and knowingly false financial statements. And, Plaintiff's theory that HyreCar systematically delayed payments is based on a purported conflicted relationship with its broker ABI, but HyreCar announced that it was no longer using ABI as its insurance broker as of June 2020, almost a year before the Class Period. Mot. at 5. No facts support Plaintiff's conspiracy theory that HyreCar controlled Genoteq by virtue of its relationship with ABI and David Haley. Ex. 1 at 65; SAC ¶ 73. Plaintiff's theory suffers from the same faults as its FAC—*i.e.*, delays in payments do not suggest that estimates for losses on those claims were not included in the reserve estimate—and should be rejected again. Order at 6-7.

### 4. Forward Looking Statements Were Not False or Misleading

Plaintiff's brief challenge to statements regarding HyreCar's expectations for "normalized claims" and predictions about EBITDA (Opp. at 20) ignores the fact that the Court already endorsed the argument that this statement was forward-looking, and Plaintiff's Opposition does not to change that outcome. Order at 8; Mot. FAC, Dkt. No. 67 at 18-19. No pled facts suggest that the "seasonal shifts in

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

insurance costs" had not or were not expected to normalize, and Plaintiff does not even attempt to identify any in its Opposition.  Mot. at 18; Ex. 16; Opp. at 20.

## III.   PLAINTIFF FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

Plaintiff cannot meet its high burden to plead a strong inference of scienter as to HyreCar, Joseph Furnari or Robert Scott Brogi.  *See* Order at 8-9 (citing cases).  "It is clearly insufficient for plaintiffs to say that a later, sobering revelation makes an earlier, cheerier statement a falsehood."  *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (internal citations omitted) (affirming dismissal with prejudice based on lack of scienter), *abrogated on other grounds as recognized in Golub v. Gigamon Inc.*, 847 F. App'x 368, 372 (9th Cir. 2021). Plaintiff's Opposition merely cites to the SAC's conclusory allegations, with reference to irrelevant case law, and fails to respond in substance to Defendants' arguments demonstrating that these allegations are insufficient.  *See* Mot. at 20-25.[8]

### A.   Plaintiff's Case Law on Real-Time Knowledge Cannot Save Its "Fraud by Hindsight" Theory of Scienter

Plaintiff's theory of scienter is entirely dependent on the purported significance of the fact that HyreCar determined in Q2 2021 that it needed to increase its reserves for claims incurred prior to Q2, which is classically "improperly attempt[ing] to allege 'fraud by hindsight.'"  *See Patel v. Parnes*, 253 F.R.D. 531, 559-60 (C.D. Cal. 2008) (holding plaintiffs' allegations that defendant's results were under its projections did not give rise to a strong inference of scienter).  To support its argument that estimates that later proved incorrect

---

[8] Plaintiff also cites to cases about scienter to argue that Defendants have made materially false and misleading statements.  *See, e.g.,* Opp. at 12, 16.  Unlike in those cases, the SAC does not "set forth in very clear and specific terms the information available to Defendant," and instead relies on a theory of "fraud by hindsight."  *See id.* at 10 (quoting *In re Genworth*, 103 F. Supp. 3d at 777).

17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

somehow supports scienter, Plaintiff cites to easily distinguishable cases where the pled facts showed that the defendants had contemporaneous knowledge of information that made the challenged statements false *at the time the statements were made*.  *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 707–08 (9th Cir. 2016) (finding sufficient allegations of scienter where defendants expressed confidence in drug approval based on "all the animal studies that have been completed," *after* the FDA expressed concerns about a particular animal study); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230–32 (9th Cir. 2004) (finding strong inference of scienter where, among other things, defendants described robust demand and projected specific growth and revenue figures *when it was already clear* a number of large deals were lost or delayed, and the CEO acknowledged involvement in "an awful lot of these deals").

While Plaintiff makes much of the fact that HyreCar's quarterly results were unaudited (as is customary), it is undisputed that HyreCar's 2020 and 2021 year-end audits were all unqualified opinions, and no quarterly financial statement has ever been restated or adjusted.  Desperately grasping for straws, Plaintiff then attempts to attack the auditor by attaching a 2019 inspection report of two 2017 audits by HyreCar's auditor that do not even involve HyreCar.  Opp. at 12 n.13; Ex. A, Dkt. No. 78-1.  These are irrelevant and not subject to judicial notice, and in any event the report shows that the auditor acknowledged the inspection results and committed to addressing any deficiencies on December 21, 2020.  Ex. A at 12.  HyreCar has since received clean audit opinions in 2020 and 2021, and Plaintiff has no facts to question those opinions.  *See* Ex. 1 at 46; Ex. 13 at 353.[9]

---

[9] Plaintiff's contention concerning GAAP violations is also insufficient to plead scienter.  *See City of Dearborn Heights,* 855 F. 3d at 621 ("A failure to follow GAAP, without more, does not establish scienter") (citations omitted).  "This is because GAAP 'tolerate[s] a range of reasonable treatments, leaving the choice among alternatives to management.'" *Id.* (citing *Or. Pub. Emps. Ret. Fund*, 774 F.3d at 609 (quoting *Thor Power Tool Co. v. C.I.R.*, 439 U.S. 522, 544 (1979)).

18

ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

## B. Plaintiff's Confidential Witness Statements Remain Insufficient

Plaintiff's Opposition also does nothing to establish the competence of its CWs. *Compare* Mot. at 21-22 *with* Opp. at 22. Despite apparently speaking to 12 CWs, not one of them can point to a false statement or provide any facts other than generalized statements that reflect growing pains from a small company. The CWs not only are *not* described with sufficient particularity to establish their reliability and personal knowledge, but also *do not* provide statements indicative of scienter. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). Plaintiff's citation to the large number of CWs only bolsters Defendants' point that there is a glaring absence of any particularized facts supporting Plaintiff's conspiracy theory that HyreCar or its executives knowingly underreported HyreCar's reserves. Not one of these CWs provide any link between the information they knew and HyreCar's process for setting reserves.[10]

Only three CWs who were employed during the Class Period (CWs 9, 10 and 11)[11] even offer any allegations about HyreCar's access to information about pending claims. These CWs are not high-level HyreCar executives, unlike in *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (CWs were defendant's COO, CIO, and an employee who "personally compiled" data that contradicted defendants' statements) and *Cutler v. Kirchner*, 696 F. App'x 809, 815 (9th Cir. 2017) (CW was defendant's President of the Americas, and "one of

---

[10] Plaintiff's list of customer complaints about the payment of insurance claims and CW allegations are not allegations of fraud, but customer services issues. These "confidential witness statements describe operational difficulties without directly contradicting [HyreCar's] statements" and are therefore insufficient to support any fraud. *Nat'l Elevator Industry Pension Fund v. Flex. Ltd.*, 2021 WL 6101391, at *1 (9th Cir. Dec. 21, 2021).

[11] While CW11's alleged statements are inconsequential, it is not clear if CW11 was employed during the class period: CW11's employment ended May 2021, and the class period begins May 13, 2021. *See* SAC ¶¶ 1, 31.

19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

twelve people to participate in quarterly meetings of [defendant]'s International Executive Board").  In fact, they are not HyreCar employees at all.  Far from providing "corroborating accounts of the eight CWs," *see* Opp. at 22, **not one of Plaintiff's CWs** can speak to HyreCar management's knowledge of specific factual information that contradicted the company's statements or any involvement in setting or approving reserves, instead offering vague statements about HyreCar's access to Genoteq's systems.  *See* SAC ¶¶ 71-72.  Plaintiff further has no response to the fact that there is nothing "necessarily nefarious" about HyreCar approving claims for payment based on its limited insurance policy, or, as the Court previously recognized, even delaying payment of those claims for a myriad of legitimate reasons.  *See* Mot. at 22 (citing *Zucco Partners,* 552 F.3d 981 at 998; Order at 7; *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035–36 (9th Cir. 2002)).

Nor does Plaintiff's effort to invoke a "core operations" inference save Plaintiff's claims.  "As [the Ninth Circuit] has noted on more than one occasion, corporate management's general awareness of the day-to-day workings of the company's business does not establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud."  *Metzler*, 540 F.3d at 1068.  The vague allegations of access to unspecific claims and the number of employees does not provide the "what, where, when, and how regarding [Furnari or Brogi]'s access to the relevant information that belies fraudulent intent." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *19 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051 (9th Cir. 2014).  Where courts have considered the small size of a company, it was as part of an analysis where the complaint contained specific factual allegations that defendants knowingly participated in fraud.  *See Curry v. Hansen Med., Inc.*, 2012 WL 3242447, at *11 (N.D. Cal. Aug. 10, 2012) ("Defendants met weekly to go over each [] unit sale on an individual basis"); *Backe v. Novatel Wireless, Inc.*, 642 F. Supp. 2d 1169, 1183–86 (S.D. Cal. 2009) (considering collectively scienter

20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

allegations of cancelled orders by major customer, GAAP violations, and the simplicity of the accounting principles violated, among other things).  The SAC contains no factual allegations that any HyreCar employee had information that contradicted HyreCar's reserves.

In short, Plaintiff has not pled compelling facts about material information HyreCar executives had that were not reflected in HyreCar's reserves at the time they were reported, and its fraud by hindsight theory must fail.  *See, e.g.*, *Woolgar*, 477 F. Supp. 3d at 226 (holding shareholder failed to show statements concerning loss reserves were actionable simply because the loss reserves were later increased).

### C.    Allegations of Executive Stock Sales Do Not Support an Inference of Scienter

Unable to allege with requisite particularity that Defendants knew any facts that undermined the truthfulness of their public statements, Plaintiff again turns to stock sales to plead scienter.  "Stock sales alone cannot create a strong inference of scienter."  *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998). Plaintiff points to the amount and timing of stock sales but cannot dispute that Individual Defendants and other HyreCar executives each sold a minority of their total holdings, not "all of the common stock in [HyreCar] that they owned."  *Cf. Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *14 (C.D. Cal. July 1, 2008) (finding scienter where two individual defendants sold all the common stock they owned, but just 7% of one defendant's total holdings taking into account vested stock options); *In re Omnivision Techs., Inc.*, 2005 WL 1867717, at *4 (N.D. Cal. July 29, 2005) (finding scienter where two other defendants sold 100% of their shares).  In fact Joseph Furnari sold only 34.8% of his total holdings and Robert Scott Brogi sold 36%.  Excluding outstanding options and restricted stock units, Furnari still only sold 43% of his common stock holdings and retained the majority of his holdings.  *See* Mot. at 24.  Nor has Plaintiff pled specific facts in

21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

addition to stock sales creating a strong inference of scienter.  *See In re SeeBeyond Techs. Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1153–54, 1169 (C.D. Cal. 2003) (finding scienter where plaintiff alleged defendants improperly pulled revenue from future quarters to meet financial estimates, company's outside auditors frequently challenged company's financial metrics, and defendants were aware customers frequently refused to pay for defective software).

### D.    Brogi's Retirement Does Not Support Any Inference of Scienter

Plaintiff's argument that Brogi's retirement supports scienter is based on a complete misstatement of alleged and judicially noticed facts:  Plaintiff falsely argues that Brogi's retirement came "less than two weeks after HyreCar replaced ABI" (Opp. at 24), when, in reality, Brogi's retirement was announced on June 23, 2021, and ***HyreCar replaced ABI more than a year earlier, on June 15, 2020***.  SAC ¶ 160; Ex. 1 at 65; FAC, Dkt. No. 66 ¶ 184.  Plaintiff admits this fact in its FAC, but conspicuously omitted it in the SAC.  However, omission of "previously-pleaded material which harms a plaintiff's case . . . are judicial admissions that a plaintiff has not cured." *Tikotzky v. Kai Data, LLC*, 2021 WL 3924757, at *4 (C.D. Cal. June 23, 2021) (citing *In re YogaWorks, Inc. Sec. Litig.*, 2020 WL 2549290, at *3 (C.D. Cal. Apr. 23, 2020)).  HyreCar also first announced that it was replacing Genoteq in March 2021.  Ex. 9 at 275.  Accordingly, Plaintiff cannot allege any facts that the timing of Brogi's retirement was suspicious to support an inference of scienter. *City of Dearborn Heights*, 856 F.3d at 622 ("[A]n employee's resignation supports an inference of scienter only when the resignation at issue was uncharacteristic when compared to the defendant's typical hiring and termination patterns or was accompanied by suspicious circumstances.").  Plaintiff alleges neither Brogi's typical hiring or resignation patterns nor anything else is suspicious.  Unlike other cases relied upon by Plaintiff, Brogi's resignation was not combined with the announcement of a government or internal investigation or general corporate wrongdoing. *Cf.* Opp. to Mot. to Dismiss*; Bielousov v. GoPro,*

22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

*Inc.*, 2017 WL 2115132 (N.D. Cal. May 15, 2017) (resignation timing suspicious less than one month after defect resulted in recall); *see also Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1187 (C.D. Cal. 2007) (finding departure of CFO troubling where the CFO "refused to cooperate with the Special Committee, and instead chose to resign"); *Marvell*, 2017 WL 2171273, at *5 (finding departure of CEO and president suspicious where they were ***terminated*** one month after audit committee began investigating issues surrounding their conduct). Mr. Brogi's retirement at the age of 56, more than a year after HyreCar changed insurance brokers, is insufficient to raise an inference of scienter.

### E.   The Balance of Inferences Supports a Finding of No Scienter

Viewing this Plaintiff's scienter allegations holistically shows that Plaintiff fails to overcome the competing more plausible, non-fraudulent inferences. Like the FAC and SAC, Plaintiff's Opposition again provides no answer to this key question: if Defendants were engaged in a scheme to delay or suppress insurance claims to hide losses, why would they affirmatively and openly replace the purportedly conflicted insurance broker and adjustors with top companies in the insurance field with the goal to expedite and improve their claims processing? The more plausible inference is that the later increase in insurance expenses and reserves was a growing pain for an innovative company offering a unique insurance product, after years of exponential growth and following the switch to a more sophisticated claims adjuster. The fact that the market reacted to this growing pain does not support a claim for securities fraud, and Plaintiff's allegations are a classic attempt to manufacture fraud by hindsight.

## IV.   PLAINTIFF CANNOT PLEAD A CLAIM UNDER SECTION 20(A)

To state a claim under Section 20(a), Plaintiff must allege both (a) a primary violation of federal securities laws and (2) that, as to each defendant, he exercised actual power or control over the primary violator. Order at 9 (citing *Howard v. Everex Sys., Inc.,* 228 F.3d 1057, 1065 (9th Cir. 2000)). Because Plaintiff has

23

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC

failed to allege a primary violation of the Exchange Act, the SAC's 20(a) claim also fails.

## V.  CONCLUSION

For the reasons set forth in Defendants' Motion to Dismiss and Reply, as well as the Court's Order, Plaintiff's claims should be dismissed with prejudice. While Plaintiff requests leave to amend in its Opposition, the ultimate failures in the SAC are the same as that identified by the Court in the FAC—Plaintiff's allegations of falsity and scienter fail for lack of factual specificity as required by Rule 9(b) and the Reform Act—and dismissal with prejudice is therefore appropriate. *See Metzler*, 540 F.3d at 1072 ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (citations omitted).  Moreover, in its request, Plaintiff did not articulate how it could cure any defects by amendment, which confirms the SAC should be dismissed with prejudice. *See Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051–52 (9th Cir. 2008).

Dated:  April 25, 2022                     LATHAM & WATKINS LLP

By: */s/ Joshua G. Hamilton*
Joshua G. Hamilton
Attorneys for Defendants

24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-cv-06918-FWS-JC
REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS SAC