MATTHEW W. CLOSE (SBN 188570)
mclose@omm.com
WAQAS A. AKMAL (SBN 316601)
wakmal@omm.com
O'MELVENY & MYERS LLP
610 Newport Center Drive
17th Floor
Newport Beach, California 92660
Telephone:  +1 949-823-6900
Facsimile:   +1 949-823-6994

Attorneys for Defendant Joseph Furnari

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI, <br><br> Defendants. | Case No. 2:21-CV-06918-FWS-JC <br><br> **DEFENDANT JOSEPH FURNARI'S ANSWER TO SECOND AMENDED COMPLAINT** |

OMM_US:80976909.5

Defendant Joseph Furnari ("Furnari"), by his undersigned counsel, submits his, and only his, Answer and Affirmative Defenses to the Second Amended Complaint ("Complaint") of Lead Plaintiff Turton Inc.

1.     Furnari admits that the Complaint purports to be a putative securities class action brought on behalf of purchasers of HyreCar Inc. ("HyreCar") securities between May 13, 2021 and August 10, 2021, which Plaintiff defines as the "Class Period," and that Plaintiff seeks remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5. Except as expressly admitted, Furnari denies the allegations in Paragraph 1.

2.     Furnari denies the allegations in Paragraph 2.[1]

3.     Furnari admits that HyreCar is a public company, meaning that shares of the Company were publicly traded on the NASDAQ exchange from July 1, 2018 until at least the date of filing this Answer.  Furnari further admits that HyreCar operates a car-sharing marketplace platform that allows car owners to rent cars they own to individuals for use on gig-economy platforms, including ride-share or delivery services.  Furnari further admits that HyreCar's model allows it to connect excess car inventory to drivers, allowing its prices to be competitive with other rental vehicle solutions.  Except as expressly admitted, Furnari denies the allegations in Paragraph 3.

4.     Furnari admits that, generally speaking, both owners and drivers were covered under HyreCar's insurance policy at least during the period of time in which a driver is operating an owner's vehicle while not actively operating a vehicle on a ride-sharing platform.  Furnari further admits that HyreCar's insurance coverage includes coverage for liability and physical damage, according to the terms of the applicable or purchased policy.  The precise terms of coverage are set forth in written policies.  Furnari further admits that, as permitted by accounting

---

[1] Footnote 1 does not contain an assertion of law or fact and does not warrant a response.

- 2 -

rules and policies, HyreCar recognizes revenue from insurance fees it receives. Furnari also admits HyreCar's cost of revenue includes, but is not limited to, payments made on insurance claims based on the policy in effect at the time of the loss, which are recorded as expenses. Furnari also admits that HyreCar's insurance reserves reflect an estimate of liability and physical damage claims that have not yet been paid, including claims for which coverage or liability has not been determined, and appear as a liability on HyreCar's balance sheet. Except as expressly admitted, Furnari denies the allegations in Paragraph 4.

5. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the knowledge of consumers and confidential witnesses in Paragraph 5, and on that basis denies those allegations. Furnari denies the remaining allegations in Paragraph 5.

6. Furnari denies the allegations in Paragraph 6.

7. Furnari lacks knowledge or information sufficient to admit or deny the generic allegations regarding the likely practices of auditors, and on that basis denies those allegations. Furnari denies the remaining allegations in Paragraph 7.

8. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding how customers might behave or the required response to hypothetical customer behavior, and on that basis denies those allegations. Furnari denies the remaining allegations in Paragraph 8.

9. Furnari admits that effective March 1, 2021, HyreCar entered into a new claim adjusting agreement with Sedgwick, and it believed at the time Sedgwick was a leading insurance claim processing partner for many companies in rideshare transportation and food delivery. Furnari further admits that HyreCar filed a Form 10-Q with the Securities & Exchange Commission ("SEC") on May 13, 2021, for the period ended March 31, 2021, which reported, among other things, an insurance reserve of approximately $1.747 million. Furnari also admits

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

that HyreCar filed a Form 10-Q with the SEC on August 10, 2021, for the quarterly period ended June 30, 2021, which included, among other things, approximately $1.2 million attributed to one-off new developments on claims and incidental payments incurred prior to March 31, 2021 in excess of the reserves and accruals. The disclosures in the Form 10-Q provide as they provide. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding "backlog" or "runoff" because those terms are undefined in the pleading, and on that basis denies those allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 9.

10. Furnari lacks information or knowledge sufficient to admit or deny the allegations regarding HyreCar's management's knowledge of claims data and the manager of the prior TPA, because those allegations are vague and argumentative, do not specify which members of HyreCar management and which third party claims processor they refer to, and refer generally to "all claims data", and on that basis denies those allegations. Furnari denies the remaining allegations in Paragraph 10.

11. Furnari admits that HyreCar filed a Form 10-Q with the SEC on August 10, 2021, for the quarterly period ended June 30, 2021, which disclosed, among other things, cost increases including approximately $1.2 million attributed to one-off new developments on claims and incidental payments incurred prior to March 31, 2021 in excess of the reserves and accruals. The August 10, 2021 Form 10-Q provides as it provides. Furnari further admits that HyreCar's stock price declined on or around August 10, 2021. Except as expressly admitted, Furnari denies the allegations in Paragraph 11.

12. Furnari admits that HyreCar filed a Form 10-Q with the SEC on August 10, 2021, for the quarterly period ended June 30, 2021. The August 10, 2021 Form 10-Q provides as it provides. Furnari further admits that HyreCar's

- 4 -

OMM_US:80976909.5

August 10, 2021 Form 10-Q  included net losses of $9.3 million, compared to $3.9 million for the same period the prior year, and contains the quoted language in the final sentence of Paragraph 12 without emphasis included by Plaintiff. Except as expressly admitted, Furnari denies the allegations in Paragraph 12.[2] [3]

13.    Furnari admits that HyreCar's stock price reportedly closed at $19.12 per share on August 10, 2021 and closed at $9.85 per share on August 11, 2021. Furnari admits that the publicly listed trading volume for HyreCar on August 11, 2021 was reported at over 5.8 million shares.  Furnari lacks knowledge or information sufficient to admit or deny the allegation that the trading volume on August 11, 2021 was "abnormally high," and on that basis denies the allegations. Furnari denies the allegations in Paragraph 13 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims.  Except as expressly admitted, Furnari denies the allegations in Paragraph 13.

14.    Furnari incorporates the response made in paragraphs 155-158 below. Furnari denies the allegations in Paragraph 14 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims.  Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 14.

15.    Furnari admits that Plaintiff purports to bring securities fraud claims under Sections 10(b) and 20(a) of the Exchange Act.  Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 15.

16.    Furnari admits that jurisdiction under the Exchange Act claims is conferred by Section 27 of the Exchange Act because the Complaint purports to assert claims arising under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Furnari denies the allegations in Paragraph 16 to

---

[2] Furnari denies that HyreCar's Form 10-K filed on March 15, 2020 contains the language quoted in footnote 2 of the Complaint.

[3] Footnote 3 does not contain an assertion of law or fact and does not warrant a response.

- 5 -

DEFENDANT JOSEPH FURNARI'S ANSWER TO SECOND AMENDED COMPLAINT 2:21-CV-06918-FWS-JC

the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims. Except as expressly admitted, Furnari denies the allegations in Paragraph 16.

17.   Furnari admits that this Court has jurisdiction over this matter as a putative securities class action claiming violations of Section 10(b) and 20(a) of the Exchange Act, pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act. Except as expressly admitted, Furnari denies the allegations in Paragraph 17.

18.   Furnari admits that venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b).  Furnari further admits that HyreCar's principal executive offices are in this District.  Furnari denies the allegations in Paragraph 18 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims. Except as expressly admitted, Furnari denies the allegations in Paragraph 18.

19.   The allegations in Paragraph 19 constitute a conclusion of law to which no response is required.  To the extent a response is required, Funrari denies the allegations in Paragraph 19 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims.

20.   Furnari lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 20 regarding Plaintiff's trades, and on that basis denies the allegations.  Furnari denies the allegations in Paragraph 20 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims.

21.   Furnari admits the allegations in the first and third sentences of Paragraph 21.  Furnari further admits that from the date of HyreCar's IPO (June 27, 2018) through the date this Answer was filed, the Company's common stock was listed on the NASDAQ under the ticker symbol HYRE. Except as expressly admitted, Furnari denies the allegations in Paragraph 21.

22.   Furnari admits that he served as HyreCar's Chief Executive Officer

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

("CEO") and one of its directors during the Class Period alleged in the Complaint, and that Furnari was appointed as CEO in January 2017. Furnari further admits that from May 2016 to September 2018, he served as HyreCar's Chief Financial Officer. Except as expressly admitted, Furnari denies the allegations of Paragraph 22.

23. Furnari admits that Robert Scott Brogi served as Chief Financial Officer of HyreCar from September 2018 until his retirement in July 2021. The second sentence of Paragraph 23 does not contain an assertion of fact or law and does not warrant a response. Except as expressly admitted, Furnari denies the allegations of Paragraph 23.

24. Furnari lacks sufficient knowledge or information to form a belief as to the allegations of Paragraph 24, and on that basis denies them.[4]

25. Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 25, and on that basis denies them.

26. Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 26, and on that basis denies them.

27. Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 27, and on that basis denies them.

28. Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 28, and on that basis denies them.

29. Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 29, and on that basis denies them.

30. Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 30, and on that basis denies them.

31. Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 31, and on that basis denies them.

[4] Footnote 4 does not contain an assertion of law or fact and does not warrant a response.

DEFENDANT JOSEPH FURNARI'S ANSWER TO SECOND AMENDED COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

32.     Furnari lacks sufficient knowledge or information to admit or deny the allegations of Paragraph 32, and on that basis denies them.

33.     Furnari admits that HyreCar's business includes those described in the allegations of the first sentence of Paragraph 33.  Furnari further admits that, at a high level, HyreCar operates a proprietary car-sharing marketplace that allows, among other things, gig economy service drivers to rent automobiles from owners, both owners and drivers receive insurance under HyreCar's policy, and HyreCar provides operational and logistical support to those using its car-sharing marketplace.  Except as expressly admitted, Furnari denies the allegations in Paragraph 33.

34.     Furnari admits that HyreCar's car sharing marketplace provides a peer-to-peer system that allows owners of cars to rent their idle cars to drivers and generate income.  Except as expressly admitted, Furnari denies the allegations in Paragraph 34.

35.     Furnari admits the allegations in the first, second and fifth sentences of Paragraph 35. Furnari further admits HyreCar filed a Form 10-K with the SEC on March 31, 2021, for the year ending December 31, 2020.  In that filing, HyreCar disclosed, among other things, that as of December 31, 2020, drivers paid a daily rental rate set by the car owner, plus a 10% HyreCar Driver Fee, as well as direct daily insurance costs.  That filing also disclosed, among other things, that as of December 31, 2020, owners received their daily rental rate minus a 15%-25% HyreCar Owner Fee, and on average about 80% of the daily rental, or $28.80, was transferred to the owner via the Company's merchant processing partner.  In that filing, HyreCar also disclosed, among other things, that HyreCar earned revenue from the two revenue share fees and the insurance totaling $24.16 per day (using the 21% average for owner fees), of which $13.00 came from the insurance fee.  Except as expressly admitted, Furnari denies the allegations in Paragraph 35.

36.     Furnari admits that HyreCar's insurance products have, over time, offered different types of protection plans with varying deductibles and coverage limits.  Furnari further admits that each of HyreCar's policies contains terms specifying, as applicable, the amount of coverage, if any, for physical damage to a vehicle, liability for passenger injuries and incidental costs.  HyreCar's written policies provide as they provide, and to the extent that Plaintiff's generalized summary mischaracterizes those policies, Furnari denies those allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 36.

37.     Furnari admits that insurance coverage exists for drivers who operate vehicles rented through HyreCar on platforms of Transportation Network Companies ("TNCs"), but HyreCar's insurance subordinates to the state mandated insurance provided by TNCs.  Furnari lacks knowledge or information sufficient to admit or deny the characterizations that "a substantial number" of HyreCar drivers operate their rented vehicles on certain services, particularly without reference to a time period, and on that basis denies those allegations.  Except as expressly admitted, Furnari denies the allegations of Paragraph 37.

38.     Furnari admits that HyreCar filed a Form 10-K with the SEC on March 31, 2021, for the period ending December 31, 2020.  HyreCar's March 31, 2021 Form 10-K filing contains the quoted language in Paragraph 38 without emphasis included by Plaintiff and provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 38.

39.     Furnari admits that HyreCar is not the sole insurance provider for at least some of its users, as made clear in HyreCar's public disclosures.  Furnari further admits that for HyreCar's drivers who operate their rented vehicles for services such as Uber and Lyft, during the periods when the drivers are actively operating on a ride-sharing platform, HyreCar's insurance subordinates to the state mandated insurance provided by the third party ride-sharing business.  Furnari lacks

OMM_US:80976909.5

knowledge or information sufficient to admit or deny the non-specific and generalized allegations regarding users, the likelihood of liability for personal injury in various time periods or activities, and on that basis denies the remaining allegations in Paragraph 39. Except as expressly admitted, Furnari denies the allegations in Paragraph 39.

40.     Furnari lacks knowledge or information sufficient to admit or deny the allegations in the second sentence of Paragraph 40, and on that basis denies the allegations.

41.     Furnari admits that in 2018, HyreCar explored many forms of alternative risk structures including self-insurance through captive insurance programs and policies, as defined and disclosed in its Form 10-K filed with the SEC on March 28, 2019, for the period ended December 31, 2018.  Furnari lacks knowledge or information sufficient to admit or deny whether the general and vague definition of captive insurance policies applies to all captive insurance programs, and on that basis denies the allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 41.

42.     Furnari admits that on April 9, 2019, Business Wire published an article titled "HyreCar Renews Auto Insurance with Y-Risk to Improve Economics and Add New Product Offerings."  Furnari further admits that in April 2019, HyreCar offered owners of cars using its platform a choice between "Basic," "Standard," and "Premium" insurance plans.  Furnari further admits that the terms of those protection plans differed for liability, physical damage and incidentals, as set forth below:

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

| | Basic Plan | Standard Plan | Premium Plan |
|---|---|---|---|
| Liability | State Minimums | $1,000,000 | $1,000,000 |
| Physical Damage | Up to $25,000 | Up to $25,000 | Up to $25,000 |
| Physical Damage Deductible | $3000 | $2500 | $500 |
| Tickets* | Up to 100%* | Up to 100%* | Up to 100%* |
| Toll fees/violations* | Up to 100%* | Up to 100%* | Up to 100%* |
| Cleaning | Up to $30 | Up to $50 | Up to $50 |
| Gas | Up to 65% | Up to 85% | 100% |
| Mileage Overages | Up to 65% | Up to 85% | 100% |
| Impound Fees | | Up to 85% | 100% |
| Lost/Stolen Keys | | | 100% |
| Portion of rental price kept by owner | 85% | 80% | 75% |

However, the terms of these plans changed over time, including the coverage for incidentals, and had changed slightly by 2021.  Except as expressly admitted, Furnari denies the allegations in Paragraph 42.

43.    Furnari lacks knowledge or information sufficient to identify the specific "renewed insurance agreement" referred to, and on that basis, denies those allegations. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW 10 in Paragraph 43, and on that basis denies the remaining allegations.  Furnari denies the remaining allegations in Paragraph 43.[5]

44.    Furnari admits that the table shown in Paragraph 44 generally reflects the terms of HyreCar's insurance plans for owners in or around 2020.  Furnari lacks

[5] Furnari admits that the Alabama Department of Insurance's website lists Iron Reassurance Company, LLC's line of business as "Protected Cell Captive Insurance Company."  Furnari lacks knowledge or information sufficient to admit or deny the remaining allegations in footnote 5, and on that basis denies the allegations.

- 11 -

DEFENDANT JOSEPH FURNARI'S ANSWER TO SECOND AMENDED COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

knowledge or information sufficient to admit or deny the vague and general allegations characterizing the relative amount of risk that HyreCar took on with changes to its model—because risk depends on many factors—and on that basis denies those allegations.   Except as expressly admitted, Furnari denies the allegations in Paragraph 44.

45.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on May 13, 2021, for the quarterly period ending March 31, 2021, which included, among other things, the quoted language.  The May 13, 2021 Form 10-Q provides as it provides.  To the extent the allegations in Paragraph 45 misstate or mischaracterize those disclosures, Furnari denies those allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 45.

46.    Furnari admits that ASC 450-20-25-2 is an accounting standard. That standard provides as it provides.  Except as expressly admitted, HyreCar denies the allegations in Paragraph 46.

47.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on May 13, 2021, for the quarterly period ending March 31, 2021, containing, among other things, the quoted language in Paragraph 47 without emphasis included by Plaintiff, but Plaintiff has not included the complete quote.  The May 13, 2021 Form 10-Q provides as it provides.  Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 47.

48.    Furnari admits that HyreCar filed a Form 10-K with the SEC on March 15, 2022, for the annual period ending December 31, 2021,  containing the following language: "[t]he lag time in reported physical damage claims is minimal and as such represents a low risk of unreported claims being excluded from the loss reserve assessment."  The March 15, 2022 Form 10-K provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 48.

49.    Furnari admits HyreCar's insurance plans provide some coverage for

- 12 -

OMM_US:80976909.5

incidental costs, including but not limited to, cleaning or gas.[6] The terms of its protection plans have varied over time, particularly with respect to incidental costs, such that Furnari is unable to admit or deny the general characterizations of those plans in Paragraph 49.  Furnari lacks knowledge or information sufficient to admit or deny the allegations as phrased regarding incidentals always being a fraction of the cost of physical damage claims, and on that basis denies the allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 49.

50.    Furnari admits that HyreCar made SEC filings containing, among other things, the quoted language in Paragraph 50 without emphasis added by Plaintiff.  Those SEC filings provide as they provide.  Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the composition of HyreCar's insurance reserve regardless of period or claims made as phrased, and on that basis denies those allegations.  Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 50.

51.    Furnari admits that during periods when drivers renting cars through HyreCar's platform are actively operating the car for a ride-sharing or delivery service platform, HyreCar's insurance subordinates to the state mandated insurance provided by the TNCs.  Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the characterization of certain types of liability claims being "less of an issue" during other periods, and on that basis denies those allegations.  Except as expressly admitted, Furnari denies the allegations of Paragraph 51.

52.    Furnari admits that HyreCar's insurance plans include coverage for some incidental costs, but the coverage varies based on the applicable insurance plan.  Furnari further admits that HyreCar's insurance plans set forth the

---

[6] Furnari admits that HyreCar publishes its terms of service on its website.  The published terms of service provides as it provides.  Except as expressly admitted, Furnari denies the allegations in footnote 8.

- 13 -

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

documentation that is required to obtain reimbursement and explain which costs are reimbursed by HyreCar. Furnari lacks knowledge or information sufficient to admit or deny the generalized allegations characterizing all incidental claims as "small in magnitude" and "easily payable"—because some claims may require investigation—and on that basis denies the allegations.  Except as expressly admitted, Furnari denies the allegations of Paragraph 52.

53.    Furnari admits that HyreCar published a "Insurance Policy" on its website on February 14, 2022 which contains, among other things, the language quoted in the second sentence of Paragraph 53. Furnari further admits that HyreCar published a damage claim policy on its website on November 11, 2022 which states: "[d]amage claim cases on average take 2 to 8 weeks to process and reach a settlement." Furnari denies the allegations as phrased that the turnaround "should be expeditious" for all physical damage claims, because the processing of claims depends on numerous factors including, but not limited to, the availability of information required to make a determination as to whether a claim is entitled to coverage and the amount of coverage.  Except as expressly admitted, Furnari denies the allegations of Paragraph 53.

54.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on May 13, 2021, for the quarterly period ending March 31, 2021, containing, among other things, the quoted language in Paragraph 54.  The May 13, 2021 Form 10-Q provides as it provides.  Furnari lacks knowledge or information sufficient to admit or deny the allegations as phrased regarding the expected turnaround for different types of claims, and on that basis denies the allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 54.

55.    Furnari admits that HyreCar maintains a mobile application where owners can report damage and that information is transmitted to HyreCar.  Furnari admits that the processing of claims depends on numerous factors including, but not

- 14 -

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

limited to, the availability of information required to make a determination as to whether a claim is entitled to coverage and the amount of coverage.  Except as expressly admitted, Furnari denies the allegations in Paragraph 55.

56.    Furnari admits that HyreCar maintains a mobile application where owners can submit pictures of the vehicle.  The functionality of HyreCar's mobile application has varied over time, such that Furnari lacks information or knowledge sufficient to admit or deny the allegations that an unspecified third-party claims adjuster and administrator ("TPA") could monitor claims in real time, and on that basis denies the allegations.[7]  Furnari lacks knowledge or information sufficient to admit or deny the allegations purporting to describe the process for the submission, approval and payment of all claims, which can vary depending on numerous factors, and on that basis denies those allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 56.

57.    Furnari admits that HyreCar establishes insurance reserves for claims incurred but not yet paid and claims incurred but not yet reported.  Furnari further admits that cost of revenue[8]  includes, among other things, insurance claim payments made and estimated liabilities based on the insurance policies in effect at the time.[9]  Furnari also admits that cost of revenue and other expenses are deducted from revenue on its consolidated statements of operations to calculate net loss.

---

[7] Furnari admits that HyreCar used a claims administrator to review and process insurance claims for physical damage. Except as expressly admitted, Furnari denies the allegations as phrased in footnote 9, which are not limited to a particular type of claim or adjuster/administrator.

[8] Furnari admits the allegations in the first two sentences of footnote 10. Except as expressly admitted, Furnari denies the allegations in footnote 10.

[9] Furnari admits the first sentence in footnote 11.  Furnari further admits that on August 10, 2021, HyreCar held an earnings call, in which it acknowledged, among other things, that insurance premium and claims accounted for the vast majority of the cost of revenue expense increase in Q2 2021 to $8.3 million from $3.1 million year-over-year.  Except as expressly admitted, Furnari denies the allegations in footnote 11.

- 15 -

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

Except as expressly admitted, Furnari denies the allegations in Paragraph 57.

58. Furnari denies the allegations in Paragraph 58.

59. Furnari admits that insurance claim payments made during a specific reporting period are recorded as an expense and included in HyreCar's cost of revenue. Except as expressly admitted, Furnari denies the allegations in Paragraph 59.

60. Furnari lacks knowledge or information sufficient to admit or deny how the theoretical accrual of insurance reserves will necessarily affect earnings in all circumstances, and on that basis denies the allegations in Paragraph 60.

61. Furnari denies the allegations of Paragraph 61.

62. Furnari admits that HyreCar disclosed, among other things, 2017 Notes totaling $350,000 in its Q2 2018 and Q3 2018 Form 10-Q and 2018 Form 10-K filings.[10] Those filings provide as they provide. Except as expressly admitted, Furnari denies the allegations in Paragraph 62.

63. Furnari admits that HyreCar made an announcement about a strategic joint venture on October 3, 2018 on its website, available at https://www.hyrecar.com/hyrecar-establishes-joint-venture-with-industry-veterans-dave-haley-and-peter-foley-to-launch-new-insurtech-solutions-for-the-ridesharing-industry/ as of January 9, 2023, which contains, among other things, the language quoted in Paragraph 63. That announcement provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 63.

64. Furnari admits that Genoteq processed at least some of HyreCar's insurance claims for physical damage beginning on or around May 2019 until HyreCar entered into a claim adjusting agreement with a different claims administrator effective March 1, 2021. Furnari lacks knowledge or information

---

[10] Furnari admits that warrants allow their holders the right to purchase shares of HyreCar stock for a specific period at a predetermined price. Except as expressly admitted, Furnari denies the allegations in footnote 12.

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

regarding the precise ownership structure of Genoteq and on that basis denies that allegation. Furnari admits generally that Genoteq was responsible for processing physical damage claims, but lacks knowledge or information sufficient to admit or deny that Genoteq "only dealt with" physical damage claims, and on that basis denies those allegations. Furnari admits that HyreCar paid owners directly for incidental costs, at least during the years 2020 and 2021. Except as expressly admitted, Furnari denies the allegations in Paragraph 64.

65. Furnari admits that as of December 19, 2022, Genoteq's website includes an "About Company" section on its website, accessible at https://genoteq.com/about-company/, which contains the language quoted in Paragraph 65. That section of Genoteq's website available on that date provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 65.

66. Furnari admits that the Louisiana Department of Insurance lists the date when Genoteq's license became effective. That record provides as it provides. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the operating history and employee count at Genoteq, and on that basis denies the allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 66.

67. Furnari lacks knowledge or information sufficient to admit or deny the allegations Paragraph 67, and on that basis denies the allegations.

68. Furnari denies the allegations in Paragraph 68.

69. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW 9 in Paragraph 69, and on that basis denies the allegations.

70. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW10 in Paragraph 70, and on that basis

- 17 -

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

denies the allegations.

71.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding indications from CW10 in Paragraph 71, and on that basis denies the allegations.

72.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements or knowledge of CW9 in Paragraph 72, and on that basis denies the allegations.

73.   Furnari admits that at least some of HyreCar's SEC filings referred to "third party claims adjuster data" as one input HyreCar used to estimate its insurance reserves.[11]   Furnari further admits that some of HyreCar's SEC filings disclosed, among other things, that HyreCar historically relied on one to two insurance brokers and one to two underwriters at various different times.  Furnari admits that some of HyreCar's SEC filings disclosed that David Haley was also a minority Company stockholder and holder of warrants.  Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the precise ownership structure of ABI and Genoteq, and on that basis denies the allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 73.

74.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW9 in Paragraph 74, and on that basis denies the allegations.

75.   Furnari admits that HyreCar filed a Form 10-K with the SEC on April 14, 2020, for the year ended December 31, 2019. The April 14, 2020 Form 10-K provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 75.

76.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW3 statements in Paragraph 76, and on that

---

[11] HyreCar admits that HyreCar's Q1 2021 10-Q referred to "third party claims adjuster data."

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

basis denies the allegations.  Furnari denies the remaining allegations in Paragraph 76.

77.   Furnari lacks knowledge or information sufficient to admit or deny the vague and generalized characterization that "HyreCar was intimately aware of Genoteq's operations" and that HyreCar "often dictated Genoteq's payment schedule," and on that basis denies those allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 77.

78.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW7 in Paragraph 78, and on that basis denies the allegations.  Furnari denies the remaining allegations in Paragraph 78.

79.   Furnari lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 79 regarding what CW5 purportedly observed or was told, and on that basis denies the allegations in Paragraph 79.

80.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW9 in Paragraph 80, and on that basis denies the allegations.  Furnari denies the remaining allegations in Paragraph 80.

81.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW9 in Paragraph 81, and on that basis denies the allegations.

82.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the knowledge or statements of CW9 in Paragraph 82, and on that basis denies the allegations.

83.   Furnari admits that HyreCar filed a Form 10-K with the SEC on March 15, 2022, for the year ended December 31, 2021, which contains, among other things, the language quoted in Paragraph 83 without emphasis added by Plaintiff. The March 15, 2022 Form 10-K provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 83.

OMM_US:80976909.5

84. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding observations by Genoteq employees in Paragraph 84, and on that basis denies the allegations. Furnari denies the allegations in Paragraph 84 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims, including that its insurance reserves were understated. Except as expressly admitted, Furnari denies the allegations in Paragraph 84.

85. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the knowledge or statements of CW11 in Paragraph 85, and on that basis denies the allegations.

86. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the knowledge or statements of CW12 in Paragraph 86, and on that basis denies the allegations.

87. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding CW9's estimate of "runoff claims" in Paragraph 87, and on that basis denies the allegations.

88. Furnari admits that a September 2, 2020 complaint is published on the Better Business Bureau's website as of the date of the filing of this Answer. Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 88.

89. Furnari admits that an October 15, 2020 response is published on the Better Business Bureau's website. Except as expressly admitted, Furnari denies the allegations in Paragraph 89.

90. Furnari admits that certain reviews were submitted to the Better Business Bureau regarding HyreCar. Furnari lacks knowledge and information sufficient to admit or deny the vague and non-specific allegations that "dozens upon dozens of additional consumer complaints to the BBB corroborate the CWs' accounts" and the contents of those reviews, and on that basis denies those allegations. Except as expressly admitted, Furnari denies the remaining allegations

- 20 -

OMM_US:80976909.5

in Paragraph 90.

91.    Furnari admits that an August 26, 2020 complaint is published on the Better Business Bureau's website.  Except as expressly admitted, Furnari denies the allegations in Paragraph 91.

92.    Furnari admits that a September 10, 2020 comment is published on the Better Business Bureau's website. Except as expressly admitted, Furnari denies the allegations in Paragraph 92.

93.    Furnari admits that a March 9, 2021 complaint is published on the Better Business Bureau's website.  Except as expressly admitted, Furnari denies the allegations in Paragraph 93.

94.    Furnari admits that a March 19, 2021 response is published on the Better Business Bureau's website.  Furnari admits that an April 12, 2021 comment is published on the Better Business Bureau's website containing the quoted language, without emphasis added by Plaintiff. Except as expressly admitted, Furnari denies the allegations in Paragraph 94.

95.    Furnari admits that reviews dated March 3, 2020 and January 22, 2020, are published on the Better Business Bureau's website.  Except as expressly admitted, Furnari denies the allegations in Paragraph 95.

96.    Furnari admits that certain reviews were submitted to the Better Business Bureau regarding HyreCar.  Furnari lacks knowledge and information sufficient to admit or deny the generalization regarding the contents or subject of complaints between December 12, 2018 and October 29, 2021, and on that basis denies those allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 96.

97.    Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding statements from CW1 in Paragraph 97, and on that basis denies the allegations.  Furnari lacks knowledge or information sufficient to admit

OMM_US:80976909.5

or deny the remaining allegations in Paragraph 97, and on that basis denies the allegations.

98.     Furnari admits that on or about March 1, 2021 HyreCar entered into an agreement with Sedgwick for claims adjustment, which agreement provides as it provides, and further admits that Sedgwick previously worked with HyreCar on liability claims.  Except as expressly admitted, Furnari denies the allegations in Paragraph 98.

99.     Furnari admits that on May 20, 2021 the Company issued a press release via its website titled "HyreCar Renews Insurance Program with Lloyd's Apollo Insurance Syndicate until 2023."  The May 20, 2021 press release provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 99.

100.   Furnari admits that on May 20, 2021 the Company issued a press release via its website titled "HyreCar Renews Insurance Program with Lloyd's Apollo Insurance Syndicate until 2023."  The May 20, 2021 press release provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 100.

101.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding CW9's estimate of "Genoteq's runoff HyreCar claims" Paragraph 101, and on that basis denies the allegations.  Except as expressly admitted, Furnari denies the allegations in Paragraph 101.

102.   Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the identity, knowledge, or statements of CW12 in Paragraph 101, and on that basis denies the allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 102.

103.   Furnari admits that HyreCar filed Form 10-Q for the period ended March 31, 2021 with the SEC on May 13, 2021.  The March 31, 2021 Form 10-Q

- 22 -

OMM_US:80976909.5

provides as it provides. Furnari lack knowledge or information sufficient to admit or deny the allegations regarding "remaining liabilities from the runoff of the Genoteq claims portfolio," and on that basis deny the allegations. Except as expressly admitted, HyreCar denies the allegations in Paragraph 103.

104. Furnari denies the allegations in Paragraph 104.

105. Furnari admits that HyreCar issued a press release on May 13, 2021 on its website titled "HyreCar Announces Record First Quarter 2021 Financial Results." The May 13, 2021 press release provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 105.

106. Furnari denies the allegations in Paragraph 106.

107. Furnari admits that HyreCar held an earnings call on May 13, 2021; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 107; and that transcript provides as it provides. To the extent the allegations in Paragraph 107 mischaracterize that call, Furnari denies the allegations in Paragraph 107. In its December 5, 2022 Order on Defendants' Motion to Dismiss, the Court held that the allegations in Paragraph 107 regarding "seasonal shifts in insurance costs" were not sufficient to plead a materially misleading statement or omission. Except as expressly admitted, Furnari denies the allegations in Paragraph 107.

108. Furnari admits that HyreCar held earnings calls on March 30, 2021 and May 13, 2021; that there are transcripts of those calls containing, among other things, the language quoted in Paragraph 108; and those transcripts provide as they provide. To the extent the allegations in Paragraph 108 mischaracterize that calls, Furnari denies the allegations in Paragraph 108. In its December 5, 2022 Order on Defendants' Motion to Dismiss, the Court held that the allegations in Paragraph 108 regarding "seasonal shifts in insurance costs" were not sufficient to plead a materially misleading statement or omission. Except as expressly admitted, Furnari

OMM_US:80976909.5

denies the allegations in Paragraph 108.

109.    Furnari denies the allegations in Paragraph 109.

110.    Furnari denies the allegations in Paragraph 110.

111.    Furnari admits that it was reported that HyreCar's stock price closed at $8.93 on May 13, 2021 and reached an intraday high of $24.21 on June 23, 2021. Except as expressly admitted, Furnari denies the allegations in Paragraph 111.

112.    Furnari denies the allegations in Paragraph 112.

113.    Furnari admits that between July 21, 2021 and July 23, 2021, pursuant to a pre-existing trading plan established under applicable SEC rules and regulations, a portion of his HyreCar stock holdings—300,000 shares – were sold. Furnari admits that prior to July 21, 2021, he had not sold HyreCar shares following HyreCar's IPO.  Except as expressly admitted, Furnari denies the allegations in Paragraph 113.

114.    Furnari admits that between May 20, 2021 and May 24, 2021, then-CFO Scott Brogi sold a portion of his HyreCar stock holdings—72,329 shares. Furnari lacks information or knowledge sufficient to admit or deny that "Brogi sold no Company shares since joining the Company in September 2018." Except as expressly admitted, Furnari denies the allegations in Paragraph 114.

115.    Furnari admits that on August 10, 2021, HyreCar issued a press release via its website titled "HyreCar Announces Record Second Quarter 2021 Financial Results."  The August 10, 2021 press release provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 115.

116.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on August 10, 2021, for the quarterly period ended June 30, 2021.  The August 10, 2021 Form 10-Q provides as it provides.   Except as expressly admitted, Furnari denies the allegations in Paragraph 116.

117.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on

- 24 -

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

August 10, 2021, for the quarterly period ended June 30, 2021.  The August 10, 2021 Form 10-Q provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 117.

118.    Furnari admits that HyreCar filed a Form 10-K with the SEC on March 15, 2022 for the year ended December 31, 2021.  The March 15, 2022 Form 10-K provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 118.

119.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on August 10, 2021, for the quarterly period ended June 30, 2021.  The August 10, 2021 Form 10-Q provides as it provides.   Except as expressly admitted, Furnari denies the allegations in Paragraph 119.

120.    Furnari admits that on August 10, 2021, HyreCar held an earnings call; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 120; and that transcript provides as it provides.  To the extent the allegations in Paragraph 120 mischaracterize that call, Furnari denies the allegations in Paragraph 120.  Except as expressly admitted, Furnari denies the allegations in Paragraph 120.

121.    Furnari admits that on August 10, 2021, HyreCar held an earnings call; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 121; and that transcript provides as it provides. To the extent the allegations in Paragraph 121 mischaracterize that call, Furnari denies the allegations in Paragraph 121.  Except as expressly admitted, Furnari denies the allegations in Paragraph 121.

122.    Furnari admits that on August 10, 2021, HyreCar held an earnings call; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 122; and that transcript provides as it provides. To the extent the allegations in Paragraph 122 mischaracterize that call, Furnari denies the

allegations in Paragraph 122.  Except as expressly admitted, Furnari denies the allegations in Paragraph 122.

123.   Furnari admits that on August 10, 2021, HyreCar held an earnings call; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 123; and that transcript provides as it provides. To the extent the allegations in Paragraph 123 mischaracterize that call, Furnari denies the allegations in Paragraph 123.  Except as expressly admitted, Furnari denies the allegations in Paragraph 123.

124.   Furnari admits that on August 10, 2021, HyreCar held an earnings call; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 124; and that transcript provides as it provides. To the extent the allegations in Paragraph 124 mischaracterize that call, Furnari denies the allegations in Paragraph 124.  Except as expressly admitted, Furnari denies the allegations in Paragraph 124.

125.   Furnari admits that on August 10, 2021, HyreCar held an earnings call; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 125; and that transcript provides as it provides. To the extent the allegations in Paragraph 125 mischaracterize that call, Furnari denies the allegations in Paragraph 125.  Except as expressly admitted, Furnari denies the allegations in Paragraph 125.

126.   Furnari admits that on August 10, 2021, HyreCar held an earnings call; that there is a transcript of that call containing, among other things, the language quoted in Paragraph 126; and that transcript provides as it provides. To the extent the allegations in Paragraph 126 mischaracterize that call, Furnari denies the allegations in Paragraph 126.  Except as expressly admitted, Furnari denies the allegations in Paragraph 126.

127.   Furnari admits that HyreCar's stock price was reported to have closed

OMM_US:80976909.5

at $19.12 on August 10, 2021 and closed at $9.85 per share on August 11, 2021. Furnari further admits that the reported trading volume was over 5.8 million shares on August 11, 2021. Furnari lacks knowledge or information sufficient to admit or deny the allegations that the trading volume was "abnormally high," and on that basis denies the allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 127.

128. Furnari admits that HyreCar filed a Form 10-Q with the SEC on November 9, 2021, for the quarterly period ended September 30, 2021. The November 9, 2021 Form 10-Q provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 128.

129. Furnari admits that HyreCar filed a Form 10-K with the SEC on March 15, 2022, for the year ended December 31, 2021. The March 15, 2022 Form 10-K provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 129.

130. Furnari admits that on May 13, 2021, HyreCar issued a press release entitled "HyreCar Announces Record First Quarter 2021 Financial Results." The May 13, 2021 press release provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 130.

131. Furnari admits that on May 13, 2021, HyreCar issued a press release entitled "HyreCar Announces Record First Quarter 2021 Financial Results." The May 13, 2021 press release provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 131.

132. Furnari denies the allegations in Paragraph 132.

133. Furnari admits that on May 13, 2021, HyreCar issued a press release entitled "HyreCar Announces Record First Quarter 2021 Financial Results." The May 13, 2021 press release provides as it provides. Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 133.

- 27 -

DEFENDANT JOSEPH FURNARI'S ANSWER TO SECOND AMENDED COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

134.   Furnari admits that on May 13, 2021, HyreCar issued a press release entitled "HyreCar Announces Record First Quarter 2021 Financial Results."  The May 13, 2021 press release provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 134.

135.   Furnari denies the allegations in Paragraph 135.

136.   Furnari admits that on May 13, 2021, HyreCar held its first quarter 2021 earnings call.  The public transcript of that call contains the language quoted in Paragraph 136 and provides as it provides.  To the extent the allegations in Paragraph 136 mischaracterize that call, Furnari denies the allegations in Paragraph 136. Except as expressly admitted, Furnari denies the allegations in Paragraph 136.

137.   Furnari denies the allegations in Paragraph 137.  Moreover, in its December 5, 2022 Order on Defendants' Motion to Dismiss, the Court held that the allegations in Paragraph 137 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.

138.   Furnari denies the allegations in Paragraph 138.  Moreover, in its December 5, 2022 Order on Defendants' Motion to Dismiss, the Court held that the allegations in Paragraph 138 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.

139.   Furnari denies the allegations in Paragraph 139.  In its December 5, 2022 Order on Defendants' Motion to Dismiss, the Court held that the allegations in Paragraph 139 were not sufficient to plead a materially misleading statement or omission and therefore no response is required.

140.   Furnari admits that HyreCar filed a Form 10-Q with the SEC on May 13, 2021, for the quarterly period ended March 31, 2021, containing the quoted language without emphasis included by Plaintiff.  The May 13, 2021 Form 10-Q provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 140.

OMM_US:80976909.5

141.    Furnari denies the allegations in Paragraph 141.

142.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on May 13, 2021, for the quarterly period ended March 31, 2021, containing the quoted language without emphasis included by Plaintiff.  The May 13, 2021 Form 10-Q provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 142.

143.    Furnari denies the allegations in Paragraph 143.

144.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on May 13, 2021, for the quarterly period ending March 31, 2021, containing the quoted language in Paragraph 144.  The May 13, 2021 Form 10-Q provides as it provides. Except as expressly admitted, Furnari denies the allegations in Paragraph 144.

145.    Furnari denies the allegations in Paragraph 145.

146.    Furnari admits that HyreCar filed a Form 10-Q with the SEC on May 13, 2021, for the quarterly period ended March 31, 2021, containing, among other things, the quoted language in Paragraph 146, without emphasis added by Plaintiff. The May 13, 2021 Form 10-Q provides as it provides.  Except as expressly admitted, Furnari denies the allegations in Paragraph 146.  Moreover, in its December 5, 2022 Order on Defendants' Motion to Dismiss, the Court held that the allegations in the Second Amended Complaint were not sufficient to plead that the statement quoted in Paragraph 146 was materially false or misleading.

147.    Furnari denies the allegations in Paragraph 147.

148.    Furnari denies the allegations in Paragraph 148.

149.    Furnari denies the allegations in Paragraph 149.

150.    Furnari denies the allegations in Paragraph 150.

151.    Furnari denies the allegations in Paragraph 151.

152.    Furnari admits that effective March 1, 2021, HyreCar had entered into a two-year claim adjusting agreement with Sedgwick, which provides as it

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

provides, including an escrow account to be held by Sedgwick for claim payments and for replenishment of that account from time to time as provided in the agreement. Except as expressly admitted, Furnari denies the allegations in Paragraph 152.

153.   Furnari denies the allegations in Paragraph 153.

154.   Furnari admits that on May 14, 2021, HyreCar's stock price is reported to have opened at $10.50 and closed at $12.91. Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 154.

155.   Furnari admits that between July 21, 2021 and July 23, 2021 he sold a portion of his HyreCar stock holdings—300,000 shares pursuant to a Rule 10b5-1 trading plan. Furnari admits that prior to July 21, 2021, he had not sold any HyreCar stock since the Company's IPO. Except as expressly admitted, Furnari denies the allegations in Paragraph 155.

156.   Furnari admits that between July 21, 2021 and July 23, 2021 Michael Furnari sold a portion of his HyreCar stock holdings—299,900 shares pursuant to a Rule 10b5-1 trading plan. Furnari lacks information or knowledge sufficient to admit or deny that "Michael Furnari sold no Company shares since the Company's IPO in June 2018." Except as expressly admitted, Furnari denies the allegations in Paragraph 156.

157.   Furnari admits that between May 20, 2021 and May 24, 2021, then-CFO Scott Brogi sold a portion of his HyreCar stock holdings—72,329 shares. Furnari lacks information or knowledge sufficient to admit or deny that "Brogi had sold no Company shares since joining the Company's September 2018." Except as expressly admitted, Furnari denies the allegations in Paragraph 157.

158.   Furnari admits that Grace Mellis was the Chair of HyreCar's Board of Directors during the Class Period alleged by Plaintiff. Furnari admits that between May 24 and June 3, 2021, Mellis sold a portion of her HyreCar stock holdings—

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

50,000 shares. Furnari lacks information or knowledge sufficient to admit or deny that "Mellis sold no Company shares since the Company's IPO." Except as expressly admitted, Furnari denies the allegations in Paragraph 158.

159.    Furnari admits that Henry Park was the Company's Chief Operating Officer during the Class Period alleged by Plaintiff.  Furnari admits that between May 19, 2021 and May 20, 2021, Park sold a portion of his HyreCar stock holdings—35,000 shares.  Furnari lacks information or knowledge sufficient to admit or deny that "Park sold no Company shares since joining the Company in October 2018."  Except as expressly admitted, Furnari denies the allegations in Paragraph 159.

160.    Furnari admits that on June 23, 2021, HyreCar announced the retirement of then-CFO Scott Brogi.  Furnari further admits that HyreCar announced that Serge DeBock had been hired as the Company's new CFO. Except as expressly admitted, Furnari denies the allegations in Paragraph 160.

161.    Furnari lacks sufficient information to admit or deny the vague characterizations of "most knowledgeable," "major components" and "particularly focused on these trends," and on that basis denies those allegations.  The allegation regarding the core operations doctrine and imputed knowledge are legal conclusions to which no response is required.  Except as expressly admitted, Furnari denies the remaining allegations in Paragraph 161.

162.    Furnari denies the allegations in Paragraph 162.

163.    Furnari admits that:  HyreCar's stock price was reported to have closed at $19.12 on August 10, 2021 and closed at $9.85 on August 11, 2021.  Furnari admits that the publicly listed trading volume for August 11, 2021 was over 5.8 million shares.  Furnari lacks knowledge or information sufficient to admit or deny the allegation that the trading volume on August 11, 2021 was "abnormally high." Except as expressly admitted, Furnari denies the allegations in Paragraph 163.

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

164. Furnari admits that Plaintiff purports to bring this action as a class action on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired HyreCar securities between May 13, 2021 through August 10, 2021, inclusive, and excluded from the purported class are "Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest." Except as expressly admitted, Furnari denies the allegations in Paragraph 164.

165. Furnari admits that during the alleged Class Period, HyreCar stock was publicly traded on the NASDAQ. Furnari lacks knowledge or information sufficient to admit or deny the characterization that "HyreCar securities actively traded on the NASDAQ," and on that basis denies the allegation. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the number or ability to contact putative class members, and on that basis denies those allegations. To the extent the allegations in Paragraph 165 constitute legal conclusions regarding the application of Federal Rule Procedure 23, no response is required. Except as expressly admitted, Furnari denies the allegations in Paragraph 165.

166. To the extent the allegations in Paragraph 166 constitute legal conclusions regarding the application of Federal Rule Procedure 23, no response is required. Furnari denies the allegations in Paragraph 166.

167. Furnari lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 167, and on that basis denies those allegations.

168. Furnari denies the allegations in Paragraph 168 to the extent they purport to assert that there is a basis in fact or law for Plaintiff's claims. To the extent the allegations in Paragraph 168 constitute legal conclusions regarding the application of Federal Rule Procedure 23, no response is required. To the extent a

- 32 -

OMM_US:80976909.5

response is required, Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding putative class members' claims, and on that basis denies those allegations.

169. To the extent the allegations in Paragraph 169 constitute legal conclusions regarding the application of Federal Rule Procedure 23, no response is required. To the extent a response is required, Furnari lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 169, and on that basis denies the allegations.

170. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the market for HyreCar's securities and on that basis denies those allegations. HyreCar denies the remaining allegations in Paragraph 170.

171. Furnari denies the allegations in Paragraph 171.

172. Furnari admits that on June 23, 2021, HyreCar's stock price is reported to have closed at $22.95. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the market for HyreCar's securities or purchases of putative class members, and on that basis denies those allegations in Paragraph 172. Except as expressly admitted, Furnari denies the allegations in Paragraph 172.

173. Furnari denies the allegations in Paragraph 173.

174. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the market for HyreCar's securities, and on that basis denies the allegations in Paragraph 174.

175. Furnari admits that HyreCar's shares met the requirements for listing and were listed on the NASDAQ during the period alleged in the Complaint. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding the market for HyreCar's securities and trading thereof, and on that basis denies the remaining allegations in Paragraph 175. Except as expressly admitted,

- 33 -

OMM_US:80976909.5

Furnari denies the allegations in Paragraph 175.

176. Furnari admits that HyreCar filed periodic public reports with the SEC and NASDAQ. Except as expressly admitted, Furnari denies the allegations in Paragraph 176.

177. Furnari admits that HyreCar filed periodic reports with the SEC and published press releases on its website, some of which were also filed with the SEC during the relevant period, and those reports and press releases were publicly available for any interested investors to review. Furnari lacks knowledge or information sufficient to admit or deny the allegations characterizing the regularity of investor communications and the reach or audience of its public disclosures— which are vague and subject to multiple interpretations—and on that basis denies those allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 177.

178. Furnari admits that during the Class Period, certain investment analysts wrote reports about HyreCar. Furnari lacks knowledge or information sufficient to admit or deny the allegations characterizing the public availability of analyst reports or statements—which are vague and subject to multiple interpretations—and on that basis denies those allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 178.

179. Furnari lacks knowledge or information sufficient to admit or deny the allegations regarding whether publicly available information was reflected in HyreCar's share price, and on that basis denies those allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 179.

180. Furnari denies the allegations in Paragraph 180. Moreover, the allegations regarding forward-looking statements in Paragraph 180 constitute a conclusion of law to which no response is required.

181. Furnari denies the allegations in Paragraph 181. Moreover, the

- 34 -

OMM_US:80976909.5

allegations regarding forward-looking statements in Paragraph 181 constitute a conclusion of law to which no response is required.

182.   Furnari repeats and realleges his responses to Paragraphs 1-181 above as if fully set forth herein.

183.   Furnari denies the allegations in Paragraph 183.

184.   Furnari denies the allegations in Paragraph 184.

185.   Furnari denies the allegations in Paragraph 185.

186.   Furnari denies the allegations in Paragraph 186.

187.   Furnari denies the allegations in Paragraph 187.

188.   Furnari denies the allegations in Paragraph 188.

189.   Furnari denies the allegations in Paragraph 189.

190.   Furnari denies the allegations in Paragraph 190.

191.   Furnari denies the allegations in Paragraph 191.

192.   Furnari denies the allegations in Paragraph 192.

193.   Furnari lacks knowledge or information sufficient to admit or deny the allegations in Paragraph 193 regarding the what members of the purported class knew and/or relied upon, and on that basis denies the allegations.  Furnari denies the remaining allegations in Paragraph 193.

194.   Furnari denies the allegations in Paragraph 194.

195.   Furnari denies the allegations in Paragraph 195.

196.   Furnari repeats and realleges his responses to Paragraphs 1-195 above as if fully set forth herein.

197.   The allegations in Paragraph 197 constitute a legal conclusion to which no response is required.  If a response is required, Furnari denies the allegations in Paragraph 197.

198.   Furnari admits that he and other executives had access to certain HyreCar documents at various times.  However, the allegations about the categories

OMM_US:80976909.5

of documents that the Individual Defendants "had unlimited access to" are too vague for Furnari to admit or deny, and on that basis Furnari denies the allegations. Except as expressly admitted, Furnari denies the allegations in Paragraph 198.

199.   The allegations in Paragraph 199 constitute a conclusion of law to which no response is required.  To the extent a response is required, Furnari denies the allegations in Paragraph 199.

200.   The allegations in Paragraph 200 constitute a conclusion of law to which no response is required.  To the extent that a response is required, Furnari denies that there is a predicate violation of Section 10(b) and  denies that he is subject to liability pursuant to Section 20(a) of the Exchange Act.

To the extent that a response to Plaintiffs' Prayer for Relief is required, Furnari denies each and every allegation contained therein, denies all of Plaintiffs' claims, denies that he engaged in any violation of the law or other wrongdoing, and denies that Plaintiffs are entitled to any relief whatsoever, including any damages, fees, disbursements, costs, or other purported equitable relief.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof that would otherwise rest on Plaintiff or the class, Furnari pleads the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Standing)

Plaintiff's claims are barred, in whole or in part, because Plaintiff lacks standing to assert its claims.

## SECOND AFFIRMATIVE DEFENSE

### ("Puffery" and/or Safe Harbor)

Plaintiff's claims are not actionable to the extent the alleged untrue statements of material fact, omissions of material fact, misleading statements, and/or other challenged statements constitute inactionable "puffery" and/or fall

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

within one or both of the Safe Harbor provisions of the Reform Act, as codified at 15 U.S.C. § 77z-2(c).

### THIRD AFFIRMATIVE DEFENSE

(Prior Knowledge)

At the time of their acquisition of HyreCar stock, Plaintiff and members of the class had actual or constructive knowledge of the allegedly untrue statements of all or some of the alleged omissions and misstatements or other wrongful conduct upon which Furnari's purported liability rests.

### FOURTH AFFIRMATIVE DEFENSE

(Materiality)

Certain matters alleged to be the subject of misrepresentations and omissions were publicly disclosed or were in the public domain, and as such were available to Plaintiff, members of the class, and/or the securities markets.

### FIFTH AFFIRMATIVE DEFENSE

(Assumption of Risk)

Plaintiff and members of the putative class knew or should have known of HyreCar's financial condition and the risks associated with HyreCar's business at the time of their acquisition of HyreCar stock and assumed the risk that the value of the HyreCar stock could decline.

### SIXTH AFFIRMATIVE DEFENSE

(Good Faith)

Furnari at all times acted in good faith and did not directly or indirectly induce any acts constituting the alleged violations and causes of action.  See, e.g., 15 U.S.C. §78t.

### SEVENTH AFFIRMATIVE DEFENSE

(Contribution and Indemnity)

Under principles of contribution and indemnity, persons or entities other than

- 37 -

OMM_US:80976909.5

Furnari are wholly or partially responsible for the purported damages, if any, that Plaintiff and class members have sustained.

## EIGHTH AFFIRMATIVE DEFENSE

### (Improper Class Action)

This action is not properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23.

## NINTH AFFIRMATIVE DEFENSE

### (Proportionate Liability)

Any recovery for damages allegedly incurred by Plaintiff and members of the class, if any, is limited to the percentage of responsibility of Furnari in proportion to the total fault of all persons, whether or not named as parties to this action, who caused or contributed to Plaintiff's alleged damages, if any, pursuant to the proportionate liability provisions of the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), as codified at 15 U.S.C. § 78u-4(f)(3)(A).

## TENTH AFFIRMATIVE DEFENSE

### (Reduction in Damages)

Plaintiff's alleged damages are reduced by the amount it has recovered from other Defendants or third parties in connection with the claims alleged in the Complaint and by the amount it received in connection with the sale of its HyreCar securities.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate its alleged damages.

## TWELFTH AFFIRMATIVE DEFENSE

### (Lack of Impact on Market Price)

Plaintiff's claims are barred, in whole or in part, because the purported

- 38 -

OMM_US:80976909.5

misstatements or omission alleged in the Complaint did not affect the market price of HyreCar securities.

## THIRTEENTH AFFIRMATIVE DEFENSE

(Failure to State a Claim)

Plaintiff fails to state a claim as to which relief can be granted.

## FOURTEENTH AFFIRMATIVE DEFENSE

(Transaction/Loss Causation)

Plaintiff's claims are barred because Plaintiff's alleged losses were not directly or proximately caused by Furnari.

## FIFTEENTH AFFIRMATIVE DEFENSE

(10b5-1 Plan)

Furnari's sale of stock cannot be used as evidence of scienter because it was effectuated pursuant to a contract, instruction, or written plan entered into or adopted in good faith at a time when Furnari was not in possession of material nonpublic information.

## SIXTEENTH AFFIRMATIVE DEFENSE

(Tax Offset)

Any recovery for damages allegedly incurred by Plaintiff and members of the putative class, if any, is subject to offset in an amount including, but not limited to, any tax benefits actually received by Plaintiff or each member of the putative class through its/his/her investments.

## SEVENTEENTH AFFIRMATIVE DEFENSE

(Others At Fault)

Any damages sustained by Plaintiff or any member of the putative class must be reduced and/or barred in proportion to the wrongful or negligent conduct of persons or entities other than Defendants under the principles of equitable allocation, recoupment, set-off, proportionate responsibility, and comparative fault.

DEFENDANT JOSEPH FURNARI'S ANSWER TO SECOND AMENDED COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5

## EIGHTEENTH AFFIRMATIVE DEFENSE

(Proportionate Fault)

Any recovery for damages allegedly incurred by Plaintiff, if any, is limited to the percentage of responsibility of Furnari in proportion to the total fault of all persons, whether or not named as parties to this action, who caused or contributed to Plaintiff's alleged damages, if any, pursuant to the proportionate liability provisions of the Private Securities Litigation Reform Act of 1995, as codified at 15 U.S.C. § 78u-4(f)(3)(A).

## NINETEENTH AFFIRMATIVE DEFENSE

(Reasonable Reliance)

The alleged misrepresentations or omissions were made in good faith, with the absence of fraudulent intent, and in reasonable reliance upon information provided by others upon whom Furnari was entitled to rely.

Furnari lacks sufficient knowledge or information upon which to admit or deny whether there may be additional affirmative defenses available to it.  Furnari reserves the right to plead additional affirmative and other defenses that may become available or apparent during pretrial proceedings in this action and/or required by any amendments to the Complaint.

Dated:  January 9, 2023

By:      /s/ Matthew W. Close
             Matthew W. Close

O'MELVENY & MYERS LLP
MATTHEW W. CLOSE
WAQAS A. AKMAL

Attorneys for Defendant Joseph Furnari

- 40 -

DEFENDANT JOSEPH FURNARI'S
ANSWER TO SECOND AMENDED
COMPLAINT 2:21-CV-06918-FWS-JC

OMM_US:80976909.5