Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
Raymond D. Sulentic (SBN 316913)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Counsel for Lead Plaintiff Turton Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>Defendants. | Case No. 2:21-cv-06918-FWS-JC<br><br>**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Hearing Date: April 18, 2024<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 10D<br>Judge: Fred W. Slaughter |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ................2

    A.    Nature of the Action.....................................................................................2

    B.    Initial Complaint and Lead Appointment Process ...............................3

    C.    Lead Counsel's Investigation and the Amended Complaint ................3

    D.    The Court Granted Defendants' Motion to Dismiss the Amended Complaint and Lead Plaintiff Crafted the Second Amended Complaint That Defeated Defendants' Subsequent Dismissal Motion ...................4

    E.    Lead Plaintiff Initiated Discovery.............................................................5

    F.    Mediation Efforts and Settlement Negotiations.....................................5

III.  STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)....6

IV.   ARGUMENT ...................................................................................................7

    A.    The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors............................7

        1.    Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class................................................................................7

        2.    The Settlement Is the Result of Arms'-Length Negotiations.......8

        3.    The Settlement Is an Excellent Result for the Settlement Class Considering the Benefits of the Settlement and the Risks of Continued Litigation ..................................................................9

            (a)    The Strength of Lead Plaintiff's Case and Risk of Continued Litigation..................................................................9

            (b)    Risks of Maintaining Class Action Status........................12

        4.    Rule 23(e)(2)(C)(ii)-(iv) ............................................................13

        5.    The Settlement Treats All Class Members Equitably Relative To Each Other ................................................................................14

6. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ..............................................................15

B. Class Certification is Appropriate for Settlement Purposes .................18

1. The Settlement Class is Sufficiently Numerous ..........................19

2. Common Questions of Law or Fact Exist .................................20

3. Lead Plaintiff's Claims Are Typical of Those of the Settlement Class .........................................................................................20

4. Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class ........................................................................21

5. The Predominance and Superiority Requirements Are Satisfied ....................................................................................22

6. The Court Should Appoint Lead Counsel as Counsel for the Class ..........................................................................................22

C. The Court Should Approve the Proposed Form and Method of Notice .................................................................................................23

V. PROPOSED SCHEDULE OF EVENTS ........................................................24

VI. CONCLUSION ..............................................................................................25

# **TABLE OF AUTHORITIES**

CASES

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................................19, 22

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013)..........................................................................................21

*Barani v. Wells Fargo Bank, N.A.*,
2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ........................................................23

*Barnes v. AT&T Pension Benefit Plan*,
270 F.R.D. 488 (N.D. Cal. 2010) .........................................................................19

*Baron v. Hyrecar Inc.*,
No. 2:21-CV-06918-FWS-JC, 2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) .......4

*Baron v. HyreCar Inc.*,
No. CV 21-6918 PA (JCX), 2021 WL 8820872 (C.D. Cal. Nov. 19, 2021) ..........3

*Baron v. HyreCar Inc.*,
No. CV 21-6918 PA (JCX), 2022 WL 2102993 (C.D. Cal. Feb. 16, 2022) ...........4

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................................................19

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ......................................................21

*Christine Asia Co. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).......................................................14

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ..................................................................................7

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000) ...........................................................................12

*Gudimetla v. Ambow Educ. Holding*,
  2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) .......................................................16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................*passim*

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ...................................................................19

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .......................................................11

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018).......................................................15

*In re Adobe Sys., Inc. Sec. Litig.*,
  139 F.R.D. 150 (N.D. Cal. 1991) ...................................................................19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014).......................................................23

*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 WL 10212865 (C.D. Cal. July 28, 2014) .......................................................9

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011).......................................................12

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
  2015 WL 224631 (S.D. Cal. Jan. 15, 2015) .......................................................20

*In re China Med. Corp. Sec. Litig.*,
  2013 WL 12126754 (C.D. Cal. May 16, 2013).......................................................9

*In re Cooper Cos. Sec. Litig.*,
  254 F.R.D. 628 (C.D. Cal. 2009).......................................................19

*In re Diamond Foods, Inc.*,
  295 F.R.D. 240 (N.D. Cal. 2013) .......................................................21

*In re Omnivision Tech., Inc.*,
  559 F. Supp. 2d 1035 (N.D. Cal. 2008).......................................................12

MEMORANDUM IN SUPPORT OF MOTION

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ................................................................................ 14

*In re Verisign, Inc. Sec. Litig.*,
    2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ....................................................... 19

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) .................................................................. 10

*Jaffe v. Morgan Stanley & Co., Inc.*,
    2008 WL 346417 (N.D. Cal. Feb. 7, 2008) .......................................................... 18

*Knapp v. Art.com, Inc.*,
    283 F. Supp. 3d 823 (N.D. Cal. 2017) ................................................................. 10

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................... 8, 21

*Officers for Justice v. Civ. Serv. Comm.*,
    688 F.2d 615 (N.D. Cal. 1982) ........................................................................... 16

*Persky v. Turley*,
    1991 WL 329564 (D. Ariz. Dec. 20, 1991) ......................................................... 22

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .......................................................................... 12

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................... 9

*Siemer v. Assocs. First Cap. Corp.*,
    2001 WL 35948712 (D. Ariz. March 30, 2001) .................................................. 20

*Stewart v. Applied Materials, Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ..................................................... 17

*Vaccaro v. New Source Energy Partners L.P.*,
    2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..................................................... 17

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ............................................................................ 18

v
MEMORANDUM IN SUPPORT OF MOTION

*Wong v. Arlo Techs., Inc.,*
   2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) .................................................7, 8, 9

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) .......................................................14

STATUTES

15 U.S.C. §§ 78j(b) and 78t(a) .................................................................................2

RULES

Fed. R. Civ. P. 23...........................................................................................*passim*

REGULATIONS

17 C.F.R. § 240.10b-5 ...............................................................................................2

MEMORANDUM IN SUPPORT OF MOTION

# I.     PRELIMINARY STATEMENT

The Parties[1] have reached a proposed Settlement of the above-captioned action (the "Action") that resolves all claims against Defendants in exchange for a non-reversionary cash payment of $1,900,000.   Lead Plaintiff Turton Inc. ("Lead Plaintiff") submits this Settlement represents an excellent result for the Settlement Class and ultimately should be approved by this Court, especially given the risks, costs, and delays of continued litigation.

The Settlement was reached after contested litigation, during which  Lead Counsel, *inter alia*: (i) conducted a comprehensive investigation into the alleged claims asserted against Defendants, which was assisted by an investigator and by consultations with an accounting expert, and an expert in market efficiency, loss causation, and damages; (ii) drafted a 75-page Amended Complaint; (iii) fully briefed Defendants' motion to dismiss the Amended Complaint, which the Court granted; (iv) drafted the 53-page, 200 paragraph Second Amended Complaint; (v) fully briefed and overcame Defendants' motion to dismiss the Second Amended Complaint in its entirety; (vi) initiated discovery of Defendants and third parties, which included propounding comprehensive requests for production, reviewing documents produced by a third-party, evaluating parameters for Defendants to search their electronically stored information, and drafting a confidentiality order; (vii) participated in arms'-length negotiations between the Parties, that included the drafting of a substantial mediation statement and a virtual mediation session with Jed D. Melnick, Esq. of JAMS on September 27, 2023, an experienced and highly respected mediator of complex class actions; (viii) engaged with Defendants and the mediator in months of

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated March 20, 2024 (the "Stipulation").  For the avoidance of doubt, HyreCar is not a party to this Settlement. A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Ex Kano S. Sams II in Support of Motion for Preliminary Approval of Class Action Settlement (the "Sams Decl.").

additional negotiations, which resulted in the acceptance of a mediator's recommendation to settle; and (ix) engaged in extensive negotiations related to the Stipulation and its exhibits prior to its execution.  Thus, the $1,900,000 Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of a well-respected mediator, and with sufficient information to evaluate the Settlement considering the risks and uncertainties of continued litigation, especially considering HyreCar's bankruptcy filing on February 24, 2023, which posed significant obstacles to recovery for the Settlement Class.

As set forth herein, the Settlement warrants preliminary approval by this Court so that notice can be distributed to members of the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

## II.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A.    Nature of the Action

Lead Plaintiff asserts claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against Defendants.

Lead Plaintiff alleges that Defendants' fraud stemmed from understating HyreCar's insurance reserve expense and liability, which, in turn, overstated HyreCar's earnings. Lead Plaintiff contends this expense suppression scheme was enabled by close coordination between Defendants and a conflicted third party. Following Defendants' false statements, Lead Plaintiff alleges, HyreCar's stock skyrocketed, rising from $8.93 per share when the Class Period began to as high as $24.21. During this short window, when the stock was artificially inflated, Lead Plaintiff asserts that the Individual Defendants cashed out through perfectly timed stock sales.  Lead Plaintiff alleges further that when the truth was finally revealed, the Company's stock cratered over 50% in a day, to close at $9.85 per share on August

11, 2021. Defendants deny these allegations, and the Settlement, as proposed, is entered into by the Individual Defendants without any admission of wrongdoing.

**B.    Initial Complaint and Lead Appointment Process**

On August 27, 2021, a class action complaint was filed in the United States District Court for the Central District of California ("the Court"), styled *Ivan Baron v. HyreCar Inc., et al.*, 2:21-cv-06918. ECF No. 1.

On October 25, 2021, Turton Inc. moved to be appointed lead plaintiff. ECF Nos. 42-44. By Order dated November 19, 2021, the Court appointed Turton Inc. as Lead Plaintiff and approved Lead Plaintiff's selection of Glancy Prongay & Murray LLP as Lead Counsel for the putative class. ECF No. 60; *Baron v. HyreCar Inc.*, No. CV 21-6918 PA (JCX), 2021 WL 8820872 (C.D. Cal. Nov. 19, 2021).

**C.    Lead Counsel's Investigation and the Amended Complaint**

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) HyreCar's filings with the SEC, (b) public reports, press releases, blog posts, and news articles concerning HyreCar, (c) HyreCar's investor call transcripts, and (d) court filings and other publicly available material related to HyreCar, including HyreCar's filings in its bankruptcy proceeding; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former HyreCar employees and other sources of relevant information. Lead Counsel also consulted with an accounting expert and an expert in loss causation, damages and market efficiency.

On December 3, 2021, Lead Plaintiff filed and served the Amended Complaint based on the foregoing investigation. ECF No. 66. Among other things, the Amended Complaint alleged that Defendants made materially false and misleading statements by understating HyreCar's insurance reserve expense and liability, which, in turn, overstated HyreCar's earnings. *Id.* Lead Plaintiff alleged that this expense suppression scheme was enabled by close coordination between Defendants and a

conflicted third party. *Id*. According to the Amended Complaint, the alleged misrepresentations proximately caused class members' losses when the truth was revealed. *Id*.

**D.** **The Court Granted Defendants' Motion to Dismiss the Amended Complaint and Lead Plaintiff Crafted the Second Amended Complaint That Defeated Defendants' Subsequent Dismissal Motion**

On December 27, 2021, Defendants moved to dismiss the Amended Complaint. ECF No. 67. On January 10, 2022, Lead Plaintiff opposed Defendants' motion to dismiss (ECF No. 70) and, on January 18, 2022, Defendants served their reply papers (ECF No. 72). On January 27, 2022, Judge Percy Anderson notified the Parties that the Court would take Defendants' motion to dismiss under advisement and vacated the hearing on Defendants' motion. ECF No. 73. On February 16, 2022, the Court granted Defendants' motion to dismiss in a written opinion. ECF No. 74; *Baron v. HyreCar Inc.*, No. CV 21-6918 PA (JCX), 2022 WL 2102993 (C.D. Cal. Feb. 16, 2022).

Following dismissal of the Amended Complaint, Lead Plaintiff sought to address the perceived pleading deficiencies identified by the Court. To that end, following additional investigation and analysis, Lead Plaintiff filed its 53-page (200-paragraph) Second Amended Complaint ("SAC") on March 21, 2022. ECF No. 75. On April 4, 2022, Defendants moved to dismiss the SAC (ECF No. 76). Lead Plaintiff filed its opposition on April 18, 2022 (ECF No. 77), and on April 25, 2022, Defendants filed their reply. ECF No. 81. On April 20, 2022, the Action was reassigned from Judge Percy Anderson to Judge Fred W. Slaughter. ECF No. 80.

On October 18, 2022, Judge Slaughter determined that the Court could rule upon Defendants' motion to dismiss without oral argument and vacated the hearing on Defendants' motion. ECF No. 91. On December 5, 2022, the Court denied Defendants' motion to dismiss in its entirety. ECF No. 94; *Baron v. Hyrecar Inc.*, No. 2:21-CV-06918-FWS-JC, 2022 WL 17413562 (C.D. Cal. Dec. 5, 2022).

Also on December 5, 2022, HyreCar announced the receipt of a grand jury subpoena in connection with a criminal investigation being conducted by the U.S. Attorney's Office for the Central District of California, and the Department of Justice's Criminal Fraud Section. According to HyreCar, the criminal investigation focused on "among other things . . . certain trades of the Company's company stock by Company insiders during 2021, including [CEO] Joseph Furnari and two other members of the Company's current Board of Directors, as well as Michael Furnari, and the Company's former Chief Financial Officer." HyreCar also announced its receipt of a subpoena from the SEC "concerning the trading of the Company's stock."

### E.    Lead Plaintiff Initiated Discovery

On January 5, 2023, the Parties submitted a Joint Report to the Court pursuant to Rule 26(f) of the Federal Rules of Civil Procedure. ECF No. 102. Defendants answered the SAC on January 9, 2023. ECF Nos. 105-07. On February 8, 2023, the Parties filed a Joint Stipulated Protective Order (ECF No. 109), which the Court entered on February 13, 2023 (ECF No. 110). Following the denial of Defendants' motion to dismiss Plaintiff's SAC, and negotiation over the scope and manner of document production and the treatment of ESI, the Parties began discovery pursuant to the Court's Protective Order.

On March 2, 2023, HyreCar filed a Notice of Bankruptcy Filing with the Court, informing the Court and the Parties that the Company commenced a Chapter 11 bankruptcy proceeding on February 24, 2023. ECF No. 111. On March 8, 2023, the Court issued an Order Re: Stay Pending Bankruptcy Proceeding in which the Court stated that "all further proceedings in this action are STAYED." ECF No. 112.

### F.    Mediation Efforts and Settlement Negotiations

Subsequently, the Parties discussed the prospect of mediation. Lead Plaintiff also drafted and considered filing a motion for clarification with respect to the Court's Order regarding the stay and its impact upon the Individual Defendants. The Parties, however, eventually agreed to engage in mediation.

On September 27, 2023, the Parties held a virtual mediation session that was overseen by a well-respected mediator of complex actions, Jed Melnick, Esq. of JAMS.  No agreement was reached during the mediation, but negotiations of a potential settlement, facilitated by Mr. Melnick, continued.  These negotiations culminated in a recommendation by Mr. Melnick that the Parties settle the Action for a $1.9 million cash payment to the Settlement Class.  On November 2, 2023, the Parties accepted Mr. Melnick's recommendation.

## III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval and be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.*  Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;
(B)    was the proposal negotiated at arm's length;
(C)    is the relief provided for the class adequate, taking into account:
(i)    the costs, risks, and delay of trial and appeal;
(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
(iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitably relative to each other.

These new factors are not exclusive, nor intended to displace any factor previously adopted by the courts.  *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).  The Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are, therefore, still relevant:

6
MEMORANDUM IN SUPPORT OF MOTION

(1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[2]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").[3] As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV. ARGUMENT

### A. The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors

#### 1. Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and it has no antagonistic interests. Rather, Lead Plaintiff's interest in obtaining the largest

---

[2] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class.

[3] Unless otherwise indicated, all emphasis is added and citations and quotations are omitted.

possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Lead Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for itself and the Settlement Class.

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* ECF No. 44-5 (GPM firm résumé). Moreover, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by, among other things, conducting an extensive investigation of the claims through a detailed review of publicly available documents about the Company, as well as contacting former HyreCar employees, drafting the detailed Amended Complaint and SAC, fully briefing Defendants' two motions to dismiss, initiating discovery, and obtaining an $1.9 million Settlement for the benefit of the Settlement Class. *See PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

**2.    The Settlement Is the Result of Arms'-Length Negotiations**

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[4]  The Ninth Circuit, as well as courts in this District, "put

---

[4] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Here, as detailed above, the Parties participated in a mediation session with Mr. Melnick in September 2023. The mediation negotiations continued and, months later, culminated in a mediator's proposal that the Action be settled for $1.9 million. The arm's-length nature of the extensive settlement negotiations and the involvement of a mediator with substantial experience mediating securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *7 (C.D. Cal. May 16, 2013) (finding the settlement, which was reached through mediation with mediator Mr. Melnick, weighed in favor of preliminary approval); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (approving settlement reached with the assistance of mediator, Mr. Melnick).

### 3. The Settlement Is an Excellent Result for the Settlement Class Considering the Benefits of the Settlement and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[5] As discussed below, each of these factors supports the Settlement's approval.

#### (a) The Strength of Lead Plaintiff's Case and Risk of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and

---

[5] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

Lead Plaintiff and Lead Counsel recognize that the risks of continued litigation were considerable. Assuming, *arguendo*, that this Action were to proceed through summary judgment and trial, in order to defeat a summary judgment motion and to prevail at trial, Lead Plaintiff and Lead Counsel would have to demonstrate, *inter alia*, that: (1) the statements and omissions were false and misleading; (2) Defendants knew or were deliberately reckless in not knowing their statements and omissions were false and misleading at the time made; and (3) that those statements and omissions were corrected and caused recoverable damages for the Settlement Class. Lead Plaintiff anticipates Defendants would present strong arguments challenging Lead Plaintiff's pleading and proof on all those elements in their expected motion(s) for summary judgment and/or at trial.

The motion to dismiss process highlighted many of the risks of the Action, including the potential to recover nothing. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("[t]he court needs to look no further than its own order dismissing the . . . litigation to assess the risks involved."). Indeed, in the Court's order on Defendants' first motion to dismiss, the Court ruled that Lead Plaintiff had not sufficiently alleged falsity under the PSLRA and dismissed the Amended Complaint. Specifically, Judge Anderson held that Lead Plaintiff "appears to conflate the pace at which claims were paid with the accuracy of the insurance reserves periodically set and disclosed by HyreCar." ECF No. 74. The Court held further that "the speed with which claims were paid is not the same as setting reserves for submitted claims and anticipating the number and value of future claims." *Id*. The Court reasoned that "[n]othing alleged in the 1st AC adequately links these two distinct concepts or otherwise attempts to quantify the magnitude by

which HyreCar and its executives might have knowingly misstated the insurance reserves or the risks posed by some unknown portion of the pool of drivers." *Id.*

Moreover, the Court held that "HyreCar repeatedly disclosed both the difficulty it faced in setting its insurance reserves and, as ultimately happened, the risk that actual claims might exceed the insurance reserves." *Id.* As a result, Judge Anderson ruled that "[f]or these reasons, and in light of these disclosures for the forward-looking statements on which the 1st AC bases its claims, as well as for most of the reasons explained in Defendants' Motion to Dismiss, none of the 1st AC's theories concerning allegedly material misrepresentations or omissions, whether viewed individually or collectively, alleges sufficient well-pleaded facts to satisfy the PSLRA's pleading standard." *Id.* Thus, had Lead Plaintiff not overcome these challenges with its SAC, there was a substantial risk that the Court would have found, as it previously did, that the complaint did not satisfy the pleading standards established by the PSLRA. Had that occurred, Lead Plaintiff and the Settlement Class would have recovered nothing.

Additionally, Defendants argued in their motions to dismiss – and would undoubtedly argue in a motion for summary judgment or at trial – that Lead Plaintiff failed to satisfy the applicable elements under the federal securities laws. Specifically, Defendants argued – and would have continued to argue that, among other things: (1) Lead Plaintiff would have been unable to prove that Defendants made material misstatements; (2) that Lead Plaintiff would not have been able to prove scienter; and (3) that Lead Plaintiff would not have survived summary judgment or trial on the element of loss causation. In particular, proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See, e.g., Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016).

These risks, moreover, were magnified by HyreCar's bankruptcy filing. The bankruptcy added another layer of complexity, created substantial obstacles for discovery, and posed significant difficulties for recovery, particularly where the only

viable source of recovery – HyreCar's $10 million D&O insurance – was rapidly depleting because of the costs associated with defending not only this Action, but also the proceedings brought by the DOJ and SEC. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (finding "[t]he risk of nonpayment in this case was acute" where, *inter alia*, the corporate defendant "lacked significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained" and there was "the risk that the wasting policy would run out by the time a trial was over").

Finally, even if Lead Plaintiff prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years, including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari to the Supreme Court, or both. During this time on potential appeals, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.[6]

### (b)    Risks of Maintaining Class Action Status

While Lead Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. IV.B, *infra*, the class has not yet been certified, and Lead Plaintiff is aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there

---

[6] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict for plaintiffs on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). Indeed, Defendants undoubtedly would have challenged class certification if the case reached that stage. Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement.

### 4.    Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate. FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, Strategic Claims Services, the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[7]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice and Summary Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

reasonable considering the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of HyreCar common stock traded during the Settlement Class Period request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

### 5. The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold

shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period.").

### 6.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[8]  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**<u>The Amount Offered in Settlement:</u>** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018).  The $1.9 million Settlement Amount is within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.  Pursuant to the proposed Plan of Allocation, the estimated average recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, will be approximately $0.20 per share.  *See* Stipulation Ex. A-1 (the "Notice"), at ¶3.

The $1.9 million recovery represents approximately 2% of estimated maximum damages of approximately $96 million under the proposed Plan of Allocation in this Action—Lead Plaintiff's best-case scenario—assuming that: (i) the Court certified the same class period as the Settlement Class Period; (ii) Lead Plaintiff survived summary judgment on all elements and also convinced a jury that liability was proven; and (iii) the trier of fact accepted Lead Plaintiff's damages theory.

This recovery is not atypical for a securities class action.  *See, e.g.*, Sams Decl., Ex. 2 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), at p.24 & 25

---

[8] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

MEMORANDUM IN SUPPORT OF MOTION

(Fig. 22) (finding median recovery for all securities class actions since 2021 to be 1.8% and 3.8% for securities class actions with estimated damages between $50-$100 million that were filed and settled between January 2014-December 2023)).

Additionally, the only viable source of recovery – HyreCar's $10 million D&O insurance – was quickly eroding because of the costs associated with defending not only this Action, but also the proceedings brought by the DOJ and SEC, which renders the Settlement even more fair and reasonable under the circumstances. *See Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) ("Considering the risks inherent in this litigation and [Defendant's] financial situation, this factor weighs in favor of Final Approval.")  And, of course, less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether, and each element at issue was strongly contested by Defendants.

In the light of the risks of continued litigation, and the acute lack of resources to fund a larger settlement, the percentage of recovery is reasonable.  Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

**The Stage of the Proceedings and Extent of Discovery Completed:** The fact that formal discovery was in its early stages does not weigh against preliminary approval.  *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").  Here, Lead Plaintiff conducted an extensive investigation of HyreCar (including contacting former employees), analyzed numerous publicly available documents, initiated discovery of Defendants and third parties, received and reviewed third-party documents, and monitored HyreCar's bankruptcy proceeding.  Moreover, Lead Plaintiff engaged in

substantial briefing on two motions to dismiss, and the Parties exchanged detailed mediation briefs and participated in a mediation process in conjunction with an experienced mediator. *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at \*5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry. The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Therefore, Lead Plaintiff had a thorough understanding of the strengths and risks of this Action.

**The Experience and Views of Counsel:**  Courts also give weight to the opinion of experienced and informed counsel supporting the settlement. *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at \*6 (N.D. Cal. Aug. 25, 2017).  Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action. *See* ECF No. 44-5 (GPM firm résumé).  Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval.  Defendants have been vigorously represented by O'Melveny & Myers LLP and Davis Wright Tremaine LLP during the Action and settlement negotiations.[9]  Counsel for Defendants are equally well-informed regarding the case, and their representation of Defendants was just as rigorous as Lead Counsel's representation of the Settlement Class.  Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, preliminary approval is warranted.

---

[9] Additionally, HyreCar was represented by Latham & Watkins LLP before it filed for bankruptcy, and Latham & Watkins LLP represented HyreCar, Joseph Furnari, and Robert Scott Brogi before Furnari and Brogi obtained separate counsel.

**B.      Class Certification is Appropriate for Settlement Purposes**

At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement on behalf of the Settlement Class. Thus, it is appropriate for the Court to consider, at the preliminary approval stage and solely for purpose of the Settlement, whether the certification of the Settlement Class appears to be appropriate. *Hanlon*, 150 F.3d at 1019. Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010). In addition, the court must find that at least one of the three conditions of Rule 23(b) is satisfied. *Id.* Under subsection (b)(3), the Court must find the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

The proposed Settlement Class consists of "all persons and entities that purchased or otherwise acquired the publicly traded common stock of HyreCar Inc. from May 13, 2021 through August 10, 2021, both dates inclusive (the "Settlement Class Period"), and were damaged thereby." Stipulation, ¶1(ss).[10] Lead Plaintiff

---

[10] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer and/or director of HyreCar during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of HyreCar; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court. For the avoidance of doubt, "affiliates" are persons or entities that directly, or indirectly (footnote continued)

believes this Action satisfies all the factors for certification of a Settlement Class.[11] The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud actions. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[12]

### 1.      The Settlement Class is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is impractical to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Id.* Lead Counsel estimates that there were hundreds, if not thousands, of purchasers of HyreCar common stock during the Settlement Class Period. The forty person threshold presumption of impracticability of joinder is thus easily exceeded. *See, e.g.*, *Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.").

---

through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants.

[11] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement‑only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

[12] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("Rule 23 is . . . liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing."); *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

MEMORANDUM IN SUPPORT OF MOTION

### 2.    Common Questions of Law or Fact Exist

To maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if there is one issue common to the class members.  *Hanlon*, 150 F.3d at 1019.  Generally, courts have liberally construed the commonality prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class."  *Siemer v. Assocs. First Cap. Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001).  Not all questions of fact and law need be common to satisfy Rule 23(a)(2). *Hanlon*, 150 F.3d at 1019.  This factor is "construed permissively, and '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" *Id*. at 1019.  Rule 23(a)(2) is satisfied here.  Lead Plaintiff's claims that the Individual Defendants violated the federal securities laws by omitting and/or misrepresenting material facts about HyreCar's business, operations, and prospects in publicly disseminated statements during the Settlement Class Period unquestionably raise issues of common interest to the Settlement Class.

### 3.    Lead Plaintiff's Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Lead Plaintiff alleges that it purchased HyreCar common stock during the Settlement Class Period and was subsequently damaged due to Defendants' conduct.  The other members of the Settlement Class were allegedly affected in the same way.

Similarly, the interest of Lead Plaintiff in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members.  Under the proposed Plan of Allocation, Lead Plaintiff will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class.  Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here,

Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### 4. Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also factors in competency and conflicts of class counsel." *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

As explained in Sec. IV.A.1, *supra*, Lead Plaintiff and Lead Counsel are adequate representatives. First, Lead Plaintiff and Settlement Class Members purchased HyreCar common stock during the Settlement Class Period and were all injured by Defendants' allegedly materially false statements. If Lead Plaintiff were to prove its claims at trial, it would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations). Thus, the interests of Lead Plaintiff and other members of the Settlement Class are aligned, as they share the common objective of maximizing their recovery from Defendants. *PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Second, Lead Plaintiff has demonstrated its commitment to this litigation by retaining qualified counsel. Lead Counsel has extensive experience and expertise in litigating securities class actions. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding "Lead Counsel [including GPM]

has also adequately represented the class.  [GPM] has significant experience in securities class action lawsuits.").

### 5. The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members.  Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions to recover individual losses sustained because of Defendants' alleged violations of the securities laws. *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]").  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In securities claims, moreover, it is common for factual variations among shareholders related to stock transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common questions of fact related to misrepresentation claims "will predominate over the individual issues." *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

### 6. The Court Should Appoint Lead Counsel as Counsel for the Class

A court that certifies a class must also appoint class counsel.  *See* FED. R. CIV. P. 23(g).  The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in

MEMORANDUM IN SUPPORT OF MOTION

the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in November 2021 (ECF No. 60), and since that time the firm has devoted substantial time, effort, and resources to identifying, investigating, litigating, and settling the claims in this matter. Moreover, as explained in Sec. IV.A.1, *supra*, GPM has substantial experience prosecuting securities class actions. *See* ECF No. 44-5 (GPM firm résumé). For these reasons, among others, Lead Plaintiff respectfully requests that the Court appoint GPM to serve as Class Counsel.

## C. The Court Should Approve the Proposed Form and Method of Notice

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail the Postcard (Exhibit 4 to the Stipulation) and/or email a link to the Notice and Claim Form, to all Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the Postcard Notice, copies of the Notice and the Claim Form (Exhibits A-1 and A-2 to the Stipulation) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims can be submitted online. Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form. No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will be published in the national edition of *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient. In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v.*

*Wells Fargo Bank, N.A.*, 2014 WL 1389329, at \*10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).

## V.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for submitting claims or for opting out of, or objecting to, the Settlement.  The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

| Event | Proposed Timing |
| --- | --- |
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(a)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(c)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶13, 16) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Lead Plaintiff respectfully requests that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, Lead Plaintiff requests that the Court consider this motion for preliminary approval on the papers at this time.

## VI.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

DATED:  March 21, 2024                    **GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Ex Kano S. Sams II*
Robert V. Prongay
Ex Kano S. Sams II
Raymond D. Sulentic
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Lead Plaintiff Turton Inc.*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On March 21, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on March 21, 2024.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

MEMORANDUM IN SUPPORT OF MOTION