UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE FRED W. SLAUGHTER, JUDGE PRESIDING

IVAN BARON, et al.,                )
                                   )
                                   )
                                   )
                Plaintiffs,        )
                                   )
                                   )
                                   )
        Vs.                        )   No. CV21-06918-FWS
                                   )
                                   )
                                   )
HYRECAR, INC.,                     )
                                   )
                                   )
                                   )
                Defendants.        )
                                   )
_____   )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Motion Hearing

SANTA ANA, CALIFORNIA

THURSDAY, APRIL 18, 2024

MIRIAM V. BAIRD, CSR 11893, CCRA
OFFICIAL U.S. DISTRICT COURT REPORTER
350 WEST FIRST STREET
FOURTH FLOOR
LOS ANGELES, CALIFORNIA 90012
MVB11893@aol.com

**A P P E A R A N C E S**

**ON BEHALF OF THE PLAINTIFFS,**       GLANCY PRONGAY AND MURRAY,
**IVAN BARON:**                        LLP
                                       BY:  EX KANO S. SAMS, II
                                       1925 CENTURY PARK EAST
                                       SUITE 2100
                                       LOS ANGELES, CA 90067


**ON BEHALF OF THE DEFENDANTS,**       O'MELVENY & MYERS, LLP
**HYRECAR, INC.:**                     BY:  MATTHEW CLOSE
                                       400 SOUTH HOPE STREET
                                       18TH FLOOR
                                       LOS ANGELES, CA 90071

SANTA ANA, CALIFORNIA; THURSDAY, APRIL 18, 2024; 10:00 A.M.

---

THE CLERK:  Calling CV21-06918-FWS Ivan Baron v. HyreCar, Inc., et al.

Counsel, please state your appearances for the record.

MR. SAMS:  Good morning, Your Honor.  Ex Kano Sams on behalf of plaintiff.

MR. SULENTIC:  Ray Sulentic also on behalf of plaintiffs.

THE COURT:  Thank you to plaintiffs' counsel.

MR. CLOSE:  Matthew Close for defendant Joseph Furnari.

MR. MOON:  James Moon of Davis Wright Tremaine on behalf of defendant Robert Scott Brogi.

THE COURT:  Good morning to everyone.  I appreciate everyone being here.  We're here for the settlement issue that is before the Court.  The Court has a few questions.  I wanted to thank the parties for their briefing.  The Court has some surgical questions.  I'd ask you just to answer the question posed.  The Court would remind the parties that a question is just a question.  It's not a loaded question.

So if I ask a question, do not assume that I am either a proponent of the question and what it suggests or

not a proponent.  I'm just trying to get information to make a record.  Oftentimes I start asking questions, I'll give an example.  What color is your house?  Do you not like brown? What is going on with brown?  It's brown.  Very simply.  The Court is not trying to do anything more than just get questions answered.  So thank you.

The first question is that lead plaintiff contends that the proposed settlement is appropriate under Federal Rule of Civil Procedure 23(e) because the inherent risk of maintaining class action status throughout future litigation. At the same time, lead plaintiff also alleges that defendants undoubtedly would have challenged class certification if this case reached that stage.  That is at pages 12 to 13 of the memorandum in support of the proposed settlement.

What are the complexities of the proposed class that would make it ripe for challenge or unable to maintain throughout litigation?

First to plaintiff.  I'll have defense just respond.

MR. SAMS:  Yes, Your Honor.  Typically, in our securities cases, defense counsel does challenge class certification.  It may be based on a variety of reasons.  For example, defense counsel may assert that as stocks trade -- securities did not trade in an efficient market.  So typically the parties would hire experts to address that

issue.

Another issue they may raise is whether or not the lead plaintiff is adequate.  They may take depositions to address that issue.  So we would expect if the case were to go forward, that defense counsel and defendants would raise those type of issues and others to challenge any motion for class certification that plaintiff would bring.

With respect to maintaining the class, there have been cases and -- I believe we cited some in our brief that have indicated that even if the event that a class is certified, there is a potential risk that the Court or an appellate court may determine that the class for some reason may not be appropriate to continue as a class.

So those are just a few of the risks that plaintiff would encounter if the case were to continue in litigation.

THE COURT:  Thank you.  I'll turn to the defense, anything else you'd like to add on that?

MR. CLOSE:  Nothing to add.  I would certainly agree.  Particularly, agree, this was a very, very small cap company, which in my experience, lends itself to the second argument Mr. Sams was referring to that the -- wasn't really traded in an efficient market because it had such a small flow.  Otherwise, I agree with what was said.  I wanted to point out I think, particularly, this issue of the efficiency of the market.  It would be plaintiff's burden.  In my

experience with a company like this, it -- it is potentially a potent argument for the defense.

THE COURT:  Thank you.  I'll move to the second question.  Quote, the amount offered in settlement is generally considered to be the most important consideration of any class settlement, end quote.

That comes from Grady, G-r-a-d-y, versus RCM Tech, Incorporated 671 F. Supp. 3d 1065 at 1075, a Central District of California case from 2023.  The Court notes that in 2022, the average settlement as a percentage of total calculated damages in class actions was found to be 5.4 percent.  That's coming from In re Splunk, S-p-l-u-n-k, Incorporated Securities Litigation 2024 Westlaw 923, 777 at star six, a Northern District of California case from 2024.

Moreover, in 2021, this Court recognized that, quote, 7.8 percent of the class's maximum potential aggregate damages... is similar to the percentage recovered in other court approved security settlements, end quote.  That comes from In re Snap Incorporated Securities Litigation, 2021 Westlaw 667590 at star one, a Central District of California case from February 18, 2021.

In this case, the Court observes -- you can correct me if I'm wrong -- that plaintiff requests approximately two percent of the estimated maximum $96 million damages.  Please describe to the Court, plaintiff, how this offer, which is at

about two percent, is compared to the amount typically awarded within the Circuit and any reasons why?  Again, the Court recognizes every court is different.  Different things happen in the cases.  Again, we need to have a record as to this.  I need to have an understanding for the Court to be able to make its ruling.

MR. SAMS:  Yes, Your Honor.  I'm happy to address that point.

I'm not sure of the factors that were considered in some of these statistics in the cases that the Court provided with respect to the percentage of recovery in those particular instances; however, we have included information in support of our motion that was done by NERA, which is a company that specializes in analyzing settlements in securities cases.  And based on that information, we indicate on page 15 of our motion that the recovery in this case is not atypical of similar securities class actions.  That's found in Exhibit 2 of our brief.  It's an article called, Recent Trends in Securities Class Act Litigation.  That found that the median recovery for all securities class actions since 2021, to be 1.8 percent and 3. -- 1.8 percent and 3.8 percent for securities class actions with estimated damages between 50 and $100 million.

So with respect to the cases that the Court cited, I'm not sure of the damages that were involved in those

cases.  Typically in securities cases, the percentage of recovery varies depending on the actual damages in the case. So we -- we provided information showing that for estimated damages that were applied here of 96 million, within that range, based on the information we provided to the Court, the amount of recovery is typical for this type of securities case.

THE COURT:  Thank you.  Anything further from the defense?

MR. CLOSE:  Matthew Close, for the record.  I would add, Your Honor, the issuer is bankrupt.  So I think the observable facts about this case which suggest a lower range settlement, without conceding it is, because I heard Mr. Sams' comment, because unlike the majority of these cases, you don't have a solvent public company that can backstop insurance.  Also in this case, as I think is laid out in the briefing -- Your Honor may get there -- there is not a lot of insurance.  So there's a, what I refer to as getting blood out of stone problem in this case, which, again, I think without conceding, that would support this kind of fact pattern sitting at the lower end of any range, one identified for settlement percentage just because of these observable facts that kind of suggest there's not -- even if there was a big verdict at the end, it is completely uncollectible in this context.

THE COURT:  Thank you.  At this point I want to tell the parties thank you for being so responsive to the Court's questions.  The Court greatly appreciates that. Thank you.

I'll ask my next question.  Has the notice of proposed settlement been provided to the settlement class yet?

MR. SAMS:  Not yet, Your Honor.

THE COURT:  Okay.  Are counsel then prepared when it is provided to provide the Court with information regarding the reaction of the settlement class to the proposed settlement?

MR. SAMS:  Yes, Your Honor.  Typically, what is done is that claims administrator will send out notice.  We have provided the exemplars for that notice that would go out to the class.  At the time or shortly before the final approval hearing, we would provide an update to the Court on the reaction of the class up to that date to provide the Court some guidance on how the class members have reacted to that notice.

THE COURT:  Thank you.  Anything further from the defense on that?

MR. CLOSE:  Not from me, Your Honor.

THE COURT:  Thank you.

Next question.  While courts in this circuit have

awarded up to 33.5 percent in attorneys' fees for -- for 33.5 percent of the attorneys' fees of the settlement fund for cases with the requisite complexity, the Ninth Circuit has, quote, generally held, end quote, a fee award within 25 percent of the total recovery as a, quote, benchmark, end quote, for, quote, reasonable, end quote, fee awards in class action settlements. See, for example, In re Easysaver Rewards Litigation 906 F.3d 747 at 758, a Ninth Circuit case from 2018, as well as In re Pacific Enterprises Securities Litigation, 47 F.3d 373 at 379, a Ninth Circuit case from 1995.

To the plaintiff, what is counsel's justification and evidence and any other material you'd like to provide to the Court for requesting an amount the 25 percent benchmark for reasonable fee awards in this particular class action settlement? Thank you.

MR. SAMS: Thank you, Your Honor. With respect to Your Honor's question, I believe some of the factors that Mr. Close mentioned would justify a higher award here.

THE COURT: Just so it's clear --

MR. SAMS: Yes.

THE COURT: Even if it's mentioned, let's have them all laid out for a very clear record.

MR. SAMS: Yes. Yes. For example, the company is bankrupt. So there was a higher risk that plaintiffs'

counsel was taking on in pursuing this case and continuing in this case in light of the fact that a recovery was less likely here.

Also, as Mr. Close also mentioned, the limited amount of insurance also made it a more difficult situation for a recovery in this case.  In conjunction with a motion for final approval, we will also submit a motion for attorneys' fees that will further lay out all of the risk that counsel endeavored -- encountered in this case.  The justification for that request.  I would note for the record, Your Honor, there are many cases in this district that have held that one third of the recovery is an appropriate amount for attorneys' fees in this situation.

THE COURT:  Okay.  What is your best case or argument that a case having risk yields a higher percentage as opposed to complexity where it would be we had to do this extra work.  We had to do depositions here.  We had to hire these experts, et cetera.  So, again, what is your best argument and case that risk equals complexity?

MR. SAMS:  Well, would I say to that point, Your Honor, we are working on a contingent-fee basis.  So all of the work and effort that we have put into the case has been uncompensated to this point.

There was real risk that this case would not yield any recovery at all.  I'm sure Your Honor notes that the

initial complaint in this case was dismissed before we were given leave to amend.  Had we not been able to overcome that dismissal, the class and plaintiffs' counsel would have recovered nothing.

So I think that shows and demonstrates that the amount that we would potentially seek on one third of the recovery here would be appropriate not only for that factor, but other factors and for the cases that we'll provide to the Court at a -- in a motion for attorneys' fees.

THE COURT:  All right.  But, again, just so I can make sure I understand, a lot your argument is that it's based on risk.  Was there any complexity to this case?  Did you have to do certain things in particular that made this a more complex case?  I do understand that you've had to do an amended complaint.  I understand that there is a chance of no recovery.  There's no reimbursement.  I'm not sure if that by definition equals complexity?

MR. SAMS:  Yes, Your Honor.  I understand your question.  I think the bankruptcy situation added a layer of complexity in this case.  As part of that situation and that occurrence, we had consultants that we spoke with regarding bankruptcy issues to determine the best path forward for the class members in light of the bankruptcy.

We had to analyze and deal with issues related to the bankruptcy as it applied to the securities class.  So

that was one factor that definitely added a greater amount of complexity to this case.

THE COURT:  Thank you.  Any thoughts that the defense has on that issue?

MR. CLOSE:  Your Honor, at the risk of debating why the house is blue, I just wanted to make sure there's no understanding that the motion for before the Court today does not ask the Court to make any ruling on the quantum of attorneys' fees.  That's an issue that I understand and under the agreement would come at the final approval hearing.

So I just didn't want to -- I want to make sure we were all level set on that.

THE COURT:  The Court understands that.  As part of looking at the fairness of this, the Court, under the applicable law, does look at certain things, including this. Understanding where we'll go to eventually.

MR. CLOSE:  Your Honor, I apologize, if I implied.

THE COURT:  Not at all.  So the record is clear, very positive here.  This is a great hearing.  So, again, the Court, I think, has pretty thick skin.  I didn't think anything negative from what you said.  I sit there and smile right now.  You said that there -- there was no need to say that.  This is great conversation.  This is called creating the record.

MR. CLOSE:  So in that spirit, my experience is

that the notice that they're asking you to approve today does tell the class that they're going to be asking for a third. So that the class if they want to object to that aspect or any other aspect during that objection period, knows that the class lawyer -- that's kind of my experience why you see the third in the notice and in the motion, because they want to draw -- they want to see if people are objecting to that.

THE COURT:  Understood.  Now, has the class been certified here, though?

MR. CLOSE:  The answer to that is no.

THE COURT:  Because of that, don't I look at it a little bit closer and I have to ask that question?

MR. CLOSE:  Absolutely.

THE COURT:  That's kind of where the Court is on that.  Plus, the Court has to consider the realistic point, and maybe, you know, the parties have seen these class notifications.  They go out to the class members.  They read that.  They don't know what's really going on.  They see, oh, I'm going to get some money.  They don't have a meaningful chance to understand about the attorneys' fees.

So a part of that, when they're not certified yet, is I kind of look and say, how does this look?  Does this support it, knowing that there are going to be certain things that do happen later on?  Does that sound about right to everyone?

MR. SAMS:  Yes, Your Honor.

MR. CLOSE:  Yes, Your Honor.

THE COURT:  Thank you.  Again, I appreciate all comments of counsel.  The Court wants to always hear everything, and information is power.  So I appreciate it.  I get enough time to talk to myself.  So thank you so much. Appreciate everyone's smiles on that.

You know, so anyway.  Let's move to the next question.  Give me one moment.  Let's go with a hypothetical here.  If the attorneys' fees that are contemplated by the settlement agreement ultimately are not awarded, so, for example, if the Court finds 25 percent is appropriate, how are those funds to be distributed and how would that work out?  To plaintiff?

MR. SAMS:  I believe in that situation, the amount of recovery for the class would be increased if the amount of the attorneys' fees is lowered.

THE COURT:  So it would be distributed to the class members.  Just an example, with the 33 and a half percent, it was $500 a person.  It went to 25, it might be 550 to each of the class participants.  Something to that nature.  I'm not working with real numbers here.

MR. SAMS:  I think the settlement amount would remain the same, 1.9 million.  So the amount that is allocated as a pool for potential class members to make a

claim on would change because the attorneys fees and expenses and the compensation awards would come out of that amount. So it would lower the amount for those factors and slightly increase the amount for the pool for class members.

THE COURT:  I agree with that.  Maybe my example was very simple.  I don't know.  It would essentially be distributed to the class members in the pool that is available to them?

MR. SAMS:  I believe that is correct.

THE COURT:  Is that what your thought process is from defense?

MR. CLOSE:  My answer to your question is yes.

THE COURT:  Thank you.  I just need one moment.  I greatly appreciate it.  I wish the record could reflect the positivity in the room.  I want to say one more time thank you so much for coming so prepared.  Thank you so much for your writings, but also I appreciate everyone's responsiveness.  I ask question A, you answered question A. So thank you so much.  A lot of times the world spends a lot of time on all of the negatives things.  I'm sitting here celebrating the great things.  Thank you to all counsel. Just give me one moment.  I will be planning to take this under submission in issuing my order.  I need to check a couple of things.

(Brief pause in the proceedings)

THE COURT:  I think I've had my questions answered. To everyone, please have a great day.  I'm taking this matter under submission.  Be well happy and safe.  We'll be in recess in this matter.  Thank you.

(Proceedings concluded at 10:24 a.m.)

CERTIFICATE

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN THE ABOVE MATTER.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.


/s/ Miriam V. Baird                05/15/2024

MIRIAM V. BAIRD                          DATE
OFFICIAL REPORTER

UNITED STATES DISTRICT COURT

**$**

**$100** [1] - 7:23
**$500** [1] - 15:20
**$96** [1] - 6:24

**/**

**/s** [1] - 17:14

**0**

**05/15/2024** [1] - 17:14

**1**

**1.8** [2] - 7:21
**1.9** [1] - 15:24
**1065** [1] - 6:8
**1075** [1] - 6:8
**10:00** [1] - 3:1
**10:24** [1] - 17:5
**11893** [1] - 1:23
**12** [1] - 4:13
**13** [1] - 4:13
**15** [1] - 7:16
**18** [3] - 1:19, 3:1, 6:21
**18TH** [1] - 2:11
**1925** [1] - 2:4
**1995** [1] - 10:11

**2**

**2** [1] - 7:18
**2018** [1] - 10:9
**2021** [4] - 6:15, 6:19, 6:21, 7:21
**2022** [1] - 6:9
**2023** [1] - 6:9
**2024** [4] - 1:19, 3:1, 6:13, 6:14
**2100** [1] - 2:5
**23(e** [1] - 4:9
**25** [4] - 10:5, 10:14, 15:12, 15:20

**3**

**3** [1] - 7:21
**3.8** [1] - 7:22
**33** [1] - 15:19
**33.5** [2] - 10:1, 10:2
**350** [1] - 1:24
**373** [1] - 10:10
**379** [1] - 10:10
**3d** [1] - 6:8

**4**

**400** [1] - 2:11

**47** [1] - 10:10

**5**

**5.4** [1] - 6:11
**50** [1] - 7:23
**550** [1] - 15:20

**6**

**667590** [1] - 6:20
**671** [1] - 6:8

**7**

**7.8** [1] - 6:16
**747** [1] - 10:8
**758** [1] - 10:8
**777** [1] - 6:13

**9**

**90012** [1] - 1:25
**90067** [1] - 2:5
**90071** [1] - 2:12
**906** [1] - 10:8
**923** [1] - 6:13
**96** [1] - 8:4

**A**

**A.M** [1] - 3:1
**a.m** [1] - 17:5
**able** [2] - 7:6, 12:2
**ABOVE** [1] - 17:9
**absolutely** [1] - 14:13
**Act** [1] - 7:19
**action** [3] - 4:10, 10:7, 10:15
**actions** [4] - 6:11, 7:17, 7:20, 7:22
**actual** [1] - 8:2
**add** [3] - 5:17, 5:18, 8:11
**added** [2] - 12:19, 13:1
**address** [3] - 4:25, 5:4, 7:7
**adequate** [1] - 5:3
**administrator** [1] - 9:14
**aggregate** [1] - 6:16
**agree** [4] - 5:19, 5:23, 16:5
**agreement** [2] - 13:10, 15:11
**al** [2] - 1:4, 3:5
**alleges** [1] - 4:11
**allocated** [1] - 15:25
**amend** [1] - 12:2
**amended** [1] - 12:15
**amount** [15] - 6:4, 7:1, 8:6, 10:14, 11:5, 11:12, 12:6, 13:1, 15:15, 15:16, 15:23, 15:24, 16:2, 16:3, 16:4
**ANA** [2] - 1:18, 3:1
**analyze** [1] - 12:24

**analyzing** [1] - 7:14
**AND** [2] - 2:3, 17:7
**AND/OR** [1] - 17:11
**ANGELES** [3] - 1:25, 2:5, 2:12
**answer** [3] - 3:21, 14:10, 16:12
**answered** [3] - 4:6, 16:18, 17:1
**ANY** [1] - 17:10
**anyway** [1] - 15:8
**apologize** [1] - 13:17
**appearances** [1] - 3:6
**appellate** [1] - 5:12
**applicable** [1] - 13:15
**applied** [2] - 8:4, 12:25
**appreciate** [6] - 3:17, 15:3, 15:5, 15:7, 16:14, 16:17
**appreciates** [1] - 9:3
**appropriate** [5] - 4:8, 5:13, 11:12, 12:7, 15:12
**approval** [3] - 9:17, 11:7, 13:10
**approve** [1] - 14:1
**approved** [1] - 6:18
**APRIL** [2] - 1:19, 3:1
**ARE** [1] - 17:11
**argument** [5] - 5:21, 6:2, 11:15, 11:19, 12:11
**article** [1] - 7:18
**aspect** [2] - 14:3, 14:4
**assert** [1] - 4:23
**assume** [1] - 3:24
**attorneys** [1] - 16:1
**attorneys'** [9] - 10:1, 10:2, 11:8, 11:13, 12:9, 13:9, 14:20, 15:10, 15:17
**atypical** [1] - 7:17
**available** [1] - 16:8
**average** [1] - 6:10
**award** [2] - 10:4, 10:19
**awarded** [3] - 7:2, 10:1, 15:11
**awards** [3] - 10:6, 10:15, 16:2

**B**

**backstop** [1] - 8:16
**BAIRD** [2] - 1:23, 17:15
**Baird** [1] - 17:14
**bankrupt** [2] - 8:11, 10:25
**bankruptcy** [4] - 12:19, 12:22, 12:23, 12:25
**Baron** [1] - 3:4
**BARON** [2] - 1:4, 2:3
**based** [4] - 4:22, 7:15, 8:5, 12:12
**basis** [1] - 11:21

**BEHALF** [2] - 2:3, 2:10
**behalf** [3] - 3:9, 3:10, 3:16
**benchmark** [2] - 10:5, 10:14
**best** [3] - 11:14, 11:18, 12:22
**between** [1] - 7:23
**big** [1] - 8:24
**bit** [1] - 14:12
**blood** [1] - 8:19
**blue** [1] - 13:6
**brief** [3] - 5:9, 7:18, 16:25
**briefing** [2] - 3:20, 8:17
**bring** [1] - 5:7
**Brogi** [1] - 3:16
**brown** [3] - 4:3, 4:4
**burden** [1] - 5:25
**BY** [2] - 2:4, 2:10

**C**

**CA** [2] - 2:5, 2:12
**calculated** [1] - 6:10
**CALIFORNIA** [4] - 1:2, 1:18, 1:25, 3:1
**California** [3] - 6:9, 6:14, 6:20
**cap** [1] - 5:19
**case** [29] - 4:13, 5:4, 5:15, 6:9, 6:14, 6:21, 6:22, 7:16, 8:2, 8:7, 8:12, 8:16, 8:19, 10:8, 10:10, 11:1, 11:2, 11:6, 11:9, 11:14, 11:15, 11:19, 11:22, 11:24, 12:1, 12:12, 12:14, 12:20, 13:2
**cases** [12] - 4:21, 5:9, 7:4, 7:10, 7:15, 7:24, 8:1, 8:15, 10:3, 11:11, 12:8
**CCRA** [1] - 1:23
**celebrating** [1] - 16:21
**CENTRAL** [1] - 1:2
**Central** [2] - 6:8, 6:20
**CENTURY** [1] - 2:4
**certain** [3] - 12:13, 13:15, 14:23
**certainly** [1] - 5:18
**CERTIFICATE** [1] - 17:6
**certification** [3] - 4:12, 4:22, 5:7
**certified** [3] - 5:11, 14:9, 14:21
**CERTIFY** [1] - 17:7
**cetera** [1] - 11:18
**challenge** [3] - 4:16, 4:21, 5:6
**challenged** [1] - 4:12
**chance** [2] - 12:15, 14:20
**change** [1] - 16:1
**CHARGED** [1] - 17:10
**check** [1] - 16:23
**circuit** [1] - 9:25
**CIRCUIT** [1] - 17:10

**Circuit** [4] - 7:2, 10:3, 10:8, 10:10
**cited** [2] - 5:9, 7:24
**Civil** [1] - 4:9
**claim** [1] - 16:1
**claims** [1] - 9:14
**Class** [1] - 7:19
**class** [36] - 4:10, 4:12, 4:15, 4:21, 5:7, 5:8, 5:10, 5:12, 5:13, 6:6, 6:11, 7:17, 7:20, 7:22, 9:6, 9:11, 9:16, 9:18, 9:19, 10:6, 10:15, 12:3, 12:23, 12:25, 14:2, 14:3, 14:5, 14:8, 14:16, 14:17, 15:16, 15:18, 15:21, 15:25, 16:4, 16:7
**class's** [1] - 6:16
**clear** [3] - 10:20, 10:23, 13:18
**CLERK** [1] - 3:4
**close** [2] - 10:19, 11:4
**CLOSE** [12] - 2:10, 3:13, 5:18, 8:10, 9:23, 13:5, 13:17, 13:25, 14:10, 14:13, 15:2, 16:12
**Close** [2] - 3:13, 8:10
**closer** [1] - 14:12
**color** [1] - 4:3
**coming** [2] - 6:12, 16:16
**comment** [1] - 8:14
**comments** [1] - 15:4
**company** [5] - 5:20, 6:1, 7:14, 8:15, 10:24
**compared** [1] - 7:1
**compensation** [1] - 16:2
**complaint** [2] - 12:1, 12:15
**completely** [1] - 8:24
**complex** [1] - 12:14
**complexities** [1] - 4:15
**complexity** [7] - 10:3, 11:16, 11:19, 12:12, 12:17, 12:20, 13:2
**conceding** [2] - 8:13, 8:20
**concluded** [1] - 17:5
**CONFERENCE** [1] - 17:12
**CONFORMANCE** [1] - 17:11
**conjunction** [1] - 11:6
**consider** [1] - 14:15
**consideration** [1] - 6:5
**considered** [2] - 6:5, 7:9
**consultants** [1] - 12:21
**contemplated** [1] - 15:10
**contends** [1] - 4:7
**context** [1] - 8:25
**contingent** [1] - 11:21
**contingent-fee** [1] - 11:21
**continue** [2] - 5:13, 5:15
**continuing** [1] - 11:1
**conversation** [1] - 13:23

**correct** [2] - 6:22, 16:9
**CORRECT** [1] - 17:7
**counsel** [11] - 3:6, 3:12, 4:21, 4:23, 5:5, 9:9, 11:1, 11:9, 12:3, 15:4, 16:21
**counsel's** [1] - 10:12
**couple** [1] - 16:24
**Court** [30] - 3:19, 3:20, 3:22, 4:5, 5:11, 6:9, 6:15, 6:22, 6:25, 7:3, 7:5, 7:10, 7:24, 8:5, 9:3, 9:10, 9:17, 9:19, 10:14, 12:9, 13:7, 13:8, 13:13, 13:14, 13:20, 14:14, 14:15, 15:4, 15:12
**court** [3] - 5:12, 6:18, 7:3
**COURT** [27] - 1:1, 1:23, 3:12, 3:17, 5:16, 6:3, 8:8, 9:1, 9:9, 9:21, 9:24, 10:20, 10:22, 11:14, 12:10, 13:3, 13:13, 13:18, 14:8, 14:11, 14:14, 15:3, 15:18, 16:5, 16:10, 16:13, 17:1
**Court's** [1] - 9:3
**courts** [1] - 9:25
**creating** [1] - 13:23
**CSR** [1] - 1:23
**CV21-06918-FWS** [2] - 1:8, 3:4

**D**

**damages** [6] - 6:11, 6:24, 7:23, 7:25, 8:2, 8:4
**damages..** [1] - 6:17
**DATE** [1] - 17:15
**date** [1] - 9:18
**Davis** [1] - 3:15
**deal** [1] - 12:24
**debating** [1] - 13:5
**defendant** [2] - 3:13, 3:16
**defendants** [2] - 4:11, 5:5
**Defendants** [1] - 1:12
**DEFENDANTS** [1] - 2:10
**defense** [10] - 4:18, 4:21, 4:23, 5:5, 5:16, 6:2, 8:9, 9:22, 13:4, 16:11
**definitely** [1] - 13:1
**definition** [1] - 12:17
**demonstrates** [1] - 12:5
**DEPOSIT** [1] - 17:11
**depositions** [2] - 5:3, 11:17
**describe** [1] - 6:25
**determine** [2] - 5:12, 12:22
**different** [2] - 7:3
**difficult** [1] - 11:5
**dismissal** [1] - 12:3
**dismissed** [1] - 12:1
**distributed** [3] - 15:13, 15:18, 16:7
**DISTRICT** [3] - 1:1, 1:2, 1:23

**district** [1] - 11:11
**District** [3] - 6:8, 6:14, 6:20
**done** [2] - 7:13, 9:14
**draw** [1] - 14:7
**during** [1] - 14:4

**E**

**EAST** [1] - 2:4
**Easysaver** [1] - 10:7
**efficiency** [1] - 5:24
**efficient** [2] - 4:24, 5:22
**effort** [1] - 11:22
**either** [1] - 3:25
**encounter** [1] - 5:15
**encountered** [1] - 11:9
**end** [7] - 6:6, 6:18, 8:21, 8:24, 10:4, 10:5, 10:6
**endeavored** [1] - 11:9
**Enterprises** [1] - 10:9
**equals** [2] - 11:19, 12:17
**essentially** [1] - 16:6
**estimated** [3] - 6:24, 7:22, 8:3
**et** [3] - 1:4, 3:5, 11:18
**event** [1] - 5:10
**eventually** [1] - 13:16
**evidence** [1] - 10:13
**Ex** [1] - 3:8
**EX** [1] - 2:4
**example** [7] - 4:3, 4:23, 10:7, 10:24, 15:12, 15:19, 16:5
**exemplars** [1] - 9:15
**Exhibit** [1] - 7:18
**expect** [1] - 5:4
**expenses** [1] - 16:1
**experience** [4] - 5:20, 6:1, 13:25, 14:5
**experts** [2] - 4:25, 11:18
**extra** [1] - 11:17

**F**

**F.3d** [2] - 10:8, 10:10
**fact** [2] - 8:21, 11:2
**factor** [2] - 12:7, 13:1
**factors** [4] - 7:9, 10:18, 12:8, 16:3
**facts** [2] - 8:12, 8:23
**fairness** [1] - 13:14
**February** [1] - 6:21
**Federal** [1] - 4:8
**fee** [4] - 10:4, 10:6, 10:15, 11:21
**FEE** [1] - 17:10
**fees** [10] - 10:1, 10:2, 11:8, 11:13, 12:9, 13:9, 14:20, 15:10, 15:17, 16:1
**FEES** [1] - 17:10
**few** [2] - 3:19, 5:14

**final** [3] - 9:16, 11:7, 13:10
**FIRST** [1] - 1:24
**first** [2] - 4:7, 4:18
**FLOOR** [2] - 1:24, 2:11
**flow** [1] - 5:23
**FOR** [1] - 17:10
**FOREGOING** [1] - 17:7
**forward** [2] - 5:5, 12:22
**FOURTH** [1] - 1:24
**FRED** [1] - 1:3
**fund** [1] - 10:2
**funds** [1] - 15:13
**Furnari** [1] - 3:14
**future** [1] - 4:10

**G**

**generally** [2] - 6:5, 10:4
**given** [1] - 12:2
**GLANCY** [1] - 2:3
**Grady** [1] - 6:7
**GRADY** [1] - 6:7
**great** [4] - 13:19, 13:23, 16:21, 17:2
**greater** [1] - 13:1
**greatly** [2] - 9:3, 16:14
**guidance** [1] - 9:19

**H**

**half** [1] - 15:19
**happy** [2] - 7:7, 17:3
**hear** [1] - 15:4
**heard** [1] - 8:13
**Hearing** [1] - 1:17
**hearing** [3] - 9:17, 13:10, 13:19
**held** [2] - 10:4, 11:12
**HEREBY** [1] - 17:7
**higher** [3] - 10:19, 10:25, 11:15
**hire** [2] - 4:25, 11:17
**Honor** [17] - 3:8, 4:20, 7:7, 8:11, 8:17, 9:8, 9:13, 9:23, 10:17, 11:11, 11:21, 11:25, 12:18, 13:5, 13:17, 15:1, 15:2
**Honor's** [1] - 10:18
**HONORABLE** [1] - 1:3
**HOPE** [1] - 2:11
**house** [2] - 4:3, 13:6
**hypothetical** [1] - 15:9
**HYRECAR** [2] - 1:10, 2:10
**HyreCar** [1] - 3:5

**I**

**identified** [1] - 8:22
**II** [1] - 2:4
**implied** [1] - 13:17

important [1] - 6:5
IN [2] - 17:8, 17:11
INC [2] - 1:10, 2:10
Inc [1] - 3:5
included [1] - 7:12
including [1] - 13:15
Incorporated [3] - 6:8, 6:12, 6:19
increase [1] - 16:4
increased [1] - 15:16
indicate [1] - 7:15
indicated [1] - 5:10
information [7] - 4:1, 7:12, 7:15, 8:3, 8:5, 9:10, 15:5
inherent [1] - 4:9
initial [1] - 12:1
instances [1] - 7:12
insurance [3] - 8:16, 8:18, 11:5
involved [1] - 7:25
IS [1] - 17:7
issue [7] - 3:18, 5:1, 5:2, 5:4, 5:24, 13:4, 13:9
issuer [1] - 8:11
issues [3] - 5:6, 12:22, 12:24
issuing [1] - 16:23
itself [1] - 5:20
IVAN [2] - 1:4, 2:3
Ivan [1] - 3:4

**J**

James [1] - 3:15
Joseph [1] - 3:13
JUDGE [1] - 1:3
JUDICIAL [1] - 17:12
justification [2] - 10:12, 11:10
justify [1] - 10:19

**K**

Kano [1] - 3:8
KANO [1] - 2:4
kind [5] - 8:21, 8:23, 14:5, 14:14, 14:22
knowing [1] - 14:23
knows [1] - 14:4

**L**

laid [2] - 8:16, 10:23
law [1] - 13:15
lawyer [1] - 14:5
lay [1] - 11:8
layer [1] - 12:19
lead [3] - 4:7, 4:11, 5:3
leave [1] - 12:2
lends [1] - 5:20
LESS [1] - 17:10

less [1] - 11:2
level [1] - 13:12
light [2] - 11:2, 12:23
likely [1] - 11:3
limited [1] - 11:4
Litigation [5] - 6:13, 6:19, 7:19, 10:8, 10:10
litigation [3] - 4:10, 4:17, 5:15
LLP [2] - 2:3, 2:10
loaded [1] - 3:23
look [4] - 13:15, 14:11, 14:22
looking [1] - 13:14
LOS [3] - 1:25, 2:5, 2:12
lower [3] - 8:12, 8:21, 16:3
lowered [1] - 15:17

**M**

maintain [1] - 4:16
maintaining [2] - 4:10, 5:8
majority [1] - 8:14
market [3] - 4:24, 5:22, 5:25
material [1] - 10:13
MATTER [1] - 17:9
matter [2] - 17:2, 17:4
MATTHEW [1] - 2:10
Matthew [2] - 3:13, 8:10
maximum [2] - 6:16, 6:24
meaningful [1] - 14:19
median [1] - 7:20
members [7] - 9:19, 12:23, 14:17, 15:19, 15:25, 16:4, 16:7
memorandum [1] - 4:14
mentioned [3] - 10:19, 10:22, 11:4
might [1] - 15:20
million [4] - 6:24, 7:23, 8:4, 15:24
MIRIAM [2] - 1:23, 17:15
Miriam [1] - 17:14
moment [3] - 15:9, 16:13, 16:22
money [1] - 14:19
MOON [1] - 3:15
Moon [1] - 3:15
moreover [1] - 6:15
morning [2] - 3:8, 3:17
most [1] - 6:5
motion [9] - 1:17, 5:6, 7:13, 7:16, 11:6, 11:7, 12:9, 13:7, 14:6
move [2] - 6:3, 15:8
MR [27] - 3:8, 3:10, 3:13, 3:15, 4:20, 5:18, 7:7, 8:10, 9:8, 9:13, 9:23, 10:17, 10:21, 10:24, 11:20, 12:18, 13:5, 13:17, 13:25, 14:10, 14:13, 15:1, 15:2, 15:15,

15:23, 16:9, 16:12
MURRAY [1] - 2:3
MVB11893@aol.com [1] - 1:25
MYERS [1] - 2:10

**N**

nature [1] - 15:21
need [5] - 7:4, 7:5, 13:22, 16:13, 16:23
negative [1] - 13:21
negatives [1] - 16:20
NERA [1] - 7:13
next [3] - 9:5, 9:25, 15:8
Ninth [3] - 10:3, 10:8, 10:10
Northern [1] - 6:14
note [1] - 11:10
notes [2] - 6:9, 11:25
nothing [2] - 5:18, 12:4
notice [6] - 9:5, 9:14, 9:15, 9:20, 14:1, 14:6
notifications [1] - 14:17
numbers [1] - 15:22

**O**

O'MELVENY [1] - 2:10
object [1] - 14:3
objecting [1] - 14:7
objection [1] - 14:4
observable [2] - 8:12, 8:23
observes [1] - 6:22
occurrence [1] - 12:21
OF [7] - 1:2, 1:16, 2:3, 2:10, 17:8, 17:12
offer [1] - 6:25
offered [1] - 6:4
OFFICIAL [2] - 1:23, 17:15
oftentimes [1] - 4:2
ON [2] - 2:3, 2:10
one [9] - 6:20, 8:22, 11:12, 12:6, 13:1, 15:9, 16:13, 16:15, 16:22
opposed [1] - 11:16
order [1] - 16:23
otherwise [1] - 5:23
overcome [1] - 12:2

**P**

Pacific [1] - 10:9
page [1] - 7:16
pages [1] - 4:13
PARK [1] - 2:4
part [3] - 12:20, 13:13, 14:21
participants [1] - 15:21
particular [3] - 7:12, 10:15, 12:13
particularly [2] - 5:19, 5:24

parties [5] - 3:20, 3:22, 4:25, 9:2, 14:16
path [1] - 12:22
pattern [1] - 8:21
pause [1] - 16:25
people [1] - 14:7
percent [13] - 6:11, 6:16, 6:24, 7:1, 7:21, 7:22, 10:1, 10:2, 10:5, 10:14, 15:12, 15:19
percentage [6] - 6:10, 6:17, 7:11, 8:1, 8:22, 11:15
period [1] - 14:4
person [1] - 15:20
plaintiff [11] - 3:9, 4:7, 4:11, 4:18, 5:3, 5:7, 5:14, 6:23, 6:25, 10:12, 15:14
plaintiff's [1] - 5:25
Plaintiffs [1] - 1:6
plaintiffs [1] - 3:11
PLAINTIFFS [1] - 2:3
plaintiffs' [3] - 3:12, 10:25, 12:3
planning [1] - 16:22
plus [1] - 14:15
point [6] - 5:24, 7:8, 9:1, 11:20, 11:23, 14:15
pool [3] - 15:25, 16:4, 16:7
posed [1] - 3:22
positive [1] - 13:19
positivity [1] - 16:15
potent [1] - 6:2
potential [3] - 5:11, 6:16, 15:25
potentially [2] - 6:1, 12:6
power [1] - 15:5
prepared [2] - 9:9, 16:16
PRESIDING [1] - 1:3
pretty [1] - 13:20
problem [1] - 8:19
Procedure [1] - 4:9
PROCEEDINGS [2] - 1:16, 17:8
proceedings [2] - 16:25, 17:5
process [1] - 16:10
PRONGAY [1] - 2:3
proponent [2] - 3:25, 4:1
proposed [5] - 4:8, 4:14, 4:15, 9:6, 9:12
provide [5] - 9:10, 9:17, 9:18, 10:13, 12:8
provided [6] - 7:10, 8:3, 8:5, 9:6, 9:10, 9:15
public [1] - 8:15
pursuing [1] - 11:1
put [1] - 11:22

## Q

**quantum** [1] - 13:8
**questions** [6] - 3:19, 3:21, 4:2, 4:6, 9:3, 17:1
**quote** [10] - 6:4, 6:6, 6:16, 6:18, 10:4, 10:5, 10:6

## R

**raise** [2] - 5:2, 5:5
**range** [3] - 8:5, 8:12, 8:21
**Ray** [1] - 3:10
**RCM** [1] - 6:7
**re** [4] - 6:12, 6:19, 10:7, 10:9
**reached** [1] - 4:13
**reacted** [1] - 9:19
**reaction** [2] - 9:11, 9:18
**read** [1] - 14:17
**real** [2] - 11:24, 15:22
**realistic** [1] - 14:15
**really** [2] - 5:21, 14:18
**reason** [1] - 5:12
**reasonable** [2] - 10:6, 10:15
**reasons** [2] - 4:22, 7:2
**Recent** [1] - 7:19
**recess** [1] - 17:4
**recognized** [1] - 6:15
**recognizes** [1] - 7:3
**record** [9] - 3:7, 4:2, 7:4, 8:10, 10:23, 11:10, 13:18, 13:24, 16:14
**RECORDED** [1] - 17:8
**recovered** [2] - 6:17, 12:4
**recovery** [13] - 7:11, 7:16, 7:20, 8:2, 8:6, 10:5, 11:2, 11:6, 11:12, 11:25, 12:7, 12:16, 15:16
**REDUCTION** [1] - 17:11
**refer** [1] - 8:18
**referring** [1] - 5:21
**reflect** [1] - 16:14
**regarding** [2] - 9:11, 12:21
**REGULATIONS** [1] - 17:12
**reimbursement** [1] - 12:16
**related** [1] - 12:24
**remain** [1] - 15:24
**remind** [1] - 3:22
**REPORTER** [2] - 1:23, 17:15
**REPORTER'S** [1] - 1:16
**request** [1] - 11:10
**requesting** [1] - 10:14
**requests** [1] - 6:23
**requisite** [1] - 10:3
**respect** [4] - 5:8, 7:11, 7:24, 10:17
**respond** [1] - 4:19
**responsive** [1] - 9:2
**responsiveness** [1] - 16:18

**Rewards** [1] - 10:8
**ripe** [1] - 4:16
**risk** [9] - 4:9, 5:11, 10:25, 11:8, 11:15, 11:19, 11:24, 12:12, 13:5
**risks** [1] - 5:14
**Robert** [1] - 3:16
**room** [1] - 16:15
**Rule** [1] - 4:9
**ruling** [2] - 7:6, 13:8

## S

**safe** [1] - 17:3
**Sams** [2] - 3:8, 5:21
**SAMS** [15] - 2:4, 3:8, 4:20, 7:7, 9:8, 9:13, 10:17, 10:21, 10:24, 11:20, 12:18, 15:1, 15:15, 15:23, 16:9
**Sams'** [1] - 8:14
**SANTA** [2] - 1:18, 3:1
**Scott** [1] - 3:16
**second** [2] - 5:20, 6:3
**securities** [9] - 4:21, 4:24, 7:15, 7:17, 7:20, 7:22, 8:1, 8:6, 12:25
**Securities** [4] - 6:13, 6:19, 7:19, 10:9
**security** [1] - 6:18
**see** [4] - 10:7, 14:5, 14:7, 14:18
**seek** [1] - 12:6
**send** [1] - 9:14
**set** [1] - 13:12
**settlement** [16] - 3:18, 4:8, 4:14, 6:4, 6:6, 6:10, 8:13, 8:22, 9:6, 9:11, 9:12, 10:2, 10:16, 15:11, 15:23
**settlements** [3] - 6:18, 7:14, 10:7
**shortly** [1] - 9:16
**showing** [1] - 8:3
**shows** [1] - 12:5
**similar** [2] - 6:17, 7:17
**simple** [1] - 16:6
**simply** [1] - 4:4
**sit** [1] - 13:21
**sitting** [2] - 8:21, 16:20
**situation** [5] - 11:5, 11:13, 12:19, 12:20, 15:15
**six** [1] - 6:13
**skin** [1] - 13:20
**SLAUGHTER** [1] - 1:3
**slightly** [1] - 16:3
**small** [2] - 5:19, 5:22
**smile** [1] - 13:21
**smiles** [1] - 15:7
**Snap** [1] - 6:19
**solvent** [1] - 8:15
**sound** [1] - 14:24

**SOUTH** [1] - 2:11
**specializes** [1] - 7:14
**spends** [1] - 16:19
**spirit** [1] - 13:25
**Splunk** [1] - 6:12
**SPLUNK** [1] - 6:12
**stage** [1] - 4:13
**star** [2] - 6:13, 6:20
**start** [1] - 4:2
**state** [1] - 3:6
**STATES** [2] - 1:1, 17:12
**statistics** [1] - 7:10
**status** [1] - 4:10
**STENOGRAPHICALLY** [1] - 17:8
**stocks** [1] - 4:23
**stone** [1] - 8:19
**STREET** [2] - 1:24, 2:11
**submission** [2] - 16:23, 17:3
**submit** [1] - 11:7
**suggest** [2] - 8:12, 8:23
**suggests** [1] - 3:25
**SUITE** [1] - 2:5
**SULENTIC** [1] - 3:10
**Sulentic** [1] - 3:10
**Supp** [1] - 6:8
**support** [4] - 4:14, 7:13, 8:20, 14:23
**surgical** [1] - 3:21

## T

**Tech** [1] - 6:7
**THAT** [1] - 17:7
**THE** [34] - 2:3, 2:10, 3:4, 3:12, 3:17, 5:16, 6:3, 8:8, 9:1, 9:9, 9:21, 9:24, 10:20, 10:22, 11:14, 12:10, 13:3, 13:13, 13:18, 14:8, 14:11, 14:14, 15:3, 15:18, 16:5, 16:10, 16:13, 17:1, 17:7, 17:8, 17:9, 17:11, 17:12
**thick** [1] - 13:20
**third** [4] - 11:12, 12:6, 14:2, 14:6
**THIS** [1] - 17:10
**thoughts** [1] - 13:3
**throughout** [2] - 4:10, 4:17
**THURSDAY** [2] - 1:19, 3:1
**today** [2] - 13:7, 14:1
**total** [2] - 6:10, 10:5
**trade** [2] - 4:23, 4:24
**traded** [1] - 5:22
**TRANSCRIPT** [3] - 1:16, 17:8, 17:10
**Tremaine** [1] - 3:15
**Trends** [1] - 7:19
**TRUE** [1] - 17:7
**trying** [2] - 4:1, 4:5

**turn** [1] - 5:16
**two** [2] - 6:23, 7:1
**type** [2] - 5:6, 8:6
**typical** [1] - 8:6
**typically** [5] - 4:20, 4:25, 7:1, 8:1, 9:13

## U

**U.S** [1] - 1:23
**ultimately** [1] - 15:11
**unable** [1] - 4:16
**uncollectible** [1] - 8:25
**uncompensated** [1] - 11:23
**under** [5] - 4:8, 13:9, 13:14, 16:23, 17:3
**understood** [1] - 14:8
**undoubtedly** [1] - 4:12
**UNITED** [2] - 1:1, 17:12
**unlike** [1] - 8:14
**up** [2] - 9:18, 10:1
**update** [1] - 9:17

## V

**varies** [1] - 8:2
**variety** [1] - 4:22
**verdict** [1] - 8:24
**versus** [1] - 6:7
**Vs** [1] - 1:8

## W

**wants** [1] - 15:4
**WEST** [1] - 1:24
**Westlaw** [2] - 6:13, 6:20
**wish** [1] - 16:14
**WITH** [1] - 17:11
**world** [1] - 16:19
**Wright** [1] - 3:15
**writings** [1] - 16:17

## Y

**yield** [1] - 11:24
**yields** [1] - 11:15