Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
Raymond D. Sulentic (SBN 316913)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Counsel for Lead Plaintiff Turton Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>    Defendants. | Case No. 2:21-cv-06918-FWS-JC<br><br>**LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br>Hearing Date: November 14, 2024<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 10D<br>Judge: Fred W. Slaughter |

1

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT .......................................................... 1

II.    PROCEDURAL AND FACTUAL BACKGROUND .................................... 4

III.    STANDARDS GOVERNING FINAL APPROVAL ................................. 4

IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL ............................ 6

    A.    Rule 23(e)(2)(A): Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class ........................................................ 6

    B.    Rule 23(e)(2)(B): The Settlement Is The Result Of Arm's-Length Negotiations Facilitated By An Experienced Mediator ........................ 7

    C.    Rule 23(e)(2)(C)(i): The Proposed Settlement Is Highly Favorable Considering The Risks Of Continued Litigation ................................ 10

        1.    The Strength of Lead Plaintiff's Case and Risk of Continued Litigation ................................................................................ 10

        2.    Risks of Maintaining Class Action Status ................................ 14

    D.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval ........... 15

    E.    Rule 23(e)(2)(D): The Proposed Plan Of Allocation Treats All Class Members Equitably Relative To Each Other ........................................ 17

    F.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval .......................................................................................... 18

        1.    The Amount Offered in Settlement ........................................... 18

        2.    The Stage of the Proceedings/Extent of Discovery Completed . 20

        3.    Experienced Counsel Believe the Settlement is Fair, Reasonable, and Adequate ................................................................................. 21

        4.    The Reaction of Settlement Class Members to the Settlement .. 22

        5.    The Presence of a Government Participant ................................ 23

V.     THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED..........23

VI.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION.........23

VII.   CONCLUSION ................................................................................25

1

## **<u>TABLE OF AUTHORITIES</u>**

2

3 <u>CASES</u>

4
*Anixter v. Home-Stake Prod. Co.*,
5
    77 F.3d 1215 (10th Cir. 1996) ................................................................. 14

6
*Baron v. HyreCar Inc.*,
7
    2022 WL 2102993 (C.D. Cal. Feb. 16, 2022) ..................................... 2, 11

8
*Baron v. Hyrecar Inc.*,
9
    2022 WL 17413562 (C.D. Cal. Dec. 5, 2022) ..................................... 2, 12

10
*Baron v. HyreCar Inc.*,
11
    2024 WL 3504234 (C.D. Cal. July 19, 2024) ................................. 1, 5, 23

12
*Becker v. Bank of New York Mellon Trust Co., N.A.*,
13
    2018 WL 6727820 (E.D. Pa. Dec. 21, 2018) ......................................... 16

14
*Brightk Consulting Inc. v. BMW of North America, LLC*,
15
    2023 WL 2347446 (C.D. Cal. Jan. 3, 2023) ............................................. 8

16
*Buettgen v. Harless*,
17
    2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) ..................................... 13

18
*Christine Asia Co., Ltd. v. Yun Ma*,
19
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................... 13, 17

20
*Churchill Village L.L.C. v. Gen. Elec.*,
21
    361 F.3d 566 (9th Cir. 2004) ..................................................................... 5

22
*Cullen v. Whitman Med. Corp.*,
23
    197 F.R.D. 136 (E.D. Pa. 2000) ............................................................. 14

24
*Dura Pharms., Inc. v. Broudo*,
25
    544 U.S. 336 (2005) ................................................................................ 10

26
*Eiesen v. Porsche Cars N. Am., Inc.*,
27
    2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ............................................. 7

28

*Feyko v. aAD Partners LP*,
   2014 WL 12572678 (C.D. Cal. Mar. 7, 2014) ........................................................8

*Fleming v. Impax Labs. Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022) ......................................................23

*Franklin v. Kaypro*,
   884 F.2d 1222 (9th Cir. 1989) ...............................................................................4

*Gross v. GFI Grp., Inc.*,
   784 F. App'x. 27 (2d Cir. Sept. 13, 2019).............................................................12

*Gudimetla v. Ambow Education Holding*,
   2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) .............................................18, 19

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ......................................................................*passim*

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)........................................................18

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................................................5

*In re Alloy, Inc. Sec. Litig.*,
   2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ........................................................13

*In re Amgen Inc. Sec. litig.*,
   2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .....................................................23

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................................7, 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................................13

*In re China Medicine Corp. Sec. Litig.*,
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014)........................................................10

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019)..........................................................6

*In re Crocs, Inc. Sec. Litig.*,
    306 F.R.D. 672 (D. Colo. 2014) ...................................................................19

*In re Facebook, Inc., IPO Sec. and Derivative Litig.*,
    343 F.Supp.3d 394 (S.D.N.Y. Nov. 26, 2018) .......................................12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...........................................13

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) .....................................................15

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005)...............................8, 23, 24

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ............................................................16, 20

*In re OCA, Inc. Sec. and Deriv. Litig.*,
    2009 WL 512081 (E.D. La. Mar. 2, 2009) ...............................................20

*In re Omnivision Tech., Inc.*,
    559 F. Supp. 2d 1035 (N.D. Cal. 2008)...............................................15, 22, 23

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .....................................................................16

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006)..................................................................6

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...........................................9

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)......................................17, 19

*In re Splunk Inc. Sec. Litig.*,
    2024 WL 923777 (N.D. Cal. Mar. 4, 2024) .............................................17

*In re Stable Road Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) ............................................ 23, 24

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ........................................................................... 4

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) .............................................................. 11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ................................................. 20

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) .............................................................. 10

*Lea v. Tal Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................................ 16, 17

*Longo v. OSI Sys., Inc.*,
  2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022) ............................... 9

*Lusk v. Five Guys Enterprises LLC*,
  2022 WL 4791923 (E.D. Cal. Sept. 30, 2022) ................................................... 8

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................. 6, 7

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 9

*Officers for Just. v. Civil Serv. Comm. of Cnty. of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ...................................................................... 10, 20

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) ....................................................................... 14

*Rodriguez v. Nike Retail Servs., Inc.*,
  2022 WL 254349 (N.D. Cal. Jan. 27, 2022) .................................................... 21

*Rodriquez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................... 4, 7, 21

1
2
*Schueneman v. Arena Pharms., Inc.*,
   2020 WL 3129566 (S.D. Cal. June 12, 2020) ........................................................24

3
4
*Shah v. Zimmer Biomet Holdings, Inc.*,
   2020 WL 5627171 (N.D. Ind. Sept. 18, 2020) ........................................................8

5
6
*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)........................................................18

7
8
*Smith v. Dominion Bridge Corp.*,
   2007 WL 1101272 (E.D. Pa. Apr. 11, 2007)........................................................12

9
10
*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ........................................................21

11
12
*Vikram v. First Student Management, LLC*,
   2019 WL 1084169 (N.D. Cal. March 7, 2019) ........................................................18

13
14
*Wong v. Arlo Tech., Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021)........................................................19

15
16
*Wong v. Arlo Techs., Inc.*,
   2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ........................................................5, 10

17
18
*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ........................................................17

19
20
*Yaron v. Intersect ENT, Inc.*,
   2021 WL 5150051 (N.D. Cal. Nov. 5, 2021) ........................................................16

21    STATUTES

22    15 U.S.C.A. § 78u–4(b)(3)(B) ........................................................20

23    RULES

24
25    Fed. R. Civ. P. 23........................................................*passim*

26
27
28

In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, lead plaintiff Turton Inc. ("Lead Plaintiff"), on behalf of itself and the Settlement Class, respectfully submits this memorandum in support of its motion for: (1) final approval of the proposed Settlement resolving the above-captioned action (the "Action"); and (2) approval of the proposed plan of allocation of the proceeds of the Settlement.[1]

## I.   PRELIMINARY STATEMENT

After approximately three years of hard-fought litigation, Lead Plaintiff, through its counsel, obtained a $1.9 million (the "Settlement Amount") all cash, non-reversionary settlement for the benefit of the Settlement Class.  This is an extremely favorable result for the Settlement Class under the circumstances, and it was secured in a procedurally fair manner.

Substantively, the $1.9 million recovery represents approximately 2% of estimated *maximum* damages of approximately $96 million under the proposed Plan of Allocation in this Action.  "This amount is in line with percentage recoveries other courts have found to be fair and adequate."  *Baron v. HyreCar Inc.*, 2024 WL 3504234, at *8 (C.D. Cal. July 19, 2024).  The recovery is all the more favorable when put in context—HyreCar commenced a Chapter 11 bankruptcy proceeding on February 24, 2023, which was subsequently converted to a Chapter 7 proceeding, and the only viable source of recovery (*i.e.*, HyreCar's $10 million D&O insurance policy) was rapidly depleting because of the costs associated with defending not only this Action, but proceedings brought by the DOJ and SEC.  In light of the risks, costs, and delays of continued litigation, including the

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated March 20, 2024 (the "Stipulation"; ECF No. 121-1), or the concurrently filed Declaration of Ex Kano S. Sams II in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Sams Declaration" or "Sams Decl."). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Sams Declaration.

substantial risk of no recovery whatsoever given the serious ability-to-pay issues, the Settlement is substantively fair.

The Settlement was also negotiated through a procedurally fair process. By the time the Settlement was reached, Lead Plaintiff and its counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses. Prior to reaching the Settlement, Lead Counsel, *inter alia*:

- moved for the appointment of Lead Plaintiff pursuant to the PSLRA (ECF Nos. 42-44);

- conducted a comprehensive investigation of the claims asserted in the Action, which included, among other things: (a) reviewing and analyzing (i) HyreCar's filings with the SEC, (ii) public reports, blog posts, reports prepared by securities and financial analysts, and news articles concerning HyreCar, (iii) HyreCar's investor call transcripts, press releases and other public statements made by Defendants prior to, during, and after the Settlement Class Period, and (iv) other publicly available material related to HyreCar; (b) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former HyreCar employees and other sources of relevant information; and (c) consultation with an accounting expert and an expert in loss causation, damages and market efficiency;

- utilized the comprehensive investigation and additional research to draft and file the 74-page (257-paragraph) Amended Complaint, which asserted violations of the Securities Exchange Act of 1934 ("Exchange Act") (ECF No. 66);

- researched, drafted, and filed an opposition to Defendants' motion to dismiss the Amended Complaint (ECF No. 70), after which the Court granted Defendants' motion (*see Baron v. HyreCar Inc.*, 2022 WL 2102993, at *7 (C.D. Cal. Feb. 16, 2022));

- conducted additional investigation and analysis, and then filed the 53-page (200-paragraph) Second Amended Complaint (the "SAC"; ECF No. 75);

- researched, drafted, and filed an opposition to defendants' motion to dismiss the SAC (ECF No. 77), after which the Court denied Defendants' motion in full (*see Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *17 (C.D. Cal. Dec. 5, 2022));

- prepared for and participated in a Rule 26(f) Conference;

- negotiated a protective order, which was subsequently entered by the Court

2
MEMORANDUM IN SUPPORT OF MOTION

with minor modifications (ECF No. 110);

- retained and consulted with bankruptcy counsel regarding HyreCar's bankruptcy filing;

- initiated discovery of Defendants and third parties, which included propounding comprehensive requests for production, reviewing documents produced by a third-party, and negotiating with Defendants' counsel over the scope and manner of document production and the treatment of ESI;

- exchanged mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participated in an unsuccessful full-day mediation session with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS—and engaged in months of further negotiations that culminated in a mediator's recommendation to resolve the Action for $1,900,000 in cash for the benefit of the Settlement Class;

- negotiated a detailed confidential settlement Term Sheet with Defendants' Counsel, which was fully executed as of December 9, 2023;

- drafted and then negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

- worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly; and

- drafted the preliminary approval motion and supporting papers. ¶6(a)-(m).

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.

As discussed in greater detail below and in the Sams Declaration, Lead Plaintiff and its counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Accordingly, Lead Plaintiff respectfully requests that the Court grant the Settlement final approval.

Lead Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiff's consulting damages expert and is designed to distribute the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. No Settlement Class Member is favored over another under the proposed Plan; rather, all Settlement

Class Members—including Lead Plaintiff—are treated in the same manner. *See* ¶¶54-61. Because the Plan of Allocation is fair and reasonable, it too should be approved.

## II.   PROCEDURAL AND FACTUAL BACKGROUND

The Sams Declaration is an integral part of this submission. For the sake of brevity in this memorandum, the Court is referred to it for a detailed description of, *inter alia*, the factual and procedural history of the Action (¶¶13-27); the nature of the claims asserted (¶¶4, 16); the negotiations leading to the Settlement (¶¶23-25); the risks and uncertainties of continued litigation (¶¶28-41), and the services Lead Counsel provided for the benefit of the Settlement Class (¶¶6, 13-27, 45-53).

## III.   STANDARDS GOVERNING FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).[2] Moreover, courts should defer to "the private consensual decision of the parties" to settle (*Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)) and advance the "overriding public interest in settling and quieting litigation." *Franklin v. Kaypro*, 884 F.2d 1222, 1229 (9th Cir. 1989).

Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and class counsel adequately represented the class;

(B)   was the proposal negotiated at arm's length;

(C)   is the relief provided for the class adequate, taking into account:

---

[2] Unless otherwise indicated, all emphasis is added and internal citations and quotations omitted.

> (i)    the costs, risks, and delay of trial and appeal;
> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and
> (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D)    does the proposal treat class members equitably relative to each other.

These factors, which went into effect on December 1, 2018, do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e) Advisory Committee's Notes to 2018 Amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018); *see also Wong v. Arlo Techs., Inc.,* 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").

Prior to the Rule 23(e)(2) amendment, courts in the Ninth Circuit considered the following "*Hanlon* factors":

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

In granting preliminary approval, the Court considered the Rule 23(e)(2) and Ninth Circuit factors when assessing the Settlement and found that it was fair, reasonable, and adequate, subject to further consideration at the final approval hearing. *See HyreCar*, 2024 WL 3504234, at *17. The Court's conclusion on preliminary approval is equally

5

true now as nothing has changed between July 19, 2024, and the present.  *See In re
Chrysler-Dodge-Jeep EcoDiesel Mktg.*, *Sales Practices, & Prods. Liab. Litig.*, 2019 WL
2554232, at \*2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary
approval] stand and counsel equally in favor of final approval now.").

## IV.    THE SETTLEMENT WARRANTS FINAL APPROVAL

### A.    Rule 23(e)(2)(A): Lead Plaintiff And Lead Counsel Adequately Represented The Settlement Class

Rule 23(e)(2)(A) requires the Court to consider whether the "class representatives
and class counsel have adequately represented the class."  FED. R. CIV. P. 23(e)(2)(A).
"Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and
their counsel have any conflicts of interest with other class members, and (2) will the
named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"
*Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class
both during the litigation of this Action and its settlement.  Lead Plaintiff's claims are
typical of, and coextensive with, the claims of the Settlement Class, and it has no
antagonistic interests.  Rather, Lead Plaintiff's interest in obtaining the largest possible
recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG
Indus., Inc.*, 2019 WL 3345714, at \*3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's
claims are typical of and coextensive with the claims of the Settlement Class, his interest
in obtaining the largest possible recovery is aligned with the interests of the rest of the
Settlement Class members."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y.
2006) ("Where plaintiffs and class members share the common goal of maximizing
recovery, there is no conflict of interest between the class representatives and other class
members.").  Additionally, Lead Plaintiff worked closely with Lead Counsel throughout
the pendency of this Action to achieve the best possible result for itself and the Settlement
Class.  *See* Ex. 1, ¶81.

Lead Plaintiff also retained counsel who are highly qualified and experienced in securities litigation, and who have a long and successful track record. *See* Ex. 8 (GPM firm résumé). Lead Counsel vigorously pursued the claims of HyreCar investors in this Court, and advocated vociferously for the Settlement Class's best interests throughout this litigation and its settlement. *See* ¶¶76-77; *see also PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]"). Thus, this factor supports final approval.

### B. Rule 23(e)(2)(B): The Settlement Is The Result Of Arm's-Length Negotiations Facilitated By An Experienced Mediator

The Court must also consider whether the proposed settlement was "negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). Circumstances related to this "procedural" fairness determination of a settlement traditionally include: (i) whether counsel has a thorough understanding of the strength [and weakness] of the plaintiff's case[3] based on factors like "the extent of discovery completed and the stage of the proceedings";[4] (ii) the "experience and views of counsel";[5] and (iii) the absence of any indicia of collusion.[6] Each of these factors supports approval of the Settlement.

The Ninth Circuit, as well as district courts, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also Eiesen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement when record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses").

---

[3] *Hanlon*, 150 F.3d at 1026 (first factor).

[4] *See id.* (fifth factor).

[5] *See id.* (sixth factor).

[6] *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts also recognize that "[s]ettlements reached with the help of a mediator are likely non-collusive." *Feyko v. aAD Partners LP*, 2014 WL 12572678, at *7 (C.D. Cal. Mar. 7, 2014).

Here, the Settlement is the product of extensive arm's-length negotiations facilitated by a well-respected mediator, Jed D. Melnick, Esq., of JAMS, who has significant experience mediating securities class actions and other complex litigation. ¶¶6(j), 23-25; *see also Brightk Consulting Inc. v. BMW of North America, LLC*, 2023 WL 2347446, at *6 (C.D. Cal. Jan. 3, 2023) (noting that Mr. Melnick is "an experienced complex business litigation mediator who has resolved over 1,000 disputes in his career."); *Shah v. Zimmer Biomet Holdings, Inc.*, 2020 WL 5627171, at *6 (N.D. Ind. Sept. 18, 2020) (granting final approval in securities class action where, among other things, "the settlement was the product of two lengthy mediation sessions which were conducted by two of the leading mediators in this field, Jed Melnick and the Hon. Daniel Weinstein (Ret.).") In fact, the Settlement Amount is the result of a "mediator's recommendation" by Mr. Melnick following the submission of substantial mediation briefs, an unsuccessful all-day mediation session with Mr. Melnick, and months of further negotiation between the Parties facilitated by Mr. Melnick. *See* ¶¶23-25; *see also Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact … that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion.").

Moreover, courts accord "significant weight" to the recommendations of counsel, who are "most closely acquainted with the facts of the underlying litigation." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005). Such should be the case here, where Lead Counsel have a thorough understanding of the strengths and weakness of the claims after approximately three years of litigation, extensive prior experience litigating securities class action cases, and strongly believe that the $1.9 million Settlement is in the best interests of the Settlement Class given the significant risks of continued litigation. ¶¶28-41. As evidenced by the record in this case, and as

8
MEMORANDUM IN SUPPORT OF MOTION

detailed in the Sams Declaration, Lead Counsel spent extensive amounts of time investigating the facts of this case, drafting pleadings, opposing two motions to dismiss, including successfully opposing Defendants' motion to dismiss the SAC, and have the benefit of the Court's two motion to dismiss decisions. Under these circumstances, there can be no question that counsel "had a sound basis for measuring the terms of the settlement." *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022).

It is also important to note that the Court-appointed Lead Plaintiff, who was involved in all aspects of the litigation, supports the Settlement. *See* Ex. 1 (Criden Decl.) at ¶¶4-15. Lead Plaintiff's support for the Settlement should be afforded "special weight" because a plaintiff "ha[s] a better understanding of the case than most members of the class." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *5 (N.D. Cal. Nov. 26, 2007) (noting Congress's intent to foster involvement of lead plaintiff when passing PSLRA and stating that "the role taken by the lead plaintiff in the settlement process supports settlement because lead plaintiff was intimately involved in the settlement negotiations.").

Finally, the Settlement has none of the indicia of collusion identified by the Ninth Circuit. *See Bluetooth Headset*, 654 F.3d at 947 ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund").[7]

These facts demonstrate that the Settlement is the result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion between, the

---

[7] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

MEMORANDUM IN SUPPORT OF MOTION

negotiating parties." *Officers for Just. v. Civil Serv. Comm. of Cnty. of San Francisco*,
688 F.2d 615, 625 (9th Cir. 1982); *see also In re China Medicine Corp. Sec. Litig.*, 2014
WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the
settlement supports the argument that it is non-collusive.").

### C.    Rule 23(e)(2)(C)(i): The Proposed Settlement Is Highly Favorable Considering The Risks Of Continued Litigation

Pursuant to Rule 23(e)(2)(C), the Court also must consider the substantive
adequacy of the proposed Settlement in determining final approval. Rule 23(e)(2)(C)(i)
evaluates whether "the relief provided for the class is adequate, taking into account . . .
the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R.
CIV. P. 23(e)(2)(C).[8] As discussed below, each of these factors supports the Settlement's
approval.

### 1.    The Strength of Lead Plaintiff's Case and Risk of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the
Court "must balance the risks of continued litigation, including the strengths and
weaknesses of plaintiff's case, against the benefits afforded to class members, including
the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d
823, 831 (N.D. Cal. 2017).

To prove liability under the Exchange Act, a plaintiff must demonstrate, *inter alia*,
that: (i) defendants made materially false or misleading statements; (ii) defendants acted
with scienter (*i.e.*, that defendants acted knowingly or with deliberate recklessness);
(iii) that plaintiffs' losses were caused by defendants' misrepresentations (*i.e.*, "loss
causation"); and (iv) that plaintiffs and the class members suffered damages. *See Dura*

---

[8] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the
strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration
of further litigation (second factor); and the risks of maintaining class action status
through the trial (third factor). *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d
at 1026).

*Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Lead Plaintiff would be required to prove each of these elements to prevail, whereas Defendants needed only to succeed on one defense to defeat the entire action. Lead Plaintiff anticipated Defendants would present strong arguments challenging Lead Plaintiff's allegations on all those elements at summary judgment and/or at trial.

The motion to dismiss process highlighted many of the risks of the Action, including the potential to recover nothing. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("[t]he court needs to look no further than its own order dismissing the . . . litigation to assess the risks involved."). Indeed, in the Court's order on Defendants' first motion to dismiss, the Court ruled that Lead Plaintiff had not sufficiently alleged falsity under the PSLRA and dismissed the Amended Complaint. Specifically, Judge Anderson held that Lead Plaintiff "appears to conflate the pace at which claims were paid with the accuracy of the insurance reserves periodically set and disclosed by HyreCar." *HyreCar*, 2022 WL 2102993, at *5. The Court held further that "the speed with which claims were paid is not the same as setting reserves for submitted claims and anticipating the number and value of future claims." *Id.* The Court reasoned that "[n]othing alleged in the 1st AC adequately links these two distinct concepts or otherwise attempts to quantify the magnitude by which HyreCar and its executives might have knowingly misstated the insurance reserves or the risks posed by some unknown portion of the pool of drivers." *Id.*

Moreover, the Court held that "HyreCar repeatedly disclosed both the difficulty it faced in setting its insurance reserves and, as ultimately happened, the risk that actual claims might exceed the insurance reserves." *Id.* As a result, Judge Anderson ruled that "[f]or these reasons, and in light of these disclosures for the forward-looking statements on which the 1st AC bases its claims, as well as for most of the reasons explained in Defendants' Motion to Dismiss, none of the 1st AC's theories concerning allegedly material misrepresentations or omissions, whether viewed individually or collectively, alleges sufficient well-pleaded facts to satisfy the PSLRA's pleading standard." *Id.* at

*6. While Lead Plaintiff was able to overcome these challenges with its SAC, there was no guarantee that Lead Plaintiff would have obtained the evidence necessary to survive summary judgment and prevail at trial and on appeal. Had Lead Plaintiff failed to do so, Lead Plaintiff and the Settlement Class would have recovered nothing. Indeed, Lead Counsel know from painful experience that surviving a motion to dismiss on the issues of materiality and falsity—even under the heightened pleading standard of the PSLRA—does not guarantee a recovery. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court *twice* finding the statement actionable); *see also In re Facebook, Inc., IPO Sec. and Derivative Litig.*, 343 F.Supp.3d 394, 409 (S.D.N.Y. Nov. 26, 2018) ("securities class actions are recognized by courts as notably difficult and notoriously uncertain to litigate.").

In addition to contesting falsity, Defendants would no doubt continue to dispute that they acted with the requisite scienter. This posed a major risk because scienter is notoriously "complex and difficult to establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007). Juries cannot read minds and evidence of a mental state is rarely direct; meaning the jurors must infer it. *See, e.g.*, *Smith v. Dominion Bridge Corp.*, 2007 WL 1101272, at *5 (E.D. Pa. Apr. 11, 2007) ("Since stockholders normally have little more than circumstantial and accretive evidence to establish the requisite scienter, proving scienter is an uncertain and difficult necessity for plaintiffs."). While the Court found that Lead Plaintiff had sufficiently alleged scienter when looking at the allegations on a holistic basis, it also stated that "on a percentage basis, the amount of stock sold by HyreCar's executives cuts against finding a strong inference of scienter … ." *Hyrecar*, 2022 WL 17413562, at *15. Defendants would also continue to assert, *inter alia*, that: (i) HyreCar received "clean" audit opinions and never restated its financial statements; (ii) that the Individual Defendants' stock sales

took place when they were not were not in possession of material nonpublic information;
and (iii) there was no direct evidence demonstrating their knowledge that certain
statements were false.  While Lead Plaintiff believes it had the stronger argument with
respect to scienter, proving it was far from a *fait accompli*.  *See Christine Asia Co., Ltd.
v. Yun Ma*, 2019 WL 5257534, at *12 (S.D.N.Y. Oct. 16, 2019) ("Proving scienter is hard
to do.").

Nor did a win on liability assure a recovery.  Defenses to loss causation and
damages pose substantial risks to recovery at trial because each side would have
presented expert testimony.  "One cannot predict which expert's testimony or
methodology a jury would find reliable.  If the jury agreed with Defendants, Plaintiffs
would have had their damages significantly reduced or their claims fail as a matter of
law." *Buettgen v. Harless,* 2013 WL 12303143, at *8 (N.D. Tex. Nov. 13, 2013); *see
also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing
damages at trial would lead to a battle of experts with each side presenting its figures to
the jury and with no guarantee whom the jury would believe.").

Attendant to the above-discussed legal risks, continued litigation would be long,
complex, and costly.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL
4537550, at *15 (S.D.N.Y. Nov. 8, 2010) ("[s]ecurities class actions are generally
complex and expensive to prosecute.").  Document discovery would have to be finished,
written discovery propounded and responded to, depositions would have to be taken,
experts would need to be designated, and expert discovery completed, Defendants'
expected motions for summary judgment would have to be successfully briefed and
argued, and trials are innately expensive, risky, and uncertain.  Any recovery that
shareholders might ultimately see would be diluted by the escalating costs accumulated
in the process.  *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec.
2, 2004) ("[C]omplex security fraud issues were likely to be litigated aggressively, at
substantial expense to all parties.").

These risks were further magnified by HyreCar's bankruptcy filing. The bankruptcy added another layer of complexity, created substantial obstacles for discovery, and posed significant difficulties for recovery, particularly where the only viable source of recovery—HyreCar's $10 million D&O insurance—was rapidly depleting because of the costs associated with defending not only this Action, but also the proceedings brought by the DOJ and SEC. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) ("[t]he risk of nonpayment in this case was acute" where, *inter alia*, the corporate defendant "lacked significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained" and there was "the risk that the wasting policy would run out by the time a trial was over").

Finally, even if Lead Plaintiff prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. This process would have likely spanned years, including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari to the Supreme Court, or both. During this time, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.[9]

### 2.    Risks of Maintaining Class Action Status

While Lead Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* ECF No. 120, Sec. IV.B, pp. 18-23), the class has not yet been certified, and Lead Plaintiff is aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision*

---

[9] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215, 1235 (10th Cir. 1996) (overturning securities-fraud class-action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

1    *Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified,

2    "there is no guarantee the certification would survive through trial, as Defendants might

3    have sought decertification or modification of the class").    Indeed, Defendants

4    undoubtedly would have challenged class certification if the case reached that stage.

5    Thus, the risks and uncertainty surrounding class certification also support approval of

6    the Settlement. *See In re GSE Bonds Antitrust Litig*., 414 F. Supp. 3d 686, 694 (S.D.N.Y.

7    2019) ("Although the risk of maintaining a class through trial is present in [every] class

8    action ... this factor [nevertheless] weighs in favor of settlement where it is likely that

9    defendants would oppose class certification if the case were to be litigated.").

10       **D.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval**

11       Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief

12    provided for the class is adequate in light of "the effectiveness of any proposed method

13    of distributing relief to the class, including the method of processing class-member

14    claims," "the terms of any proposed award of attorneys' fees, including timing of

15    payment," and "any agreement required to be identified under Rule 23(e)(2)."  Fed. R.

16    Civ. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors support the Settlement's approval or is

17    neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

18       **1.    <u>Rule 23 (e)(2)(C)(ii)</u>:**  Here, the method for processing Settlement

19    Class Members' claims and distributing the Net Settlement Fund to eligible claimants is

20    well-established and effective.  Strategic Claims Services ("SCS"), the Court-approved

21    Claims Administrator, will process claims under the guidance of Lead Counsel, provide

22    claimants with an opportunity to cure any deficiency in their claim or request review of

23    any denial of their claim, and, ultimately, mail or wire Authorized Claimants their *pro*

24    *rata* share of the Net Settlement Fund as calculated under the Plan of Allocation, after

25    submission and Court-approval of Lead Plaintiff's distribution motion.  This type of

26    claims processing is standard in securities class action settlements, and it is effective, as

27    well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual

28    investor trading data required for a claims-free process to distribute the Net Settlement

Fund.  *See Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021)
(approving settlement with a nearly identical distribution methodology and stating that
"the method for processing Settlement Class Members' claims and distributing relief to
eligible claimants includes well-established, effective procedures for processing claims
and efficiently distributing the Net Settlement Fund."); *see also Becker v. Bank of New
York Mellon Trust Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (holding
that "[t]he requirement that class members submit documentation to substantiate their
holdings of the bonds as of the record date will facilitate the filing of legitimate claims,
yet is not overly demanding given the range of permissible documentation.").

    **2.** <u>**Rule 23(e)(2)(C)(iii):**</u>  The relief provided for the Settlement Class is
also adequate when the terms of the proposed award of attorneys' fees is considered.  As
detailed in the accompanying fee and expenses memorandum, a proposed attorneys' fee
of 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the
Settlement Amount) is reasonable in light of the work performed and the results obtained.
The proposed attorneys' fee is also consistent with awards in similar complex class action
cases.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (upholding
fee award of one-third of $1.725 million settlement); *In re Pac. Enters. Sec. Litig.*, 47
F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million
settlement fund); *Yaron v. Intersect ENT, Inc.*, 2021 WL 5150051, at *1 (N.D. Cal. Nov.
5, 2021) (awarding 33⅓% of the $1.9 million settlement fund in securities class action).
More importantly, approval of the requested attorneys' fees is separate from approval of
the Settlement, and the Settlement may not be terminated based on any ruling with respect
to attorneys' fees.  *See* Stipulation ¶16.

    **3.** <u>**Rule 23(e)(2)(C)(iv):**</u>  Finally, in accordance with Rules
23(e)(2)(C)(iv) and 23(e)(3), and as Lead Plaintiff noted in its preliminary approval
papers, the Parties have entered into a confidential agreement that establishes certain
conditions under which Defendants may terminate the Settlement if Settlement Class
Members who collectively purchased a certain percentage, or more, of shares of HyreCar

common stock traded during the Settlement Class Period request exclusion from the
Settlement. "This type of agreement is standard in securities class action settlements and
has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*,
2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan
Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020); *In re Splunk Inc. Sec. Litig.*,
2024 WL 923777, at *6 (N.D. Cal. Mar. 4, 2024) ("The existence of a termination option
triggered by the number of class members who opt out of the settlement does not by itself
render the settlement unfair.").

### E.    Rule 23(e)(2)(D): The Proposed Plan Of Allocation Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class
members equitably relative to one another. Under the proposed Plan of Allocation, each
Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement
Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized
Claimant's Recognized Claim divided by the total of Recognized Claims of all
Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Lead
Plaintiff will receive the same level of *pro rata* recovery, based on its Recognized Claim
as calculated by the Plan of Allocation, as all other similarly situated Settlement Class
Members. "Moreover, the service award Lead Plaintiff seeks is reasonable and does not
constitute inequitable treatment of class members." *In re Regulus Therapeutics Inc. Sec.
Litig.*, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020). Accordingly, this factor favors
final approval of the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 WL
4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable
*pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based
solely on when they purchased and sold shares, taking into account the relative amounts
of artificial inflation prevailing during the Class Period."); *Lea v. Tal Educ. Grp.*, 2021
WL 5578665, at *11 (S.D.N.Y. Nov. 30, 2021) ("class members are treated equitably
relative to each other" where each "will receive a *pro rata* share of the Net Settlement

Fund in the proportion that the Authorized Claimant's claim bears to the total of the claims of all Authorized Claimants.").

### F.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[10]   These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final approval.

### 1.    The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). Courts must also consider the "serious risk[] that even if Plaintiffs were successful in all aspects of their claims they may be unable to collect a judgment." *Gudimetla v. Ambow Education Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015).

Here, Lead Plaintiff's consulting damages expert estimates that if Lead Plaintiff had ***fully prevailed*** at both summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted

---

[10] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

Plaintiff's damages theory—*i.e.*, Plaintiff's ***best case scenario***—the total ***maximum*** damages would be approximately $96 million. Thus, the $1.9 million Settlement Amount equates to approximately 2.0% of the total ***maximum*** damages ***potentially*** available. Such a recovery is not atypical for a securities class action. *See, e.g.*, Ex. 5 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), at p.24 & 25 (Fig. 22) (finding median recovery for all securities class actions from 2021 to 2023 be 1.8%, and 3.8% for securities class actions with estimated damages between $50-$100 million that were filed and settled between January 2014-December 2023)); *see also In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving settlement equal to 1.99% of total maximum estimated damages and stating that "[o]ther courts have found similar recoveries to be fair and reasonable."); *Wong v. Arlo Tech., Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021) (approving $1.25 million settlement, equal to 2.35% of maximum damages, and stating that "the amount of the settlement also weighs in favor of approval."); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving settlement representing "approximately 1.3% of the amount of damages that could be achieved.").

Additionally, the only viable source of recovery—HyreCar's $10 million D&O insurance—was quickly eroding because of the costs associated with defending this Action, as well as proceedings brought by the DOJ and SEC. Even if Lead Plaintiff was entirely successful, after class certification, summary judgment, trial and appeals, the putative class might have recover substantially less the Settlement Amount, or nothing at all, from the Defendants. *See Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) ("Considering the risks inherent in this litigation and [Defendant's] financial situation, this factor weighs in favor of Final Approval."). And, of course, less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether, and each element at issue was strongly contested by Defendants. As noted above, moreover, HyreCar's

bankruptcy filing created additional and substantial obstacles for recovery. In light of the risks of continued litigation, and the acute lack of resources to fund a larger settlement, the percentage of recovery is well within the range of reasonableness. Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

## 2. The Stage of the Proceedings/Extent of Discovery Completed

"In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Mego*, 213 F.3d at 459. "Instead, courts look for indications the parties carefully investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016).

Although discovery was in its infancy at the time of the settlement as a result of the PSLRA's automatic stay of discovery,[11] Lead Counsel conducted an extensive investigation into the claims asserted in this Action, which included a far-reaching review of publicly available information, significant work with a private investigator, and consultation with experts in the fields of accounting, loss causation and damages. ¶¶6(a), 56, 85. Additionally, Lead Counsel: (i) drafted the amended complaints; (ii) opposed Defendants' two motions to dismiss; (iii) reviewed and analyzed the Court's decisions; (iv) initiated discovery of Defendants and third parties; (v) received and reviewed third-party documents; (vi) monitored HyreCar's bankruptcy proceeding; and (vii) participated in a mediation process in conjunction with an experienced mediator in which each side

---

[11] *See In re OCA, Inc. Sec. and Deriv. Litig.*, 2009 WL 512081, at *12 (E.D. La. Mar. 2, 2009) ("Because the PSLRA prohibits formal discovery during the pendency of any motion to dismiss, the parties were prohibited from engaging in formal discovery until the Court ruled on defendants' motion to dismiss ....") (citing 15 U.S.C.A. § 78u–4(b)(3)(B)).

put forth their best arguments in detailed mediation statements that were exchanged and provided to the mediator.  ¶¶6(j), 70.  As a result of these efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the claims and defenses asserted in the Action, and the significant risks to establishing liability and damages.  This understanding enabled Lead Plaintiff and Lead Counsel to negotiate the Settlement intelligently and responsibly.  *See Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry.  The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.").

### 3. Experienced Counsel Believe the Settlement is Fair, Reasonable, and Adequate

The Ninth Circuit recognizes that parties "represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967.  Thus, courts grant great weight to the recommendations of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of th[e] case and their extensive experience litigation prior . . . class actions cases").

Here, Lead Counsel has substantial experience litigating securities class actions and has obtained a thorough understanding of the merits and risks of this Action.  *See* Ex. 8 (GPM firm résumé).  Lead Counsel's belief in the fairness and reasonableness of the Settlement supports final approval.  Moreover, Defendants have been vigorously represented by O'Melveny & Myers LLP and Davis Wright Tremaine LLP during the

Action and settlement negotiations.[12]  Counsel for Defendants are equally well-informed regarding the case, and their representation of Defendants was just as rigorous as Lead Counsel's representation of the Settlement Class.  Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, final approval is warranted.

**4.      The Reaction of Settlement Class Members to the Settlement**

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(c)(2)(B)(vi), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members."  *Omnivision*, 559 F. Supp. 2d at 1043; *see also Hanlon*, 150 F.3d at 1027 (that the "overwhelming majority" stayed in the class is "objective positive commentary as to its fairness").

Here, as required by Rules 23(c)(2)(B)(vi) and 23(e)(5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement.  Ex. 2-C (Notice) at pp.2-3 & ¶¶72-74, 78-82.  In total, as of October 24, 2024, 13,872 potential Settlement Class Members were either mailed Postcard Notice or emailed a link to the Notice and Claim Form.  Ex. 2-C (Initial Mailing Decl.), ¶¶5, 71. To date, not a single request for exclusion has been received, and no objections have been filed with the Court.  *Id*. at ¶¶12-13; Sams Decl., ¶¶52-53.[13]  The Settlement Class's universally positive reaction strongly supports final approval of the Settlement. *Omnivision*, 559 F. Supp. 2d at 1043 ("By any standard, the lack of objection of the Class

---

[12] Additionally, HyreCar was represented by Latham & Watkins LLP before it filed for bankruptcy, and Latham & Watkins LLP represented HyreCar, Joseph Furnari, and Robert Scott Brogi before Furnari and Brogi obtained separate counsel.

[13] The deadline to request exclusion from, or to object to any aspect of, the Settlement is October 24, 2024.  If any objections or opt-outs are received after the date of this filing, they will be addressed on reply.

Members favors approval of the Settlement."); *Heritage Bond*, 2005 WL 1594403, at *10
("The Court finds the lack of class members that have manifested any disapproval of the
Settlement further demonstrates the fairness, adequacy and reasonableness of the
Settlement.").

### 5.    The Presence of a Government Participant

"Because no government entities are participants . . . this factor is neutral." *In re
Amgen Inc. Sec. litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).

As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either
supports a finding that the Settlement is fair, reasonable, and adequate, or is neutral. Final
approval is, therefore, appropriate.

## V.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

In granting preliminary approval, the Court found this case appropriate for class
certification for settlement purposes, and appointed Turton Inc. as class representative
and Glancy Prongay & Murray LLP as class counsel. *See HyreCar*, 2024 WL 3504234,
at *11-15. Nothing has changed since preliminary approval that would undermine the
Court's conclusion, and class certification for settlement purposes remains appropriate.
*See Fleming v. Impax Labs. Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

## VI.    THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

Lead Plaintiff also requests approval of the Plan of Allocation. A plan of allocation
in a class action "is governed by the same standards of review applicable to approval of
the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*,
559 F. Supp. 2d at 1045. "To meet this standard, a plan of allocation recommended by
experienced and competent class counsel need only have a reasonable and rational basis."
*In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *10 (C.D. Cal. Apr. 23, 2024).

The Plan of Allocation, as detailed in ¶¶10, 54-61 of the Sams Declaration, and set
forth in the Notice (Ex. 2-C (Notice ¶¶52-70)), is based on an out-of-pocket theory of
damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment
of the damages that Lead Plaintiff contends could have been recovered under the theories

of liability asserted in the Action. More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the price of HyreCar common stock was artificially inflated during the Settlement Class Period due to Defendants' alleged material misrepresentations and omissions. The Plan of Allocation is based on the premise that the decrease in the price of HyreCar common stock that followed the alleged corrective disclosure that occurred on August 11, 2020, may be used to measure the alleged artificial inflation in the price of HyreCar common stock prior to these disclosures. ¶57; Notice ¶54. An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many shares of HyreCar common stock the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the shares, and the number of valid claims filed by other Claimants. If a Claimant purchased shares during the Settlement Class Period, but did not hold any of those shares through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. And, as noted above (*see* Sec. IV.E.), each Authorized Claimant—including Lead Plaintiff—will receive his, her or its *pro rata* share of the Net Settlement Fund, which will be their Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Lead Counsel believes that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members attributable to the conduct alleged in the SAC. *See Stable Road*, 2024 WL 3643393, at *10-11 (approving substantially similar plan of allocation); *Schueneman v. Arena Pharms., Inc.*, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020) (same).

Finally, to date, no objections to the Plan of Allocation have been filed. *See Heritage Bond*, 2005 WL 1594403, at *12 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and

defending this action, the Court finds the plan of allocation as fair and adequate.").
Approval of the proposed Plan of Allocation is, therefore, appropriate.

## VII.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate, and certify the Settlement Class for the purposes of settlement.

DATED:  October 10, 2024          **GLANCY PRONGAY & MURRAY LLP**

By: _ s/ Ex Kano S. Sams II_

Robert V. Prongay
Ex Kano S. Sams II
Raymond D. Sulentic
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Lead Plaintiff Turton Inc.*

## <u>PROOF OF SERVICE BY ELECTRONIC POSTING</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On October 10, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 10, 2024.

<u>*s/ Ex Kano S. Sams II*</u>
Ex Kano S. Sams II

MEMORANDUM IN SUPPORT OF MOTION