Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
Raymond D. Sulentic (SBN 316913)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Counsel for Lead Plaintiff Turton Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>Defendants. | Case No. 2:21-cv-06918-FWS-JC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Hearing Date: November 14, 2024<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 10D<br>Judge: Fred W. Slaughter |

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 1

II.  FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION ......... 4

III.  THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST ................................................................................................... 4

A.  Lead Counsel Is Entitled To A Common Fund Fee Award ................. 4

B.  The Court Should Award A Percentage Of The Common Fund .......... 5

C.  The Requested Attorneys' Fee Is Supported By The Factors Considered By Courts In The Ninth Circuit ......................................... 6

    1.  The Quality Of The Result Supports The Fee Request .............. 7

    2.  The Substantial Litigation Risks Support The Fee Request ...... 12

    3.  The Skill Required And The Quality Of The Work ................. 14

    4.  The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request .......................... 15

    5.  A 33⅓% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation ............................................... 17

    6.  The Settlement Class's Reaction Supports The Requested Fee 20

D.  A Lodestar Cross-Check Supports The Requested Fee ....................... 20

IV.  LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED ............... 23

V.  PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4) .............................................. 24

VI.  CONCLUSION .............................................................................................. 25

# **TABLE OF AUTHORITIES**

<u>CASES</u>

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ..................................................................................8

*Baron v. HyreCar Inc.*,
   2022 WL 2102993 (C.D. Cal. Feb. 16, 2022) ......................................................2, 8

*Baron v. Hyrecar Inc.*,
   2022 WL 17413562 (C.D. Cal. Dec. 5, 2022)....................................................9, 10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)................................................................................................19

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019)...........................................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................................4

*Boyd v. Bank of America Corp.*,
   2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) .......................................................19

*Brown v. China Integrated Energy Inc.*,
   2016 WL 11757878 (C.D. Cal. July 22, 2016) ......................................................10

*Bryant v. Avado Brands, Inc.*,
   100 F. Supp. 2d 1368 (M.D. Ga. 2000)....................................................................8

*Cabiness v. Educ. Fin. Sols., LLC*,
   2019 WL 1369929 (N.D. Cal. Mar. 26, 2019) .......................................................22

*Chun–Hoon v. McKee Foods Corp.*,
   716 F. Supp. 2d 848 (N.D. Cal. 2010).....................................................................22

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
   2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020).........................................................12

*Craft v. Cty. of San Bernardino*,
　624 F. Supp. 2d 1113 (C.D. Cal. 2008) .................................................................18

*Cullen v. Whitman Med. Corp.*,
　197 F.R.D. 136 (E.D. Pa. 2000) ...........................................................................12

*Destefano v. Zynga, Inc.*,
　2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ....................................................11, 15

*Dura Pharms., Inc. v. Broudo*,
　544 U.S. 336 (2005)...............................................................................................10

*Edmonds v. U.S.*,
　658 F. Supp. 1126 (D.S.C. 1987) ...........................................................................14

*Ellison v. Steven Madden, Ltd.*,
　2013 WL 12124432 (C.D. Cal. May 7, 2013)...........................................................5

*Eminence Capital, LLC v. Aspeon, Inc.*,
　316 F.3d 1048 (9th Cir. 2003) ...............................................................................12

*Fernandez v. Victoria Secret Stores, LLC*,
　2008 WL 8150856 (C.D. Cal. 2008) ......................................................................20

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
　307 F.3d 997 (9th Cir. 2002) .................................................................................22

*Glass v. UBS Fin. Servs., Inc.*,
　331 F. App'x 452 (9th Cir. 2009)........................................................................6, 21

*Glickenhaus & Co. v. Household Int'l, Inc.*,
　787 F.3d 408 (7th Cir. 2015) .................................................................................17

*Goldberger v. Integrated Resources, Inc.*,
　209 F.3d 43 (2d Cir. 2000) ....................................................................................13

*Gonzalez v. City of Maywood*,
　729 F.3d 1196 (9th Cir. 2013) ...............................................................................21

*Gross v. GFI Grp., Inc.*,
　784 F. App'x. 27 (2d Cir. Sept. 13, 2019)................................................................9

*Gross v. GFI Grp., Inc.*,
310 F. Supp. 3d 384 (S.D.N.Y. 2018) ..................................................................... 16

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) .......................................................... 24

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ...................................................................................... 23

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................................................... 1

*Hensley v. Eckerhart*,
461 U.S. 424 (1983)................................................................................................... 7

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989)................................................................... 5, 18

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ....................................................... 21

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................................................... 20

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................... 8

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. 2012) ......................................................................... 21

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991).............................................................. 2

*In re Banc of California Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ........................................................ 19

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)............................................................. 2

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ..................................................................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...........................................................................5, 7, 22

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012)....................................................................9

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001) ................................................................................11

*In re Charles Schwab Corp. Sec. Litig.*,
2011 WL 1481424 (N.D. Cal. Apr. 19, 2011)........................................................6

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ...........................................................................8

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015).....................................................................13

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) .............................................................................11

*In re Equity Funding Corp. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ....................................................................15

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .......................................................16

*In re Genworth Fin. Sec. Litig.*,
2016 WL 5400360 (E.D. Va. Sep. 26, 2016) .......................................................21

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)..................................................*passim*

*In re Ikon Office Sols., Inc. Sec. Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000) ..........................................................................12

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................20, 22, 24

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) .....................................................17

*In re K12 Inc. Sec. Litig.*,
   2019 WL 3766420 (N.D. Cal. July 10, 2019) ........................................................ 19

*In re Lidoderm Antitrust Litig.*,
   2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ...................................................... 18

*In re LJ Int'l, Inc. Sec. Litig.*,
   2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ...................................................... 10

*In re Marsh & McLennan Cos. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ...................................................... 25

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ............................................................................... 20

*In re Myford Touch Consumer Litig.*,
   2019 WL 6877477 (N.D. Cal. Dec. 17, 2019) ...................................................... 22

*In re NASDAQ Market-Makers Antrust. Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................... 13, 17

*In re Ocean Power Tech., Inc., Sec. Litig.*,
   2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................................ 2

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal 2008) ......................................................... *passim*

*In re Oracle Corp. Sec. Litig.*,
   2009 WL 1709050 (N.D. Cal. June 16, 2009) ...................................................... 17

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ................................................................................. 14

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ...................................................... 3

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........................................................ 7

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ................................................................................. 6

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
2013 WL 5505744 (D.N.J. Oct. 1, 2013) ............................................................... 13

*In re Scientific Atl., Inc. Sec. Litig.*,
754 F. Supp. 2d 1339 (N.D. Ga. 2010)................................................................... 11

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020)........................................................ 25

*In re Stable Road Acquisition Corp. Sec. Litig.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)................................................23, 25

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................... 21

*In re Veeco Instruments Inc. Sec. Litig.*,
2007 WL 4115808 (S.D.N.Y. Nov. 7 , 2007) ....................................................... 25

*In re Vivendi Universal, S.A. Sec. Litig.*,
765 F. Supp. 2d 512 (S.D.N.Y. 2011) ................................................................... 16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .................................................................4, 15, 18

*In re Waste Management, Inc. Sec Litig.*,
2002 WL 35644013 (S.D. Tex. May 10, 2002)..................................................... 13

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)...............................................................8, 17

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
564 U.S. 135 (2011).................................................................................................. 17

*Jorling v. Anthem, Inc.*,
836 F. Supp. 2d 821 (S.D. Ind. 2011)...................................................................... 8

*Lea v. TAL Educ. Grp.*,
2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ...................................................... 22

*Leach v. NBC Universal Media, LLC*,
2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) .................................................... 22

*Marshall v. Northrop Gruman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ....................................................... 18

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015) ..................................................................... 13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ............................................................................... 10

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 .................................................................................................. 14

*Morris v. Lifescan, Inc.*,
54 F. App'x 663 (9th Cir. 2003) ............................................................................ 20

*Morrison v. Nat'l Australia Bank Ltd.*,
561 U.S. 247 (2010)................................................................................................ 17

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
2009 WL 9100391 (C.D. Cal. June 24, 2009)........................................................ 18

*Paul, Johnson, Alston & Hunt v. Graulty*,
886 F.2d 268 (9th Cir. 1989) ................................................................................. 18

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) ............................................................................... 2

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ................................................................................... 6

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................... 6

*Romero v. Producers Dairy Foods, Inc.*,
2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ....................................................... 18

*Ross v. Trex Co., Inc.*,
2013 WL 12174133 (N.D. Cal. Dec. 16, 2013) ....................................................... 3

*Schwartz v. TXU Corp.*,
2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...............................................2, 14, 15

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ...................................................................................2

*Silverman v. Motorola, Inc.*,
2012 WL 1597388 (N.D. Ill. May 7, 2012).............................................................13

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ..................................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).................................................................................................19

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632 (5th Cir. 2012) ....................................................................................5

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995).........................................................................18

*Varljen v. H.J. Meyers & Co., Inc.*,
2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ....................................................24

*Vincent v. Hughes Air West, Inc.*,
557 F.2d 759 (9th Cir. 1977) ....................................................................................4

*Vinh Nguyen v. Radient Pharm. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014)............................................................5

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2012) .............................................................6, 12, 18, 21

*Wong v. Arlo Tech., Inc.*,
2021 WL 1531171 (N.D. Cal. Apr. 19, 2021).........................................................7

*Yaron v. Intersect ENT, Inc.*,
2021 WL 5150051 (N.D. Cal. Nov. 5, 2021) ..........................................................19

*Zaidi v. Adamas Pharma., Inc.*,
2024 WL 4342186 (N.D. Cal. Sept. 27, 2024).......................................................25

STATUTES

15 U.S.C. §78u-1(a)(6) ...................................................................................................... 5

15 U.S.C. §78u-4(a)(4)24 .......................................................................................... i, 1, 24

15 U.S.C. §78u-4(b)(1)-(b)(2)(A), and (b)(3)(B) ............................................................ 1

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), respectfully submits this memorandum of law in support of its Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I. INTRODUCTION

Lead Counsel have succeeded in obtaining a $1,900,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Settlement Class. This is an extremely favorable outcome in the face of substantial risks, and it is the result of Lead Counsel's vigorous, persistent, and skilled efforts. Lead Counsel now respectfully moves the Court for an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (*i.e.*, $633,333, plus interest at the same rate as the Settlement Fund), and reimbursement of $124,016.12 in Litigation Expenses. The Litigation Expenses consist of $114,016.12 in out-of-pocket costs incurred by Lead Counsel while prosecuting the Action, and a $10,000 award to Court-appointed lead plaintiff Turton Inc. ("Lead Plaintiff" or "Turton") for reimbursement of the reasonable costs incurred (including the cost of time spent) in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

Achieving the Settlement was not easy. Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment. *See* 15 U.S.C. § 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B). These are not idle risks. *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated March 20, 2024 (the "Stipulation"; ECF No. 121-1), or the concurrently filed Declaration of Ex Kano S. Sams II ("Sams Declaration"). All citations to "¶__" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Sams Declaration.

this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005) ("the risk of no recovery in complex [securities] cases of this type is very real.").[2] As a result, a significant number of cases—like this one—are dismissed in whole or in part at the outset. *See Baron v. HyreCar Inc.*, 2022 WL 2102993, at *7 (C.D. Cal. Feb. 16, 2022) (granting motion to dismiss with leave to amend).[3]

Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is far from guaranteed.[4] There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.").

Despite facing long odds, Lead Counsel have vigorously pursued this case for more than three years—working 1,490.20 hours, and advancing $114,016.12 in expenses,

---

[2] Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[3] *See also* Ex. 2 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ("NERA Report") at p. 15-16 (Fig. 14) (finding motion to dismiss filed in 96% of securities class action lawsuits, with a decision reached in 73% of the cases, and stating that "[a]mong the cases where a decision was reached, 60% were granted (with or without prejudice) while 40% were denied either in part or in full.").

[4] *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict), *aff'd sub nom.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

all on a fully-contingent basis.  *See* ¶68, 82-85; Exs. 3-4.  As compensation for Lead Counsel's significant efforts on behalf of the Settlement Class, Lead Counsel respectfully requests a fee award in the amount of 33⅓% of the Settlement Fund.  The requested fee is consistent with fee awards in comparable class action settlements, whether considered as a percentage of the Settlement Fund, or in relation to Lead Counsel's lodestar.  In fact, the requested fee represents a "negative" or fractional multiplier of 0.45 on Lead Counsel's lodestar, which itself is a strong indication of the reasonableness of the requested fee. *See Ross v. Trex Co., Inc.*, 2013 WL 12174133, at *1 (N.D. Cal. Dec. 16, 2013) ("Plaintiffs sought no extraordinary award of fees; to the contrary, they sought less than their lodestar, which further supports the reasonableness of the fees requested and awarded."); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("The resulting so-called negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Lead Counsel also seek reimbursement of $114,016.12 in out-of-pocket litigation expenses.  ¶¶82-85; Ex. 4.  This amount is below the $163,500 limit on Litigation Expenses disclosed in the Notice—which, by definition, included a PSLRA award to Lead Plaintiff.  The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the Action.  Accordingly, they should be approved.

Finally, Lead Counsel respectfully requests a PSLRA award in the amount of $10,000 to compensate Lead Plaintiff for the time and effort expended on behalf of the Settlement Class.  The work Lead Plaintiff performed is set forth in the Declaration of Michael Criden, who is the President and a Director of Turton.  *See* Ex. 1.  But for Turton's "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Sams Declaration, Lead Counsel respectfully requests that the Court award attorneys' fees equal to 33⅓% of the

Settlement Fund, approve reimbursement of $114,016.12 in litigation expenses incurred by Lead Counsel, and grant Turton a PSLRA award in the amount of $10,000.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

For the sake of brevity, the Court is respectfully referred to the Sams Declaration for a discussion of, *inter alia*, the Action's history (¶¶13-27); the nature of the claims asserted (¶¶4,16); the negotiations leading to the Settlement; the risks and uncertainties of continued litigation(¶¶28-40); a summary of the services Lead Counsel provided for the benefit of the Settlement Class (¶¶6, 15-18, 21, 23-26); and additional information on the factors that support the fee and expense application, including the lodestar cross-check (¶¶62-81; Ex. 3).

## III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

### A.    Lead Counsel Is Entitled To A Common Fund Fee Award

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"). Indeed, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*") ("[T]hose who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it."). This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal 2008).

**B.      The Court Should Award A Percentage Of The Common Fund**

District courts in the Ninth Circuit retain discretion to award attorneys' fees in common fund cases based upon either the percentage-of-the-fund method or the lodestar method.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944-45 (9th Cir. 2011) (finding that when a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).  Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used.  *See Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because: it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; and reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis.  *See Omnivision*, 559 F. Supp. 2d at 1046; *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("There are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex lodestar calculation requires."); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (lodestar/multiplier method "adds to the work load of already overworked district courts").

Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding*

*A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA]").

For these reasons, among others, Lead Counsel respectfully requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis, and use an informal lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2012) ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure …."); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

**C.    The Requested Attorneys' Fee Is Supported By The Factors Considered By Courts In The Ninth Circuit**

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Those factors include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51); *see also In re Charles Schwab Corp. Sec. Litig.*, 2011 WL 1481424, at *8 (N.D. Cal. Apr. 19, 2011). The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but rather, should be evaluated in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50. As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

## 1.    The Quality Of The Result Supports The Fee Request

Courts have consistently acknowledged that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). Lead Counsel submits that the $1.9 proposed Settlement is an excellent result for the Settlement Class given, *inter alia*, the many risks of continued litigation, the procedural posture of the case at the time of settlement, HyreCar's bankruptcy, and the limited sources of recovery.

Lead Plaintiff's consulting damages expert estimates that *if* the Court certified the same class period as the Settlement Class Period, *if* the class had prevailed on its claims at both summary judgment and after a jury trial, *and if* the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation (*i.e.*, Lead Plaintiff's best-case scenario), estimated total ***maximum*** class wide damages would be approximately $96 million. ¶42. Under this scenario, the recovery is approximately 2.0% of ***maximum*** class-wide damages ***potentially*** available. Such a recovery is not atypical for a securities class action. *See, e.g.*, Ex. 5 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), at pp.24 & 25 (Fig. 22) (finding median recovery for all securities class actions from 2021 to 2023 be 1.8%, and 3.8% for securities class actions with estimated damages between $50-$100 million that were filed and settled between January 2014-December 2023)).[5]

To fully appreciate the Settlement, however, it must be evaluated in light of the procedural and substantive hurdles that Lead Plaintiff overcame, and would have had to

---

[5] *See also In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving settlement equal to 1.99% of total maximum estimated damages and stating that "[o]ther courts have found similar recoveries to be fair and reasonable."); *Wong v. Arlo Tech., Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19,

overcome, in order to prevail in this complex securities fraud litigation. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at \*9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action").

From the outset, there existed a very real risk that the Court would dismiss the Action pursuant to the stringent pleading standards of the PSLRA, and that the PSLRA's automatic stay of discovery would prevent Lead Plaintiff from obtaining the evidence needed to successfully replead its claims. *See Jorling v. Anthem, Inc.*, 836 F. Supp. 2d 821, 831 (S.D. Ind. 2011) (discussing the PSLRA's "heightened pleading requirements, making it more difficult for plaintiffs to survive a motion to dismiss, and thus receive the keys to unlock the discovery process.").[6] Indeed, the risks inherent in this case are highlighted by Judge Anderson's previous dismissal of the Action. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved."); *HyreCar*, 2022 WL 2102993, at \*7. There was, therefore, a significant chance that this case would not progress past the pleading stage.

---

2021) (approving $1.25 million settlement, equal to 2.35% of maximum damages, and stating that "the amount of the settlement also weighs in favor of approval."); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving settlement representing "approximately 1.3% of the amount of damages that could be achieved.").

[6] *See also Bryant v. Avado Brands, Inc.*, 100 F. Supp. 2d 1368, 1377 (M.D. Ga. 2000) ("An unfortunate byproduct of the PSLRA is that potentially meritorious suits will be short-circuited by the heightened pleading standard."), *rev'd on other grounds sub nom. Bryant v. Dupree*, 252 F.3d 1161 (11th Cir. 2001).

*See In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.").

Nor did the risks end at the pleading stage. Lead Counsel faced significant hurdles in ***proving*** liability and damages. For example, Defendants forcefully argued, and would continue to maintain at summary judgment and trial, that the statements at issue were neither actionable nor material. Among other things, Defendants asserted that: (i) HyreCar's insurance reserve estimates were statements of opinion that accurately reflected the best estimate of claims expenses that would, in the future, be entitled to payment, based on the information available to the company at the time (*i.e.*, Defendants believed their statements of opinion were true when made); (ii) HyreCar repeatedly warned investors that the insurance reserves were estimates and of the risk that actual claims might exceed the reserves; (iii) insurance reserves hinge in large part on highly subjective and technical accounting standards; and (iv) HyreCar's independent auditors confirmed that HyreCar's financial statements complied with GAAP at the time they were issued, and those financial statements have never been restated. While Lead Plaintiff prevailed against the motion to dismiss, the Court found that several of Defendants' arguments "prematurely [sought] to resolve the factual dispute of whether Defendants actually violated GAAP." *Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *11 (C.D. Cal. Dec. 5, 2022). Falsity and materiality were, therefore, an open question, and the trier of fact could have determined that the evidence supported Defendants' version of the events. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court ***twice*** finding the statement actionable).

Defendants would have also continued to contest scienter. Among other things, Defendants would assert that the following cut against a finding of scienter: (i) HyreCar

received "clean" audit opinions, Defendants relied on their auditors, and HyreCar never restated its financial statements; (ii) the Individual Defendants' stock sales took place when they were not were not in possession of material nonpublic information, and in amounts that do not rise to the level supporting a strong inference of scienter (*see Hyrecar*, 2022 WL 17413562, at *17 ("on a percentage basis, the amount of stock sold by HyreCar's executives cuts against finding a strong inference of scienter … .")); and (iii) there was no direct evidence demonstrating their knowledge that certain statements were false.[7]  While Lead Plaintiff strongly disagreed with Defendants' arguments, and believed it would be able to prove scienter, there is no question that the issue would have been contested on summary judgment, at trial and on appeal.  *See In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *5 (C.D. Cal. Oct. 19, 2009) ("It is very difficult to predict whether a jury would have believed Plaintiffs' claims regarding state of mind."); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("To prevail, Plaintiffs would have to establish Defendants acted with scienter, which can be particularly difficult to establish.").

Additionally, Defendants would have asserted that Lead Plaintiff could not establish loss causation, and even if it could, the damages were minimal.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) ("a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss.").  For example, Defendants would have argued that the one stock drop in the case (*i.e.*, the nearly 50% decline on August 10, 2021) was not the result of the revelation of the truth that constituted a corrective disclosure, but was instead due to disappointing earnings or revenue, business conditions, or other non-fraud related

---

[7] Defendants would also assert that: (i) Defendant Brogi made a single trade in May 2021, in which he only sold 36% of his shares, and he did so during an open trading window and consistent with the Company's trading policies; and (ii) Defendant Furnari sold 43% of his shares pursuant to a previously adopted 10b5-1 plan.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008) ("sales according to pre-determined plans may rebut an inference of scienter.").

causes.  Lead Plaintiff would have been required to show what portion of its loss was attributable to actionable issues versus non-actionable factors.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005) (other forces contributing to an investment's decline "will not bar recovery under the loss causation requirement but will play a role in determining recoverable damages.").  This would not be an easy task, would rely heavily on expert testimony, and if Defendants' arguments were accepted by the Court or a jury, the Settlement Class's maximum potential damages would have been substantially reduced, if not completely eliminated.  *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016) ("[L]oss causation might have been particularly difficult for Lead Plaintiff to prove, as Defendants would have argued that Lead Plaintiff's expert could not apportion losses to Defendants' misstatements as opposed to other events and information available on the market …."); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).

Although Lead Plaintiff believed that it had meritorious arguments in response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery.  *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Finally, this case presented serious ability-to-pay issues.  Like many technology startups, HyreCar never generated meaningful revenues, and never turned a profit.  This signaled a potential collectability risk, which, by the end of the case, had materialized.

HyreCar ultimately filed for bankruptcy, and the only viable source of recovery—HyreCar's $10 million of D&O insurance—was rapidly depleting because of the costs associated with defending not only this Action, but also investigations by the DOJ and SEC. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) ("[t]he risk of nonpayment in this case was acute" where, *inter alia*, the corporate defendant "lacked significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained" and there was "the risk that the wasting policy would run out by the time a trial was over"). Given the range of possible results, including no recovery at all, the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee.

### 2.    The Substantial Litigation Risks Support The Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "the risk of litigation." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048. While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *In re Ikon Office Sols., Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA.").[8] This Action was no exception; in fact, it was far riskier than the average securities fraud class action. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020) ("[G]reater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement

---

[8] *See also* NERA Report at p. 15-16 (Fig. 14).

percentage.").[9]

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 848 (N.D. Ill. 2015). "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions." *Id.* In the instant case, no civil or criminal charges have been filed by the SEC or DOJ—even as of today.[10] Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015).[11]

Moreover, this was not a restatement case. When companies restate their financials, they are admitting a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually

---

[9] "It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 55 (2d Cir. 2000); *see also In re NASDAQ Market-Makers Antrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise)."); *In re Waste Management, Inc. Sec Litig.*, 2002 WL 35644013, at *28 (S.D. Tex. May 10, 2002) ("These risks must be assessed as they existed at the inception of the litigation, and not in light of the settlement achieved in the end.").

[10] The SEC and DOJ opened investigations into various issues at HyreCar several years ago, however, the government has not released any information concerning that investigation and the information provided to the public by HyreCar has been limited.

[11] *See also Silverman v. Motorola, Inc.*, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense.").

certain due to a financial restatement); *TXU*, 2005 WL 3148350, at \*29 ("From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, which did not involve restatement of TXU's previously issued financial statements or any other acknowledgments of wrongdoing."). In sum, the risks posed by litigation were substantial, and they were constantly present. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.    The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed.  To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities" (*Omnivision*, 559 F. Supp. 2d at 1047), and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*12 (C.D. Cal. June 10, 2005).  "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

As demonstrated by its firm résumé, GPM's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions. *See* Ex. 8.  Lead Counsel's experience allowed them to: obtain significant investigative materials despite the PSLRA's barriers to obtaining formal discovery; identify the complex issues involved in this case; overcome Defendants' second motion to dismiss; formulate strategies to effectively prosecute the Action; and negotiate a favorable settlement despite the Defendants' lack of financial resources. Without question, Lead Counsel's skill and experience were major factors in obtaining the result achieved by this Settlement. *See Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex national class action requires unique legal skills and abilities."); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714,

at \*3 (C.D. Cal. July 25, 2019 (GPM lawyers "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

"[T]he quality of opposing counsel is [also] important in evaluating the quality of Plaintiff's counsel's work." *Heritage Bond*, 2005 WL 1594403, at \*20. Here, Defendants were represented by O'Melveny & Myers LLP, Davis Wright Tremaine LLP, and/or Latham & Watkins LLP, all of which are experienced, aggressive, and highly skilled counsel. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *TXU*, 2005 WL 3148350, at \*30; *see also In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

### 4. The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor in determining a fair and reasonable fee requires courts in the Ninth Circuit to consider the contingent nature of the fee:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Destefano v. Zynga*, 2016 WL 537946, at \*18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award."). "This is especially true where, as here, class counsel has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher 33 percent fee award." *Zynga*, 2016 WL 537946, at \*18.

Lead Counsel has, to date, received no compensation, has invested 1,490.20 hours of work equating to a total lodestar of $1,414,626.25, and advanced expenses of $114,016.12. ¶¶68, 73; Exs. 3-4. Additional work in implementing the Settlement and claims administration will also be required. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."). Since the inception of this case, Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is real. Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. *See Gross v. GFI Grp., Inc.*, 310 F. Supp. 3d 384, 399 (S.D.N.Y. 2018) (GPM served as Co-Lead Counsel in case where the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 F. App'x 27 (2d Cir. Sept. 13, 2019).[12]

And Lead Counsel is not alone. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to

---

[12] *See also* ¶39 (detailing GPM's loss in a six-week antitrust trial).

exclude purchasers of ordinary shares, based on Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years); *Omnivision*, 559 F. Supp. 2d at 1047 (noting in 2008 that "[n]ationwide, Plaintiffs have won only three of eleven [securities class action] cases to reach verdicts since 1996."). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Xcel*, 364 F. Supp. 2d at 994.[13] Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).[14]

Here, because Lead Counsel's fee was entirely contingent, the only certainties were that there would be no fee or expense reimbursement without a successful result, and that such a result would only be realized after substantial amounts of time, effort, and expense were expended. Nevertheless, Lead Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *NASDAQ*, 187 F.R.D. at 488.

### 5. A 33⅓% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

In *Paul, Johnson, Alston & Hunt v. Graulty*, the Ninth Circuit established 25% of

---

[13] *See also In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants following lengthy trial).

[14] *See also supra* n.4.

the fund as the "benchmark" award for attorneys' fees. 886 F.2d 268, 272 (9th Cir. 1989). However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1295 n.2.[15] As applied, this means that "in most common fund cases, the award exceeds that benchmark." *Omnivision*, 559 F. Supp. 2d at 1047; *see also Activision*, 723 F. Supp. at 1373 (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%[.]"); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33⅓% of $104,750,000 and stating: "a fee award of one-third is within the range of awards in this Circuit."); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third."); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery'").

This is especially true in cases with "relatively small" common fund settlements. *See Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) ("Most of the cases … in which high percentages such as 30–50 percent of the fund were awarded involved relatively smaller funds of less than $10 million."); *see also Craft v.*

---

[15] *See Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case.").

*Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases of under $10 million will often result in result in fees above 25%."). Indeed, for securities class action settlements settled between 2014 and 2023 with a gross settlement value of under $5 million, the median attorneys' fee as a percentage of settlement value was 33.0%. *See* NERA Report at 29 (Fig. 25).

In view of the result obtained, the contingent fee risk, the number of hours dedicated to this matter by Lead Counsel, the financial commitment of Lead Counsel, and the important public policy advanced by securities litigation such as this, it is respectfully submitted that an award of 33⅓% of the recovery obtained for the Settlement Class is appropriate. *See, e.g.*, *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("Risk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. This incentive is especially important in securities cases.").[16] Such an award would also be consistent with attorneys' fee awards in similar complex, contingent litigation in the Ninth Circuit. *See Yaron v. Intersect ENT, Inc.*, 2021 WL 5150051, at *1-2 (N.D. Cal. Nov. 5, 2021) (awarding 33⅓% of $1.9 million in securities class action); *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), ECF No. 165 at 4 (C.D. Cal. June 1, 2009) (Ex. 9) (awarding 33⅓% of $5 million settlement fund); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (awarding 33% of $3.5 million settlement fund); *Boyd v. Bank of America Corp.*, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (awarding one-third of the $5.8 million settlement fund); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement fund); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund and noting that "courts in this circuit, as well as

---

[16] *See also Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions "provide 'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (same).

other circuits have awarded attorneys' fees of 30% or more in complex class actions").[17] Accordingly, this factor weighs in favor of the requested award. *See Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million class action settlement); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement).

### 6. The Settlement Class's Reaction Supports The Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21. While the time to object to the fee and expense application does not expire until October 24, 2024, to date, not a single objection has been received by Lead Counsel or filed with the Court. ¶79. Should any objections be received, they will be addressed in the reply papers. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *Omnivision*, 559 F. Supp. 2d at 1048 (same); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *13 (C.D. Cal. 2008) (three members objected and 29 opted out, indicating favorable result and award of "generous fee").

### D. A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

---

[17] *See also* Ex. 6 (collecting Ninth Circuit cases with 33% or higher fee awards).

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Genworth Fin. Sec. Litig.*, 2016 WL 5400360, at *7 (E.D. Va. Sep. 26, 2016). In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209, n.11 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051-52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at *22 ("In securities class actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

When the lodestar is used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass*, 331 F. App'x. at 456.[18] In this case, the lodestar method—whether used directly or as a "cross-check" on the percentage method—strongly demonstrates the reasonableness of the requested fee.

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1,490.20 hours to the prosecution of the Action. Ex. 3; ¶68. As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, and as required by the Court's Civil

---

[18] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *In re Am. Apparel*, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014)("the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

Standing Order (Sec. IX.g.), the Sams Declaration includes a schedule reflecting Lead Counsel's lodestar by individual, position, billing rate (current and historical), hours billed, and categorizing work performed.[19] Ex. 3. Based on current hourly rates,[20] Lead Counsel's lodestar is $1,414,626.25. ¶68.[21] Thus, the 33⅓% fee request (equal to $633,333.33) yields a fractional or "negative" multiplier of 0.45. *Id*.

A "multiplier of less than one … suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class." *Chun–Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) (requested fee award was not unreasonable when lodestar cross-check revealed a multiplier of 0.59); *see also In re Myford Touch Consumer Litig.*, 2019 WL 6877477, at *1 (N.D. Cal. Dec. 17, 2019) ("[T]he negative multiplier … suggests the request is reasonable."). Indeed, "an award exceeding 25 percent is reasonable where the total fee award is lower than the lodestar calculation." *Cabiness v. Educ. Fin. Sols., LLC*, 2019 WL 1369929, at *7 (N.D. Cal. Mar. 26, 2019). This is because, as is true here, "the requested award would not 'yield windfall profits for class counsel in light of the hours spent on the case.'" *Id.* (quoting *Bluetooth*, 654 F.3d at 942).

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017).

---

[19] *See Immune Response*, 497 F. Supp. 2d at 1176 ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

[20] Courts use current rather historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

[21] Lead Counsel's rates (*see* Ex. 3) "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's 2021 rates); *see also* Ex. 7 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

Indeed, Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court.  The multiplier will, therefore, diminish as the case moves forward.

In sum, Lead Counsel's fee request is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

## IV.   LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED

"In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund."  *In re Stable Road Acquisition Corp. Sec. Litig.*, 2024 WL 3643393, at *15 (C.D. Cal. Apr. 23, 2024); *Omnivision*, 559 F. Supp. 2d at 1048.  The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client."); *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

From the outset, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action.  Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses when practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶84.

In the aggregate, Lead Counsel have incurred out-of-pocket expenses in the amount of $114,016.12 while prosecuting the Action, and these expenses are set forth in

MEMORANDUM IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES
AND LITIGATION EXPENSES
23

the Sams Declaration. ¶82; Ex. 4. The vast majority of expenses ($109,924.85, or approximately 96.4%) were for the retention of experts ($53,988.57), the mediator ($15,891), and a private investigation firm ($29,150.48), as well as online research ($10,894.80). ¶85, Ex. 4. Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly. They should, therefore, be reimbursed out of the common fund. *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.").[22]

## V.   PLAINTIFF SHOULD BE AWARDED HIS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78u-4(a)(4)

In connection with the Lead Counsel's request for payment of Litigation Expenses, Lead Plaintiff respectfully requests a PSLRA award in the amount of $10,000 to reimburse Turton for time spent prosecuting the Action. 15 U.S.C. § 78u-4(a)(4). "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019). Reimbursement of such costs are allowed because they "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, Lead Plaintiff, through Mr. Criden, took an active role in the litigation by, among other things: (i) moving to serve as Lead Plaintiff in the Action; (ii) producing

---

[22] Lead Counsel's requested reimbursement of $114,016.12 (plus a PSLRA award of $10,000 for Lead Plaintiff) is substantially less than the $163,500 maximum amount of potential expenses set forth in the Notice. Ex. 2-C (Notice), ¶¶5, 71.

Turton's trading records to its attorneys; (iii) regularly communicated with GPM attorneys regarding the posture and progress of the case; (iv) reviewing significant pleadings and briefs filed in this Action; (v) reviewing the Court's orders and discussing them with its attorneys; (vi) consulting with GPM attorneys regarding the settlement negotiations; and (vii) evaluating and approving the proposed Settlement. *See* Ex. 1 at ¶¶5-7. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009). Consequently, Lead Counsel respectfully requests that the Court grant Lead Plaintiff's request for reimbursement of his "reasonable costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21; *Stable Road*, 2024 WL 3643393, at *16 (approving request for "PSLRA award in the amount of $10,000 to reimburse [Lead Plaintiff] for time spent prosecuting the Action."); *Zaidi v. Adamas Pharma., Inc.*, 2024 WL 4342186, at *2 (N.D. Cal. Sept. 27, 2024) (PSLRA award of $10,000 "as reimbursement for [Lead Plaintiff's] reasonable costs and expenses directly related to his representation of the Settlement Class.").[23]

## VI. CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the fee and expense application.

---

[23] *See also In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *23-24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to institutional investor lead plaintiff pursuant to the PSLRA); *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *12 (S.D.N.Y. Nov. 7, 2007) (PSLRA award of $15,900 to institutional lead plaintiff for time spent supervising litigation).

DATED:  October 10, 2024

**GLANCY PRONGAY & MURRAY LLP**

By:   *s/ Ex Kano S. Sams II*

Robert V. Prongay
Ex Kano S. Sams II
Raymond D. Sulentic
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

*Counsel for Lead Plaintiff Turton Inc.*

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On October 10, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 10, 2024.

_s/ Ex Kano S. Sams II_
Ex Kano S. Sams II