Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
Raymond D. Sulentic (SBN 316913)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: info@glancylaw.com

Counsel for Lead Plaintiff Turton Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>Defendants. | Case No. 2:21-cv-06918-FWS-JC<br><br>**DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF: (I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Hearing Date: November 14, 2024<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom 10D<br>Judge: Fred W. Slaughter |

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................ 1

II.    PROSECUTION OF THE ACTION ............................................................ 6

       A.    Commencement of the Instant Action and Appointment of Lead
             Plaintiff and Lead Counsel ............................................................. 6

       B.    The Comprehensive Pre-Filing Investigation and Preparation of the
             Complaint ........................................................................................ 7

       C.    Defendants' Motions to Dismiss the Complaint and Lead Plaintiffs'
             Responses ........................................................................................ 7

       D.    The Government Initiates Investigations Involving HyreCar ........ 8

       E.    The Commencement of Discovery ................................................. 9

       F.    HyreCar's Bankruptcy Filing ......................................................... 9

       G.    Mediation Efforts and Settlement Negotiations ............................ 9

       H.    The Court Grants Preliminary Approval of Settlement ............... 10

III.   THE RISKS OF CONTINUED LITIGATION ......................................... 10

       A.    Ability-to-Pay Risk ...................................................................... 11

       B.    Risks to Proving Liability ............................................................ 11

       C.    Risks Faced in Obtaining and Maintaining Class Action Status .......... 13

       D.    Other Risks ................................................................................... 14

       E.    The Settlement is Reasonable in Light of the Maximum Potential
             Recovery in the Action ................................................................ 15

IV.    LEAD    PLAINTIFF'S    COMPLIANCE    WITH    THE    COURT'S
       PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF
       NOTICE ..................................................................................................... 16

V.     ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT ........ 18

VI.    LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND
       REIMBURSEMENT OF LITIGATION EXPENSES ................................ 20

i

A.    The Outcome Achieved Is the Result of the Significant Time and Labor that Lead Counsel Devoted to the Action ..............................................21

B.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases ...........23

C.    The Experience and Expertise of Lead Counsel, and the Standing and Caliber of Defendants' Counsel ...........................................................25

D.    The Reaction of the Settlement Class Supports Lead Plaintiff's Counsel's Fee Request .................................................................................26

E.    Lead Plaintiff Supports Lead Counsel's Fee Request ..........................27

F.    Reimbursement of the Requested Litigation Expenses is Fair and Reasonable ...............................................................................................27

VII.    CONCLUSION .................................................................................................28

**TABLE OF EXHIBITS TO DECLARATION**

| EXHIBIT | TITLE |
|---|---|
| 1 | Declaration of Michael Criden in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fee and Reimbursement of Litigation Expenses |
| 2 | Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections |
| 3 | Lodestar Reports for Glancy Prongay & Murray LLP |
| 4 | Expense Report for Glancy Prongay & Murray LLP |
| 5 | Excerpts from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) |
| 6 | Table of Select Ninth Circuit Cases with 33% and Above Fee Awards |
| 7 | Table of Law Firm Billing Rates |
| 8 | Glancy Prongay & Murray LLP Firm Résumé |
| 9 | *In re Interlink Elec., Inc. Sec. Litig.*, No. 05-cv-08133 AG (SH), ECF No. 165 at 4 (C.D. Cal. June 1, 2009) |

I, Ex Kano S. Sams II, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

## I.    INTRODUCTION

1.    I am an attorney admitted to practice before this Court.  I am a partner at the law firm of Glancy Prongay & Murray LLP ("GPM"), Court-appointed Lead Counsel in the above-captioned action (the "Action").[1]  GPM represents Court-appointed lead plaintiff Turton Inc.  ("Turton" or "Lead Plaintiff") and the proposed Settlement Class.  I have personal knowledge of the matters stated herein based upon my participation in the prosecution and settlement of the claims asserted in the Action.

2.    I respectfully submit this declaration, together with the attached exhibits, in support of Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation. As set forth in the Final Approval Memorandum, Lead Plaintiff seeks final approval of the $1.9 million Settlement for the benefit of the Settlement Class, as well as final approval of the proposed Plan of Allocation of the Net Settlement Fund to eligible Settlement Class Members.

3.    I also respectfully submit this Declaration in support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (referred to herein as the "Fee and Expense Application"). The Fee and Expense Application seeks an award of attorneys' fees in the amount of 33⅓% of the Settlement Fund (*i.e.*, $633,333, plus interest earned at the same rate as the Settlement Fund), and reimbursement of Litigation Expenses in the total amount of $124,016.12, which consists of GPM's out-of-pocket litigation expenses in the amount of $114,016.12, plus $10,000 to Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") for its costs, including for

---

[1] Unless otherwise defined herein, all capitalized terms have the same meaning as set forth in the Stipulation and Agreement of Settlement dated March 20, 2024 (the "Stipulation"), ECF No. 121-1.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

time spent, incurred in connection with its representation of the Settlement Class. As discussed in detail in the Fee and Expense Application, the requested 33⅓% fee is well within the range of percentage awards granted by courts in this Circuit in comparable securities class actions and is a fair and reasonable amount considering the work performed and the result obtained. Moreover, the expenses were necessarily incurred by Lead Counsel in litigating this Action and are of the type that Courts routinely reimburse to counsel.

4. This is a securities class action brought pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder. It arises from Defendants' alleged misrepresentations and omissions made between May 13, 2021 and August 10, 2021, inclusive (the "Settlement Class Period").

5. The proposed Settlement provides for the resolution of all claims in the Action in exchange for a non-reversionary, all cash payment of $1,900,000 (the "Settlement Amount") for the benefit of the Settlement Class. As detailed herein, Lead Counsel believes that the proposed Settlement represents an extremely favorable result for the Settlement Class, especially when juxtaposed against the significant risks of continued litigation, including serious ability-to-pay issues. In other words, the Settlement is substantively fair.

6. It was also obtained through a procedurally fair process, demonstrating that there was no collusion between the Parties. The Settlement was only achieved after a hard-fought litigation, during which Lead Counsel, *inter alia*:

    a. conducted a detailed and substantive investigation into the allegedly wrongful acts, which included, among other things: (i) review and analysis of HyreCar Inc.'s ("HyreCar" or the "Company") filings with the SEC, press releases, and other public statements made by Defendants prior to, during, and after the Settlement Class Period, as well as research reports prepared by securities and financial analysts

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

regarding HyreCar, and publicly available documents, reports, announcements, and news articles concerning Defendants; (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information; and (iii) consulting with an accounting expert and an expert in loss causation, damages, and market efficiency;

b. utilized the comprehensive investigation and additional research to draft and file the 74-page (257-paragraph) Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint"; ECF No. 66), which asserted violations of the Exchange Act;

c. researched, drafted, and filed an opposition to Defendants' motion to dismiss the Amended Complaint (ECF No. 70), after which the Court granted Defendants' motion (*see Baron v. HyreCar Inc.*, 2022 WL 2102993, at *7 (C.D. Cal. Feb. 16, 2022));

d. conducted additional investigation and analysis, and then filing the 53-page (200-paragraph) Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC"; ECF No. 75), which incorporated the foregoing research and investigation efforts;

e. researched, drafted, and filed an opposition to Defendants' motion to dismiss the SAC (ECF No. 77), after which the Court denied Defendants' motion (*see Baron v. Hyrecar Inc.*, 2022 WL 17413562, at *17 (C.D. Cal. Dec. 5, 2022));

f. prepared for and participated in a Rule 26(f) Conference;

g. negotiated a protective order, which was subsequently entered by the Court with minor modifications (ECF No. 110);

h. retained and consulted with bankruptcy counsel regarding HyreCar's bankruptcy filing;

i.    initiated discovery of Defendants and third parties, which included propounding comprehensive requests for production, reviewing documents produced by a third-party, and negotiating with Defendants' counsel over the scope and manner of document production and the treatment of electronically stored information ("ESI");

j.    exchanged mediation briefs containing detailed analyses of the strengths, risks, and potential issues in the litigation with Defendants, participated in an unsuccessful full-day mediation session with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS—and engaged in months of further negotiations that culminated in a mediator's recommendation to resolve the Action for $1,900,000 in cash for the benefit of the Settlement Class;

k.    negotiated a detailed confidential settlement Term Sheet with Defendants' Counsel, which was fully executed as of December 9, 2023;

l.    drafted and negotiated the terms of the Stipulation (including the exhibits thereto) and Supplemental Agreement with Defendants' Counsel;

m.    worked with a damages expert to craft a plan of allocation that treats Lead Plaintiff and all other members of the proposed Settlement Class fairly; and

n.    drafted the preliminary approval motion and supporting papers.

7.    Based on the foregoing efforts, Lead Plaintiff and Lead Counsel are well informed of the strengths and weaknesses of the claims and defenses in the Action and believe the Settlement represents a favorable outcome for the Settlement Class and is in the best interests of the Settlement Class Members. Because the Settlement is substantively fair, and was achieved through a procedural fair process,

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Lead Counsel believes that it is in the best interest of the Settlement Class and should be approved.

8.    The Court granted preliminary approval of the proposed Settlement by Order dated July 19, 2024 (the "Preliminary Approval Order"). *See* ECF No. 128. Pursuant to the Preliminary Approval Order, Strategic Claims Services ("SCS"), the Court-approved Claims Administrator, implemented a comprehensive notice program whereby Postcard Notice was given to potential Settlement Class Members by mail and/or email and by publication. *See* ¶¶45-53, *infra* (detailing notice program); *see also* Ex. 2 (Declaration of Josephine Bravata Concerning: (A) Mailing/Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections (the "Initial Mailing Decl."), ¶¶3-7, 9).

9.    As of October 8, 2024, a total of 13,872 potential Settlement Class Members and nominees were either mailed Postcard Notice or emailed the link to the Notice and Claim Form. To date, not a single request for exclusion has been received by Lead Counsel or the Claims Administrator. *See* Ex. 2 ¶12.  Moreover, no objections have been filed with Court to date.[2]

10.    In addition to final approval of the Settlement, Lead Plaintiff seeks approval of the proposed Plan of Allocation as fair and reasonable.  As discussed in further detail below, Lead Counsel developed the Plan of Allocation with the assistance of a consulting damages expert.  The Plan of Allocation provides for the distribution of the Net Settlement Fund to Settlement Class Members who submit Claim Forms that are approved for payment by the Court on a *pro rata* basis. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

---

[2]  Lead Plaintiff and Lead Counsel will address any objections in the reply memorandum that will be filed after the objection and exclusion deadline.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Courts—including this one—have routinely approved similar allocation plans, and Lead Counsel believes that the proposed plan should likewise be approved.

11. Finally, Lead Counsel seeks approval of the Fee and Expense Application. As discussed in detail in the accompanying Fee Memorandum, the requested 33⅓% fee is within the range of percentage awards granted by courts in this Circuit in comparable securities class actions. Additionally, the fairness and reasonableness of the request is confirmed by a lodestar cross-check and is warranted considering the extent and quality of the work performed and the substantial result achieved. Moreover, the out-of-pocket expenses incurred were all reasonable and necessary for the prosecution of the Action and are considerably less than the maximum figure proposed in the Postcard Notice sent to the Settlement Class.

12. For these reasons and those discussed below, Lead Counsel respectfully submits that the $1.9 million Settlement is an extremely favorable result for the Settlement Class and should be approved as fair, reasonable, adequate, that the proposed Plan of Allocation is equitable and just, and that the requested attorneys' fees of 33⅓% of the $1.9 million Settlement Fund and reimbursement of Litigation Expenses should be awarded in full.

## II.    PROSECUTION OF THE ACTION

### A.    Commencement of the Instant Action and Appointment of Lead Plaintiff and Lead Counsel

13. On August 27, 2021, a class action complaint was filed in the United States District Court for the Central District of California ("the Court"), styled *Ivan Baron v. HyreCar Inc., et al.*, 2:21-cv-06918. ECF No. 1.

14. On October 25, 2021, Turton moved to be appointed lead plaintiff. ECF Nos. 42-44. By Order dated November 19, 2021, the Court appointed Turton as Lead Plaintiff and approved Lead Plaintiff's selection of GPM as Lead Counsel

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

for the putative class. ECF No. 60; *Baron v. HyreCar Inc.*, 2021 WL 8820872 (C.D. Cal. Nov. 19, 2021).

**B. The Comprehensive Pre-Filing Investigation and Preparation of the Complaint**

15. Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (a) reviewing and analyzing (i) HyreCar's filings with the SEC, (ii) public reports, press releases, blog posts, and news articles concerning HyreCar, (iii) HyreCar's investor call transcripts, and (iv) court filings and other publicly available material related to HyreCar, including HyreCar's filings in its bankruptcy proceeding; and (b) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former HyreCar employees and other sources of relevant information. Lead Counsel also consulted with a damages and market efficiency expert.

16. On December 3, 2021, Lead Plaintiff filed and served the Amended Complaint based on the foregoing investigation. ECF No. 66. Among other things, the Amended Complaint alleged that Defendants made materially false and misleading statements by understating HyreCar's insurance reserve expense and liability, which, in turn, overstated HyreCar's earnings. *Id*. Lead Plaintiff alleged that this expense suppression scheme was enabled by close coordination between Defendants and a conflicted third party. *Id*. According to the Amended Complaint, the alleged misrepresentations proximately caused class member losses when the truth was revealed. *Id*.

**C. Defendants' Motions to Dismiss the Complaint and Lead Plaintiffs' Responses**

17. On December 27, 2021, Defendants moved to dismiss the Amended Complaint. ECF No. 67. On January 10, 2022, Lead Plaintiff opposed Defendants' motion to dismiss (ECF No. 70), and on January 18, 2022, Defendants served their reply papers (ECF No. 72). On January 27, 2022, Judge Percy Anderson notified

7

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

the Parties that the Court would take Defendants' motion to dismiss under advisement and vacated the hearing on Defendants' motion. ECF No. 73. On February 16, 2022, the Court granted Defendants' motion to dismiss in a written opinion. ECF No. 74; *Baron*, 2022 WL 2102993.

18. Following dismissal of the Amended Complaint, Lead Plaintiff sought to address the pleading deficiencies identified by the Court. To that end, following additional investigation and analysis, Lead Plaintiff filed its 53-page (200-paragraph) SAC on March 21, 2022. ECF No. 75. On April 4, 2022, Defendants moved to dismiss the SAC (ECF No. 76). Lead Plaintiff filed its opposition on April 18, 2022 (ECF No. 77), and on April 25, 2022, Defendants filed their reply. ECF No. 81. On April 20, 2022, the Action was reassigned from Judge Percy Anderson to Judge Fred W. Slaughter. ECF No. 80.

19. On October 18, 2022, Judge Slaughter determined that the Court could rule upon Defendants' motion to dismiss without oral argument and vacated the hearing on Defendants' motion to dismiss. ECF No. 91. On December 5, 2022, the Court denied Defendants' motion to dismiss in its entirety. ECF No. 94; *Baron*, 2022 WL 17413562.

**D.      The Government Initiates Investigations Involving HyreCar**

20. Also on December 5, 2022, HyreCar announced the receipt of a grand jury subpoena in connection with a criminal investigation being conducted by the U.S. Attorney's Office for the Central District of California, and the Department of Justice's Criminal Fraud Section ("DOJ"). According to HyreCar, the criminal investigation focused on "among other things . . . certain trades of the Company's company stock by Company insiders during 2021, including [CEO] Joseph Furnari and two other members of the Company's current Board of Directors, as well as Michael Furnari, and the Company's former Chief Financial Officer." HyreCar also announced its receipt of a subpoena from the SEC "concerning the trading of the Company's stock."

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

**E.     The Commencement of Discovery**

21.     On January 5, 2023, the Parties submitted a Joint Report to the Court pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.  ECF No. 102.  Defendants answered the SAC on January 9, 2023.  ECF Nos. 105-07.  On February 8, 2023, the Parties filed a Joint Stipulated Protective Order (ECF No. 109), which the Court entered on February 13, 2023 (ECF No. 110).  Following the denial of Defendants' motion to dismiss Plaintiff's SAC, and negotiation over the scope and manner of document production and the treatment of ESI, the Parties began discovery pursuant to the Court's Protective Order.  Lead Plaintiff served discovery on Defendants and third parties, including comprehensive requests for production, and reviewed documents produced by a third-party.

**F.     HyreCar's Bankruptcy Filing**

22.     On March 2, 2023, HyreCar filed a Notice of Bankruptcy Filing with the Court, informing the Court and the Parties that the Company commenced a Chapter 11 bankruptcy proceeding on February 24, 2023.  ECF No. 111.  On March 8, 2023, the Court issued an Order Re: Stay Pending Bankruptcy Proceeding in which the Court stated that "all further proceedings in this action are STAYED."  ECF No. 112.

**G.     Mediation Efforts and Settlement Negotiations**

23.     Subsequently, the Parties discussed the prospect of mediation.  Lead Plaintiff also drafted and considered filing a motion for clarification with respect to the Court's Order regarding the stay and its impact upon the Individual Defendants.  The Parties, however, eventually agreed to engage in mediation.

24.     On September 27, 2023, the Parties held a virtual mediation session that was overseen by a well-respected mediator of complex actions, Jed Melnick, Esq. of JAMS.  No agreement was reached during the mediation, but negotiations continued, facilitated by Mr. Melnick, over a potential settlement.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

25.     The Parties continued to work towards a settlement with the assistance of Mr. Melnick.   These negotiations culminated in a recommendation by Mr. Melnick that the Parties settle the Action for a $1.9 million cash payment to the Settlement Class.   On November 2, 2023, the Parties accepted Mr. Melnick's recommendation.

**H.     The Court Grants Preliminary Approval of Settlement**

26.     On March 21, 2024, Lead Plaintiff filed its Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion").   ECF No. 120.  On April 28, 2024, the Court held oral argument on the Preliminary Approval Motion and took it under submission.  ECF No. 125.

27.     On July 19, 2024, the Court entered the Order Preliminarily Approving Settlement And Providing For Notice. ECF No. 128; *Baron v. HyreCar Inc.*, 2024 WL 3504234 (C.D. Cal. July 19, 2024).

**III.     THE RISKS OF CONTINUED LITIGATION**

28.     The Settlement provides an immediate and certain benefit to the Settlement Class in the form of a cash payment of $1,900,000. As explained more fully below, there were significant risks that the Settlement Class might recover substantially less than the Settlement Amount—or nothing at all—if the case proceeded through additional years of litigation to a potentially litigated verdict, followed by the inevitable appeals. Indeed, HyreCar's bankruptcy and Defendants' limited insurance, which would be significantly reduced by defense costs – particularly considering the governmental investigations – created the very real risk that Lead Plaintiff would not be able to recover on a judgment as large as the Settlement after trial and appeal. Defendants also had, or potentially had, substantial arguments with respect to liability, loss causation, and damages in this case. These risks, among many others, were carefully considered in evaluating whether the Settlement was in the Settlement Class's best interests. At the end of the day, there was an extremely low probability, and certainly no guarantee, that Lead Plaintiff and

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

the Settlement Class would achieve any recovery, let alone one greater than $1.9 million.

### A.    Ability-to-Pay Risk

29.    As noted above, on March 2, 2023, HyreCar filed a Notice of Bankruptcy Filing with the Court, informing the Court and the Parties that the Company commenced a Chapter 11 bankruptcy proceeding on February 24, 2023. ECF No. 111.  On August 11, 2023, HyreCar filed a motion seeking to convert the bankruptcy case to a case under Chapter 7, which, on August 29, 2023, the Bankruptcy Court granted.  HyreCar has now been liquidated, and there is nothing that can be recovered from the Company.

30.    Moreover, the limited insurance that was available to fund a settlement was quickly wasting, and would only be further drained by continued defense costs surrounding this Action and the other proceeding initiated by the DOJ and SEC. Accordingly, it is highly unlikely that Lead Plaintiff could have recovered more than the Settlement Amount by continuing to litigate the Action.

### B.    Risks to Proving Liability

31.    Lead Plaintiff and Lead Counsel recognize that the risks of continued litigation were considerable.  Assuming, *arguendo*, that this Action were to proceed through summary judgment and trial, in order to defeat a summary judgment motion and to prevail at trial, Lead Plaintiff and Lead Counsel would have to prove, *inter alia*, that: (i) Defendants made materially false or misleading statements; (ii) Defendants acted with scienter (*i.e.*, that Defendants acted knowingly or with deliberate recklessness); (iii) that Lead Plaintiff's losses were caused by Defendants' misrepresentations (*i.e.*, "loss causation"); and (iv) that Lead Plaintiff and the class members suffered damages.  Lead Plaintiff anticipates Defendants would present strong arguments challenging Lead Plaintiff's proof on all those elements in their expected motion(s) for summary judgment and/or at trial.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

32. The motion to dismiss process highlighted many of the risks of the Action, including the potential to recover nothing. Indeed, in the Court's order on Defendants' first motion to dismiss, the Court ruled that Lead Plaintiff had not sufficiently alleged falsity under the PSLRA and dismissed the Amended Complaint. Specifically, Judge Anderson held that Lead Plaintiff "appears to conflate the pace at which claims were paid with the accuracy of the insurance reserves periodically set and disclosed by HyreCar." ECF No. 74. The Court held further that "the speed with which claims were paid is not the same as setting reserves for submitted claims and anticipating the number and value of future claims." *Id*. The Court reasoned that "[n]othing alleged in the 1st AC adequately links these two distinct concepts or otherwise attempts to quantify the magnitude by which HyreCar and its executives might have knowingly misstated the insurance reserves or the risks posed by some unknown portion of the pool of drivers." *Id*.

33. Moreover, the Court held that "HyreCar repeatedly disclosed both the difficulty it faced in setting its insurance reserves and, as ultimately happened, the risk that actual claims might exceed the insurance reserves." *Id*. As a result, Judge Anderson ruled that "[f]or these reasons, and in light of these disclosures for the forward-looking statements on which the 1st AC bases its claims, as well as for most of the reasons explained in Defendants' Motion to Dismiss, none of the 1st AC's theories concerning allegedly material misrepresentations or omissions, whether viewed individually or collectively, alleges sufficient well-pleaded facts to satisfy the PSLRA's pleading standard." *Id*. While Lead Plaintiff was able to overcome these hurdles following additional investigation and repleading—notably without the benefit of discovery due to the PSLRA's automatic stay—it still needed to prove its case.

34. Indeed, Defendants argued in their motions to dismiss and at mediation – and would undoubtedly argue in a motion for summary judgment and/or at trial – that Lead Plaintiff failed to satisfy the applicable elements under the federal

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

securities laws.  Specifically, Defendants argued – and would have continued to argue that, among other things: (i) Lead Plaintiff would have been unable to prove that Defendants made material misstatements; (ii) that Lead Plaintiff would not have been able to prove scienter; and (iii) that Lead Plaintiff would not have survived summary judgment or trial on the element of loss causation.  In particular, proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission.

35.    These risks, moreover, were magnified by HyreCar's bankruptcy filing. The bankruptcy added another layer of complexity, created substantial obstacles for discovery, and posed significant difficulties for recovery, particularly where the only viable source of recovery – HyreCar's $10 million D&O insurance – was rapidly depleting because of the costs associated with defending not only this Action, but also the proceedings brought by the DOJ and SEC.

36.    Finally, even if Lead Plaintiff prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years, including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari to the Supreme Court, or both.  During this time on potential appeals, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.

### C.    Risks Faced in Obtaining and Maintaining Class Action Status

37.    Defendants would have argued against class certification. Although Lead Plaintiff had taken steps related to preparing a motion for class certification— by, among other things, hiring and working with an expert in the field of market efficiency—the Parties reached the Settlement before Lead Plaintiff filed a motion for class certification.  While Lead Counsel is confident that all of the Rule 23 requirements would have been met, and that the Court would have certified the

proposed class, Defendants would have undoubtedly raised arguments challenging the propriety of class certification. *See, e.g.*, ECF No. 125, pp. 4-6. If the Court accepted any of Defendants' anticipated arguments in opposition to class certification, that would have created significant hurdles for the proposed class to overcome.

**D.   Other Risks**

38.   It is also noteworthy that Lead Plaintiff's hard work led to a relatively early settlement. Had the case not settled, Lead Plaintiff would have needed to complete substantial discovery, including reviewing and analyzing documents produced by Defendants, and other relevant third parties, taking fact depositions and conducting all expert discovery, the costs of which are assuredly high and the fruits of which are highly uncertain.

39.   Lead Counsel know from painful experience that despite the most vigorous and competent of efforts, attorneys' success in contingent litigation such as this case is never assured.  For instance, Lead Counsel lost a six-week antitrust jury trial in the Northern District of California after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs. *See In re: Korean Ramen Antitrust Litigation*, Case No. 3:13-cv-04115 (N.D. Cal.).

40.   And, even if Lead Plaintiff had prevailed at trial, it would have had to succeed on the post-trial appeals that would have surely followed.  This process could have extended for years and might have ultimately led to a smaller recovery— or no recovery at all.  Indeed, considering the ability-to-pay issues, even prevailing at trial would not have guaranteed a recovery larger than the $1.9 million Settlement.  In fact, considering HyreCar's bankruptcy, it is virtually guaranteed that the recovery would be less.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

41.    Given these significant litigation risks, I believe that the Settlement represents an excellent result for the Settlement Class.

**E.    The Settlement is Reasonable in Light of the Maximum Potential Recovery in the Action**

42.    In light of the attendant risks of continued litigation discussed above, the Settlement is also fair and reasonable considering the potential recovery of available damages.  If Lead Plaintiff had fully prevailed on all of its claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation—*i.e.*, Lead Plaintiff's ***best-case scenario***—estimated total maximum damages under the Plan of Allocation is approximately $96 million. Thus, the $1.9 million Settlement Amount represents approximately 2% of the total ***maximum*** damages ***potentially*** available in this Action.

43.    Given the circumstances of this case, a recovery of 2% of maximum damages compares favorably to the median recovery of 1.8% for securities class actions settled in 2023, and a median recovery of 3.8% for similar securities class actions (with estimated damages of $50- $99 million) from 2014-2023.  *See* Exhibit 5 (a true and correct copy of excerpts from Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review (NERA Jan. 23, 2024)), at p. 25, Fig. 21 and p. 26, Fig. 22.

44.    Having evaluated the relative strengths and weaknesses of the Action, considering Defendants' arguments, the stage of the litigation, and Defendants' ability to pay, it is the informed judgment of Lead Counsel that the proposed Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

## IV. LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REQUIRING ISSUANCE OF NOTICE

45. On July 19, 2024, the Court entered the Preliminary Approval Order. ECF No. 128; *Baron*, 2024 WL 3504234. The Court set the deadline of October 24, 2024, for the receipt of objections to the Settlement, Plan of Allocation and/or the application for attorneys' fees and expenses or to request exclusion from the Settlement Class, and set a final fairness hearing date of November 14, 2024 (the "Settlement Hearing").

46. Pursuant to the Preliminary Approval Order, Lead Counsel instructed SCS, the Court-approved Claims Administrator, to begin mailing postcard notice of the Settlement and to publish the Summary Notice. Contemporaneously with the mailing, Lead Counsel instructed SCS to post downloadable copies of the Notice and Claim Form online at www.HyreCarSecuritiesSettlement.com (the "Settlement Website")

47. The Notice contains, among other things: a description of the Action; the definition of the Settlement Class; a summary of the terms of the Settlement and the proposed Plan of Allocation; and a description of Settlement Class Members' right to participate in the Settlement, object to the Settlement, the Plan of Allocation and/or the application for attorneys' fees and expenses, or to exclude themselves from the Settlement Class. The Notice also informs Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, and for reimbursement of Litigation Expenses in an amount not to exceed $163,500, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Settlement Class in an amount not to exceed $10,000. *See* Initial Mailing Decl., Ex. 2-C at ¶¶5, 71.

48. In addition, SCS maintains a proprietary database with the names and addresses of the largest and banks, brokers, and other nominees. *See id.* at ¶4. At the

time of the initial mailing, SCS's proprietary master mailing list consisted of 1,039 banks and brokerage companies, as well as 1,266 mutual funds, insurance companies, pension funds, and money managers. *Id.* On August 15, 2024, SCS caused a letter to be sent by First-Class Mail or e-mailed to the 2,305 nominees contained in SCS's master mailing list. *Id*. The letter notified the nominees of the Settlement and requested that, within 7 calendar days from receipt of the letter, they either: (a) request from SCS sufficient copies of the Postcard Notice to forward to all such beneficial purchasers/owners and within seven (7) calendar days of receipt of those Postcard Notices forward them to all such beneficial purchasers/owners; (b) request from SCS a link to the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and Proof of Claim and Release Form ("Claim Form") and, within seven (7) calendar days of receipt of the link from SCS, email the link to all such beneficial purchasers/owners for whom valid email addresses are available; or (c) send a list of the names, mailing addresses and email addresses (to the extent available) of all such beneficial purchasers/owners to SCS at *Ivan Baron v. HyreCar Inc., et al.*, c/o Strategic Claims Services, P.O. Box 230, Suite 205, Media, PA 19063, in which event SCS would promptly mail the Postcard Notice, or email a link to the Notice and Claim Form, to such beneficial purchasers/owners. *Id.* at ¶4 & Ex. 2-B (nominee letter).

49.    As of October 24, 2024, a total of 13,872 potential Settlement Class Members were notified by Postcard Notice and/or by email. *Id.* at ¶7.

50.    On August 26, 2024, SCS caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. *See id.* at ¶9 & Ex. 2-D.

51.    Lead Counsel also caused SCS to establish the dedicated Settlement Website, which became operational on August 15, 2024, to provide potential Settlement Class Members with information concerning the Settlement. At the

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Settlement Website, Settlement Class Members can submit a claim online, and download copies of the Notice and Claim Form, as well as copies of the relevant pleadings. *Id.* at ¶11.

52.    The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the application for attorneys' fees and expenses, or to request exclusion from the Settlement Class is October 24, 2024. As of October 8, 2024, SCS had not received any requests for exclusion, and I am unaware of any having been received since then. *Id.* at ¶12.  SCS will file a supplemental affidavit after the deadline addressing whether any additional requests for exclusion have been received.

53.    To date, no objections have been entered on this Court's docket.  No other objections have been received by Lead Counsel, or SCS. *Id*. at ¶13.  Lead Counsel will address any objections received in its reply papers that are due after the objection deadline has run.

## V.    ALLOCATION OF THE NET PROCEEDS OF THE SETTLEMENT

54.    Pursuant to the Preliminary Approval Order and as set forth in the Notice, all Settlement Class Members who want to participate in the distribution of the Net Settlement Fund (*i.e.*, the $1.9 million Settlement Amount plus any and all interest earned thereon less: (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees and Litigation Expenses awarded by the Court) must submit a valid Claim Form with all required information submitted online or postmarked no later than December 14, 2024. *See* Ex. 2-B (Notice at p. 2 & ¶41).  The Net Settlement

Fund will be distributed among Authorized Claimants according to the proposed Plan of Allocation, as subject to approval by the Court.

55.     The Plan of Allocation is detailed in the Notice. *See* Ex. 2-B (Notice at pp. 9-12). The Notice is posted on, and downloadable from, the Settlement Website. The Plan of Allocation's objective is to equitably distribute the Net Settlement Fund to those Settlement Class Members who suffered losses as a proximate result of the alleged violations of the Exchange Act as opposed to losses caused by market, industry, or Company-specific factors or factors unrelated to the alleged violations of law.  Under the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund based on his, her, or its total Recognized Loss Amount as compared to the total Recognized Loss Amounts of all Authorized Claimants. *See* Ex. 2-B (Notice at ¶¶61-62). Calculations under the Plan of Allocation are not intended to be estimates of, nor indicative of, the amounts that Settlement Class Members might have been able to recover after a trial or estimates of the amounts that will be paid to Authorized Claimants pursuant to the Settlement. Instead, the calculations under the Plan of Allocation are a method to weigh the claims of Settlement Class Members against one another for the purposes of making an equitable allocation of the Net Settlement Fund.  *Id.* at ¶52.

56.     The Plan of Allocation, developed by one of Lead Plaintiff's consulting damages experts, working in conjunction with Lead Counsel, is based on an out-of-pocket theory of damages consistent with Section 10(b) of the Exchange Act, and reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action.  More specifically, the Plan of Allocation reflects, and is based on, Lead Plaintiff's allegation that the prices of HyreCar common stock were artificially inflated due to Defendants' materially false and misleading statements and omissions.

57.     The Plan of Allocation is based on the premise that the decrease in the prices of HyreCar common stock on August 11, 2021 (the "Corrective Disclosure

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Date") may be used to measure the alleged artificial inflation in the price of HyreCar common stock prior to these disclosures.

58. An individual Claimant's recovery under the Plan of Allocation will depend on several factors, including when the Claimant purchased, acquired, or sold HyreCar common stock during the Settlement Class Period, in what amounts, and if any common stock was sold, when it was sold and in what amounts, as well as the number of valid claims filed by other Claimants.

59. If a Claimant has an overall market gain with respect to his, her, or its overall transactions in HyreCar common stock during the Settlement Class Period, the Claimant's recovery under the Plan of Allocation will be zero.

60. If the prorated payment to be distributed to any Authorized Claimant is less than $10.00, no distribution will be made to that Authorized Claimant. Any prorated amounts of less than $10.00 will be included in the pool distributed to those Authorized Claimants whose prorated payments are $10.00 or greater. In Lead Counsel's experience, processing and sending a check for less than $10.00 is cost prohibitive.

61. In sum, the Plan of Allocation was designed to allocate the proceeds of the Net Settlement Fund fairly among Settlement Class Members based on the losses they suffered on transactions in HyreCar common stock that were attributable to the conduct alleged in the SAC. Lead Counsel believes that the proposed Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members similar to the result if Lead Plaintiff prevailed at trial.

## VI. LEAD COUNSEL'S REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

62. In addition to seeking final approval of the Settlement and Plan of Allocation, Lead Counsel are applying for a fee award of 33⅓% of the Settlement Fund (*i.e.*, $633,333, plus interest accrued thereon). Lead Counsel also requests

20

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

reimbursement in the amount of $114,016.12 for out-of-pocket expenses incurred by Lead Counsel in connection with the prosecution and resolution of the Action and an award of $10,000 for Lead Plaintiff for its costs, including for time spent, in connection to its role as a representative plaintiff in the Action. The requested Litigation Expenses of $124,016.12 are below the maximum amount of $163,500 set forth in the Notice.

63. As set forth in the accompanying Fee Memorandum, the requested 33⅓% award is well within the range of fee awards in other comparable class action settlements, and the resulting fractional multiplier on Lead Counsel's lodestar of approximately 0.45 strongly supports the reasonableness of the requested attorneys' fee. The legal authorities supporting the requested fees and expenses are set forth in the concurrently filed Fee Memorandum. The primary factual bases for the requested fees and expenses are set forth below.

### A. The Outcome Achieved Is the Result of the Significant Time and Labor that Lead Counsel Devoted to the Action

64. The work undertaken by Lead Counsel in investigating and prosecuting the Action and arriving at the Settlement in the face of substantial risks has been time-consuming and challenging. At all times throughout the pendency of the Action, for a period of over three years, Lead Counsel's efforts were driven and focused on advancing the Action to bring about the most successful outcome for the Settlement Class, whether through settlement or trial. That work is summarized in ¶6 above.

65. Attached as Exhibit 3 is a summary indicating the amount of time spent by attorneys and professional support staff of my firm who billed ten or more hours to the Action, and the lodestar calculation for those individuals based on Lead Counsel's current billing rates. For personnel who are no longer employed by Lead Counsel, the lodestar calculation is based upon the billing rates for such personnel in his or her final year of employment. Included in Exhibit 3, pursuant to the Court's

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Civil Standing Order (Sec. IX.g.), there are also charts breaking down the lodestar by categories, and by billable rate for the year in which the work was performed. The charts in Exhibit 3 were prepared from contemporaneous daily time records regularly prepared and maintained by Lead Counsel.

66. Attorneys involved in this Action reviewed these daily time records in connection with the preparation of this declaration. The purpose of this review was to confirm both the accuracy of the records, as well as the necessity for, and reasonableness of, the time committed to the litigation. As a result of this review, Lead Counsel made reductions to certain of the firm's time entries such that the time included in Exhibit 3 reflects that exercise of billing judgment. Based on this review and the adjustments made, I believe that the time of Lead Counsel attorneys and staff reflected in Exhibit 3 was reasonable and necessary for the effective and efficient prosecution and resolution of the Action. No time expended on the Fee and Expense Application has been included.

67. The hourly rates for the attorneys and professional support staff are similar to the rates that have been accepted in other securities or shareholder litigation in this District in the context of a lodestar cross-check. Additionally, the 2024 rates billed by Lead Counsel's attorneys are comparable to peer plaintiff and defense firms litigating matters of similar magnitude. *See* Ex. 7 attached hereto (table of peer law firm billing rates).

68. The total number of hours reflected in Exhibit 3 is 1,490.20 hours. The total lodestar reflected in Exhibit 3 (using 2024 rates) is $1,414,626.25, consisting of $1,358,623.75 for attorneys' time and $56,002.50 for professional support staff time. The requested fee amount of 33⅓% of the Settlement Fund equals $633,333 (plus interest earned at the same rate as the Settlement Fund), and therefore represents a fractional multiplier of 0.45 on Lead Counsel's lodestar.

69. Moreover, Lead Counsel will continue to work towards effectuating the Settlement in the event the Court grants final approval. Among other things, Lead

22

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

Counsel will continue working with the Claims Administrator to resolve issues with Settlement Class Member Claims, will respond to shareholder inquiries, will draft and file a motion for distribution, and will oversee the distribution process. No additional compensation will be sought for this work. Thus, the multiplier will be smaller by the time the case concludes.

70.    As detailed above, throughout this case, Lead Counsel devoted substantial time to the prosecution of the Action. I personally devoted substantial time to this case and was involved in drafting, reviewing, and editing pleadings and other court filings, and communicating with other lawyers about the case on a regular basis. Other experienced attorneys were also involved in drafting, reviewing and/or editing pleadings, court filings, various informal discovery-related materials, and the mediation submissions, participating in the mediation process, negotiating the terms of the Stipulation, and other matters. Throughout the litigation, Lead Counsel maintained an appropriate level of staffing that avoided unnecessary duplication of effort and ensured the efficient prosecution of this litigation.

71.    Based on the work performed and the quality of the results achieved, Lead Counsel respectfully submits that a 33⅓% fee is fully merited under the "percentage of the fund" methodology. Furthermore, as shown in Lead Counsel's accompanying Fee Memorandum, I also respectfully submit that the requested fee is fully supported by a "lodestar multiplier cross-check" because the requested multiplier is below the range of multipliers that courts often award in comparably complex securities class actions, which is a strong indication that the percentage request is fair and reasonable.

**B.    The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High-Risk Contingent Securities Cases**

72.    This prosecution was undertaken by Lead Counsel on a pure contingency fee basis. From the outset, Lead Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever

23

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

being compensated for the substantial investment of time and money the case would require. In undertaking that responsibility, Lead Counsel were obligated to ensure that sufficient resources were dedicated to the prosecution of the Action, that funds were available to compensate attorneys and staff, and to cover the considerable litigation costs required by a case like this one.

73. With an average lag time of many years for complex cases like this case to conclude, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis. Indeed, Lead Counsel received no compensation during more than three years of litigation and incurred $114,016.12 in out-of-pocket expenses in prosecuting the Action.

74. Lead Counsel also bore the risk that no recovery would be achieved. As discussed above, from the outset, this case presented multiple risks and uncertainties that could have prevented any recovery whatsoever. Despite the most vigorous and competent of efforts, success in contingent-fee litigation like this one is never assured. As set forth above, Lead Counsel knows from experience that the commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint or win at trial, or to induce sophisticated defendants to engage in serious settlement negotiations at meaningful levels. And, even when that effort is put forth, sometimes you lose.

75. Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel enforce the securities laws and regulations pertaining to the duties of officers and directors of public companies. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320 n.4 (2007) ("private securities litigation is an indispensable tool with which defrauded investors can recover their losses – a matter crucial to the integrity of domestic capital markets.") (internal quotation marks omitted). As recognized by Congress through the passage of the PSLRA, vigorous private enforcement of the federal securities

laws can only occur if private investors take an active role in protecting the interests of shareholders.  If this important public policy is to be carried out, the courts should award fees that adequately compensate plaintiffs' counsel, taking into account the risks undertaken in prosecuting a securities class action.

### C.   The Experience and Expertise of Lead Counsel, and the Standing and Caliber of Defendants' Counsel

76.   As demonstrated by Lead Counsel's firm résumé, Lead Counsel have extensive and significant experience in the specialized area of securities litigation. *See* Ex. 8 (GPM firm résumé).  The attorneys who were principally responsible for leading the prosecution of this case have prosecuted securities claims throughout their careers and have recovered tens of millions of dollars on behalf of investors. This experience allowed Lead Counsel to develop and implement litigation strategies to address the complex obstacles that are inherent in securities class actions and those specific to this case that were raised by Defendants.  I believe that the recovery achieved here for the Settlement Class reflects the high quality of Lead Counsel's representation.

77.   Additionally, the quality of the work performed by Lead Counsel in obtaining the Settlement should also be evaluated considering the quality of the opposition. Here, Defendants have been vigorously represented by O'Melveny & Myers LLP and Davis Wright Tremaine LLP during the Action and settlement negotiations. Additionally, HyreCar was represented by Latham & Watkins LLP before it filed for bankruptcy, and Latham & Watkins LLP represented HyreCar, Joseph Furnari, and Robert Scott Brogi, before Furnari and Brogi obtained separate counsel.  All these firms are well-respected law firms that vigorously represented the interests of their clients throughout this Action.  In the face of this experienced and formidable opposition, Lead Counsel were nonetheless able to persuade Defendants to settle the case on terms that I believe are favorable to the Settlement Class.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

## D. The Reaction of the Settlement Class Supports Lead Plaintiff's Counsel's Fee Request

78. As noted above, as of October 8, 2024, 13,872 potential Settlement Class Members were notified by Postcard Notice and/or by email that advised Settlement Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund. *See* Initial Mailing Decl. ¶7 & Ex. 2-A (Postcard Notice) & 2-C (Notice at ¶¶5, 71). In addition, on August 26, 2024, SCS caused the Summary Notice to be published in *Investor's Business Daily* and to be transmitted once over the *PR Newswire*. *See id.* at ¶9 & Ex. 2-D.

79. The deadline for Settlement Class Members to object to the Settlement, Plan of Allocation, and/or to the application for attorneys' fees and expenses, or to request exclusion from the Settlement Class is October 24, 2024. As of October 8, 2024, not a single request for exclusion has been received. *Id.* at ¶12. SCS will file a supplemental affidavit after the deadline addressing whether any additional requests for exclusion have been received. To date, no objections have been entered on this Court's docket. No other objections have been received by Lead Counsel. Lead Counsel will address any objections received in its reply papers that are due after the objection deadline has run.

80. In sum, Lead Counsel accepted this case on a fully contingent basis, committed significant resources to it, and prosecuted the case for more than three years without any compensation or guarantee of success. Based on the result obtained, the quality of the work performed, the risks undertaken, and the contingent nature of the representation, Lead Counsel respectfully submits that a fee award of 33⅓%, resulting in a fractional multiplier of 0.45, is fair and reasonable, and is supported by the fee awards courts have granted in other comparable cases.

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

**E.    Lead Plaintiff Supports Lead Counsel's Fee Request**

81.    As set forth in the declaration submitted by Michael Criden, the President and a Director at Lead Plaintiff Turton, Lead Plaintiff has concluded that Lead Counsel's requested fee is fair and reasonable based on the work performed, the recovery obtained for the Settlement Class, and the risks Lead Counsel bore when prosecuting this Action. *See* Ex. 1 (Criden Decl.) at ¶¶10-11. Lead Plaintiff has been intimately involved in this case since its early stages, and its endorsement of Lead Counsel's fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award.

**F.    Reimbursement of the Requested Litigation Expenses is Fair and Reasonable**

82.    Lead Counsel seeks a total of $124,016.12 in Litigation Expenses to be paid from the Settlement Fund.  This amount includes $114,016.12 in out-of-pocket expenses incurred by Lead Counsel in connection with commencing, litigating, and settling the claims asserted in the Action, as well as a total of $10,000 for Lead Plaintiff directly related to its representation of the Settlement Class.

83.    Lead Counsel's out-of-pocket expenses—broken down by category—are reflected on Exhibit 4 hereto.  The litigation expenses incurred in the Action are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.  The expenses reflected in Exhibit 4 are the expenses actually incurred by my firm.  I respectfully submit that the request for reimbursement of Litigation Expenses is appropriate, fair, and reasonable and should be approved in the amounts submitted herein.

84.    From the inception of this Action, Lead Counsel were aware that they might not recover any of the expenses incurred in prosecuting the claims against Defendants, and, at a minimum, would not recover any expenses until the Action was successfully resolved.  Lead Counsel also understood that, even assuming the

Action was ultimately successful, an award of expenses would not compensate Lead Counsel for the lost use or opportunity costs of funds advanced to prosecute the claims against Defendants. Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

85. As set forth in the Exhibit 4, the vast majority of expenses ($109,924.85, or approximately 96.4%) were for the retention of experts ($53,988.57), the mediator ($15,891), and a private investigation firm ($29,150.48), as well as online research ($10,894.80). Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.

86. Finally, Lead Plaintiff seeks reimbursement of its reasonable costs and expenses incurred directly in connection with representing the Settlement Class in the amount of $10,000. The efforts devoted to this Action by Lead Plaintiff is detailed in its accompanying declaration. *See* Ex. 1, ¶¶3-6. Based on the time and effort expended by Lead Plaintiff for the benefit of the Settlement Class (*see id*. at ¶14), I would respectfully request that the Court grant Lead Plaintiff's request in full.

## VII. CONCLUSION

87. Considering the significant recovery for the Settlement Class under difficult circumstances, and the substantial risks of inherent in the continued litigation of this Action, as described herein and in the accompanying Final Approval Memorandum, I respectfully submit that the Settlement should be approved as fair, reasonable, and adequate and that the proposed Plan of Allocation should be approved as fair and reasonable. I further submit that the requested fee in the amount of 33⅓% of the Settlement Fund should be approved as fair and reasonable, and the request for reimbursement of total Litigation Expenses in the

amount of $124,016.12 (which includes $10,000 for Lead Plaintiff) should also be approved.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this, the 10th day of October, 2024, at Los Angeles, California.

_s/ Ex Kano S. Sams II_
Ex Kano S. Sams II

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On October 10, 2024, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on October 10, 2024.

*s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

DECLARATION OF EX KANO S. SAMS II IN SUPPORT OF MOTION FOR FINAL APPROVAL