Robert V. Prongay (SBN 270796)
*rprongay@glancylaw.com*
Ex Kano S. Sams II (SBN 192936)
*esams@glancylaw.com*
Raymond D. Sulentic (SBN 316913)
*rsulentic@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Turton Inc.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVAN BARON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HYRECAR INC., JOSEPH FURNARI and ROBERT SCOTT BROGI,<br><br>Defendants. | Case No. 2:21-cv-06918-FWS-JC<br><br>Honorable Fred W. Slaughter<br><br>**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER**<br><br>Hearing Date:  March 6, 2025<br>Hearing Time: 10:00 a.m.<br>Location: 411 West 4th Street<br>　　　　　Santa Ana, CA 92701<br>Crtm:　　10D |

## I.     PRELIMINARY STATEMENT

Court-appointed lead plaintiff Turton Inc. ("Lead Plaintiff") on behalf of itself and the Settlement Class, respectfully submits this memorandum in support of its Unopposed Motion for Class Distribution Order (the "Motion").[1] The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Declaration of Josephine Bravata Concerning the Results of the Claims Administration Process ("Bravata Decl." or "Bravata Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS" or the "Claims Administrator").  *See* Bravata Decl. ¶¶21(a)-(e).

## II.    BACKGROUND

On March 20, 2024, the Parties entered into the Stipulation, the terms of which established a $1,900,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons and entities that purchased or otherwise acquired the publicly traded common stock of HyreCar Inc. from May 13, 2021 through August 10, 2021, both dates inclusive (the "Settlement Class Period"), and were damaged thereby.[2]  On July 19, 2024, the Court entered its Order Granting Lead Plaintiff's Motion for

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated March 20, 2024 (ECF No. 121-1; the "Stipulation"), or the Bravata Declaration.

[2] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer and/or director of HyreCar during the Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of HyreCar; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Also excluded from the Settlement Class are any persons and entities who or which submit a request for exclusion from the Settlement Class that is accepted by the Court.

Preliminary Approval of Class Action Settlement (ECF No. 128; the "Preliminary Approval Order").

Pursuant to the Preliminary Approval Order, SCS: (i) either mailed a copy of the Postcard Notice or emailed a link to the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), and the Proof of Claim and Release Form ("Claim Form"), to 13,875 potential Settlement Class Members; (ii) caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted once over *PR Newswire* (a national newswire service); (iii) established a case-specific website for the Settlement (www.HyreCarSecuritiesSettlement.com; the "Settlement Website") dedicated to this Settlement; and (iv) set up a toll-free helpline. *See* Bravata Decl., ¶¶5-7.  The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form.  *See generally* Settlement Website.

On November 19, 2024, the Court issued its Order Re Stipulation to Modify Hearing Date for: (1) Motion for Settlement Approval of Final Approval of Class Action Settlement and Plan of Allocation; and (2) Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 142; "Modification Order").  The Modification Order continued the Settlement Hearing from January 30, 2025, until March 6, 2025, and required Lead Counsel to submit a supplemental filing with final claims information.  The Settlement Website was updated to reflect the changed date of the Settlement Hearing (*see* Settlement Website home page), and the final claims information is contained in the Bravata Declaration.

Given that the Claims Administrator has finished its review of the Claims, in the interest of efficiency, Lead Plaintiff respectfully requests that, if the Court

approves the Settlement and the Plan of Allocation, the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants. *See* Stipulation, ¶26 ("Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account."). However, as set forth in the [Proposed] Class Distribution Order, any such distribution would not occur until after "the Effective Date of the Settlement, as provided for in the Stipulation at paragraph 31" and "[i]f the Court disapproves the Settlement, or Effective Date does not otherwise occur, [the] Order shall be null and void." *See* [Proposed] Class Distribution Order, at ¶3, filed concurrently herewith.

## III.    CLAIMS ADMINISTRATION

Pursuant to the Preliminary Approval Order and as set forth in the Notice and Postcard Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked by, or received, no later than December 14, 2024. *See* ECF No. 136-2, Exs. A (Postcard Notice), and C (Notice) at p. 2. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. *See* Bravata Decl., ¶¶8-15, 18-19.

Of the 6,739 Claims received by the Claims Administrator, 137 were paper Claims or Claims submitted through the Settlement Website. *Id.*, ¶13. The remaining 6,602 Claims were filed electronically ("Electronic Claims"). Electronic Claims are typically banks, brokers, nominees, and other third-party filers that file Claims on

behalf of numerous Claimants ("E-Claim Filers").  *Id*. ¶13, n.4. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry.  *Id.*  This process is designed to expedite the claims process.

If a Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice to the Claimant, a sample of which is attached as Exhibit A to the Bravata Declaration.  *Id.*, ¶¶12-13, Ex. A.  The Deficiency Notice advised the Claimant that he, she, or it had fourteen (14) days from the date of the Deficiency Notice to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶12.  Of the 137 paper and online Claims, the Claims Administrator sent Deficiency Notices for 30 Claims (or approximately 21.9%).  *Id.*, ¶13.  None of the 6,602 Electronic Claims were incomplete or had one or more defects or conditions of ineligibility.

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible.  Ultimately, as detailed in the Bravata Declaration, after the deficiency process was complete, the Claims Administrator determined that 1,143 Claims are acceptable and should receive a distribution.  This number includes 1,139 timely and valid claims, and four (4) Late But Otherwise Eligible Claims (addressed in Section IV below).  *See* Bravata Decl., ¶19(a) & Exs. C-1, C-2.

The Claims Administrator also determined that 24 Claims were ineligible due to inadequate documentation (*see id.*, at ¶19(b) & Ex. D), and 5,572 Claims are not eligible and should be rejected for the following reasons: (i) 2,841 Claims had no Recognized Loss under the Plan of Allocation; (ii) 2,366 Claims involved HyreCar common stock that were purchased outside the Settlement Class Period; (iii) 321

Claims involved HyreCar shares that were sold short;  (iv) 39 Claims involved HyreCar common stock that was not purchased or otherwise acquired, but was received or granted by gift, inheritance, or operation of law; (v) four Claims were duplicates; and (vi) one Claim was filed for securities other than HyreCar common stock.  *Id.*, ¶19(c) & Ex. E.

In sum, of the 6,739 Claims submitted to SCS, 1,143 Claims are being recommended for acceptance, and 5,596 are ineligible and being recommended for rejection.

## IV.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the December 14, 2024, claims filing deadline.  *Id.* at ¶19(a) & n.2.  There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place.  *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001).  Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution.  Accordingly, the Claims Administrator imposed a cut-off date of January 10, 2025.  Bravata Decl., ¶¶19(a), n.2, & 21(e).

Of the 1,143 properly documented valid Claims, four (4) were submitted after the December 14, 2024, deadline, but before the Claim's Administrator's imposed cut-off date of January 10, 2025 ("Late But Otherwise Eligible Claims").  Bravata Decl., ¶19(a), n.2 & Ex. C-2.  The four Late But Otherwise Eligible Claims have been recommended for payment.  *Id.* at ¶19(a).  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net

Settlement Fund solely because it was submitted after the deadline to submit Proofs of Claim, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Bravata Decl., 19(a) & Ex. C-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no new Proofs of Claim may be accepted after January 10, 2025, and no further adjustments to submitted Proofs of Claim may be made for any reason after January 28, 2025. *See* Bravata Decl., ¶21(e). "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, No. 09-MD-2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## V. DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the [Proposed] Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Bravata Decl., ¶21(a)(i)-(vi). Based on the substantial experience of the Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the

payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly. To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.*, ¶21(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id.*, ¶21(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id.* Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id.*, ¶21(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy.

Bravata Decl., ¶21(d); *see also* Declaration of Sharon M. McGowan of the Public Justice Foundation, ¶¶2-10; *id*. at ¶¶11-12 (securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary).

## VI.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Lead Plaintiff respectfully requests that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review,

verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *3 (C.D. Cal. Aug. 4, 2014); *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

## VII.    RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests that the Court order that: (a) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation.  *Id.*, ¶22.

## VIII.  CONCLUSION

For the above reasons, Lead Plaintiff respectfully requests that the Motion be granted.

Dated: February 6, 2025

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Ex Kano S. Sams II*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Ex Kano S. Sams II (SBN 192936)
  *esams@glancylaw.com*
Raymond D. Sulentic (SBN 316913)
  *rsulentic@glancylaw.com*
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Turton Inc. and the Settlement Class*

## **<u>CERTIFICATE OF COMPLIANCE PURSUANT TO L.R. 11-6.2</u>**

I, the undersigned, certify that this brief contains 3,287 words, which complies with the word limit of 7,000 words set forth within L.R. 11-6.1.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on February 6, 2025, at Los Angeles, California.

*/s/ Ex Kano S. Sams II*
Ex Kano S. Sams II

## **PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On February 6, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 6, 2025, at Los Angeles, California.

*/s/ Ex Kano S. Sams II*
Ex Kano S. Sams II