# JS-6

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

Case No. 2:21-cv-06918-FWS-JC                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

 Rolls Royce Paschal                                          N/A     
Deputy Clerk                                           Court Reporter

Attorneys Present for Plaintiff:              Attorneys Present for Defendant:

Not Present                                          Not Present

**PROCEEDINGS: (IN CHAMBERS) ORDER GRANTING MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF
ALLOCATION [132] [143] AND GRANTING IN SUBSTANTIAL
PART MOTION FOR ATTORNEY FEES AND REIMBURSEMENT
OF LITIGATION EXPENSES [134]**

Plaintiff Ivan Baron ("Plaintiff") filed this putative securities class action in August 2021 against Defendants HyreCar Inc. ("HyreCar"), HyreCar's Chief Executive Officer, Joseph Furnari, and its Chief Financial Officer, Robert Scott Brogi (collectively, "Defendants"). (Dkt. 1 (Complaint).)  In November 2021, Judge Percy Anderson, who previously presided over the case, appointed Turton Inc. as lead Plaintiff ("Lead Plaintiff") and approved Glancy Prongay & Murray LLP as lead counsel ("Lead Counsel").  (Dkt. 62.)  After substantial motion practice and discovery, a mediation session, and further settlement discussions, the parties reached a proposed settlement (the "Settlement") based on a mediator's proposal to resolve the case for $1,900,000 in cash for the benefit of the settlement class.  This court preliminarily approved the Settlement in July 2024.  (Dkt. 128 ("Prelim. App. Order").)  After the settlement administrator gave notice to 13,875 potential class members, the claims processor received 6,739 proof of claim forms, no requests for exclusion, and no objections.  (Dkt. 143-4 (Declaration of Josephine Bravata with Exhibits, "Final Bravata Decl.") at 7.)  Now before the court are two motions: (1) Lead Plaintiff's Unopposed Motion for Final Approval of Class

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                              Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

Action Settlement and Plan of Allocation (Dkts. 132 (Notice of Motion), 133 (Memorandum, "Final Approval Motion" or "FA Mot.")), and (2) Lead Counsel's Motion for An Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Dkts. 134 (Notice of Motion), 135 (Memorandum, "Fee Motion" or "Fee Mot.")).  At the court's request, (Dkt. 140), Lead Plaintiff also submitted final claims information, (Dkt. 143).  No opposition to the Final Approval Motion or the Fee Motion has been filed.  (*See generally* Dkt.)  Lead Plaintiff filed a Reply in support of the Final Approval Motion and Fee Motion.  (Dkt. 139.)  The court held a hearing on the Final Approval Motion and the Fee Motion on March 6, 2025.  (Dkt. 144.) Based on the state of the record, as applied to the applicable law, the Final Approval Motion is **GRANTED** and the Fee Motion is **GRANTED IN SUBSTANTIAL PART**.

**I.    Background**

**A.    Factual and Procedural Background**

In the operative Second Amended Complaint, Lead Plaintiff brings claims against Defendants for (1) violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), and Securities and Exchange Commission ("SEC") Rule 10b-5 against all Defendants, and (2) violation of Section 20(a) of the Exchange Act against Furnari and Brogi. (Dkt. 75 ("SAC") ¶¶ 182-200.)  The SAC alleges, in summary, that HyreCar, a "tightly-controlled public company led by" Brogi and Furnari, used a conflicted third-party insurance adjuster to manipulate HyreCar's earnings by concealing certain expenses and under-accruing liability for its insurance reserves, resulting in inaccurate financial statements.  (*Id.* ¶ 2.)  As a result of making false earnings statements, HyreCar's stock value increased.  (*Id.* ¶¶ 105-11.) "Capitalizing on these artificially-inflated prices, [Furnari and Brogi] cashed out," and engaged in "suspicious insider selling."  (*Id.* ¶¶ 112-14.)

The pleadings in this case were filed after Lead Counsel "conducted a comprehensive investigation of the claims," including by "(a) reviewing and analyzing (i) HyreCar's filings with the SEC, (ii) public reports, blog posts, reports prepared by securities and financial

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

analysts, and news articles concerning HyreCar, (iii) HyreCar's investor call transcripts, press
releases and other public statements made by Defendants prior to, during, and after the
Settlement Class Period, and (iv) other publicly available material related to HyreCar;
(b) retaining and working with a private investigator who conducted an investigation that
involved, inter alia, contacting former HyreCar employees and other sources of relevant
information; and (c) consultation with an accounting expert and an expert in loss causation,
damages and market efficiency." (FA Mot. at 2.)

Judge Anderson granted Defendants' motion to dismiss Lead Plaintiff's First Amended
Complaint, concluding that Lead Plaintiff's claims failed because Lead Plaintiff "failed to
adequately allege any actionable misrepresentation or omission" and to "sufficiently allege
falsity." (Dkt. 74 at 8-10.) Lead Plaintiff then "sought to address the pleading deficiencies"
and so filed the operative SAC. (Dkt. 136 (Declaration of Ex Kano S. Sams II, "Sams Decl.")
¶ 18.) After Defendants filed a motion to dismiss the SAC, (Dkt. 76), the case was transferred
to this court, (Dkt. 80). The court denied Defendants' motion to dismiss the SAC. (Dkt. 94.)
Around that time, "HyreCar announced the receipt of a grand jury subpoena in connection with
a criminal investigation being conducted by the U.S. Attorney's Office for the Central District
of California, and the Department of Justice's Criminal Fraud Section." (Sams Decl. ¶ 20.)

Shortly after the court denied Defendants' motion to dismiss the SAC, "Lead Plaintiff
served discovery on Defendants and third parties, including comprehensive requests for
production, and reviewed documents produced by a third party." (Sams Decl. ¶ 21.) Two
months after discovery began, "HyreCar filed a Notice of Bankruptcy Filing with the Court."
(*Id.* ¶ 22.)

At this point, the parties "agreed to engage in mediation." (Sams Decl. ¶ 23.) Before
mediation, the parties "exchanged mediation briefs containing detailed analyses of the strengths,
risks, and potential issues in the litigation with Defendants." (FA Mot. at 3.) The parties then
"participated in an unsuccessful full-day mediation session with a well-respected mediator of
complex cases—Jed Melnick, Esq. of JAMS—and engaged in months of further negotiations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

that culminated in a mediator's recommendation to resolve the Action for $1,900,000 in cash
for the benefit of the Settlement Class." (*Id.*)  The court granted preliminary approval of the
proposed settlement on July 19, 2024.  (Dkt. 128 ("Preliminary Approval Order").)

**B.      The Proposed Settlement**

Under the Settlement, Defendants agree to pay a Settlement Fund of $1,900,000 to
resolve the claims in this case.  (Dkt. 121-1 (Stipulation and Agreement of Settlement, "SA") at
16 ¶ 1.rr.)  The Net Settlement Fund—the gross settlement amount minus taxes and court-
approved payments to Lead Plaintiff, Lead Counsel, and the settlement administrator—will be
distributed *pro rata* to Authorized Claimants.  (*Id.* at 12 ¶ 1.z; *id.* at 23 ¶ 9.)  To be an
Authorized Claimant, class members must submit a Claim Form reflecting proof of loss.  (*Id.* at
31 ¶ 24.)  In exchange for the Settlement's benefits, participating class members agree to
release "all claims and causes of action . . . (i) asserted in the [SAC] []; or (ii) [that they] could
have asserted in any forum that arise out of or are based upon the allegations, transactions [and]
facts [] set forth, or referred to in the Complaint."  (*Id.* at 15 ¶ 1.nn.)

1,143 claimants are eligible for distributions from the settlement fund.  (Final Bravata
Decl. ¶ 19.)  Assuming each of those claimants receives a payment, the average distribution per
claimant after taxes and court-approved payments would likely be hundreds of dollars.  Given
the nature of a *pro rata* settlement, some claimants would receive much more and some much
less.

**C.      Notice to the Class and Response**

After the court granted preliminary approval of the Settlement, (*see generally* Prelim.
Appr. Order), the court-appointed settlement administrator, Strategic Claims Services ("SCS"),
caused "a total of 13,875 potential Settlement Class Members [to be] either mailed a Postcard
Notice or emailed a link to the Notice and Claim Form."  (Dkt. 139-1 (Supplemental
Declaration of Josephine Bravata, "Supp. Bravata Decl.") ¶ 4.)  "SCS also sent the Depository

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                        Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

Trust Company ('DTC') a Notice and Claim Form for the DTC to publish on its Legal Notice System ('LENS')," which "provides DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted." (Dkt. 136-2 (Declaration of Josephine Bravata, "Bravata Decl.")) ¶ 8.) SCS further caused the Summary Notice to be "published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*." (*Id.* ¶ 9, Ex. D.) SCS also maintained a toll-free telephone number for potential class members and a case-specific website that, as of February 6, 2025, "has received 4,268 pageviews from 1,421 unique users." (Bravata Decl. ¶¶ 10-11; Final Bravata Decl. ¶ 6.)

Of the 7,240 Postcard Notices mailed to potential class members, 378 "were returned to as undeliverable." (Bravata Decl. ¶ 5 n.2; Supp. Bravata Decl. ¶ 5.) 25 of the returned notices "include[ed] forwarding address information from the USPS and those notices were promptly remailed." (Bravata Decl. ¶ 5 n.2; Supp. Bravata Decl. ¶ 5.) The remaining 353 "Postcard Notices returned as undeliverable were 'skip-traced' to obtain updated addresses and" 167 "were re-mailed to updated addresses." (Bravata Decl. ¶ 5 n.2; Supp. Bravata Decl. ¶ 5.) So, only 186 of the total Postcard Notices remain undelivered—an amount just under 3% of the total Postcard Notices.

"The Postcard Notice, Notice, Summary Notice, and Settlement Website informed potential Settlement Class Members that written requests for exclusion are to be mailed to SCS such that they are received no later than October 24, 2024." (Bravata Decl. ¶ 12.) "SCS has not received any exclusion requests." (Supp. Bravata Decl. ¶ 8.)

"The Postcard Notice, Notice, Summary Notice, and Settlement Website, further informed Settlement Class Members seeking to object to the Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, that objections must have been filed with Lead Counsel, Individual Defendants' Counsel as well as the Clerk of the Court, on or before October 24, 2024." (*Id.*

_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                              Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

¶ 9.)  "SCS has not been notified of any objections or received any misdirected objections."
(*Id.*)

**II.    Discussion**

In deciding whether to grant the Final Approval Motion and the Fee Motion, the court
analyzes (1) whether to certify a class for settlement purposes, and (2) the fairness of the
Settlement.

**A.    Class Certification**

Lead Plaintiff seeks to certify a class of: "all persons and entities that purchased or
otherwise acquired the publicly traded common stock of HyreCar Inc. from May 13, 2021
through August 10, 2021, both dates inclusive, and were damaged thereby."[1]  (SA at 16 ¶ 1.ss.)
When a plaintiff seeks provisional class certification for settlement purposes, a court must

_____

[1] "Excluded from the Settlement Class are: (a) persons who suffered no compensable losses,
and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer and/or
director of HyreCar during the Settlement Class Period, and members of their Immediate
Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and
predecessors of HyreCar; (iv) any entity in which the Defendants have or had a controlling
interest; (v) any trust of which [Furnari or Brogi] is the settler or which is for the benefit of
[Furnari or Brogi] and/or member(s) of their Immediate Families; (vi) Defendants' liability
insurance carriers; and (vii) the legal representatives, heirs, successors, predecessors, and
assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Also excluded
from the Settlement Class are any persons and entities who or which submit a request for
exclusion from the Settlement Class that is accepted by the Court.  For the avoidance of doubt,
'affiliates' are persons or entities that directly, or indirectly through one or more intermediaries,
control, are controlled by or are under common control with one of the Defendants."  (SA at 16
¶ 1.ss.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

ensure Federal Rule of Civil Procedure 23(a)'s four requirements and at least one of Rule
23(b)'s requirements are met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997);
*Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003); Fed. R. Civ. P. 23(e)(1)(B)(i)
(stating that notice to the class must be given "if giving notice is justified by the parties'
showing that the court will likely be able to . . . certify the class for purposes of judgment on the
proposal"). In this case, Plaintiff seeks certification under Rule 23(b)(3), which permits
certification if a court "finds the questions of law or fact common to the members of the class
predominate over any questions affecting only individual members, and a class action is
superior to other available methods for the fair and efficient adjudication of the controversy."
Fed. R. Civ. P. 23(b)(3).

        The court previously concluded that Plaintiff presented sufficient evidence to show that
the proposed class satisfies the Rule 23(a) and (b)(3) requirements. (*See* Prelim. Appr. Order at
7-13.) Having reviewed those requirements again, the court adopts its prior analysis regarding
class certification and grants certification of the proposed class for settlement purposes only.
*See Atzin v. Anthem, Inc.*, 2022 WL 4238053, at *3 (C.D. Cal. Sept. 14, 2022) ("Nothing has
changed to disturb that conclusion, and class certification remains appropriate.").

## B.    Fairness of the Settlement

        Although there is a "strong judicial policy that favors settlements, particularly where
complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234,
1238 (9th Cir. 1998), a settlement of class claims requires court approval. Fed. R. Civ. P. 23(e).
This is because "[i]ncentives inhere in class-action settlement negotiations that can, unless
checked through careful district court review of the resulting settlement, result in a decree in
which the rights of class members, including the named plaintiffs, may not be given due regard
by the negotiating parties." *Staton*, 327 F.3d at 959 (cleaned up).

        Rule 23(e) governs class action settlement approval. Courts may approve class action
settlements only when they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

making this determination, courts must consider whether (A) the class representatives and class counsel have adequately represented the class, (B) the proposal was negotiated at arm's length, (C) the relief provided for the class is adequate, and (D) the proposal treats class members equitably relative to each other.  *Id.* 23(e)(2)(A-D).

### 1.    Lead Plaintiff's and Lead Counsel's Adequacy

For reasons including those explained in the court's analysis of the Rule 23(a) factors at the preliminary approval stage, the court finds Plaintiff and Lead Counsel have ably represented the class to date and have secured a significant settlement.  (Prelim. Appr. Order at 9-10.)  "The Court is unaware of any conflict of interest between [Lead Plaintiff] and the proposed class." *Dean v. China Agritech*, 2012 WL 1835708, at *5 (C.D. Cal. May 3, 2012); (*see* Prelim. Appr. Order at 10).  Lead "Plaintiff's claims are identical to those of the class and []he has every incentive to vigorously pursue those claims."  *Becerra-S. v. Howroyd-Wright Emp. Agency, Inc.*, 2020 WL 8571838, at *3 (C.D. Cal. Oct. 5, 2020).  "Nor is there any evidence that [Lead Counsel] will not adequately represent or protect the interests of the class."  *Id.*  Lead Counsel has significant experience litigating securities class actions and appears "qualified and competent."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1988), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); (*see* FA Mot. at 7; Prelim. Appr. Order at 10).  Accordingly, the court finds this factor weighs in favor of granting final approval.

### 2.    Arm's Length Negotiation

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Lead Plaintiff represents that on "September 27, 2023, the Parties held a virtual mediation session that was overseen by a well-respected mediator of complex actions, Jed Melnick."  (Sams Decl. ¶ 24.)  "No agreement was reached during the mediation, but negotiations continued, facilitated by Mr. Melnick, over a potential settlement."  (*Id.*)  "These negotiations culminated in a recommendation by Mr. Melnick that the Parties settle the Action

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                      Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

for a $1.9 million cash payment … On November 2, 2023, the Parties accepted Mr. Melnick's recommendation." (*Id.* ¶ 25.)

The court finds that Lead Plaintiff has made an adequate showing that the Settlement is the result of arms-length negotiations between the parties. As the court explained in the Preliminary Approval Order, the parties' settlement negotiations occurred before a neutral private mediator who is "an experienced complex business litigation mediator who has resolved over 1,000 disputes in his career." *Brightk Consulting Inc. v. BMW of N. Am., LLC*, 2023 WL 2347446, at *6 (C.D. Cal. May 16, 2013) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive."); *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (explaining that although the "mere presence of a neutral mediator . . . is not on its own dispositive," it is "a factor weighing in favor of a finding of non-collusiveness"); *Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *6 (C.D. Cal. Feb. 22, 2022) ("The parties extensively negotiated the Settlement over several months prior to mediation and ultimately reached a final agreement only after arms-length negotiations before [the] mediator."); *Thompson v. Transamerica Life Ins. Co.*, 2020 WL 6145105, at *3 (C.D. Cal. Sept. 16, 2020) ("The Settlement is the product of extensive negotiations between the Parties with the assistance, and direct supervision, of an experienced and highly-regarded nationally-renowned mediator . . . who conducted a full-day, in-person mediation with all Parties as well as a follow-up mediation telephone conference with all Parties."). And the negotiations occurred between experienced counsel. *See Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *3 (C.D. Cal. May 6, 2014) ("The fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") (cleaned up). Moreover, as explained in the Preliminary Approval Order and further explained in Section II.B.3.c., *infra*, the Settlement does not have any of the "'subtle signs' of collusion". *Roes, 1-2 v. SFBSC Mgmt.*, LLC, 944 F.3d 1035, 1048 (9th Cir. 2019); *see Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021). It does not have a clear sailing agreement or a reverter provision, and, as discussed in Section II.B.3.c, *infra*, Lead Counsel does not seek a disproportionate fee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

Finally, the fact that the Settlement is the result of the parties accepting a mediator's proposal further supports a finding that the Settlement was negotiated at arm's length.  (Sams Decl. ¶ 25); *see Lusk v. Five Guys Enterprises LLC*, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022) ("The fact that the parties engaged in mediation and that the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion."); *Garcia v. Schlumberger Lift Sols.*, 2020 WL 6886383, at *13 (E.D. Cal. Nov. 24, 2020), *report and recommendation adopted,* 2020 WL 7364769 (E.D. Cal. Dec. 15, 2020) (explaining that the fact that "the parties chose to accept the mediator's proposal, meaning this settlement was one that the third-party mediator proposed, rather than an amount determined through the negotiations of the parties," suggested a lack of collusion); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) (considering the fact that settlement was based on mediator's proposal as factor in favor of finding arm's length negotiations).

The court is satisfied that the parties negotiated the Settlement at arm's length.

### 3. Adequacy of Class Relief

In determining whether class relief is "adequate," courts must analyze "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."  Fed. R. Civ. P. 23(e)(2)(C).[2]  In this context, the court also considers Lead Plaintiff's request to be reimbursed for costs and expenses.

---

[2] Before Congress codified these factors in 2018, the Ninth Circuit instructed district courts to apply the following factors in determining whether a settlement agreement was fair, reasonable, and accurate: "[1] the strength of plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

### a.    The Costs, Risks, and Delay of Trial and Appeal

The Settlement reflects a substantial outcome for class members.  The Net Settlement
Amount (just under $2 million) will be divided *pro rata* based on class members' Recognized
Loss divided by the total Recognized Losses of all Authorized Claimants, multiplied by the
total amount in the Net Settlement Fund.  (Sams Decl. ¶ 55.)  Individual class members will
each receive an average recovery of hundreds of dollars.  (*See* Supp. Bravata Decl. ¶ 19; SA at
16 ¶ 1.rr.)  This is a favorable result for the class, especially given the significant risks Lead
Plaintiff and the class would face maintaining this action.

Most significantly, Lead Plaintiff represents that "the only viable source of recovery—
HyreCar's $10 million D&O insurance—was rapidly depleting because of the costs associated
with defending not only this Action, but also the proceedings brought by the DOJ and SEC."
(FA Mot. at 14); *see Gutierrez v. Amplify Energy Corp.*, 2023 WL 3071198, at *3 (C.D. Cal.
Apr. 24, 2023) ("[T]he monetary relief here is a strong result for the Class in light of the costs
and risks of delay of litigation, particularly given Amplify's available funds. . . . [T]he
Settlement represents a large portion of the insurance funds that remain available to Amplify to
pay claims—an amount that will only decrease with time as Amplify pays ongoing clean-up,
litigation and other costs."); *In re Diamond Foods, Inc., Sec. Litig.*, 2014 WL 106826, at *2
(N.D. Cal. Jan. 10, 2014) ("It is not unreasonable for counsel and the class representative to
prefer the bird in hand, given concerns about Diamond's strained financial state and its ability
to pay a judgment following further litigation.") (cleaned up); *In re Critical Path, Inc.*, 2002
WL 32627559, at *7 (N.D. Cal. June 18, 2002) ("Through protracted litigation, the settlement

_____

proceedings; [6] the experience and views of counsel; [7] the presence of a governmental
participant; and [8] the reaction of the class members to the proposed settlement." *Roes, 1-2*,
944 F.3d at 1048; *Staton*, 327 F.3d at 959.  These are the factors Plaintiff addresses in the
Motion.  (*See generally* Mot.)  And the court still considers these factors to the extent that they
shed light on the Rule 23(e) inquiry.  *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *8
(N.D. Cal. Apr. 19, 2021).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                          Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

class could conceivably extract more, but at a plausible risk of getting nothing . . . ; watching
Critical Path fall into bankruptcy; and, most certainly, drying up the available insurance.”);
*Stratton v. Glacier Ins. Administrators, Inc.*, 2006 WL 3388528, at *4 (E.D. Cal. Nov. 22,
2006) (considering “self-exhausting nature of defendants’ insurance policies and lack of
identifiable assets sufficient to satisfy judgments” under this factor to weigh in favor of granting
final approval).  In other words, by settling now, Lead Plaintiff and the class get a portion of
Defendants’ “remaining insurance proceeds rather than those proceeds being used to litigate this
case and related shareholder derivative suits and governmental investigations.” *Farrar v.
Workhorse Grp., Inc.*, 2023 WL 5505981, at *6 (C.D. Cal. July 24, 2023)

The court further finds the benefits class members will receive under the Settlement
present a fair compromise given the costs, risks, and delay of trial and appeal.  For one thing,
“securities actions are highly complex” and “securities class litigation is notably difficult and
notoriously uncertain.”  *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal.
Dec. 18, 2018)*, aff’d sub nom. Hefler v. Pekoc*, 802 F. App’x 285 (9th Cir. 2020) (quotation
omitted); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13,
2013) (“Courts experienced with securities fraud litigation routinely recognize that securities
class actions present hurdles to proving liability that are difficult for plaintiffs to clear.”)
(cleaned up).  Specifically, Lead Plaintiff and the class would have been challenged in proving
scienter, which is “complex and difficult to establish at trial.”  *In re Immune Response Sec.
Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007).  Indeed, the court observed in ruling on
Defendants’ motion to dismiss that “on a percentage basis, the amount of stock sold by
HyreCar’s executives cuts against a finding a strong inference of scienter … .”  (Dkt. 94 at 32.)

Further, Lead Plaintiff identifies that potential defenses to “loss causation and damages
pose substantial risks to recovery at trial because each side would have presented expert
testimony.”  (FA Mot. at 13); *Farrar*, 2023 WL 5505981, at *7 (“Extensive and expensive
expert discovery would also be necessary” to proceed to trial).  There would also be significant
costs and risks associated with class certification, summary judgment practice, and trial.  *See In
re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                   Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

("Additional consideration of increased expenses of fact and expert discovery and the inherent
risks of proceeding to summary judgment, trial and appeal also support the settlement."). Even
if Lead Plaintiff were able to certify a class, there would also be a risk that the court could later
decertify the class. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar.
18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs
in favor of settlement."). And even if Lead Plaintiff could secure a better result than the
Settlement represents at trial, any result obtained after additional litigation or trial would take
significantly longer and there is a risk that Lead Plaintiff could have received much less, or
nothing at all. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041-42 (N.D. Cal.
2008) (discussing how a class action settlement offered an "immediate and certain award"
considering significant obstacles posed through continued litigation).

As explained in the Preliminary Approval Order, the Settlement also appears reasonable
when considering all of these costs and risks in the context of Lead Plaintiff's potential
recovery. Lead Counsel estimates that a successful verdict on all claims could result in
maximum damages of approximately $96 million. (Sams Decl. ¶ 42.) The Settlement reflects
an approximately 2% recovery of that amount. (*Id.*) This amount is in line with percentage
recoveries other courts have found to be fair and adequate. *See, e.g.*, *In re Broadcom Corp. Sec.
Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005) ("In any event, even a 2.7 cent
recovery for every dollar of claimed damages would not be inconsistent with the average
recovery in securities class action cases."); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955,
at *4-5 (C.D. Cal. Oct. 19, 2009) (approving settlement with recovery of 4.5% of maximum
damages).

The court finds that elimination of all these costs, risks, and delays weighs heavily in
favor of approving the Settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir.
2009); *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct.
22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the
litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                              Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

===

     **b.**    **The Effectiveness of the Proposed Method of Distribution of Class
            Relief**

     Next, the court must consider "the effectiveness of any proposed method of distributing
relief to the class, including the method of processing class-member claims." Fed. R. Civ. P.
23(e)(2)(C). "Often it will be important for the court to scrutinize the method of claims
processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23 advisory
committee's note to 2018 amendment. "A claims processing method should deter or defeat
unjustified claims, but the court should be alert to whether the claims process is unduly
demanding." *Id.*

     In this case, the court finds the claims processing and relief distribution processes are
well-established and effective. SCS will process claims under the guidance of Lead Counsel,
allow claimants an opportunity to cure any deficiency in their claim or request review of any
denial of their claim, and ultimately mail or wire each Authorized Claimant their *pro rata* share
of the Net Settlement Fund. (FA Mot. at 15.) This process "has been long found to be
effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the
individual investor trading data required for a claims-free process to distribute the Net
Settlement Fund." *In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *7 (C.D. Cal.
Apr. 23, 2024) (approving settlement with nearly identical distribution process).

     If, nine months after the initial distribution, "any funds remain in the Net Settlement
Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a
second distribution" if "it is cost-effective to do so." (Dkt. 143-2 at 7.) "During the Second
Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution,"
and after payment of court-ordered fees and costs, "will be redistributed to all Authorized
Claimants in the Initial Distribution who cashed their distribution checks and would receive at
least $10.00 from the Second Distribution." (*Id.*) "Following the Second Distribution,
additional redistributions will occur following the same process of the Second Distribution until
no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

Claims Administrator, determines that additional distributions are no longer economically feasible." (*Id.*) "Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy." (*Id.* at 7-8.) The court finds that this distribution is reasonably calculated to efficiently distribute relief, and that the Public Justice Foundation is a suitable *cy pres* beneficiary. (*See* Dkt. 143-3) (collecting securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary).)

     **c.**    **Attorney Fees Award**

     Next, the court must consider "the terms of any proposed award of attorneys' fees, including timing of payment," in determining whether the class's relief is adequate. Fed. R. Civ. P. 23(e)(2)(c). "The 'touchstone' for that analysis is 'the benefit to the class'—class counsel can only reap rewards if they have delivered results for class members." *In re California Pizza Kitchen Data Breach Litig.*, 2025 WL 583419, at *9 (9th Cir. Feb. 24, 2025). When reviewing attorney fee requests in class action settlements, courts have discretion to apply the percentage-of-the-fund method or the lodestar method to determine reasonable attorney fees. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Bluetooth*, 654 F.3d at 944-45. In considering the proposed attorney fee award, the court must also scrutinize the Settlement for three factors that tend to show collusion: (1) when counsel receives a disproportionate distribution of the settlement, (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for agreed-upon attorney fees, and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class. *Briseno v. ConAgra Foods, Inc.*, 998 F.3d 1014, 1022 (9th Cir. 2021).

     Here, Lead Counsel seeks one-third of the $1,900,000 Gross Settlement Amount. (Fee Mot. at 1.) "Although 25% of the anticipated settlement value is a useful benchmark to keep in mind in all cases, [] caselaw affords district courts discretion to refrain from attempting to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                              Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

measure the unmeasurable." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020);
*see also In re Easysaver Rewards Litig.*, 906 F.3d 747, 758 (9th Cir. 2018) (noting the Ninth
Circuit has "generally held" a fee award within 25% of the total recovery as a "benchmark" for
"reasonable" fee award in a class action settlement).

     For several reasons, the court finds an award above the benchmark is appropriate here.
First, "[i]n awarding percentages of the class fund, courts frequently take into account the size
of the fund," and "[c]ases of under $10 Million," like this one, "will often result in result in fees
above 25%." *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008).
Second, California courts routinely grant 33⅓% attorney fee awards in class action settlements
such as this one. (Fee Mot. at 18-19 (collecting cases).) "Indeed, for securities class action
settlements settled between 2014 and 2023 with a gross settlement value of under $5 million,
the median attorneys' fee as a percentage of settlement value was 33.0%." (Fee Mot. at 19
(citing Dkt. 136-5).) And third, courts depart upward from the 25% benchmark after
considering "the extent to which class counsel achieved exceptional results for the class,
whether the case was risky for class counsel, whether counsel's performance generated benefits
beyond the cash settlement fund, the market rate for the particular field of law (in some
circumstances), the burdens class counsel experienced while litigating the case (e.g., cost,
duration, foregoing other work), and whether the case was handled on a contingency basis." *In
re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal
quotations omitted). Finally, the lack of a single objector or request for exclusion among the
class members is strong evidence that the requested fee is reasonable. *Immune Response Sec.
Litig.*, 497 F.Supp.2d at 1177 ("The lack of objection from any Class Member supports the
attorneys' fees award").

     A lodestar cross-check also confirms the reasonableness of the requested award. Courts
commonly perform a lodestar cross-check to assess the reasonableness of the percentage award.
*See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784 (9th Cir. 2022) ("A cross-
check is discretionary, but we encourage one when utilizing the percentage-of-recovery
method."); *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                      Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

lawyer's investment of time in the litigation, provides a check on the reasonableness of the
percentage award."); *Bluetooth*, 654 F.3d at 943 (encouraging a "comparison between the
lodestar amount and a reasonable percentage award"); *see also Chambers v. Whirlpool Corp.*,
980 F.3d 645, 663 (9th Cir. 2020) (confirming that a lodestar cross-check is "ordinarily" not
required). Lead Counsel submitted evidence of a $1,414,626.25 lodestar, so the requested fee
of $633,333.33 represents a significant reduction. (Dkt. 136-3.) Whereas "courts have
routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases," and
"multiples ranging from one to four are frequently awarded in common fund cases when the
lodestar method is applied," *Vizcaino*, 290 F.3d at 1051 n.6, here Lead Counsel seeks an award
at less than half the value of their lodestar. *See also Gutierrez*, 2023 WL 3071198, at *6
(describing multipliers ranging from one to four as "presumptively acceptable") (citing *Dyer v.
Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 334 (N.D. Cal. 2014)). The court has reviewed the
information provided and concludes that the lodestar amount with the fractional multiplier fairly
compensates the attorneys in this case given the result they achieved for the class; the able
representation of counsel; the investigation, discovery, litigation, negotiation, and other work
performed; and the substantial risk counsel undertook in this securities class action. *See In re
Coordinated Pretrial Proc. in Petroleum Prod. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir.
1997) (explaining that comparing the lodestar fee to the 25% benchmark "resembles what
lawyers commonly do when they draft a bill based on hours spent, consider the bottom line as
compared with the value of the result, then cut the bill if the total seems excessive as compared
with the results obtained"). The court therefore concludes that Lead Counsel's lodestar
confirms the reasonableness of the fees sought.

    In addition, the court has also reviewed Lead Counsel's request for $114,016.12 in
litigation costs incurred mostly through expert fees, mediation, a private investigation firm, and
online research. (Fee Mot. at 23-24; Dkt. 136-4.) The court observes that these are generally
the types of expenses that are reasonably and necessarily incurred in litigation and routinely
charged to paying clients in non-contingency cases. *See Bato v. Lab'y Corp. of Am. Holdings*,
2011 WL 13412376, at *17 (C.D. Cal. Mar. 14, 2011) (explaining that discovery costs "paved
the way for settlement," and computerized legal research "was necessary to examine the legal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

basis for plaintiffs' claims" and to oppose a motion to dismiss). The court therefore finds
$114,016.12 in costs to be reasonable and supported by the documentation submitted. Further,
the court observes that the requested amount of costs is less than the $163,500 maximum which
this court previously set. (Prelim. Appr. Order at 8.)

The court will make only one change in calculating Lead Counsel's fee: it will apply the
percentage award after deducting litigation and administration costs from the common fund.
"In other words, to calculate attorney fees in this case, the court will apply the [percentage fee
award] to the amount the class recovers." *Farrar*, 2023 WL 5505981, at *10; *Carter v. Vivendi
Ticketing US LLC*, 2023 WL 8153712, at *8 (C.D. Cal. Oct. 30, 2023). Calculating the
percentage fee before deducting expenses would mean that Lead Counsel not only gets
reimbursed for its costs but also receives an additional 33% of those costs as a fee. *See, e.g.*,
*Smith v. Experian Info. Sols., Inc.*, 2020 WL 6689209, at *7 (C.D. Cal. Nov. 9, 2020)
(calculating benchmark fees by deducting litigation costs and settlement administrator costs
from the settlement amount, and taking 25% of that amount); *In re Apple iPhone/iPad
Warranty Litig.*, 40 F. Supp. 3d 1176, 1182 (N.D. Cal. 2014) (same); *Kmiec v. Powerwave
Techs., Inc.*, 2016 WL 5938709, at *5 (C.D. Cal. July 11, 2016) (same); *Kanawi v. Bechtel
Corp.*, 2011 WL 782244, at *3 (N.D. Cal. Mar. 1, 2011) (same). And deducting the settlement
administrator's expenses before calculating the fee ensures that class counsel's incentive
remains keeping those costs low. *Farrar*, 2023 WL 5505981, at *10; *Carter*, 2023 WL
8153712, at *8. Subtracting from the $1,900,000 million Settlement amount $114,016.12 in
litigation costs (Sams Decl. ¶ 62), and $82,000 in administration expenses[3] yields
$1,703,983.88. Applying the 33.33% rate to that sum yields $567,994.63. Accordingly, the
court will award Lead Counsel $567,994.63 in attorney fees.

In addition to the amount of Lead Counsel's fees and costs, the court must scrutinize the
timing of payment. Fed. R. Civ. P. 23(e)(2)(c). Here, the Settlement provides that "any
attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead

---

[3] At the final approval hearing, Lead Counsel informed the court that SCS' administrative costs
total $82,000.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

Counsel immediately upon award." (SA at 26 ¶ 16.) Class members' payments will be distributed to Authorized Claimants following the "Effective Date," which will also be on or soon after the date the court issues this Order. (Dkt. 143-1 ¶ 6; SA at 35-36 ¶ 31.) These terms could allow counsel to collect their fee before class members are paid, which in turn could cast a slight shadow on the proposed fee and cost arrangements. *See, e.g.*, *Razo v. AT&T Mobility Servs., LLC*, 2022 WL 4586229, at *13 (E.D. Cal. Sept. 29, 2022) ("[C]ounsel will receive payment at the same time as class members, and the timing of payment does not weigh against preliminary approval of the Class Settlement."). "However, especially given the strong showing of arm's length negotiation and lack of collusion in this case," the court finds that even if counsel receives their fees slightly before Authorized Claimants' payments are disbursed, any "gap between payments standing alone does not appear so significant as to weigh against granting final approval of the Settlement." *Farrar*, 2023 WL 5505981, at *10.

### d.    Agreements Required to Be Identified Under Rule 23(e)(3)

The court must also consider whether there is "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv)—that is, "any agreement made in connection with the proposal," *id.* 23(e)(3). The parties have reached a confidential supplemental agreement ("Supplemental Agreement") that allows Defendants to terminate the Settlement if class members possessing a certain aggregate number of securities exclude themselves from the Settlement. (FA Mot. at 16-17.) To protect the settlement class, the specific terms of the Supplemental Agreement are confidential "to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts." *Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017). "This type of agreement is common in securities fraud actions and does not weigh against [final] approval." *Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019) (citing *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that the court was not troubled by the opt out deal between the parties)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                  Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

      **e.**      **Reimbursement of Lead Plaintiff's Costs and Expenses**

Next, the court considers Lead Plaintiff's request for $10,000 as reimbursement for time
spent working on this case.  (Fee Mot. at 24-25.)  "The [PSLRA] prohibits granting incentive
awards to class representatives in securities class actions."  *Rodriguez v. West Publ'g Corp.*,
563 F.3d 948, 960 n.4 (9th Cir. 2009).  But the "PSLRA allows class representatives to recover
'reasonable costs and expenses (including lost wages) directly relating to the representation of
the class.'"  *Schwartz v. Arena Pharms., Inc.*, 775 Fed. Appx. 342, 343 (9th Cir. 2019) (quoting
15 U.S.C. § 78u-4(a)(2)(A)(vi)).

As previously stated, Judge Anderson appointed Turton Inc. as Lead Plaintiff in this
action.  (Dkt. 62.)  Michael Criden, the President and Director of Turton, explains that he
facilitated this litigation, including by reviewing "all significant pleadings" and evaluating and
approving "the proposed settlement."  (Dkt. 136-1 (Declaration of Michael Criden, "Criden
Decl.") ¶ 1, 6.)  Criden notes that the time he spent on this case is time that he "would have
spent at working on behalf of Turton and, thus, represented a cost to Turton."  (*Id.* ¶ 14.)
Criden submits that $10,000 is the appropriate figure for reimbursement because he spent
"approximately 11 hours" on behalf of the class and that his "billable rate is $900 per hour."
(*Id.* ¶ 1, 14.)

However, the court declines to award $10,000 to Lead Plaintiff because the record does
not sufficiently demonstrate that this amount represents Lead Plaintiff's "reasonable costs and
expenses."  15 U.S.C. § 78u-4(a)(2)(A)(vi).  Courts in this circuit regularly decline
reimbursement for a PSLRA plaintiff who seeks reimbursement based on the plaintiff's
"generalized statement that he would have spent the time he spent on this case 'on other work.'"
*Schueneman v. Arena Pharmaceuticals, Inc.*, 2019 WL 6700880, at *1 (S.D. Cal. Dec. 9, 2019);
*In re Lyft Inc. Sec. Litig.*, 2023 WL 5068504, at *13 (N.D. Cal. Aug. 7, 2023) (denying
reimbursement for a plaintiff "who spent substantial time on [the] case [but] has not provided

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                                    Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

documentation of any actual costs, expenses, or lost wages related to litigation"); *In re Yahoo! Inc. Sec. Litig.*, 2018 WL 4283377, at *3 (N.D. Cal. Sept. 7, 2018) (denying reimbursement where plaintiffs put forward "conclusory estimates of the hours spent on this case and their billing rates"); *In re TVIA Inc. Sec. Litig.*, 2008 WL 2693811, at *1 (N.D. Cal. July 7, 2008) (denying reimbursement for plaintiff who spent fifty hours spent on the action at an alleged rate of $300). Criden's status as an employee of Turton does not change this result because Turton does not show "that it paid compensation 'directly as a result of the litigation.'" *In re Twitter Inc. Sec. Litig.*, 2022 WL 17248110, at *2 (N.D. Cal. Nov. 21, 2022). The fact that Criden points to the hourly rate he charges as an attorney as an estimate of his value further demonstrates that Turton cannot show a specific out-of-pocket expense it incurred in service of this litigation. *See id.* (plaintiff's attempt to "set an 'effective hourly rate' for its employees' time does not solve this problem, because that hourly rate was not the cost incurred by" plaintiff).

The court acknowledges that some courts from this circuit allow reimbursement under a similar theory as Lead Plaintiff provides here. *See Stable Road*, 2024 WL 3643393, at *16 (granting "PSLRA award in the amount of $10,000 to reimburse [the lead plaintiff] for time spent prosecuting the Action"); *Zaidi v. Adamas Pharma., Inc.*, 2024 WL 4342186, at *2 (N.D. Cal. Sept. 27, 2024) (awarding "$10,000 from the Settlement Fund as reimbursement for [the lead plaintiff's] reasonable costs and expenses directly related to his representation of the Settlement Class"). But those cases do not adequately reconcile that the PSLRA "does not allow for incentive awards for class representatives." *Schwartz*, 775 Fed. Appx. at 343; *see Stable Road*, 2024 WL 3643393, at *16; *Zaidi*, 2024 WL 4342186, at *2.

The court recognizes Criden's significant efforts in prosecuting this case and facilitating this Settlement. But "the Congressional Committee's comments [on the PSLRA] demonstrate a clear intent to remove financial incentive for becoming a lead plaintiff." *In re ESS Tech., Inc. Sec. Litig.*, 2007 WL 3231729, at *3 (N.D. Cal. Oct. 30, 2007.) And Lead Plaintiff does not

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06918-FWS-JC                          Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

submit adequate support for the notion that he incurred any reimbursable expenses under the
PSLRA.  Accordingly, the court **DENIES** Lead Plaintiff's request for reimbursement in the
amount of $10,000.

### 4.    Equitable Class Member Treatment

The final Rule 23(e) factor turns on whether the proposed settlement "treats class
members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2).  "Matters of concern could
include whether the apportionment of relief among class members takes appropriate account of
differences among their claims, and whether the scope of the release may affect class members
in different ways that bear on the apportionment of relief."  Fed. R. Civ. P. 23 advisory
committee's note to 2018 amendment.

Under the Settlement, Authorized Claimants will receive their "*pro rata* share of the Net
Settlement Fund."  (FA Mot. at 17.)  "Specifically, an Authorized Claimant's *pro rata* share
shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized claims
of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund."  (*Id.*)
"This difference in treatment is appropriate and reasonable."  *Farrar*, 2023 WL 5505981, at *11
(finding a *pro rata* settlement in a securities case treats class members equitably).  Accordingly,
the court concludes the Settlement treats class members equitably.

### 5.    Response to Notice

The court also considers the class' response to the notice in determining whether the
Settlement is fair, reasonable, and adequate.  *See Alfred v. Pepperidge Farm*, 2022 WL
17066171, at *7 (C.D. Cal. Mar. 4, 2022) ("Because the notice process has been completed, the
reaction of Class Members to the Settlement Agreement may be considered in evaluating
whether it is fair and appropriate.").  As explained, "a total of 13,875 potential Settlement Class
Members were either mailed a Postcard Notice or emailed a link to the Notice and Claim form."
(Supp. Bravata Decl. ¶ 4.)  SCS also "maintains a toll-free telephone number … for potential

**CIVIL MINUTES – GENERAL**                                    **22**

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

Case No. 2:21-cv-06918-FWS-JC                                  Date: March 7, 2025
Title: Ivan Baron v. HyreCar Inc., *et al.*

Settlement Class Members to call and obtain information about the Settlement." (*Id.* ¶ 6.)  SCS
also established and maintained a settlement website that "received 4,268 pageviews from 1,421
unique users." (*Id.* ¶ 7.)  With this notice and engagement, no class member opted out or
objected to the Settlement. (*Id.* ¶¶ 8-9.)  The court finds this record indicates overall support for
the Settlement and supports final approval. *See, e.g.*, *Hashemi*, 2022 WL 18278431, at *6
("Very few objections and opt-outs create a strong presumption that the Settlement is beneficial
to the Class and thus warrants final approval."); *In re Lifelock, Inc. Mktg. & Sales Practices
Litig.*, 2010 WL 3715138, at *6 (D. Ariz. Aug. 31, 2010) (explaining that low number of timely
written objections and requests for exclusion supported settlement approval); *National Rural
Telecommunications Cooperative v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)
("The absence of a single objection to the Proposed Settlement provides further support for final
approval of the Proposed Settlement.  It is established that the absence of a large number of
objections to a proposed class action settlement raises a strong presumption that the terms of a
proposed class settlement action are favorable to the class members.").

####        6.        Summary

    In sum, after analyzing the Rule 23(e)(2) factors, and taking into consideration the factors
the Ninth Circuit has provided to guide the court's Rule 23(e)(2) analysis, the court concludes
that the Settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Kim*, 8 F.4th
at 1178; *Roes, 1-2*, 944 F.3d at 1048; *Staton*, 327 F.3d at 959.

### III.    Disposition

    For the foregoing reasons, the Final Approval Motion is **GRANTED** and the Fee Motion
is **GRANTED IN SUBSTANTIAL PART.**  The Fee Motion is **GRANTED** in all respects
except that the court calculates the fee award by applying the percentage fee award after
deducting litigation and administration costs from the common fund, for a total fee award of
$567,994.63, and the court **DENIES** Lead Plaintiff's request for reimbursement of $10,000.